UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**Sandra Grazzini-Rucki individually
and on behalf of her children,
N.J.R, S.V.R., G.J.R., N.G.R., and
G.P.R., on behalf of themselves and
all others similarly situated.**

Plaintiffs,

vs.

Court File No.
**0:13-CV-02477**

**David L. Knutson, an individual,
John and Mary Does 1-20**

**AMENDED CIVIL
RIGHTS COMPLAINT
CLASS ACTION**
(42 U.S.C §1983, §1985)

JURY TRIAL DEMAND

Defendants.

Plaintiffs, Sandra Grazzini-Rucki, individually and on behalf of her minor children, N.J.R,
S.V.R., G.J.R., N.G.R., and G.P.R., individually and on behalf of themselves and others similarly
situated, by and through their undersigned attorneys, Michelle Lowney MacDonald and
MacDonald Law Firm, LLC, bring suit against Defendant, David L. Knutson, an individual, John
and Mary Does, 1-20, and states as follows:

AMENDED CIVIL RIGHTS COMPLAINT /CLASS ACTION

The above-entitled proceedings was filed with the above- named court on September 11,

2013, and the above Defendant David L. Knutson, having been notified and then personally

served by substitute service on October 7, 2013, and then by the Federal Marshalls on October

1

21, 2013, the above-named Plaintiffs, having been granted an IFP by the above Court on October

3, 2013, the Plaintiffs, duly make and file this AMENDED CIVIL RIGHTS COMPLAINT, by

addition of factual allegations in paragraphs 184 – 193, additional claim of violation of the Sixth

Amendment (Amendment VI) to the Minnesota and United States Constitution; and A.169 –

A.211 attached, pursuant to verification executed by Petitioner Sandra Grazzini-Rucki below.

Now, pursuant to F.R.C.P 5, Michelle L. MacDonald, Esq., counsel for Plaintiffs, and

based on the Civil Rights Complaint Class Action filed herein on the September 11, 2013 be, and

hereby is, amended to read as follows, to-wit:

## INTRODUCTION

1. This is a COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983;
   Petitioners brings this action in the District Court for damages (1) under 42 U.S.C. 1983,
   which makes liable " every person" who under color of law deprives another person of his
   civil rights, and (2) at common law for false arrest.

2. This is a COMPLAINT FOR CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS
   under **42 U.S.C. §1985.**

3. In this civil rights complaint, Plaintiffs, Sandra Grazzini-Rucki, N.J.R, S.V.R., G.J.R.,
   N.G.R., and G.P.R. and each of them, are alleging that their constitutional rights or privileges
   or immunities have been violated by the Defendants.  The federal law under which a civil
   rights claim arises is 42 U.S.C. sections 1983 and 1985. (U.S.C. stands for "United States
   Code," which is a collection of all the federal laws in the country.  The law under which a
   civil rights action is brought is located in sections 1983 and 1985 of title 42 of the United
   States Code.)

4. Compensatory and punitive damages are sought against those involved in the violations of the Plaintiff's fundamental and constitutional rights, leading up to the conduct of Defendant David L. Knutson on September 7, 2012, of which the Plaintiffs complain, and those other Defendants, John and Mary Does 1-20, responsible for maintaining and continuing the egregious constitutional violations of this family's rights through today. Injunctive relief is sought. The Petition to the Minnesota Supreme Court, July 11, 2013 for Writ of Mandamus and Extraordinary Relief is attached (**A.26**). The Petition was summarily denied, and Defendants are notified that Sandra Grazzini-Rucki plans to Petition to the United States Supreme Court, Washington, D.C. as this issue of violation of Family Liberty effects the lives of every family in the nation whoever is compelled or enters into the family court system (**A.26**).

5. On September 7, 2012, Plaintiff Sandra Grazzini-Rucki was seized from her home, her children, and her property, and forced to abandon her children, Plaintiffs N.J.R, S.V.R., G.J.R., N.G.R., and G.P.R. under color of law. Two of the children, SR and GR are missing since on or about April, 2013, and this Plaintiff/mother has been and continues to be manacled by the over three thousand four hundred (3,400) directives of Defendant David L. Knutson that regulate this family, without due process or rule of law or rule of evidence, none of the directives are based in reality, and Defendant David Knutson continues without proof of jurisdiction, and has repeatedly retaliated against the Plaintiffs, and her attorney Michelle Lowney MacDonald.

6. On July 23, 2013, Defendant David L. Knutson was served with a Color of Law Violation Notice. Upon service, he depicted the notice of constitutional rights a "*nonsensical*

3

*document*" **(A.166)**. He has been reported to the Board of Judicial Standards, most recently on September 4, 2013 by a civil rights advocate, Kimberley Bukstein, who provided a copy as a courtesy to the Defendant, which was surprisingly entered into the court file as "notice". He is a current board member of the Board of Judicial Standards, and has continued and proceeded to retaliate in the most egregious manner to further violations of constitutional rights.

## TRIAL BY JURY IS DEMANDED

7.  These cases present issues involving the liability of David L. Knudson, John and Mary Does 1-20, under 1 of the Civil Rights Act of 1871, 17 Stat. 13, now 42 U.S.C. 1983 **(A.1)** provides every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

8.  This is a COMPLAINT FOR VIOLATION OF FUNDAMENTAL CONSTITUTIONAL RIGHTS of the Plaintiffs. Specifically Defendants actions violated Plaintiffs rights to family liberty, including rights pursuant to the First (Free Speech); Fourth (unreasonable searches and seizures), Fifth (part of the Bill of Rights and protects against abuse of government authority); Thirteenth (involuntary servitude, except as punishment for a crime); Fourteenth (Due Process and Equal Protection). See U.S. Const. XIV, § 1; *accord* Minn. Const. art. I, §7. U.S. Const. XIII; accord Minn. Const. art. I, §2. U.S. Const. IV; accord Minn. Const. art

4

I, §10.  U.S. Const. XIII; accord Minn. Const. art I, §12. U.S. Const. V, § 1; *accord* Minn. Const. art. I, §7

9. Due Process of Law requires clear rules, government adherence to those rules, speedy trials, adequate legal representation for all parties, impartial decision makers and an appellate process.  See eg. MLB v. SLB, 519 US 102 (1996); Stanley v. Illinois, 406 US 645 (1972); Armstrong v. Manzo, 380 US 545 (1965); Mullane v. Cent. Hanover Bank & Trust C., 339 US 306 (1950). In practice, our family court provides none of these.

## JURISDICION AND VENUE

10. Jurisdiction of this court arise under 42 U.S.C. § 1983; 42 U.S.C. § 1985; 42 U.S.C. §1988.

11. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case.

12. Venue is proper under 28 U.S.C. section 1391 in that the Defendants and Plaintiff reside and the cause of action arises in the State of Minnesota.

## PARTIES

13. Plaintiff, Sandra Grazzini-Rucki (hereinafter "Sandra" or "Mother" or "Parent") is a natural person residing at SAFE PLACE, in the State of Minnesota.  Sandra Grazzini-Rucki has been rendered homeless by the actions of defendant, David L. Knutson, and no longer has a physical address.  She can be reached through her attorney at the address and phone number below.  Even though she has a restraining order proceeding against her former husband, Defendant David L. Knutson has directed her to turn over a physical address, which she no longer has since September 7, 2012 violations, or be subject to incarceration in an all men's jail for a minimum of ten (10) days (**A.158**).

14. Sandra Grazzini-Rucki is the parent of the five children Plaintiffs, ages 10 to 17, N.J.R, S.V.R., G.J.R., N.G.R., and G.P.R., and provided them with care, support, love and companionship, in her home at 19675 Ireland Place, Lakeville, Minnesota all of their lives until the violent constitutional attack by Defendants.

15. Plaintiff, NJR is the minor child/son of Plaintiff Sandra Grazzini-Rucki and his current residence is unknown.

16. Plaintiff, SVR, is the minor child/daughter of Plaintiff Sandra Grazzini-Rucki and her current residence is unknown. She has been missing since April, 2013 under the management and control of Defendant David Knutson.

17. Plaintiff, GJR, is the minor child/daughter of Plaintiff Sandra Grazzini-Rucki and her current residence is unknown. She has been missing since April, 2013 while under the management and control of Defendant David Knutson.

18. Plaintiff, NGR, is the minor child/daughter of Plaintiff Sandra Grazzini-Rucki and her current residence is unknown.

19. Plaintiff, GPR is the minor child/son of Plaintiff Sandra Grazzini-Rucki and his current residence is unknown.

20. Defendant, David L. Knutson (hereinafter "Defendant Knutson" or "Knutson") is a natural person residing at 16587 Iredale Court, Lakeville, MN 55044. Knutson is employed at organization(s) the specifics of which is believed to be Dakota County Government Center, Hastings, Dakota County, Minnesota. The Defendant was acting under the authority or color of state law at the time these claims occurred. Defendant David L. Knutson is sued in his individual capacity.

21. Defendants John and Mary Does 1-20 (hereinafter "Defendants Doe") are natural persons, municipal corporations and or business corporations. Defendants Does' identity is unknown to Plaintiffs at this time. Upon information and belief, Defendants Doe reside or are residing in Minnesota, or are organized and existing pursuant to statutory authority. This action arises specifically from incidents that occurred leading up to and following the incidents on Friday, September 7, 2012.

## FACTUAL ALLEGATIONS

**Nature of the Case:**

22. *"It is impossible to rightly govern the world without God and the Bible."* George Washington.

23. *"Life, liberty, and property do not exist because men have made laws. On the contrary, it was the fact that life, liberty, and property existed beforehand that caused men to make laws in the first place."* —Frédéric Bastiat, *The Law*.

**History of the fundamental federal right to the care, custody and control of ones' own children:**

24. The United States Constitution and the Minnesota Constitution provide that the government cannot deprive a person of "life, liberty, or property, without due process of law." U.S. Const. XIV, § 1; *accord* Minn. Const. art. I, § 7. "[S]ubstantive due process protects individuals from 'certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.'" *In re Linehan*, 594 N.W.2d 867, 872 (Minn. 1999) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S. Ct. 975, 983 (1990)). The Due Process Clause "provides heightened protection against government interference with certain

7

fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 2267 (1997). The protection of the Due Process Clause includes the freedoms protected by the Bill of Rights and those fundamental rights and liberties that are "deeply rooted in this Nation's history and tradition," such as the right to "direct the education and upbringing of one's children." *Id.* at 720-21, 117 S. Ct. at 2267-68 (quotation omitted).

25. Among the fundamental rights protected by the Due Process Clause is the liberty interest of parents in the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 66, 120 S. Ct. 2054, 2060 (2000); *SooHoo v. Johnson*, 731 N.W.2d 815, 820 (Minn. 2007). See also *In re NAK Rogers v. Knauff*, 649 NW 2d 166 (Minn. 2002); *Rohmiller v. Hart*, 811 N.W. 2d 585 (Minn. 2012). "[T]he custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Troxel*, 530 U.S. at 65-66, 120 S. Ct. at 2060; *see also SooHoo*, 731 N.W.2d at 820 (acknowledging "protected fundamental right" of parent to make decisions about child); *Rohmiller v. Hart*, 811 N.W. 2d 585 (Minn. 2012) acknowledging "a fit parent's right to make decisions concerning the care, custody, and control of his or her children is a fundamental right protected by the federal and Minnesota constitutions"). These parental rights include the right to direct the education and upbringing of one's child, *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 573 (1925); to conceive and raise one's child, *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 1212 (1972); to direct the religious upbringing of one's child, *Wisconsin v. Yoder*, 406 U.S. 205, 213-14, 92 S. Ct. 1526, 1532 (1972); and to make decisions regarding the care, custody, and control of one's child, *Troxel*, 530 U.S. at 66, 120 S. Ct. at 2060.

26. Above all, constitutionally protected parental rights encompass the relationship between parent and child. *See Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S. Ct. 549, 555 (1978) (observing that substantive due-process rights of parent "would be offended if a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness" (quotation omitted)); *Stanley*, 405 U.S. at 651, 92 S. Ct. at 1212 (recognizing protection afforded a parent's private interest in his or her children, including "the interest of a parent in the companionship, care, custody, and management of his or her children"); *In re Scott Cnty. Master Docket*, 672 F. Supp. 1152, 1165 (D. Minn. 1987) (recognizing the protected constitutional interest "in the development of parental and filial bonds free from government interference . . . manifested in the reciprocal rights of parent and child to one another's companionship" (quotation omitted)), *aff'd sub nom. Myers v. Scott Cnty.*, 868 F.2d 1017 (8th Cir. 1989).

27. The United States Supreme Court has consistently acknowledged a *"private realm of family life which the state cannot enter"* Moore v. East Cleveland 431 US 494 (1977); *Meyer v. Nebraska,* 262 U.S. 390 (1923); and *Pierce v. Society of Sisters,* 268 U.S. 510 (1925). In *Cleveland Board of Education v. La Fleur* 414 US 632 (1974) this court has long recognized that freedom of:

> "personal choice in matters of marriage and family life is
> one of the liberties protected by the Due Process Clause of
> the Fourteenth Amendment.  There is a right "to be free from
> unwarranted governmental intrusion so fundamentally
> affecting a person as to whether to bear or beget a child".

28. The methods of the family court for assessing whether endangerment has taken place, findings that are critical to deciding whether a parent should retain custody to or parenting

time rights with the children, fall woefully short of standards accepted by child protection

and criminal justice.

**Authority**

29. We provide the following recitation of the key provisions of relevant law:

42 U.S.C. section 1983 provides:

every person who, under color of any statute, ordinance, regulation, custom, or usage, of any
State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of
the United States or other person within the jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured
in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. section 1986 provides:

Every person who, having knowledge that any of the wrongs conspired to be done, and
mentioned in section 1985 of this title, are about to be committed, and having power to prevent
or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful
act be committed, shall be liable to the party injured, or his legal representatives, for all damages
caused by such wrongful act, which such person by reasonable diligence could have prevented;
and such damages may be recovered in an action on the case; and any number of persons guilty
of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of
any party be caused by any such wrongful act and neglect, the legal representatives of the
deceased shall have such action therefor, and may recover not exceeding $5,000 damages
therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow,
then for the benefit of the next of kin of the deceased.  But no action under the provisions of this
section shall be sustained which is not commenced within one year after the cause of action has
accrued.

As referenced above, 42 U.S.C. section 1985 (2) and (3) provide:

(2) Obstructing justice; intimidating party, witness, or juror:

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or
threat, any party or witness in any court of the United States from attending such court, or from
testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or
witness in his person or property on account of his having so attended or testified, or to influence
the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure
such juror in his person or property on account of any verdict, presentment, or indictment
lawfully assented to by him, or of his being or having been such juror; or if two or more persons

10

conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

The corollary to section 1985, 42 U.S.C. section 1983, similarly provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

18 U.S.C. sections 241, 242, and 371 respectively provide:

If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured—They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or

an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

Section 242:

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

Section 371:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.  If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

***The United States Constitutional Authority:***

Preamble: We, the people of the state of Minnesota, grateful to God for our civil and religious liberty, and desiring to perpetuate its blessings and secure the same to ourselves and our posterity, do ordain and establish this Constitution

30. The First Amendment to the United States Constitution provides in pertinent part:

Congress shall make no law respecting an establishment of religion, or prohibiting the free

exercise thereof; or abridging the freedom of speech, or of the press; or the right of the

people peaceably to assemble, and to petition the Government for a redress of grievances.

31. The Fourth Amendment to the United States Constitution provides in pertinent part:

The right of the people to be  in their persons, , papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by , and particularly describing the place to be searched, and the persons or things to be seized

32. The Fifth Amendment to the United States Constitution provides in pertinent part:

No person shall be deprived of life, liberty, or property, without due process of law; nor shall

private property be taken for public use, without just compensation.

33. The Eight Amendment to the United States Constitution provides in pertinent part:

Excessive bail shall not be required, nor excessive fines imposed, nor

34. The Ninth Amendment to the United States Constitution provides in pertinent part:

The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

35. The Thirteenth Amendment to the United States Constitution provides in pertinent part:

Neither slavery nor involuntary servitude, except as a punishment for crime whereof the shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction

36. The Fourteenth Amendment to the United States Constitution provides in pertinent part:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

36 (a).  The Sixth Amendment (Amendment VI) to the United States Constitution provides in pertinent part:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense. "

37. **Ongoing Invidious.** The Defendants entities identified herein describe numerous violations

of relevant state and federal law including violations of equal protection, due process,

obstruction of justice.

## FACTUAL ALLEGATIONS

**The family.**

1. Sandra married David Rucki in August, 1991. The marriage produced five children, two

boys and three girls, namely N.J.R, S.V.R., G.J.R., N.G.R., and G.P.R.

**The divorce.**

2. Grazzini- Rucki and her former husband divorce in May, 2011, and obtained a judgment of

dissolution. In the Judgment and Decree, signed by the Honorable Timothy D. Wermager,

Dakota County District Court File No. 19-AV-FA-11-1273, "sole legal and sole physical

custody" of Plaintiffs' "N.J.R, S.V.R., G.J.R., N.G.R., and G.P.R.". Plaintiff Sandra

Grazzini-Rucki's custody was subject to her former husband's right to "reasonable parenting

time as agreed upon by the parties." **(A.6)**.

3. Sandra Grazzini-Rucki was awarded the "homestead located at 19675 Ireland Place,

Lakeville, Dakota County, Minnesota" and other real and personal property **(A.6)**. Ms.

Grazzini-Rucki and the children had lived in the homestead all of their lives, approximately

16 years.

14

4. In the Judgment and Decree, the court found that Ms. Grazzini-Rucki is employed part-time as a flight attendant for US Airways, earing gross average income of approximately $1,456; and that together they owned a trucker broker business with gross monthly income of $20,000.00. The court, per Judge Wermager, further found that Ms. Grazzini-Rucki provided the medical insurance for her children through her employer at a cost of $400.00 per month.

5. The court, per Judge Wermager, ordered that child support to Ms. Grazzini-Rucki of $3,673.00 for her five children, and attached a Child Support Guidelines worksheet having calculated the amount per the statute **(A.16)**.

6. In addition, the court ordered that Ms. Grazzini-Rucki's husband pay to her spousal support of $10,000 per month, to terminate upon her remarriage or death **(A.6)**.

7. There were various other rights and obligations that were addressed in the Judgment & Decree, a certified copy of which is attached; the parties were divorced; and the case was over **(A.1)**.

8. After the Judgment and Decree, as to the home where Ms. Grazzini-Rucki and the children resided, at 19675 Ireland Place, Lakeville, Minnesota 55044, Judge Wermager also signed into law a Summary Real Estate Disposition Judgment, on May 23, 2011. In that Judgment, he awarded to this parent, Sandra Sue Grazzini-Rucki 100% of the interest in the homestead for herself and her children. A certified copy of that Judgment is attached, and that Judgment was final **(A.22)**.

9. Further, the "personal property" to be awarded to be awarded to Respondent, her former husband, included their company "Rucki Trucking" **(A.9)**.

15

10. At the hearing on the Judgment and Decree, before the honorable Judge Wermager, the Judge expressed concern about the waiver of property to be awarded to her former husband, and there was an acknowledgment that her concern was her children, and she was not concerned very much about the property.

11. Ms. Grazzini-Rucki requests judicial notice of the attached certified copies, which effectively terminated her marriage relationship, and awarded her custody of her children, her home, and personal property. This is the underlying order in the family court proceedings. So too, the Judgment relating to the real estate (**A.22**).

12. With Judge Timothy D. Wermager's decree, the case was over, and Sandra Grazzini was secure with her children, home and property, her liberty rights intact.

13. She had paid to attorneys representing her approximately $5,000.00 to this point, and held a hearing with her attorney in open court to finalize the court matter.

**Order for Protection matters between Sandra Grazzini-Rucki and her former husband:**

14. During this time, Ms. Grazzini-Rucki had filed for and obtained orders for protection pursuant to MN Stat. §518B against her former husband. These actions were filed June 6, 2011, District Court file no. 19AV-FA-11-1760; and June 24, 2011, District Court file no. 19AV-FA-11-1760, which Plaintiff, Sandra Grazzini-Rucki had filed without an attorney, Pro Se.

15. On June 22, 2011, an Order for Protection was signed by Timothy D. Wermager, the same Judge who presided over her divorce (**A.1**).

16. On June 24, 2011, a Petition for Order for Protection was also filed by Ms. Grazzini-Rucki, which was processed, and Judge Michael Baxter signed the Ex parte Order for Protection on

June 24, 2011 in District Court file no. 19AV-FA-11-1940. Apparently, Ms. Grazzini-Rucki had an attorney of record for this action. This is the underlying order for protection proceedings.

17. More recently, on August 1, 2013, as described below, Ms. Grazzini-Rucki filed for an Order for Protection, and a Restraining Order, Scott County District Court file no. 70-CV-13-15408. Defendant, David Knutson, attempted to usurp the file, but did not succeed (**A.142, 147, 148**). However, after the honorable Judge Michael Fahey, in the Scott County file, signed for in forma pauperis to accommodate the financial needs of Ms. Sandra Grazzini-Rucki, however, a peer of Defendant David Knutson, also subject to Code of Professional Conduct and appellate court, and judicial board scrutiny, sua sponte signed an order vacating Ms. Grazzini-Rucki's financial accommodations.[1]

18. Ms. Grazzini-Rucki requests judicial notice of the order for protection files, which effectively granted her orders for protection pursuant to Minn. Stat. §518B against her former husband, David Rucki. In addition, it can be noted that in both cases Lisa Elliott filed as attorney of record for Mr. Rucki.[2]

19. At all times herein, Defendant knew, or should have known, about these ancillary proceedings for Plaintiff's safety and protection.

**Criminal *Activity of Ms. Grazzini-Rucki's former husband, David Rucki*:**

---

[1] Ms. Grazzini-Rucki's attorney, Michelle MacDonald on behalf of another one of her clients, petitioned to the Minnesota Supreme Court for extraordinary writ of Mandamus which was GRANTED. In the Petition, she asked to vacate judicial orders and other relief because Caroline Lennon did not swear *or* file her required constitutional oath of office for 3 plus years, and did so after Ms. MacDonald and Mr. Myser notified her without acknowledging or informing them (See Myser v. Caroline Lennon, Judge of the Scott County District Court, Appeal Court file no. A13-0634.

[2] It is believed that in court file no. ending 11-1760 is Patrick Elliot, a relation with a similar telephone number, but Plaintiff does not recall an attorney other than Lisa Elliott proceeding against her and the children.

20. During this period, in Dakota County District Court alone, there were a record count of *20* various criminal and other proceedings of which Sandra Grazzini-Rucki's former husband was involved, filed 8/5/2005, through 12/24/12 (**A.129-131**).

***Criminal Activity for Violations of Mandatory Domestic Abuse – Violations of Order for Protection by Ms. Grazzini-Rucki's former husband, David Rucki:***

21. In particular, the search results show four Mandatory Domestic Abuse – Violation of Order for protection charges (**A.126**).

22. In particular, Dakota County District Court file no. 19 AV CR 11-11288, filed 6-21-11; Dakota County District Court file no. 19 AV CR 11-14179, filed 7-27-11; Dakota County District Court file no. 19 AV CR 11-002815, filed 8-1-11; Dakota County District Court file no. 19 AV CR 11-1215, filed 1-20-12.

23. Upon information and belief, there were other responses to the domestic calls in the form of violations.

24. Most significantly, this attorney uncovered on September 6, 2013 in reviewing the ever changing court file, three letters from the Lakeville Police Department, one of which is attached (**A.128**). The three that were uncovered were identical in nature. The sample letter is from Officer Jim Dronen, Badge 4816, Lakeville Police Department, directed to the Court Administrator, Dakota County District Court, with respect to an Order for Protection Violation:

> "I, as the issuing officer, request that this citation be delete and no data entered in Minnesota Court Information System (MNCIS)"

25. In light of these letters, it is believed that the MNCIS was compromised by Defendants, and that it is not accurate, and that other violations were pending and erased, as instructed by and

through the Lakeville Police.  It is also believed that Defendants are responsible for compromising the Minnesota Court Information System (MNCIS) on a regular basis, in particular, and acted with respect to the Plaintiffs and concerning the record of the former husband and father of Plaintiffs, David Rucki.

26. During this period, the police calls and other reports involved a report of six (6) gunshots left on the answering machine phone of the Plaintiff, SR, by Ms. Grazzini-Rucki's former husband, that were reported to police.  The gunshots were believed to be shot by David Rucki, and the six (6) gunshots, representing one for each of the Plaintiffs, Sandra Grazzini-Rucki, and her five children.

27. Ms. Grazzini-Rucki contends that the documents in the Appendix provide evidentiary support for arguments advanced herein.  She asks the court to judicially notice parts of the record in the case, which it contends would support evidence relied upon by Plaintiffs as against the Defendants.

   ***Criminal Proceeding Records against Plaintiff Sandra Grazzini-Rucki's former husband compromised by Defendant David Knutson and Does.***

28. During this period a severe compromise to the MNCIS and the court files for this case occurred, which the Defendant David Knutson and the Does' appear to believe is business as usual in Dakota County District Court.  It is believed that the many hours of research by this attorney for the Plaintiffs is only the tip of the iceberg so to speak.  It was of great shock to this attorney Michelle MacDonald when she learned of the letters from the police department, indicated above, and of deficits including the following activity:

   ***No evidence of jurisdiction to open divorce file no. 19AV-FA-11-1760:***

29. Plaintiff Sandra Grazzini-Rucki understood, with the assurances of her attorney, Kathryn Graves, that she was divorced and secure with her children in in her home, with a reasonable amount of monetary support expected to be paid by her former husband, David Rucki, as court ordered by the honorable Timothy D. Wermeger, Judgment entered May 12, 2011 **(A.1)**.

30. During this period, following the Judgment and Decree, Plaintiff Sandra Grazzini-Rucki was never served with process, nor was evidence of jurisdiction established and provided.

*Defendant David Knutson usurpation of court files involving Plaintiff's former*
*husband David Rucki, and files where attorney, Lisa Elliott, makes appearances.*

31. The record shows that Lisa Elliott became attorney of record on several court files in Dakota County, and specifically those cases involving Defendant David L. Knutson.

32. On or about June 6, 2011, Lisa Elliott filed a notice of appearance, and after the Judgment and Decree of divorce had already been entered and concluded by the Honorable Judge Timothy Wermager, Defendant David Knutson compromised the violation of orders for protection, and other criminal activity files.

33. For example, Defendant David Knutson in regard to Dakota County File No. 19-AV-CR-12-1215, is believed to have compromised, in concert with Lisa Elliott, the criminal record. In particular, during this period, usurped exparte this court file, and acquitted David Rucki **(A.131)**

34. It is known that Dakota County does not assign Judges to the various cases that are filed. In fact, it is one of the few counties that do not assign Judges. That is why it is highly suspicious that Defendant David Knutson would begin assigning himself, or causing himself to be assigned to various cases against the Plaintiff's former husband, David Rucki **(A. 127)**

35. Most significantly, in terms of the Plaintiff's divorce, which was concluded, and with no evidence of jurisdiction, Defendant David Knutson caused one of the court administrators, Susan J. Reichenbach, or another third party, to assign him to the Sandra Sue Grazzini-Rucki and David Victor Rucki file, which was done. [3]

36. For example, the official letter reads that "all future hearings" would be scheduled before the Defendant David Knutson (**A.127**).

37. Another example is that Defendant signed an order in file numbers 19-FA-11-1760 (an unknown file) & 19AV-FA-11-1273, appointing Julie Friedrich without any jurisdiction, motion or service thereof. Lack of authority of jurisdiction aside, Julie Friedrich herself had a limited role of Guardian Ad Litem to "represent the children's best interest with respect to a permanent parenting time" only. This was signed by Defendant on July 11, 2011, and Ms. Friedrich's duties have not been expanded (**A.132**). Yet it is clear that Ms. Friedrich proceeded to severely intrude on this family without any compelling interest and that Defendant stood by and allowed this to happen.

   *Dramatic Change when Judge Wermager leaves and Defendant Knutson and Julie Friedrich enters the case*:

38. Plaintiff understood that the report of the gunshots and other domestic incidents and her safety and her children's safety was her primary concern. The Defendants required her to sign agreements that eliminated parental freedom and privacy rights, which she did, believing that the reports of criminal activity would be investigated. The Plaintiff felt forced into the

---

[3] "No sanction can be imposed absent proof of jurisdiction". Stanard v. Olesen, 74 S.Ct. 768, "Once jurisdiction is challenged, it must be proved". Hagans v. Levine, 415 U.S. 533, n.

agreements, and it is believed that no parent has refused to sign these agreements, and if they did, their children would be removed.

39. Defendant David Knutson knew there was evidence to support the allegations against her former husband David Rucki of criminal activity.  The children struggled and were reluctant to visit him.  Upon information, the court files and records were compromised in a variety of ways by Defendant David Knutson, or at his direction.

40. Plaintiff hired attorneys Ms. Graves, Ms. Olup, Ms. Evans, Ms. Gemberling and Ms. Henry. With the exception of Ms. Evans, who represented her at an Order for protection matter, she paid them at their request, tens of thousands of dollars.  For example, Ms. Olup's retainer was over $200,000; as was Ms. Henry's retainer $175,000.  Ms. Grazzini-Rucki relied on these attorneys to represent her interests and those of her children.  None of these attorneys told her that there was no jurisdiction, or that the guardian had an extremely limited role. Plaintiff was told that her attorneys were afraid and intimidated by Defendant Knutson, and they could not understand why he was so hostile to them and their client, Ms. Grazzini-Rucki.  In short, at each stage her attorneys would tell her that she must do things that she did not want to do.  She also described that if she questioned these requirements, Lisa Henry would cry.

41. During this period, Lisa Elliott continued to file multiple motions, too many to count, asking for a variety of things, and each time Defendant David Knutson granted her motions.  Ms. Grazzini-Rucki's attorney and Ms. Grazzini-Rucki cooperated with all of their requests.

42. Defendant David Knutson is hostile towards the Plaintiffs and it appeared he was just looking for something she would do wrong, but could find no wrongdoing.  Most, if not all, of

Defendant David Knutson's orders, an individual count of over 3400 to date, were prepared

not by him but by Lisa Elliott, the attorney for Plaintiff's former husband David Rucki.

***Julie Friedrich's acts and involvement significantly intrudes on this family and scares
the children:***

43. At the direction of Defendant, and outside her bounds, Julie Friedrich by abuse of authority

    proceeded to run ramp shod over Plaintiffs.  There are multiple examples.  Plaintiff, Sandra

    Grazzini-Rucki recalls Julie Friedrich's first visit to the children's schools, scared the two

    youngest so much, that a school official summoned the mother.  When she arrived, her

    children were crying and Ms. Friedrich, who is also an attorney, told her that she was not to

    comfort or talk to her children or they would be taken away from her.

44. With respect to the oldest daughter, Plaintiff, SR, Julie Friedrich repeatedly disrupted her at

    her school, calling her out of class over 36 times.

45. On one of these occasions Julie Friedrich forced SR to take a pregnancy test, claiming that

    she was overweight and pregnant, and making her take the test at school.  When she "passed"

    Ms. Friedrich claimed that she had manipulated the test.

46. Defendant David Knutson knew or should have known of Ms. Friedrich's shoddy,

    inappropriate and sloppy investigation tactics, and out of bounds of her extremely limited

    role, and condoned her activities.

47. Defendant David Knutson failed to remove Julie Friedrich, and instead allowed her to obtain

    her own attorney not at her own expense, to defend her own "interest" in the course of

    litigation.  Plaintiff reported Julie Friedrich's behaviors, baseless allegations, and failure to

    protect her children, numerous times, to her supervisor, Laura Miles.

23

48. Oddly, while Defendant Knutson allowed Julie Friedrich's to hire an attorney (at the counties' expense) to defend Plaintiff's request to have her removed and when she was not removed by Defendant David Knutson, Julie Friedrich stood down herself, amid her complaints to her supervisor, Laura Miles.

49. However, after Julie Friedrich stepped down, the supervisor to whom Plaintiff had complained, Laura Miles, was appointed in her place, with the same attorney, John Jerabek.

*Defendant David Knutson usurps and vacates other court orders allowing Plaintiff to proceed in forma pauperis, and interferes with her requests granted by other court personnel.*

50. There are several examples of Defendant David Knutson intercepting records and causing great harm and confusion to Plaintiff Sandra Grazzini-Rucki and her children. For example, she was forced to return from a ski vacation with her kids in Lutsen. However, just having arrived, and having placed a photo on facebook, she received a call that the Defendant David Knutson was forcing her to cancel the vacation with her children and return to the twin cities area. On another occasion, when she took the children to Wisconsin Dells, the same disruption occurred, and she was told she must cut the vacation short and return immediately to the twin cities for the hearing that had been continued for 30 days that David Knutson overruled, so she had to return. Defendant then rescheduled.

51. Plaintiff Sandra Grazzini-Rucki was then asked to attend and pay for, and did pay for various professionals as required by the Defendants. For example Michelle Millenaker, and Karen Irvine, Paul Reitman, Dr. Gilbertson, Moxie were all selected by Lisa Elliott and Julie Friedrich and the Defendant David Knutson, and Plaintiffs were subjected to various

24

assessments, and cooperated as far as she was told. She was also asked to do hair tests and other chemical tests which were negative, as she told them that working for the airlines she is subject to these random tests regularly.

*Plaintiff Sandra Grazzini-Rucki has steady employment for many years:*

52. It is important to note that Plaintiff Sandra Grazzini-Rucki has had the same employment for these many years, U.S. Air since 1989 and would take only short trips in order to care for her children, particularly when she separated from her former husband.

*Plaintiff Sandra Grazzini-Rucki has no criminal history:*

53. It is important to note that Plaintiff Sandra Grazzini has been a good citizen and has not broken any laws nor does she have a criminal history.

> DEFENDANT DAVID KNUTSON VIOLATES SUBSTANTIAL RIGHTS OF THE
> PLAINTIFFS BY SEIZING THE MOTHER OUT OF HER HOME, REQUIRING HER
> TO ABANDON HER CHILDREN AND PROHIBITING HER FROM CONTACTING
> THEM OR BE SUBJECT TO INCARCERATION. THE COURT ALSO ORDERED
> THE PLAINTIFF CHILDREN INTO THERAPY WITH DR. GILBERTSON

*Defendant David Knutson directs Plaintiff and her children to meet with a Dr. Reitman.*

54. During this time, Plaintiff was told by her attorney that Defendant required she bring her children to a Dr. Paul Reitman immediately with no notice, which she did, on or about August 28, 2012. She had left Defendant David Knutson the day before, and was provided with a yellow post it note with an address, commanded to be there the next day at 9:00 a.m. or be incarcerated.

55. Four of her five children were able to attend with her that morning. *The meeting lasted no more than a half hour.*

56. It is important to note that Dr. Reitman was *not* involved with the family prior to the August 28, 2012 meeting, *nor has he been involved since* and Defendant David Knutson was of course aware of this.

57. Apparently Dr. Reitman wrote letters to Defendant David L. Knutson, that Plaintiff Sandra Grazzini-Rucki, related his professional opinion of the Plaintiffs, based on a half hour meeting.

58. Apparently Julie Friedrich also wrote letters to the Defendant David Knutson, which the Plaintiff Sandra Grazzini-Rucki did not see.

59. During this time the children reported repeatedly to all involved of the abuse them and their mother had suffered at the hands of their father and others. Two of the children also reported sexual improprieties with respect to Dr. Gilbertson that Defendants ignored.

60. The Plaintiff Children also reported to the Defendant David Knutson and the therapist that Grazzini-Rucki's former husband had been abusive. The therapist as a mandated reporter had a duty to report such allegations to the proper authorities; however they did not do so. The therapist report lacked mention of the abuse apparently disseminated to other appointees.

*Mother gets call to leave her home and children and not return or have contact*

61. Within a couple of days of the half hour visit with Dr. Reitman, on Thursday, September 6, 2012, Ms. Grazzini-Rucki received a phone call from her attorney, Lisa Henry, that she would be incarcerated unless she immediately left her home, her 5 children, and had no further contact with them. She was told not to tell them what was going on, and she could not because she herself did not comprehend. On Friday, September 7, 2012, Ms. Grazzini-Rucki got her children off to school, then as instructed, left her children and her home and all

26

her property and possessions, with the exception of a packed suitcase that was owned by the airlines she worked for, and her attorney said that Defendant David Knudson would allow her to take but only because she did not own it, and it was owned by the airlines.

62. It is important to note that before this time, Defendant David Knutson had no less than five (5) times directed that her former husband could freely enter her home and take any property that he wanted. Defendant David Knutson was also advised that on one occasion, her former husband had her vehicle towed with the children back packs for school in the vehicle and when he returned the vehicle he had spilled oil on and ruined the children's belonging.

63. It is important to note that the only custody order, prior to the Defendant's seizure of September 7, 2012, was the order of Judge Wermager. There were no other orders, and no orders other than Judge Wermager's order for sole legal and sole physical custody with parenting time in the other parent (**A.1**).

64. Upon information and belief, the children went to the local police station asking for help, and began living elsewhere with their maternal aunt that Plaintiff Sandra Grazzini-Rucki could not contact or be incarcerated. Nor could she contact their schools, doctors, churches, family members, friends and any third parties or be incarcerated.

65. Upon information and belief, the children went to the local police station asking for help, and began living elsewhere with their maternal aunt that Plaintiff Sandra Grazzini-Rucki could not contact or be incarcerated. Nor could she contact their schools, doctors, churches, family members, friends and any third parties or be incarcerated.

66. All of the Plaintiff's pleas to be restored her children have gone unanswered by the Defendants. She wrote letters, provided recordings and filed motions all to no avail. She now has lost all trust and hope and faith in the Defendants.

*Defendant David Knutson reserves her support payments to which the Plaintiff is entitled and he is required to pay by court order, Judge Wermager:*

67. Plaintiff Sandra Grazzini-Rucki had a reasonable expectation that she would receive the support ordered in the Judgment and Decree signed by the Court. However, Defendant Knutson has "reserved" the support ordered on May 12, 2011, and on September 7, 2012 which was not being paid anyway, and at that point, in light of the divorce decree, Defendant Knutson knew that Plaintiff Sandra Grazzini-Rucki was entitled to arrears each month since May 2011, of $3,673 and $10,000 per month, which had not been paid by her former husband David Rucki. **(A.6)**

68. When the county attorney began supporting the Plaintiff, Sandra Grazzini-Rucki in collecting the support arrears, including taking his driver's license and passport, Defendant David Knutson usurped that process, and collection efforts were thwarted by Defendant David Knutson.

69. Defendant David Knutson did things like seize assets at the direction of Lisa Elliott that did not even belong to Plaintiff Sandra Grazzini-Rucki, nor were they under her control. One example is Wells-Fargo accounts. Another example is a vehicle owned by a friend was valued and then Defendant Knutson assessed friend's vehicle against her former husband's support arrears, again which Defendant knew she did not own in the amount of $6,165.00 **(A158)**.

28

70. There are numerous other examples of tyranny that Plaintiffs have endured as a result of and under the direction of Defendant David Knutson.

71. Defendant David Knutson was also aware that on another occasion her former husband David Rucki had followed her, and was found in the bathroom of a local establishment hiding, for which she called the police. There were various other criminal and terroristic type behaviors that Plaintiffs endured and sought assistance from Defendant David Knutson, who ignored all their pleas.

**DEFENDANTS ALSO DIRECTED THE PLAINTIFF CHILDREN INTO THERAPY WITH DR. JAMES GILBERTSON ON SEPTEMBER 7, 2012.**

72. The tyranny has continued to assault this family ever since Defendant David Knutson became involved through the September 7, 2012 order and ongoing.

73. Julie Friedrich and Dr. James Gilbertson actively intimidate the children and cause confrontation with the Defendant David Knutson, and he too has frightened and intimidated the children.

74. Attached are examples of letters written by Dr. James Gilbertson to Julie Friedrich, that were known by Defendant David Knutson, and that the Plaintiff Sandra Grazzini-Rucki was unaware. These letters are very disturbing (**A.133, 136**).

*Collaborate to Coerce and Manipulate of the Children*

75. On February 6, 2012, Dr. Gilbertson writes that the family is polarized, against any interfamilial contact. Basically his letter demonstrates the coercive tactics used against this family for purpose of annihilating all family freedom. It should be noted that the children each had cell phones, computers, and connections to the outside world, however the

29

authorities, at the direction of Defendant David Knutson, have been deprived of these communications.

76. In the letter Dr. Gilbertson says to Julie Friedrich, and not copied to anyone else, "*We need an assertive stance from the court to order these children attend a face-to-face session with their father. These children are of the belief, and will quite openly, that no one can force them to see their father if that is their choice*" (**A.133**). Dr. Gilbertson further states in the letter "*The presence of the court, a bailiff nearby, and my own presence, and then the meeting with the father, in my opinion, would deal with the fears that they experience, real or perceived.*" In his letter he appears intent to manipulate these children, and the letters themselves are proof of the fear the children have of their father which was promoted by Defendant David Knutson.

77. In another letter, February 21, 2013, not copied to anyone else, from Dr. Gilbertson to Julie Friedrich again arranges, with the apparent support of Defendant Knutson, that the children come to the courtroom, and his desire, as expressed in his February 6, 2013 letter, is that the children "sit in on the hearing to view the arguments and counter-arguments that may have to do with supervised parenting time" and despite knowledge of the children's anxiety, apprehension and rumination, and while they were able to make written statements of their concerns (**A.136**). Defendant Knutson ignored their pleas, and when the children did not say what he wished to hear, Defendant David Knutson did several disturbing things.

78. Defendant Knutson has and continues to obstruct evidence of his wrongdoing and having vacated other Judges' order to allow in forma pauperis, after Plaintiff had asked that it be supplemented to pay for a private custody study. Defendant Knutson has sealed the

transcript of the children's testimony that was ordered and promised to the Plaintiff's

attorney Michelle MacDonald by the transcriber.   Defendant David Knutson intercepted the

transcript, and modified the other Judge's in forma pauperis directive, on the same day that

Michelle MacDonald was at the courthouse asking to pick it up.   Defendant wrote a directive

to deny all the reasons for financial support, such that Plaintiff Sandra Grazzini-Rucki had

not paid child support, and had not paid her home mortgage in forma pauperis.

79. For another example, Defendant David Knutson, without notice had signed over Sandra

Grazzini-Rucki's home that she had been awarded by Judge Wermager, to her former

husband, David Rucki.   It was also learned that Lisa Elliott then placed a lien on the

Grazzini-Rucki home.

80. Defendant David Knutson is well aware he did this without notice to the Plaintiff Sandra

Grazzini Rucki, and in violation of her property rights granted to her by Judge Wermager in

the May 11, 2011 Judgment and Decree.

81. All of this when their mother, Plaintiff Sandra Grazzini-Rucki, is allowed no contact with her

children by the Defendant David Knutson, or she will be subject to incarceration.

82. Since September 7, 2012, Plaintiff Sandra Grazzini-Rucki has only been allowed to see her

children two times at Chuck-E- Cheese, for 2 hours, and at the Mall of America for 50

minutes, and in the presence of Defendant David Knutson for their testimony and afterwards

for 2 minutes, where she cried, but was admonished not to talk to them or show any emotion.

83. On that occasion, the children expressed their frustrations and Defendant David Knutson

essentially scolded the children that they would follow his orders, whatever they were.   The

children Plaintiffs, who have not seen or lived with their mother for months, were essentially admonished by the Defendant David Knutson, and were threatened, frightened and coerced.

84. Since NR's birth, June 22, 1996, Plaintiff Sandra Grazzini-Rucki was the primary caretaker of her children, and as each child was born, she was caring for them on a daily basis, unless she was at work, in which case she arranged proper care for her children. Since the birth of NR, and with the birth of each child, she was with her children daily for sixteen (16) years until September 7, 2012.

### *Liberty to provide Medical Care Disrupted by the Defendants*:

85. It is also important to note that neither the Plaintiff, Sandra Grazzini-Rucki nor her children had gone to or required therapy before the September 7 directive of Defendant David Knutson, and after September 7 they were forced to do so with Dr. Gilbertson. All of her children attended the same doctors at Southdale Pediatrics, and had annual regular checkups, and one of her children, the youngest, has medical issues that had been monitored annually by the mayo clinic. All of their medical care was disrupted by Defendant David Knutson, including her youngest's care at the Mayo clinic. The children also had dental cleanings twice each year that also were disrupted.

### *Liberty to Educate and School Attendance and Schooling Disrupted by Defendants*:

86. As for schools, all of the children were in the same school district for all of their schooling years, and two of the children had Individualized Special Education Plans that were disrupted by the actions of the Defendant. In addition, the two oldest girls have run away, which Defendant David Knutson has disregarded, and became truant at school, as further explained below.

*Liberty for Church* Attendance *and Participation in Holy Sacraments disrupted by* *Defendants:*

87. It should also be noted that the children attended Catholic (and Lutheran) church, and received the sacraments, all of those years, which has been disrupted by the Defendant Knutson.

*Liberty for* Sports *and other Activities disrupted by Defendants:*

88. The children were all involved in regular sports, school, and extracurricular activities together and separately.  For example, the girls were involved in pageants, and both of them had to give up her crown and could not travel to compete in their national titles due to the conduct of the Defendant, and other activities he disrupted.

*Liberty with Holidays, Birthdays, Traditions, Landmark, Family Events, and Vacations* *were also disrupted by Defendants.*

89. Since September 7, 2012, due to the conduct of the Defendants, Plaintiffs have been unable to participate with each other in any traditional family events that they had previously attended for all of their lives.

90. Plaintiff Sandra Grazzini-Rucki had received no paperwork, nor was there notice to her of a court hearing.  The events of September 7 represented what amounts to an ambush on the part of the Defendant David Knutson.

91. Grazzini-Rucki's former husband prohibited her from her home and from any and all contact with the children, and was also allowed to enter Ms. Grazzini-Rucki's home to take all of her possessions for some reason.

92. When the mother told the children she was leaving, as gently as possible, but was prohibited from saying more, the children become frightened and started to cry.

93. It is apparent in Dr. Gilbertson's letters that the mother and the children expressed unwillingness to visit with their father. Additionally, the children made allegations of abuse by the father, and misconduct by one of the therapists, that Defendant David Knutson has ignored repeatedly.

94. On February 26, 2013, David Knutson told the children that they were *required* to do whatever he told them to do in the future, and if they didn't, they would have to no matter what.

95. This caused the children to become frightened and start to cry. The mother was not allowed to speak during the meeting, and was only allowed to be with the children for a few minutes, but was not allowed to say anything to them.

96. Immediately afterwards, the mother and her constitutional law attorney, Michelle MacDonald, filed papers to order the record, and also filed a supplement to in forma pauperis for the transcript and other things, as mother had obtained the directive for in forma pauperis from the honorable Judge Simonett earlier. However, Defendant David Knutson usurped the IFP, vacated it, then sealed the transcript that the court reporter had promised to produce **(A.121, 124)**.

97. Sandra Grazzini-Rucki begged everyone involved for guidance as to what more she could do, and begged Defendant David Knutson for help but all this has been to no avail.

98. On December 25, 2012, Plaintiff Sandra Grazzini-Rucki was praying and crying and pouring out her heart at the Vatican Sistine Chapel in Rome, Italy, about her life and her children, and

34

crying to God.  She has also prayed to the mother Mary, who is also a mother, of how desperately she wants her children back.

99.  On January 1, 2013, Plaintiff Sandra Grazzini-Rucki heard about and attended a first of the month social hosted by the Family Innocence nonprofit Project: dedicated to keeping families out of court: resolving conflicts and injustices peacefully, and although frightened, and ashamed and crying, she shared her story with those that were present.

100.  On January 3, 2013, she retained Michelle Lowney MacDonald, and MacDonald Law Firm, LLC who spent several hours on three separate days at the court house reviewing the court file there, and has identified over 3000 individualized court directives.

101.  There also appears no proof of jurisdiction, nor was there any type of evidentiary hearing before the Defendant David Knutson's intrusion and assault on this family.

102.  On February 26, 2013, the Plaintiff notified Defendant David Knutson through her attorney in a Motion Asserting that he was violating Ms. Grazzini-Rucki's fundamental and constitutional rights by the violent separation from her children on September 7, 2012. Defendant David Knutson has had every opportunity to recognize his violations of constitutional rights and to restore the children and property to the mother.  The Constitutional Motion and Memorandum and Affidavit, is attached (**A.60**).

103.  The transcript is also attached to the oral arguments alerting the Defendant David Knutson to his violations of the Plaintiff Sandra Grazzini-Rucki's First, Fourth, Thirteenth and the Fourteenth Amendment to the Constitution, all of which Defendant David Knutson has willfully ignored and violated.

104.  All of this Defendant David Knutson has not only ignored, he then began to serially retaliate.

105. In particular, he ignored writs of habeas corpus, denied her financial assistance and repeatedly threatened both the mother and her attorney with arrest (**A.139**).

106. When the children had run away on April 19, Defendant David Knutson did nothing and shows a callous disregard for the children's well-being.

107. After manipulating court records, and denying IFP, and sealing the testimony of the children, Defendant David Knutson has continued to cover up his acts and misconduct.

108. After Defendant David Knutson received a Color of Law Violation Notice, he wrote a letter to all of the attorneys that made allegations the service was an attempt to intimidate him (**A.167**). He wrote it was a "nonsensical document" (**A.166**).

109. Defendant David Knutson has directed the Plaintiff Sandra Grazzini-Rucki and all other professionals turn over all their records to her former husband David Rucki (**A.130**).

110. When supporters of Sandra Grazzini-Rucki distributed handouts near the church she attended, on the very next day, Defendant David Knutson ordered she immediately provide her former husband with a physical address that she does not have, or be sentenced to at least ten (10) days in an all men's jailhouse (**A.158**).

111. In that same order, Defendant David Knutson pretended that she did not have medical insurance for the children, which she did, and directed her to jail for that.

112. Before this, Defendant David Knutson knew that she had been stalked by her former husband and filed an Order for Protection and Restraining Order in a neighboring county, and had videotaped the trespass, and car prowling by her former husband.

113. Defendant David Knutson sent Lisa Elliott to a hearing in Scott County in attempt to arrange he usurp that file, and did not succeed as he had done with other files in the county of Dakota relating to the criminal activity of Plaintiff's former husband David Rucki.

114. However, knowing that there was a pending harassment restraining order proceeding and that she fears for her life, he sua sponte made an order for Plaintiff Sandra Grazzini-Rucki to immediately turn over her physical address or face arrest.

115. For three (3) weeks, upon information and belief, Defendant David Knutson called the Lakeville Police Department to harass and intimidate those near the church handing out information.

116. In another display of total disregard for the Plaintiffs rights, Defendant David Knutson knew that David Rucki's attorney was obstructing the admission and would not agree to any evidence of the tens of thousands of dollars that Plaintiff had paid to attorneys before she was rendered homeless, and spent down all of her inheritance constituting of a life insurance policy her father left her. With no reasonable or actual notice, after Plaintiff's attorney was forced to subpoena the attorney fee record from Plaintiff's previous attorney by Ms. Elliott's refusal, he directed her to appear in court within several hours where all of the attorneys appeared and could give testimony as to their billings. But when Ms. Elliott filed a motion in limine to exclude, he stated he would hear it on September 11, while quashing the subpoenas anyway, making the matter moot.

117. Also on the same day as he had received a copy of a complaint to the Board of Judicial Standards, he directed Plaintiff appear in court, then called the deputy in the courtroom full of attorneys.

37

118. Plaintiff's attorney was baffled by the "emergency" for which he called the deputy over to take Plaintiff's counsel into custody. This, when she was talking so quietly that the court reporter asked her to speak up, and talk in the microphone.

119. And after Plaintiff's attorney wrote a letter to Defendant detailing her experience in court, he sanctioned her to pay the Plaintiff's former counsels fees.

120. Essentially he obstructed the evidence that the Plaintiff Sandra Grazzini-Rucki wanted to present by not only the quashing but by also scheduling one day, canceling the second day. Defendant David Knutson sees the evidentiary hearing as perfunctory.

121. David Knutson had numerous off-the-record discussions and correspondence with the various people involved, and there never was an evidentiary hearing. As such, there was no jurisdiction.

122. The court has allowed factual and hearsay affidavits and letters from the attorneys and others, that made false allegations against Plaintiff Sandra Grazzini-Rucki and the children, including assertions that she had caused to not visit with their father, when there were no court orders for specific parenting time, and that she failed to support her children, too many allegations to count, and allowed numerous ex parte communications with Defendant David Knutson.

123. In reality, it was Defendant David Knutson, and not Sandra Grazzini-Rucki, who took inappropriate actions, and made comments to the children, including threats if they do not do as he told them, and implicitly if they did not do as they were told they would not see their mother again.

124. Further, Defendant David Knutson repeatedly alleged that it was the mother who had been responsible for not having access or contact with the children all of these months, and not having the ability to pay to move back in the home, in effect, not having access or contact with her children or possession of her home, including payment of the mortgage and support and care of her children.  In essence, he has repeatedly alleged that the mother was responsible for his directives to abandon her home, her property and her children.

125. After September 7, 2012 he directed the home be awarded to the father, and prohibited either of them from living there.

126. After the children ran away, Defendant David Knutson repeatedly alleged that the mother had the ability to find them, an ability he had taken away by the threat of arrest, and no contact.

127. During this period, Plaintiff Sandra Grazzini-Rucki's former husband was charged with criminal activity relating to Ms. Grazzini-Rucki and the children, which proceedings David Knutson usurped and eventually negotiated a dismissal.

128. During this period, Sandra Grazzini-Rucki's former husband was criminally charged and convicted of violating the orders for protection, which proceedings David Knutson usurped, and directed the police department to void.

129. During this period. Ms. Grazzini-Rucki made reports to the police, approximately 17, which Defendant David Knutson usurped and then directed her not to contact the police in Lakeville again, or she would be arrested.

130. During this period, Ms. Grazzini-Rucki was stalked by her former husband, and in August, 2013, she filed an Order for Protection, and a Harassment restraining order, in another county

where the incident occurred, at which time Defendant David Knutson attempted to usurp the court proceedings. The Scott county court, Judge Opperman was instructed that Defendant David Knutson wanted all matters to be heard in Dakota County, but the Scott County court denied the request. An Order for in forma pauperis granted in Scott County and was usurped by another Judge, Caroline Lennon, who sua sponte vacated the order granting Ms. Grazzini-Rucki's IFP.

131. Also, the attorney for David Rucki testified that Defendant David Knutson wants all of the files given to him, and that all matters be removed to the county where he sits.

132. After David Knutson was served a Color of Law notice, the next day he wrote a letter stating that he would not be intimidated, and then sua sponte directed that the mother turn over to the father all of the mother's therapy records, including records from therapists she has never seen.

133. On Sunday, August 25, Ms. Grazzini-Rucki greeted supporters at an informational event in the vicinity of a church in Lakeville, she and her children were unable to attend by directive of Defendant David Knutson. Many supporters held signs showing support of her and public outrage at Defendant David Knutson.

134. The next day Defendant David Knutson ordered she be sentenced to Dakota County jail, an all men's jail, for 10 days, unless she revealed to her former husband, David Rucki her physical address, and knowing she had a harassment restraining order proceeding pending against David Rucki with another Judge in another county.

40

135. Defendant David Knutson further ordered she be sentenced to jail if she did not immediately reinstate the children's insurance and knowing that her employer was still providing the medical coverage.

136. Also Defendant David Knutson is aware that her former husband has paid none of the spousal or child support as ordered. He is also aware that she does not own a vehicle. Yet David Knutson made a directive that half of the value of a vehicle owned by her friend in the amount of $6,000 be awarded to offset the fathers monetary support owed to Sandra Grazzini-Rucki.

137. Defendant David Knutson also refused to restore her children, or her real property, and once again refused to take any action for the protection of her children from the father and knowing two of them had run away to escape the abuse, and are still missing.

138. At the same time, Defendant Knutson implied that Sandra Grazzini-Rucki is responsible the safety and welfare of the children he had taken away from her. Knowing he had rendered Sandra Grazzini- Rucki homeless and she had provided a permanent address and phone and implied that she was responsible for not having a permanent place to live, and threatened her with arrest unless she immediately provided the father with her address and phone number.

139. During this time, the court system tampered with records that Ms. Sandra Grazzini Rucki and her attorney would either not get notice, and her husband David Rucki would receive notice first, concerning cancelation and rescheduling of hearings.

140. During this time, Defendant David Knutson received, considered and acted on numerous ex parte requests that were not copied to Sandra Grazzini-Rucki or her attorney, such that they would not be aware of the request being made or any of the resulting directives.

41

141. Sandra Grazzini-Rucki is repeatedly denied all these things, and in some cases was not even aware of allegations which she has had no opportunity to refute prior to the directives issued by Defendant David Knutson.

142. David Knutson acknowledged that the parents and children had a family, and that Sandra Grazzini- Rucki had been a responsible parent.

143. Sandra Grazzini-Rucki has repeatedly denied the allegations that the attorneys and guardians have repeatedly accused her of, and ignored the truth to cover up separating the mother from her children to cover up the egregious violations of her and her children's constitutional rights.

144. Defendant David Knutson has insisted on reiterating and asserting false claims, including specifically asserting that the mother had agreed to abandon her home and her children and property, and asserts this arrangement was temporary.

145. After the mother was removed from her home, and separated from her children they were placed with a third party as recommended by the guardian so they were completely outside the control of both of the parents. David Knutson knows that in reality, the children never lived with the third party, and that two of them ran away instead and cannot be located, and that he carries on with proceedings that are obviously designed to wrongfully conceal his egregious behavior, while he claims all of this is the mother's fault.

146. The two children have been missing since April, and Defendant David Knutson shows no care or concern whatsoever, and instead has manacled the mother with his directives from the ability to protect them without being arrested by Defendant David Knutson.

147. Defendant David Knutson's directives are completely outside any jurisdiction or law, and there is no legal authority or basis for his acts. There is also no Minnesota or federal law, no legal process, to justify his violation of the constitutional rights of Ms. Sandra Grazzini-Rucki and her children.

148. The mother has been unable to contact her children, even through third parties, or return to her home for 12 months, since September 7, 2012, under threat of incarceration, and ignores the fact that two of the children have remained missing since April.

149. Sandra Grazzini-Rucki has a fundamental and constitutional right to the care, custody and control of her children and the law in no way authorizes, and in fact prohibits the behaviors of Defendant David Knutson. David Knutson has refused to relent and has become even harsher.

150. He also requires her to do something, and orders her to jail if she fails to do so, which is illegal.

151. He ordered the mother to a man's jail if she did not comply with providing her physical residence, which he took from her, to the respondent, when he knew she had a pending criminal complaint and restraining order against her former husband for stalking, and other criminal activity of the father in another county, and that her employer provided medical insurance for the children.

152. David Knutson also had various discussions directly or through third parties relating to the mother's employer and records of employment and medical insurance.

153. Defendant David Knutson coerced the mother into a vague, generalized, discombobulated unclear revised property settlement, and thereafter directed her with no notice to abandon the

home he awarded to her, and further leave her children and property, and then months later, in November, 2012, signed an amended directive that he knew was false, not at all based in reality, was obsolete, moot and damaged the mother.

154. Meanwhile, the court personal engaged in a highly charged conversation with mother concerning the false claims made about Sandra Grazzini-Rucki's conduct. Numerous requests were made for contact and communication with her children, which Defendant David Knutson knew about and ignored.

155. For example, Sandra Grazzini-Rucki reported one of David Knutson's advisors, Julie Friedrich to her supervisor, Laura Miles, and then David Knutson arranged an attorney for her thereafter, and when she removed herself arranged to have hired her supervisor that Sandra Grazzini had complained to replace her and allowed her a court appointed attorney.

156. Repeatedly, throughout the proceedings, David Knutson has threatened the mother if she did not submit to his will. All along he knew that he had no intention of reuniting her with her home and children and has devised and gathered an array of professionals to provide data which he knew was false.

157. The children have exhibited significant emotional distress in their placement, which was reported to David Knutson, and or reported to the therapist, reported to the GAL, and others but information was conveyed to David Knutson. Instead, they falsely claimed that the arrangement was in the best interest and misrepresented the children who were doing well, when in fact he knew that the children were being harmed and neglected.

158. David Knudson has also demeaned this mother to others involved in the case, and in the community, portraying her as a spoiled, and wealthy and as bearing false witness, and a "beauty queen" who was born with all the advantages and was used to getting her way.

159. David Knutson interviewed the children, and requested an evaluation of the children that would cost thousands of dollars. Another judge had signed the mothers order in forma pauperis, and when the mother filed to amend, it to be able to pay, and to get the transcript of the interview that David Knudson usurped and vacated the order so knowing that he had rendered the mother homeless and that she could not pay, and falsely asserted that she did not support her children, or pay her mortgage, when he had removed her from the home, and yet these are the very reasons to allow in forma pauperis.

160. The mother provided documents in an effort to determine the truth of the her assertions that the father was abusive, including a transcript and recording of 6 gunshots left on the child's voice mail cell phone, and the extent to which the parents conduct was otherwise causing the children to suffer emotional distress, which David Knutson knew to be the truth, but purposely ignored.

161. The mother has repeatedly refuted the reports of those that David Knutson had consulted, all of which David Knutson has ignored and turned around on her.

162. David Knutson knew that the mother never neglected or abused the children, and knew that she never posed a significant risk of harm to the children all along.

163. Yet David Knutson has repeatedly set forth accusations of uncooperation, and that she is not to be believed, and is not credible, and that she is not destitute.

164. All of this is based on vague, hearsay, innuendos, letters, phone calls and other communications unduly influenced by his perceptions.

165. Knowingly facilitated an evaluation with the supervisor Laura Miles, that the mother had complained to about Julie Friedrich, even though he knew that the children were missing and not with either parent. Laura Miles concluded that Sandra Grazzini-Rucki's visits should be supervised at a safety center, while her former husband should be allowed unrestricted contact.

166. Ultimately, David Knutson has no Jurisdiction or authority for these acts and is operating without jurisdiction, law or legal authority.

167. Sandra Grazzini-Rucki believed that her acquiescence in the plan was necessary to get her children back, and felt that she had no choice but to agree, given the difficulties suffered by the children while outside her care. In particular, she was coerced into a property settlement, and to issues relating to the order for the protection.

168. Despite Grazzini-Rucki's numerous complaints, and the concerns expressed by others about the handling of this case, David Knutson did not investigate the situation or consider or take any action in restoring to her children or home to her, or assigning different professionals to the matter.

169. The proceedings in family court were protracted, and David Knutson received no evidence in the form of testimony or documents, and disregarded all rules of court rules and rules of evidence or procedure.

170. On 6-22-2011, the mother obtained an order for protection signed by a district court judge, for two week and then in permanent status, Defendant David Rucki violated several times,

46

and Knutson usurped the file and arranged that it be dismissed. In early spring, 2012, Defendant David Knutson repeatedly demanded the mother sign what he says or he will arrest her unless she says the statement under oath.

171. There was only one continuance that mothers former attorney, Katie Graves asked for, that was granted by another judge, then she was not informed that the continuance had been canceled by Defendant David Knudson.

172. The children received all of the sacraments, all baptized, first communion NR was confirmed at All Saints, all of their catholic sacraments were disrupted. NR baptized at St Peter's in all got first communion, had them in religion at all Saints and also classes at Hosanna. Regularly. Church at the cabin, Rosemount, Catholic, St. Joseph's in Rosemount.

173. The children had lived in the same home with the mother since and the same neighborhood, June 6, 1998.

174. David Knutson May 2011 solely summary disposition, Kathryn Graves, stayed in effect. In June of 2011, lien to Lisa Elliott in 60k, and David signed over 60k to Lisa Elliott. Just sent document, go ahead and take the house. Property settlement, marital Lisa Elliott, David Knutson signed the house usurped it and signed the house over. David took a lien on it while owned. Put both names back on, he can't do that, put David's name back on, after Elliott's agreement that put a lien on it. Paid mortgage, title washing, Sherriff's sale, rebought for 1.68 and resigned it back.

175. Grazzini-Rucki asserts that David Knudson exhibited deliberate indifference to the rights of parents in her situation, and failed to supervise, control or direct his conduct and the conduct of others that were involved.

176. For example, a court concluded the causes of action based upon the alleged violation of
Fogarty-Hardwick's federal civil rights had been properly alleged, and reversed the judgment
with directions to overrule the demurrer with respect to those claims. (*Fogarty-Hardwick v.
County of Orange* (Mar. 29, 2004, G030302) [nonpub. opn.].) suggested the omission
reflected the County's recognition that a then-recent decision of the Ninth Circuit Court of
Appeals, *Miller v. Gammie* (9th Cir. 2002) 335 F. 3d. 889, "holds that social workers have
absolute immunity only for the quasi-prosecutorial decision to institute dependency
proceedings. Beyond that, the burden is on a social worker defendant to show that other
functions he or she performed are similar to conduct accorded absolute prosecutorial
immunity at common law." (*Fogarty-Hardwick v. County of Orange, supra,* G030302, p.
14.). The court then noted that the claims asserted by Fogarty-Hardwick included conduct
occurring after the initiation of the dependency case, and thus that "the demurrer to the
federal claims cannot be sustained on this ground." (*Id.* at p. 15.) The court specifically left it
to the trial court, on remand, "to sort out which of the individual defendants may be protected
by absolute (or qualified) immunity, should that issue be raised by the County upon a proper
motion." (*Ibid.*)

177. David Knutson intentionally violate[d] the plaintiff's right to familial association or right to
privacy"; that he did so "while acting or purporting to act in the performance of his official
duties"; and that his conduct was a substantial factor in causing harm to Sandra Grazzini-
Rucki and her children.

178. Damages in connection with the misconduct of David Knutson are similar to when the jury awarded damages to Deanna Fogarty-Hardwick's of $117,386, including past and future economic loss; past and future non-economic loss.

179. The jury also concluded that the Defendant was deliberately indifferent to the need to train and/or supervise its employees adequately, and that failure was both the cause of Fogarty-Hardwick's loss of familial association and a substantial factor in causing harm to her.

180. In connection with that special verdict, the jury concluded Fogarty-Hardwick's damages totaled $2,260,785, including past and future economic loss, and past and future non-economic loss.

181. With respect to damages specifically, the jury returned a special verdict concluding that "regardless of the award of damages in [the other verdict forms] . . . , the total damages suffered by" Fogarty-Hardwick were $411,456 in past economic losses; $36,400 in future economic losses; $2,810,000 in past non-economic losses; and $1,655,010 in future non-economic losses. These "total damage" numbers add up to $4,912,866 -- the same total reached by adding up the separate damage amounts assessed against each defendant (including *both* damage amounts of $2,260,785 assessed against the County.)

182. Finally, David Knutson acted with malice, oppression or fraud. And desires punitive damages against David Knutson to be determined in a manner similar to Fogarty.

183. The court also issued an injunction prohibiting the courts to enter the realm of family without a compelling state interest, for instance, deprivation of a parental right, neglect, abuse as required by law, and also prohibiting the courts from entering the realm of family unless a child was not actually being supported and cared for by a parent. Prohibiting actions against

49

any parent of a child without some compelling state interest as to their care and support, as required by the United States Supreme Court jurisprudence that the child has been abused, neglected or abandoned *by the accused parent or guardian*, or is in imminent danger of abuse, neglect or abandonment by that parent". In fact, David Knudsen's directives facilitated wrongfully separated and facilitate the neglect and abandonment by the mother of the children.

All of the Plaintiff's pleas to be restored her children have gone unanswered by the Defendants. She wrote letters, provided recordings and filed motions all to no avail. She now has lost all trust and hope and faith in the Defendants.

**CONTINUED RETAILIATION AGAINST PLAINTIFFS AND REFUSAL TO REMOVE**

184. The custody trial in re: the marriage of: David Rucki v. Sandra Grazzini-Rucki, Dakota County Court file no. 19-AV-FA-11-1273 proceeded on September 11 2013, over objection because the above law suit was filed against (Judge) David Knutson, individually. Despite Plaintiffs filing and notification to the Defendant, he refused to remove himself, and insisted to proceed to custody trial, or would hold Plaintiff Sandra-Grazzini in default, this when two of the children are missing. See www.missingkids.com (**A.169**).

185. On September 11, 2013, Defendant granted Motions in Limine of attorney for David Rucki, Lisa Elliott, obstructing witnesses and evidence, including testimony of the children on February 26, 2013, and prohibited nearly all of Plaintiff's evidence.

186. The first day of trial (September 11) when the judicial officer should have removed himself, as requested, Defendant has continued to hold the Plaintiffs under siege.

187. Further, Plaintiff, Sandra Grazzini-Rucki, was provided with a break the morning of September 12, to locate a 2011 calendar, deputies came at Plaintiff and her attorney, took Plaintiff's attorney in the back, placed her in handcuffs, a wheel chair and in a jail cell. The break was to last a few minutes, and Plaintiff Sandra Grazzini-Rucki was told her attorney was arrested, and left. The deputies returned Plaintiff's attorney to the courtroom in handcuffs, a wheel chair, with no eye glasses, no files and without Plaintiff, Sandra Grazzini-Rucki to complete the custody trial on September 12, 2013, over objection. Defendant Knutson came back on the bench, and stated something to the effect of *"something must have happened during the break"*; noted that Plaintiff Sandra Grazzini-Rucki was not present, and that all of the files were gone. Defendant then stated Plaintiff would be in default, and forced her attorney to proceed without her in this debilitated state. At the conclusion of the trial, Defendant Knutson asked the attorney for the father and the attorney for the guardian, if they "rested" their case. Both said "yes". Then he looked at Plaintiff's attorney and stated he would take the matter "under advisement."

188. Immediately the sheriffs wheeled Plaintiff Sandra Grazzini-Rucki's attorney, Michelle MacDonald, to the courthouse jail, and then adjacent all men's jail, where she was held until the next day, September 13, 2013, approximately 5:00 pm. This physical and financial disruption is of course to deprive Plaintiff of an attorney by intimidation and coercion.

(**A.170** – Affidavit of Attorney, dated September 19, 2013)

**OBSTRUCTION OF EVIDENCE**

189. Thereafter, subpoenas and letters for preservation of this evidence, were served on Dakota County Sheriff's Department, via Commander John Grant, and Mitch Selner and others to

51

preserve and obtain audio/video of the courtroom and jail on relevant hearing and trial dates of September 11, and 12 and 13, and on September 6, another day Plaintiff's attorney was accosted by a Sheriff. These subpoenas have not been adhered to, and responsive letters were sent from Defendant's attorney, and the Dakota county, which indicate an intent to obstruct this evidence, and believed to be influenced by Defendant Knutson.

ABUSIVE MOTIONS AND DECISIONS PENDING

190. On September 13, Defendant took the custody matter under advisement, and that same day Defendant allowed opposing attorney Lisa Elliott, to filed more motions that oppressed Ms. Grazzini-Rucki, including a motion for a civil warrant for Plaintiff Sandra Grazzini-Rucki's arrested for not providing her stalker, David Rucki, with a physical address, or phone number, which she does not have (**A.175** – Affidavit of Non -Compliance, dated September 13, 2013). This motion remains pending today, even though Defendant knew of the pending restraining order proceeding, and allowed further intimidation and fear relating to her appear at the restraining order (Scott County District Court, Sandra Grazzini-Rucki v. David Rucki, court file no. 70-CV-13-15408) hearing on Monday, September 16.

191. In addition, on October 25, 2013, Plaintiff received a response to her inquiry to the DVS information, and learned of 98 invasions of her privacy by those with access to confidential information, which may include Defendant Knutson and the Does. These violations were ongoing from June 1, 2011 to September 27, 2013 (**A.194** - DVS Report).

**ORDER FOR PLAINTIFF TO PAY ATTORNEY FEES**

192. In addition, on September 25, 2013, Defendant Knutson sanctioned Plaintiff to pay attorney
   fees of Plaintiff's former attorneys, for subpoenaing their billing records directly, with no
   notice and for no justiciable reason, when Plaintiff is unable to pay her own attorney.

193. In addition, after the trial concluded, on October 11, 2013, Attorney Elliott served subpoenas
   after the on Plaintiff's employer, and Defendant mandated and compelled Plaintiff's
   employer that to respond, and turned over private and secured data to David Rucki's attorney
   (**A.207** – Letter with subpoena to US Airways).  Defendant was put on notice through his
   attorney of the ongoing abuses through his attorney, and of this amendment (**A.211** –
   Affidavit of attorney, dated October 30, 2013).

**CLASS ACTION ALLEGATIONS**

194. Parents and children who are separated or are separating, and have sought or seek family
   justice, but have been met with restraints on liberty rights of association, and with respect to
   their persons, and  resources through court intervention without a compelling state interest.

195. Factual allegations in support of the availability of relief for the class proposed pursuant to
   the requirements of Fed. R. Civ. P. 23(a) and 23(b)(1),(2), and/or (3) include that the class is
   so numerous that joinder of all members is impracticable; there are questions of law or fact
   common to the class; and the claims and defenses of the representative parties are typical of
   the claims or defenses of the class; and the representative parties will fairly and adequately
   protect the interest of the class.

196. Plaintiffs are represented by attorney Michelle Lowney MacDonald who has been practicing
   in family law (including adoption), and domestic and criminal defense areas relating to

families, parents and children since 1987; and has represented family members, fathers,

mothers, relatives, and children alike that are in the class.  Michelle MacDonald is currently

involved in five cases pending in the Minnesota Supreme Court, including the Sandra

Grazzini-Rucki family, relating to the unconstitutionality of a variety family domestic

statutes, including Amicus Briefs.

## AS AND FOR A CAUSES OF ACTION ON BEHALF OF PLAINTIFFS

### COUNT I.

**DEPRIVATION OF RIGHTS UNDER COLOR OF LAW – 42 U.S.C. § 1983, § 1985**
**Particular Constitutional Rights or Federal Laws Violated Are Identified as the First, Fourth,**
**Fifth, Eighth, Ninth, Thirteenth and Fourteenth Amendment**
**CIVIL ASSAULT**

197.  The Plaintiffs, Sandra Grazzini Rucki, and N.J.R, S.V.R., G.J.R., N.G.R., and G.P.R., and

each of them, repeat, reiterate and reallege each and every allegation contained in paragraphs

marked 1 through 196 with the same force and effect as if more fully set forth herein.

198.  The conduct of Defendant David L. Knutson in restraining, and otherwise confining

Plaintiffs, Sandra Grazzini- Rucki and her children, N.J.R, S.V.R., G.J.R., N.G.R., and

G.P.R. was done with the intent to cause apprehension of fear of immediate harm or

offensive contact with the body of Sandra Grazzini-Rucki and her children N.J.R, S.V.R.,

G.J.R., N.G.R., and G.P.R.

199.  At all times material herein Defendant David L. Knutson had the apparent ability to cause

harm or offensive contact with the body of Sandra Grazzini-Rucki and her children N.J.R,

S.V.R., G.J.R., N.G.R., and G.P.R.

200. At all times material herein Sandra Grazzini-Rucki and her children N.J.R, S.V.R., G.J.R., N.G.R., and G.P.R. had a reasonable apprehension or fear that immediate harm or offensive contact with his person would occur or those that he directed would occur.

201. At no time did Sandra Grazzini-Rucki and her children N.J.R, S.V.R., G.J.R., N.G.R., and G.P.R. ever consent to the conduct of Defendant David L. Knutson, and if they did, it was the product of intimidation, or with threats to submit or they will never see or be with each other again alleged herein.

202. As a direct and proximate result of the conduct of Defendant David L. Knutson, Sandra Grazzini-Rucki and her children N.J.R, S.V.R., G.J.R., N.G.R., and G.P.R. have been made to suffer pain, discomfort, fear of imminent bodily harm, mental anguish and emotional distress, all to their physical and mental damage, causing Defendant David L. Knutson to be liable to Sandra Grazzini-Rucki and her children N.J.R, S.V.R., G.J.R., N.G.R., and G.P.R., for damages in an amount presently undetermined but which is here alleged for purposes of this Complaint to exceed the sum of the sum of Fifty-Five Million, Eighty Three Thousand, $55,083,310.22 each.

## COUNT II.

### DEPRIVATION OF RIGHTS UNDER COLOR OF LAW – 42 U.S.C. § 1983, § 1985
### Particular Constitutional Rights or Federal Laws Violated Are Identified as the First, Fourth, Fifth, Eighth, Ninth, Thirteenth and Fourteenth Amendment
### CIVIL BATTERY

203. The Plaintiffs, Sandra Grazzini-Rucki, and N.J.R, S.V.R., G.J.R., N.G.R., and G.P.R., and each of them, repeat, reiterate and reallege each and every allegation contained in paragraphs marked 1 through 196 with the same force and effect as if more fully set forth herein.

204. The conduct of Defendant David L. Knutson in restraining,  and otherwise confining Plaintiffs, Sandra Grazzini-Rucki and her children constitutes an harmful or offensive contact with Plaintiffs, Sandra Grazzini-Rucki and her children or anything worn or held by or closely connected to the persons of Plaintiffs, Sandra Grazzini-Rucki and her children.

205. At no time did Plaintiffs, Sandra Grazzini-Rucki and her children ever consent to the conduct of Defendant David L. Knutson alleged herein.

206. As a direct and proximate result of the conduct of Defendant David L. Knutson, Plaintiffs, Sandra Grazzini-Rucki and her children have been made to suffer pain, discomfort, fear of imminent bodily harm, mental anguish and emotional distress, all to his physical and mental damage, causing Defendant David L. Knutson to be liable to Plaintiffs, Sandra Grazzini-Rucki and her children, and each of them for damages in an amount presently undetermined but which is here alleged for purposes of this Complaint to exceed the sum of  the sum of Fifty-Five Million, Eighty Three Thousand, $55,083,310.22 each.

## COUNT III.

**DEPRIVATION OF RIGHTS UNDER COLOR OF LAW – 42 U.S.C. § 1983, § 1985**
**Particular Constitutional Rights or Federal Laws Violated Are Identified as the First, Fourth,**
**Fifth, Eighth, Thirteenth and Fourteenth Amendment**
**FALSE IMPRISONMENT**

207. The Plaintiffs, Sandra Grazzini-Rucki, and N.J.R, S.V.R., G.J.R., N.G.R., and G.P.R., and each of them, repeat, reiterate and reallege each and every allegation contained in paragraphs marked 1 through 196 with the same force and effect as if more fully set forth herein.

208. The conduct of Defendant David L. Knutson in restraining, and otherwise confining Plaintiffs, Sandra Grazzini-Rucki and her children constitutes an intentional restriction of the physical liberty of Plaintiffs, Sandra Grazzini-Rucki and her children by acts which

56

Defendant David L. Knutson knew or should have known was harmful to Plaintiffs, Sandra Grazzini- Rucki and her children.

209. The conduct of Defendant David L. Knutson in restraining, and otherwise confining Plaintiffs, Sandra Grazzini-Rucki and her children included, but may not have been limited to, the use of physical barriers, the use of physical force, and the threat of the immediate use of physical force.

210. Plaintiffs, Sandra Grazzini-Rucki and her children believed that Defendant David L. Knutson had the ability to carry out any threat of the immediate use of physical force that he may have made, particularly in view of the fact that John and Mary Does sat by and did nothing and on numerous occasions actually aided Defendant David L. Knutson in the commission of his tortious conduct.

211. As a direct and proximate result of the conduct of Defendant David L. Knutson, Plaintiffs, Sandra Grazzini-Rucki and her children have been made to suffer pain, discomfort, fear of imminent bodily harm, mental anguish and emotional distress, all to their physical and mental damage, causing Defendant David L. Knutson to be liable to Plaintiffs, Sandra Grazzini-Rucki and her children, and each of them, for damages in an amount presently undetermined but which is here alleged for purposes of this Complaint to exceed the sum of the sum of Fifty-Five Million, Eighty Three Thousand, $55,083,310.22 each.

## COUNT IV.

**DEPRIVATION OF RIGHTS UNDER COLOR OF LAW – 42 U.S.C. § 1983, § 1985**
**Particular Constitutional Rights or Federal Laws Violated Are Identified as the First, Fourth,**
**Fifth, Eighth, Thirteenth and Fourteenth Amendment**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

212. The Plaintiffs, Sandra Grazzini-Rucki, and N.J.R, S.V.R., G.J.R., N.G.R., and G.P.R., and each of them, repeat, reiterate and reallege each and every allegation contained in paragraphs marked 1 through 196 with the same force and effect as if more fully set forth herein.

213. The conduct of Defendant David L. Knutson in restraining, and otherwise confining Plaintiffs, Sandra Grazzini-Rucki and her children constitutes conduct that is so extreme and outrageous that it passed the boundaries of decency and is utterly intolerable to the civilized community.

214. The conduct of Defendant David L. Knutson in restraining, and otherwise confining Plaintiffs, Sandra Grazzini-Rucki and her children was intentional or reckless, particularly in view of the fact that his conduct rendered it difficult if not impossible for the parent-child relationships to function.

215. The conduct of Defendant David L. Knutson in restraining, and otherwise confining Plaintiffs, Sandra Grazzini-Rucki and her children caused Plaintiffs, Sandra Grazzini-Rucki and her children to experience emotional distress.

216. The conduct of Defendant David L. Knutson in restraining,  and otherwise confining Plaintiffs, Sandra Grazzini-Rucki and her children was so severe that no reasonable parent or child or person in the position of Plaintiffs, Sandra Grazzini-Rucki and her children could be expected to endure it.

217. As a direct and proximate result of the conduct of Defendant David L. Knutson, Plaintiffs, Sandra Grazzini-Rucki and her children have been made to suffer pain, discomfort, fear of imminent bodily harm, mental anguish and emotional distress, all to their physical and mental damage, causing Defendant David L. Knutson to be liable to Plaintiffs, Sandra

Grazzini-Rucki and her children for damages in an amount presently undetermined but which is here alleged for purposes of this Complaint to exceed the sum of the sum of Fifty-Five Million, Eighty Three Thousand, $55,083,310.22.

## COUNT V.

**DEPRIVATION OF RIGHTS UNDER COLOR OF LAW – 42 U.S.C. § 1983, § 1985**
**Particular Constitutional Rights or Federal Laws Violated Are Identified as the First, Fourth,**
**Fifth, Eighth, Thirteenth and Fourteenth Amendment**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

218. The Plaintiffs, Sandra Grazzini-Rucki, and N.J.R, S.V.R., G.J.R., N.G.R., and G.P.R., and each of them, repeat, reiterate and reallege each and every allegation contained in paragraphs marked 1 through 196 with the same force and effect as if more fully set forth herein.

219. Defendant David L. Knutson, to the extent his actions were authorized by John Does and Mary Roes, owed a duty of reasonable care to Plaintiffs, Sandra Grazzini-Rucki and her children to act reasonably under the circumstances and to use due care not to cause harm to said parent and  minor children.

220. Defendant David L. Knutson breached that duty of reasonable care by engaging in the aforementioned conduct.

221. Defendant David L. Knutson's breach of the aforementioned duty of reasonable care directly caused severe emotional distress to Plaintiffs, Sandra Grazzini-Rucki and her children which has manifested itself in those children becoming withdrawn, refusing to talk, over the telephone while at their mother's residence, and on multiple occasions to fear for their safety and to worry about the possibility of being in the presence of and being harmed by Defendant David L. Knutson.

222. At relevant times material to this action, Plaintiffs, Sandra Grazzini-Rucki and her children were within the zone of physical danger in that they saw Defendant David L. Knutson wrongfully and unlawfully restrain Plaintiffs, Sandra Grazzini-Rucki and her children, and cause them pain, discomfort, and emotional distress.

223. At times material to this action, Plaintiffs, Sandra Grazzini-Rucki and her children reasonably feared for their own safety and for the safety of their mother, and siblings and family.

224. As a direct cause of the conduct of Defendant David L. Knutson, Plaintiffs, Sandra Grazzini-Rucki and her children has suffered severe emotional distress, accompanied by becoming withdrawn, moody, and not like themselves.

225. As a direct cause of the conduct of Defendant David L. Knutson, Plaintiffs, Sandra Grazzini-Rucki and her children have been made to suffer mental anguish and discomfort, emotional distress, fear of imminent bodily harm, all to his physical and mental damage, causing Defendant David L. Knutson to be liable to Sandra Grazzini-Rucki and her children for damages in an amount presently undetermined but which is here alleged for purposes of this Complaint to exceed the sum of the sum of Fifty-Five Million, Eighty Three Thousand, $55,083,310.22.

### COUNT VI.

**DEPRIVATION OF RIGHTS UNDER COLOR OF LAW – 42 U.S.C. § 1983, § 1985**
**Particular Constitutional Rights or Federal Laws Violated Are Identified as the First, Fourth,**
**Fifth, Eighth, Thirteenth and Fourteenth Amendment**
**NEGLIGENCE**

226. Plaintiff hereby incorporates the allegations in paragraphs 1-196 hereby reference.

227. At all times material herein Defendant David L. Knutson knew or had reason to know of his own, and John Doe and Mary Roes' inability or incapacity to exercise reasonable and proper parental judgment for the safety of the above-named minor children, and authority over them, while in David L. Knutson's and John Doe and Mary Does' care, custody, and control.

228. With that actual or constructive knowledge, at certain times material herein Defendant David L. Knutson received from John and Mary Does disciplinary authority over the children, which authority he willingly accepted and in which he willingly acquiesced.

229. Having voluntarily assumed such a duty, Defendant David L. Knutson negligently failed to exercise the responsibility of that authority by subjecting the above-named parent and minor children to the conduct alleged herein, thereby breaching the duty he voluntarily assumed.

230. The breach of that duty by Defendant David L. Knutson has caused the aforementioned parent and minor children to suffer pain, discomfort, fear of imminent bodily harm, mental anguish and emotional distress, all to their physical and mental damage, causing Defendant David L. Knutson to be liable to this family for damages in an amount presently undetermined but which is here alleged for purposes of this Complaint to exceed the sum of the sum of Fifty-Five Million, Eighty Three Thousand, $55,083,310.22.

## COUNT VII.

**DEPRIVATION OF RIGHTS UNDER COLOR OF LAW – 42 U.S.C. § 1983, § 1985**
**Particular Constitutional Rights or Federal Laws Violated Are Identified as the First, Fourth,**
**Fifth, Eighth, Ninth, Thirteenth and Fourteenth Amendment**
**INJUNCTIVE RELIEF**

231. Plaintiff hereby incorporates the allegations in paragraphs 1-196 here by reference.

232. Defendant David L. Knutson has conducted himself in an unlawful, extreme, and wrongful manner to the above-named parent and minor children, menacing them and causing them to

61

fear for their physical safety, causing physical and emotional pain, and extreme emotional

distress to Sandra Grazzini-Rucki and N.J.R, S.V.R., G.J.R., N.G.R., and G.P.R..

233. Plaintiffs hereby request and demand that Defendant David L. Knutson be enjoined from

having further contact of any kind whatsoever with the above-named parent and minor

children, whether through direct physical contact or indirectly through electronic, written, or

visual means until said minor children reach the age of majority.

234. Plaintiffs further hereby request and demand that Defendant David L. Knutson take

immediate action to restore her fundamental and constitutional rights to her children to this

parent; and restoring all of her real property including the homestead located at 19675 Ireland

Place Lakeville, Minnesota and all of her household goods, furnishings and personal property

to her and her children.

## COUNT VII.

### DEPRIVATION OF RIGHTS UNDER COLOR OF LAW – 42 U.S.C. § 1983 and § 1985
### John and Mary Does 1-20

235. The Civil Rights Criminal and Civil Statutes describe the parties potentially liable for civil

rights deprivations. 42 U.S.C. section 1986 extends the scope of persons liable under the 42

U.S.C. section 1986 beyond the entity violating section 1985 of the statutes to anyone who

has the power to "prevent or aid in preventing" the violations.

236. As for the Defendant Does, the Civil Rights Criminal and Civil Statutes describe the parties

potentially liable for civil rights deprivations. 42 U.S.C. section 1986 extends the scope of

persons liable to Plaintiffs beyond the entity violating section 1985 of the statutes to anyone

who has the power to "prevent or aid in preventing" the violations.  This broad category of

entities who can "prevent or aid in preventing" includes not merely direct employee

supervisors, but also executives, board members, policymakers, municipal entities containing offending departments, supporters, collaborators, and agents, and entities related by principles of agency and respondent superior.  Further, entities working in collaboration with offending parties may be liable as co-conspirators, co-operators of an illegal enterprise specifically including 18 U.S.C. sections 241, 371, 1596, 1983, 1985, 1962, 1964 and related predicate crimes identified in section 1961.

237. Defendant Does have a role in coordinating solicitation for and enforcement of unconstitutional injunctive orders in state family and criminal courts.

238. Defendant Does' process initiates with legal opinions and advice denominated technical assistance by lawyers and other public and private organizations.  Defendant's patterns and practices are illegal, abusive, and inflict highly disruptive, unnecessary, and harmful deprivations of fundamental civil rights on all interested parties.

239. Defendant Does' practices imposes deprivations freedom of speech, freedom of association, familial relations, freedom from warrantless/unreasonable search and seizure, confront adverse witnesses, effective assistance of counsel at liberty deprivation hearings, access to courts, and a variety of relevant rights to procedural and substantive due process.

240.  Defendant Does' illegal injunctive remedies are sought and imposed exclusively against persons within a protected class of persons based on familial status.

241. Defendant Does' have established a network of social workers, prosecutors, and law enforcement directed to perform acts which amount deprive citizens of civil rights and to obstruct justice.  These entities commit witness and evidence tampering, abuse of process,

spoliation, subornation of perjury, manipulation of police and criminal investigators,

victim/witness intimidation and retaliation, and victimless prosecution.

242. Their manipulation of confidentiality laws, and judicial process facilitates and encourages

illegal conduct, insults innocent crime victims, their families, the criminal justice system, and

the accused alike.

243. Defendant Does are instructed to perform "advocacy" for "clients" in and out of criminal and

civil court without adequate standing, training, authorization, license, right, or agency

relationships. Defendant Does improperly insert themselves into family investigations to

direct first responders and investigators. They offer themselves as interloping after-the-fact

"witnesses," "experts," and "victim advocates" or "coaches" during police and other

investigations and courtroom proceedings to inject false, misleading, and such activities.

244. Defendant Does failure to prevent or aid in preventing the same constitute violations of the

Plaintiffs here individually and in enterprise, specifically including 18 U.S.C. sections 241,

242, 1503, 1505, and 1512, 1592 and 42 U.S.C. sections 1983, 1985(2) and (3).

245. Defendant Does are performing activities beyond their charters and articles of incorporation

or statutory authorization based thereon.

246. Defendants offers extensive public legal representation and services for civil matters

including divorce, child custody, child and spousal support, child custody "advocacy" and

related family and criminal law, civil matters not authorized by statute, charter, or law. The

intense intermingling of public and private functions creates numerous de facto dual role and

agency relationships which effectively abrogate separation of powers and therefore

immunities attendant thereto.

247. As the described violations occur outside of any traditional recognition of governmental immunity to the Plaintiffs, as well as those empowered to influence them, are permitting non-immunized action in violation of law.

248. Further, to the extent that the Defendants Does directly or indirectly participate in deprivation of rights described herein, Defendants Does may be independently or jointly liable for the actions of others.

249. The state color of law actors and their collaborators identified regularly commit violations of citizens' rights per the explicit direction, supervision, and guidance of the agencies for whom they are employed, as detailed in invidiously discriminatory ideology into the family and criminal justice process.

250. Unlike society's increasingly enlightened embrace of other "social" ills, family conflict and the sometimes tragic consequences that result from its mismanagement is a pandemic problem that more frequently arouses disdain rather than support. Discrimination against the Plaintiffs is invidious social, economic, and legal discrimination similar to racial, ethnic, gender, or legitimacy. *See, e.g., Griffin v. Breckenridge,* supra; *Caban v. Mohammed,* 441 U.S. 380 (1979). In addition to the inevitable and debilitating economic, social, and psychological impact of divorce, children and parents within the family court system are the historical targets of ridicule, prejudice, and scorn amounting to invidious discrimination.

251. The inevitable and debilitating economic, social, and psychological impact on the Plaintiffs, children and parents are the targets of ridicule, prejudice, and scorn amounting to invidious discrimination.

252. Bias exhibited by the Defendants is irrational, prejudicial, malicious, and invidious; it is illegal, as is the tolerance, support, or participation with it.

253. Defendants have a secret agenda intent on family annihilation, societal breakdown, intimidation, emotional abuse, isolation, using children, economic abuse, coercion and threats.

254. Domestic strife is the product of incompatible moments, all-too-ordinary economic stress, unhealthy jealousy, conflicting personalities, selfishness, psychological disorders or substance abuse. Defendants Doe interject oppression, dominance, isolation, intimidation, coercion, and denial and economic stress.

255. Defendant Does prescribes as its *sole remedy* for domestic disharmony a coerced state "intervention" of the family's perceived power and control imbalance. Defendant Does, upon initial screening, if it is perceived that the relationship is out of balance, the diagnosis is complete, and intervention mechanisms for extraction of children, property, and liberties are put into motion. Relationships terminated, lives altered, and salaries paid; but for the welfare state fallout care, the Defendant Does' work is done. Nor are families given prior notice consulted in creation of these aggressive intervention policies.

256. The Defendants acts accused are unauthorized by charter or constitution, not judicial acts, or not intimately associated with the judicial process.

257. Further, the moral and professional responsibility implications and understandable public indignation at and contempt for violations by color of law actors have been described thusly: It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public

good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be *monstrous* to deny recovery. *Gregoire v. Biddle*, 177 F.2d 579, 581 (1949) (emphasis added). See also *Berger v. United States*, 295 U.S. 78, 88 (1935); re-emphasized in *Connick v. Thompson*, 578 F.3d 273 (2011).

258. Given the gravity of the consequences from participating directly or indirectly in, overseeing, or failing to prevent any act—independently or in furtherance of a conspiracy—in violation of the statutes recited herein, Defendant Does that are color of state law officials would have given significant forethought to the implications of their customs and policies regarding such activities. Defendants revealed little, if any, consideration of these issues. For example, there were no observable measures to train or control in the prevention or aid in prevention of ongoing violations of Plaintiffs' civil rights.

259. Further, to the limited extent that Defendants polices appear to be enacted (ie. "notice" regarding what court administrative offices can or cannot do), those entities' practices appears to be entirely inconsistent with policy. It would seem wise to have addressed risks of for constitutional deprivations through, for example training and supervision of the social workers under Defendants influence or control. *See, e.g., City of Canton v. Harris*, 489 U. S. 378, 388.

### PRAYERS FOR RELIEF

**WHEREFORE**, Plaintiff, Sandra Grazzini-Rucki, as parent and natural guardian of N.J.R, S.V.R., G.J.R., N.G.R., and G.P.R., request that this Court assume jurisdiction over this cause, grant them compensatory and punitive damages, costs and attorney's fees, and award injunctive and all other proper relief as follows:

1. In favor of Plaintiff, Sandra Grazzini-Rucki in an amount presently undetermined but which is here alleged for purposes of this Complaint to exceed the sum of Fifty-Five Million, Eighty Three Thousand, $55,083,310.22 against Defendant, David L. Knutson on all of her claims.

2. In favor of Plaintiff NJR in an amount presently undetermined but which is here alleged for purposes of this Complaint to exceed the sum of Fifty-Five Million, Eighty Three Thousand, $55,083,310.22 against Defendant, David L. Knutson on all of his claims.

3. In favor of Plaintiff, SVR in an amount presently undetermined but which is here alleged for purposes of this Complaint to exceed the sum of Fifty-Five Million, Eighty Three Thousand, $55,083,310.22 against Defendant, David L. Knutson on all of her claims.

4. In favor of Plaintiff, GJR in an amount presently undetermined but which is here alleged for purposes of this Complaint to exceed the sum of Fifty-Five Million, Eighty Three Thousand, $55,083,310.22 against Defendant, David L. Knutson on all of her claims.

5. In favor of Plaintiff, NGR in an amount presently undetermined but which is here alleged for purposes of this Complaint to exceed the sum of Fifty-Five Million, Eighty Three Thousand, $55,083,310.22 against Defendant, David L. Knutson on all of her claims.

6. In favor of Plaintiff, GPR in an amount presently undetermined but which is here alleged for purposes of this Complaint to exceed the sum of Fifty-Five Million, Eighty Three Thousand, $55,083,310.22 against Defendant, David L. Knutson on all of his claims.

7. An award of damages caused by Defendants John Does and Mary Does 1- 20 violations of the Plaintiffs fundamental and constitutional rights in an amount to be determined by the court as is fair and just.

8. An award of punitive damages against each of the Defendants in an amount to be determined by the court as is fair and just.

9. An Order declaring that the Defendant, David L. Knutson violated the Plaintiffs Constitutional rights including the first, fourth, fifth, sixth, eighth, ninth, thirteenth and fourteenth amendments to the Constitution of the United Stated, and that Plaintiffs brought a successful action under these statutes;

10. Demand to cease and desist, implementing any policy with respect to restraining the fundamental freedoms of families and children of the love and companionship of each other.

11. Permanently enjoining and restraining Defendants, its officers, agents, subsidiaries, servants, partners, employees, attorneys, and all others in active concert or participation with them, from violations of constitutional and civil and liberty rights of families, whether alone or in combination with other Defendants, or otherwise;

12. Requiring Defendants to restore Plaintiff Sandra Grazzini- Rucki children to her and her to her children, and to deliver up her real and personal property in its management and control;

13. Requiring Defendants to pay over to Plaintiffs all damages sustained by Plaintiffs;

14. Increasing the amount of damages awarded to Plaintiffs as appropriate for violation of civil rights;

15. Awarding Plaintiffs attorneys' fees, costs, expenses, and interest; and

16. Awarding Plaintiffs expert fees and witness fees.

17. Granting such other and further relief as this Court may deem just and equitable.

Respectfully submitted,

Dated: November 11, 2013

MacDonald Law Firm, LLC

By: _Michelle Lowry MacDonald_

       Michelle L. MacDonald, #182370
       1069 So. Robert Street
       West St. Paul, MN  55118
       Telephone: (651) 222-4400
       Facsimile: (651) 222-1122

       *Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**Sandra Grazzini-Rucki individually
and on behalf of her children, N.J.R,
S.V.R., G.J.R., N.G.R., and G.P.R., on
behalf of themselves and all others
similarly situated.**

Plaintiffs,

vs.

Court File No.

_____

**David L. Knutson, an individual,
John and Mary Does 1-20**

**VERIFICATION BY**

**SANDRA GRAZZINI-
RUCKI**

Defendants.

## VERIFICATION OF AMENDED COMPLAINT/ CERTIFICATION BY PLAINTIFF

STATE OF MINNESOTA            )
                              ) ss
COUNTY OF Dakota              )

Sandra Grazzini Rucki, having first been duly sworn and upon oath, deposes and

says as follows:

1. I am a Plaintiff in this civil proceeding and the parent of N.J.R, S.V.R., G.J.R., N.G.R., and G.P.R..

2. I have read the above-entitled civil Amended Complaint prepared by my attorney, Michelle Lowney MacDonald, and I believe that all of the additional facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

71

3.  I believe that this Amended Civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4.  I believe that this Amended civil Complaint is not interposed for any improper purpose, such as to harass any Defendant, cause unnecessary delay to any Defendant, or create a needless increase in the cost of litigation to any Defendant, named in the Complaint.

5.  I have filed this Amended civil Complaint in good faith and solely for the purposes set forth in it.

_Sandra Grazzini-Rucki_
Sandra Grazzini-Rucki

Subscribed and sworn to before me
this _11th_ day of _November_, 2013.

_Michelle L. MacDonald_
Notary Public

MICHELLE LOWNEY MACDONALD
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2016

72