# PLAINTIFF'S AMENDED APPENDIX

Stipulated Findings of Fact, Conclusions of Law, Order for Judgment And Judgment and Decree, May 12, 2011 .......... APP.1

Summary Real Estate Disposition Judgment, May 23, 2011 .......... APP.22

Petition For Review of Decision of Court of Appeals and Appendix, Sandra Sue Grazzini-Rucki vs. David L. Knutson, David Victor Rucki Supreme Court File No.: A13-0859, dated July 11, 2013 .......... APP.26

Petition For Writ of Mandamus and Other Appropriate Relief, Sandra Sue Grazzini-Rucki vs. David L. Knutson, David Victor Rucki, Dated May 14, 2013 .......... APP.34

Memorandum of Points and Authorities in Support of Petition, Sandra Sue Grazzini-Rucki vs. David L. Knutson, David Victor Rucki, Dated May 14, 2013 .......... APP.40

Order (granting motion to remove children from custody and care of Petitioner), September 7, 2012 .......... APP.51

Order (denying petition for review), dated August 20, 2013, Supreme Court File No.: A13-0859 .......... APP.55

Notice To Attorney General Asserting That Minn. Stat. §518 is Unconstitutional as Written and Applied, dated February 12, 2013 .......... APP.57

Notice of Motion and Motion For Relief From Judgment And Asserting That Minn. Stat. §518 is Unconstitutional, Other Relief, February 12, 2013 .......... APP.60

Memorandum In Support Of The Motion For Relief From Judgment And Questioning The Constitutionality of Minn. Stat §518 and Vacating Court Orders Restricting Petitioner's Liberty, Other Relief, February 12, 2013, including: .......... APP.64

Transcript of Proceeding, Judge Knutson presiding, February 26, 2013 .......... APP.85

Exparte Amended Summary Of Real Estate Disposition Judgment (awarding Lakeville home to Lisa Elliott's client, February 20, 2013, following motion and oral argument on constitution, ex parte) .......... APP.117

Supplemental Order for Proceeding In Forma Pauperis, granted, dated February 25, 2013, Dakota County File No.: 19-AV-FA-11-1273 .......... APP.120

Findings of Fact and Order Denying Petitioner's Requests to Proceed In Forma Pauperis, dated March 27, 2013 .......... APP.121

Order and Memorandum Sealing Transcript (of proceedings consisting of statements of children), March 29, 2013 .......... APP.124

MNCIS Criminal/Traffic/Petty Case Records Search Results, dated September 6, 2013, regarding David Victor Rucki .......... APP.126

Letter from Susan J. Reichenbach to Attorney Kathryn Graves, dated August 10, 2011 assigning all hearing to Judge David L. Knutson .......... APP.127

Letter from Officer Jim Dronen, Lakeville Police to Dakota County District Court, undated, Faxed July 24, 2011 .......... APP.128

MNCIS Register of Actions, Dakota County Case No.: 19-AV-FA-11-1760 Dated September 6, 2013 .......... APP.129

MNCIS Register of Actions, Dakota County Case No.: 19-AV-FA-11-1940 Dated September 6, 2013 .......... APP.130

MNCIS Register of Actions, Dakota County Case No.: 19-AV-CR-12-1215 Dated September 6, 2013, regarding David V. Rucki .......... APP.131

Appointment of Guardian Ad Litem Consent, Oath and Order, Dated July 11, 2011, Dakota County File Nos.: 19-AV-FA-11-1760 and 19-AV-FA-11-1273 .......... APP.132

Letter from James J. Gilbertson to Ms. Julie Friedrich, GAL, dated February 6, 2013, asking that children confront their father .......... APP.133

Letter from James J. Gilbertson to Ms. Julie Friedrich, GAL, dated February 21, 2013, asking that children testify at court .......... APP.136

Letter from Judge David L. Knutson to Ms. Sandra Grazzini-Rucki, dated April 1, 2013, denying her Petition for Writ of Habeas Corpus .......... APP.139

Order and Memorandum, dated July 22, 2013, ordering medical records Of Sandra Grazzini-Rucki be released to David V. Rucki .......... APP.140

Petitioner's Amended Affidavit and Petition for Harassment Restraining Order Dated August 5, 2013, Scott County Court File No.: 70-CV-13-15408 .......... APP.142

Notice to Courts, Sandra Sue Grazzini-Rucki vs. David Victor Rucki .................. APP.147

Transcript of Proceeding, Judge Offerman presiding, August 8, 2013 .................. APP.148

Order for Harassment Hearing, dated August 8, 2013, Scott County Court File No.: 70-CV-13-15408, denying removal to Judge Knutson.......................... APP.157

Order and Memorandum, dated August 26, 2013, Dakota County Court File No.: 19-AV-FA-11-1273, Ordering Petitioner to Jail for not providing her Phone number and address.......................................................................... APP.158

Order and Memorandum, dated September 9, 2013, Dakota County Court File No.: 19-AV-FA-11-1273, Quashing Subpoena's and sanctioning Attorney MacDonald..................................................................................................... APP.163

Letter from Judge David L. Knutson to Attorneys, dated July 26, 2013 regarding Color Of Law Service upon David Knutson....................................................... APP.166

Missing Exploited Children, Gianna Ruck and Samantha Rucki.......................... APP.169

Affidavit of Attorney For Appellant in Support of Motion for Leave To File Informal Brief, and Extension of Time to File Brief, dated September 19, 2013 (Appellate Court File No.: A13-0590, Opstad v. Smith)..................................... APP.170

Affidavit of Non-Compliance and Request for Arrest Warrant, Dakota County Court File No.: 19-AV-FA-11-1273, dated September 13, 2013 .......................... APP.175

DVS report on Sandra Grazzini-Rucki, dated October 21, 2013........................... APP.194

Letter from Attorney Elliott to US Airways with Subpoena's, dated October 11, 2013........................................................................................... APP.207

Transcription of Voice mail from US Airways to Michelle MacDonald, Dated October 30, 2013 ........................................................................... APP.211

STATE OF MINNESOTA

COUNTY OF DAKOTA

DISTRICT COURT

FIRST JUDICIAL DISTRICT

FAMILY COURT DIVISION

Court File No. MAV-FA-11-1273

In Re the Marriage of:

Sandra Sue Grazzini-Rucki,

Petitioner,

and

David Victor Rucki,

Respondent.

STIPULATED FINDINGS OF FACT, CONCLUSIONS OF LAW, ORDER FOR JUDGMENT, and JUDGMENT AND DECREE

This matter came on for a default hearing before the Honorable Tim Wermager Judge of District Court, at the Dakota County Western Service Center, Apple Valley, Minnesota on May 12, 2011, for a final review on all matters in this proceeding.

The Petitioner was represented by Kathryn A. Graves, Esq. The Respondent did not appear except by this Stipulation.

The parties were able to settle all issues arising out of the dissolution of their marriage including: child custody and support; spousal maintenance; disposition of real and personal property; and the payment of debts and attorneys fees. The parties have personally reviewed these Stipulated Findings of Fact, Conclusions of Law, Order for Judgment, and Judgment and Decree and fully understand all of their provisions. By her/his signature below, she/he voluntarily accepts

FILED DAKOTA COUNTY
CAROLYN M. RENN, Court Administrator

MAY 12 2011

the terms and conditions of this agreement as being fair and equitable, and requested that the Court enter the Judgment and Decree based on their agreement.

Respondent waived his right to serve an Answer and Counterpetition in this matter, and agreed the Petitioner may proceed as if by default, without further notice to the parties, but based upon the terms of their agreement. If the Court does not approve the terms of the parties' agreement in total, then the parties shall be entitled to notice of the same and this matter shall then be scheduled for hearing.

NOW, THEREFORE, based upon the Agreement of the parties, and all the files and proceedings herein, the Court makes the following:

FINDINGS OF FACT

1. The true and correct name of the Petitioner is Sandra Sue Grazzini-Rucki, formerly known as Sandra Sue Grazzini. Her present address is 19675 Ireland Place, Lakeville, Minnesota 55044. She was born on September 30, 1965, and is now forty-five (45) years old.

2. The true and correct name of the Respondent is David Victor Rucki. Respondent is not known by any other names, past or present. His present address is 19675 Ireland Place, Lakeville, Minnesota 55044. He was born on February 3, 1963, and is now and is now forty-eight (48) years old.

3. The Petitioner is represented in this proceeding by Kathryn A. Graves, Esq., of the firm of Katz Manka Teplinsky Graves & Sobol Ltd., Suite 4150, 225 South Sixth Street, Minneapolis, Minnesota 55402.

4. The Petitioner and the Respondent were married on August 31, 1991, Edina, Minnesota and ever since that time have been, and now are, wife and husband.

5. To the best of the Petitioner's information and belief, no separate proceeding for dissolution of marriage, legal separation, or custody is pending in any court within the State of Minnesota or elsewhere.

6. For more than one hundred eighty (180) days immediately preceding the commencement of this proceeding, the Petitioner was a resident of Dakota County, Minnesota.

7. There has been an irretrievable breakdown of the marriage relationship within the meaning of Minn. Stat. §518.06, Subd. 1.

8. Neither party is a member of the Armed Forces of the United States.

9. No order for protection under Chapter 518B or a similar law of another state is in effect.

10. The parties have five minor children from their marriage: Nico Rucki, born June 22, 1996; Samantha Rucki, born June 24, 1998; Gianna Rucki, born November 2, 1999; Nia Rucki, born September 25, 2001; and Gino Rucki, born January 20, 2003.

The minor children are not under the jurisdiction of any juvenile court.

11. The Petitioner is not now pregnant and there are no other minor children affected by this proceeding.

12. It is in the best interest of the parties minor children that Petitioner be granted sole legal and physical custody of them, subject to Respondent's right to reasonable parenting time.

13. The financial circumstances of the parties upon which the child support, spousal maintenance and medical support provisions of the Judgment and Decree are based, are as follows:

A. The Petitioner is employed part-time as a flight attendant for U.S. Airways, earning a gross monthly income of $1,456.

B. Respondent owns a truck broker business, Rucki Trucking in Lakeville, Minnesota. Respondent has gross monthly income of approximately $20,000.

C. The Petitioner has monthly expenses for herself and the minor children of approximately $12,000.

D. There are currently no work-related childcare expenses for the minor children.

E. The Respondent's monthly expenses are unknown.

F. The Petitioner provides medical insurance coverage for the minor children through her employer at a cost of approximately $400 per month.

G. The percentage share of the parties' PICS (parental income for determining child support) is 7% for Petitioner, and 93% for Respondent.

The child support awarded herein is consistent with the Child Support Guidelines. See attached Exhibit 1.

14. The parties own household goods, furniture and furnishings, automobiles, recreational vehicles, and miscellaneous personal property.

15. The parties own a homestead located at 19675 Ireland Place, Lakeville, Dakota County, Minnesota, legally described as:

Lot 9, Block 1, Paradise Hills.

The homestead has a current fair market value of approximately $410,000. It is subject to a first mortgage with a balance of approximately $144,000 and a second mortgage with a balance of approximately $233,000. The downpayment on the homestead was made with Petitioner's nonmarital funds.

16. The parties also own an interest in the following real property

A. Lake property located at 707 Idlewild, Balsam Lake, Polk County, Wisconsin, legally described as:

See attached Exhibit 2.

This property is subject to a first mortgage, and a second mortgage in favor of the Respondent's parents, Frederick and Victoria Rucki. There is currently no net value to this property.

B. Rental property located at 17459 Flagstaff Avenue, Lakeville, Minnesota 55044, legally described as:

Section 110 Township 114 Range 20
PT of SE ¼ Beg NW Cor of 10 114 20

This property is subject to certain encumbrances, including a lien in favor of Respondent's parents. There is currently no net value to this property.

17. The parties own household goods, furniture and furnishings, bank accounts, and miscellaneous personal property.

18. The parties have incurred various debts and obligations during the marriage.

CONCLUSIONS OF LAW

1. Dissolution. The bonds of matrimony heretofore existing between the Petitioner and the Respondent are hereby dissolved.

2. Custody and Parenting Time. The Petitioner is granted sole legal and physical custody of the parties' minor children, Nico, Samantha, Gianna, Nia and Gino Rucki, subject to Respondent's right to reasonable parenting time as agreed to by the parties.

3. Basic Child Support. Beginning May 1, 2011, the Respondent will pay child support to the Petitioner of $3,673 per month for so long as the parties' children are minor or dependent children as defined by statute. The child support payments shall be made in equal installments on the first and fifteenth day of each month.

Beginning May, 1, 2011, the Respondent shall pay Petitioner spousal maintenance of $10,000 per month. The spousal maintenance payments to Petitioner will be made in equal installments on the first and fifteenth day of each month. The spousal maintenance payments will terminate upon the remarriage or death of the Petitioner.

It is intended that the maintenance payable to Petitioner shall be includable in Petitioner's gross income pursuant to Section 71 of the Internal Revenue Code, and will be deductible by Respondent pursuant to Section 215 of the Internal Revenue Code.

7. Medical and Dental Insurance for Respondent. The Petitioner shall insure that the medical insurance and dental coverage on the Respondent presently maintained by her through her employer will be available to the Respondent for so long as possible under Minn. Stat. 62A.21, Subd. 2a, Minn. Stat. §62C.142, Subd. 2a, Minn. Stat. §62D.101, Subd. 2a, the federal COBRA provisions. The Respondent shall pay for any additional premiums Petitioner must pay above the regular cost of family/dependant coverage for his coverage.

Each party shall pay for his/her own unreimbursed medical and dental expenses.

8. Life Insurance For so long as the Respondent is obligated to pay child support and/or spousal maintenance to Petitioner, he will maintain life insurance with net death benefits of not less than $250,000, naming Petitioner as the irrevocable beneficiary thereof. As requested from by Petitioner, Respondent shall provide written verification that the required net death benefits of insurance are in effect as required by this paragraph.

9. Marital Homestead. The Petitioner is awarded all of the parties' interest in the marital homestead located 19675 Ireland Place, Lakeville, Dakota County, Minnesota, legally

described as:

Lot 9, Block 1, Paradise Hills.

free from any interest of the Respondent. Petitioner is solely responsible for payment of the first and second mortgages against the property and shall indemnify and hold the Respondent harmless from payment of these encumbrances.

Title to the homestead shall be transferred to the Petitioner pursuant to the terms of a Summary Real Estate Disposition Judgment which shall be prepared by counsel for the Petitioner.

10. Lake Property. Petitioner is awarded all right, title and interest in the parties' Lake Property located at 707 Idlewild, Balsam Lake, Polk County, Wisconsin, legally described as:

See attached Exhibit 2.

free from any interest of the Respondent. Petitioner is solely responsible for the first mortgage against the cabin and shall indemnify and hold the Respondent harmless from payment of this encumbrance.

The Respondent is solely responsible for payment of any debt owed to his parents, Frederick and Victoria Rucki, whether such debt was incurred in the name of Petitioner or Respondent individually, jointly, or on behalf of the Respondent's business, and is also solely responsible for the mortgage against the Lake Property which secures any such debt. Respondent will indemnify and hold the Petitioner harmless from payment of any such debt. Respondent shall remove the lien/mortgage of his parents against the Lake Property within thirty (30) days after the entry of the Judgment and Decree.

Within thirty (30) days after the entry of the Judgment and Decree the Respondent shall execute and deliver to the Petitioner a quit claim deed (prepared by counsel for the Petitioner) transferring all of his interest in the Lake Property to Petitioner. In the event the Respondent fails to do so, then a certified copy of the Judgment and Decree shall operate to transfer sole title to the Lake Property to the Petitioner.

11. Flagstaff Avenue Property. The Respondent is awarded all of the parties' right, title and interest in the real property located at 17549 Flagstaff Avenue, Lakeville, Dakota County, Minnesota , legally described as:

Section 10, Township 114, Range 20,
PT of SE ¼ BEG NW COR of 10 114 20

free from any interest of the Petitioner. The Respondent is solely responsible for any encumbrances against this property and shall indemnify and hold the Petitioner harmless from payment of this debt.

Within thirty (30) days after the entry of the Judgment and Decree the Petitioner shall execute and deliver to the Respondent a quit claim deed (prepared by Respondent) transferring all of her interest in this property to the Respondent. In the event she fails to do so, then a certified copy of the Judgment and Decree shall operate to transfer sole title to the property to the Respondent.

12. Personal Property to be Awarded to Petitioner. The Petitioner is awarded, as her individual property, sole possession, ownership, and title of, and all of the parties' interest in each of the following assets, free from any interest of the Respondent:

A. The 2006 Chevrolet Suburban automobile and 1990 Mercedes automobile, subject to the responsibility to pay the loan against this vehicle.

B. All household furnishings, furniture and personal property currently located at the homestead and Lake Property, except as mutually agreed by the parties.

C. The 2000 Centurion boat and 2006 Premier pontoon, boat trailers and motors.

D. The Disney Vacation Club Timeshare.

E. Any bank accounts in her name.

13. Personal Property to be Awarded to Respondent. The Respondent is awarded, as his individual property, sole possession, ownership, and title of, and all of the parties' interest in each of the following assets, free from any interest of the Petitioner:

A. The 1965 Chevelle automobile, 1965 Cadillac automobile and 1998 Chevrolet Truck.

B. Any bank accounts in his name.

C. Rucki Trucking.

19. Indebtedness. The Petitioner is solely responsible for the joint credit card debt owed to U.S. Bank and will indemnify and hold the Respondent harmless from payment of this debt. The Respondent is solely responsible for payment of the following debts and will indemnify and hold harmless the Petitioner from payment of the following debts:

A. The joint credit card debt owed to Wells Fargo Bank.

B. Any debts owed to his parents, whether such debts were incurred solely in the name of one of the parties, as a joint debt, or on behalf of the Respondent's business, Rucki Trucking.

C. The parties' joint tax debt owed for 2009 and any other state or federal taxes owed for the parties.

D. Any debt owed to the Country Club.

Each of the parties is solely responsible for any other debts she/he has incurred

individually including any credit card debts, and shall indemnify and hold the other party harmless from payment of these debts.

In the event that there is a debt obligation that has not been disclosed by either party, that obligation shall become the sole responsibility of the party who incurred it. Neither party shall contract any debt, charge or liability in the future for which the other party may become liable.

20. Attorneys and Expert Fees and Costs. Respondent shall pay half of the Petitioner's costs and attorney's fees incurred in connection with this proceeding. Respondent shall make this payment directly to the law firm of Katz, Manka, Teplinsky, Graves & Sobol within thirty (30) days after entry of the Judgment and Decree.

Respondent is responsible for his costs and attorney's fees incurred incident to this proceeding. Petitioner is responsible for the balance of her remaining costs and attorney's fees.

21. Service of Judgment and Decree. Service of a copy of the final Judgment and Decree herein may be made upon either party's attorney, in lieu of personal service upon a party.

22. Withdrawal as Attorney of Record. Kathryn A. Graves, Esq., shall no longer be the attorney of record for Petitioner effective sixty-one (61) days from the date of entry of the Judgment and Decree herein.

23. Execution and Exchange of Documents. To implement the terms and provisions contained herein, each of the parties shall make, execute and deliver to the other party instruments of conveyance, assignment and other documents as may be required. In the event either party fails to do so, a certified copy of the Judgment and Decree shall operate as said conveyance.

24. Enforceability. The terms, conditions and provisions contained herein shall inure to the benefit of and be binding upon and enforceable against each of the parties hereto and their respective heirs, personal representatives and estates.

ORDER FOR JUDGMENT

LET THE JUDGMENT AND DECREE BE ENTERED ACCORDINGLY.

BY THE COURT:

Dated: May 12, 2011.

Judge of District Court

I hereby certify that the foregoing Conclusions of Law constitute the Judgment and Decree of the Court.

DISTRICT COURT ADMINISTRATOR

By: Deputy Carolyn M. Renn

APPROVED AS TO CONTENT AND FORM:

Sandra Sue Grazzini-Rucki, Petitioner

David Victor Rucki, Respondent

Subscribed and sworn to before me this 19 day of april, 2011.

Notary Public

Subscribed and sworn to before me this 19 day of April, 2011.

Notary Public

MATTHEW K. BACKBERG
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2010

KATZ, MANKA, TEPLINSKY, GRAVES & SOBOL, LTD.

Kathryn A. Graves, #16415X
Attorneys for Petitioner
Suite 4150
225 South Sixth Street
Minneapolis, Minnesota 55402
Telephone: (612) 333-1671

WAIVER OF RIGHT TO COUNSEL

I know I have the right to be represented by a lawyer of my choice and I freely and knowingly waive that right.

David Victor Rucki

(SCAO rev. 09/01/07)

# FORM 3. APPENDIX A

NOTICE IS HEREBY GIVEN TO THE PARTIES:

I. PAYMENTS TO PUBLIC AGENCY. According to Minnesota Statutes, section 518A.50, payments ordered for maintenance and support must be paid to the Minnesota child support payment center as long as the person entitled to receive the payments is receiving or has applied for public assistance or has applied for support and maintenance collection services. Parents mail payments to: P.O. Box 64326, St. Paul, MN 55164-0326. Employers mail payments to: P.O. Box 64306, St. Paul, MN 55164.

II. DEPRIVING ANOTHER OF CUSTODIAL OR PARENTAL RIGHTS -- A FELONY. A person may be charged with a felony who conceals a minor child or takes, obtains, retains, or fails to return a minor child from or to the child's parent (or person with custodial or parenting time rights), according to Minnesota Statutes, section 609.26. A copy of that section is available from any court administrator.

III. NONSUPPORT OF A SPOUSE OR CHILD -- CRIMINAL PENALTIES. A person who fails to pay court-ordered child support or maintenance may be charged with a crime, which may include misdemeanor, gross misdemeanor, or felony charges, according to Minnesota Statutes, section 609.375. A copy of that section is available from any district court clerk.

IV. RULES OF SUPPORT, MAINTENANCE, PARENTING TIME.

A. Payment of support or spousal maintenance is to be as ordered, and the giving of gifts or making purchases of food, clothing, and the like will not fulfill the obligation.

B. Payment of support must be made as it becomes due, and failure to secure or denial of parenting time is NOT an excuse for nonpayment, but the aggrieved party must seek relief through a proper motion filed with the court.

C. Nonpayment of support is not grounds to deny parenting time. The party entitled to receive support may apply for support and collection services, file a contempt motion, or obtain a judgment as provided in Minnesota Statutes, section 548.091.

D. The payment of support or spousal maintenance takes priority over payment of debts and other obligations.

E. A party who accepts additional obligations of support does so with the full knowledge of the party's prior obligation under this proceeding.

F. Child support or maintenance is based on annual income, and it is the responsibility of a person with seasonal employment to budget income so that payments are made throughout the year as ordered.

G. A *Parental Guide to Making Child-Focused Parenting-Time Decisions* is available from any court administrator.

H. The nonpayment of support may be enforced through the denial of student grants; interception of state and federal tax refunds; suspension of driver's, recreational, and occupational licenses; referral to the department of revenue or private collection agencies; seizure of assets, including bank accounts and other assets held by financial institutions; reporting to credit bureaus; interest charging, income withholding, and contempt proceedings; and other enforcement methods allowed by law.

I. The public authority may suspend or resume collection of the amount allocated for child care expenses if the conditions of Minnesota Statutes, section 518A.40, subdivision 4, are met.

J. The public authority may remove or resume a medical support offset if the conditions of section 518A.41, subdivision 16, are met.

V. MODIFYING CHILD SUPPORT. If either the obligor or obligee is laid off from employment or receives a pay reduction, child support may be modified, increased, or decreased. Any modification will only take effect when it is ordered by the court, and will only relate back to the time that a motion is filed. Either the obligor or obligee may file a motion to modify child support, and may request the public agency for help. UNTIL A MOTION IS FILED, THE CHILD SUPPORT OBLIGATION WILL CONTINUE AT THE CURRENT LEVEL. THE COURT IS NOT PERMITTED TO REDUCE SUPPORT RETROACTIVELY.

VI. PARENTAL RIGHTS FROM MINNESOTA STATUTES, SECTION 518.17, SUBDIVISION 3. UNLESS OTHERWISE PROVIDED BY THE COURT:

A. Each party has the right of access to, and to receive copies of, school, medical, dental, religious training, and other important records and information about the minor children. Each party has the right of access to information regarding health or dental insurance available to the minor children. Presentation of a copy of this order to the custodian of a record or other information about the minor children constitutes sufficient authorization for the release of the record or information to the requesting party.

B. Each party shall keep the other informed as to the name and address of the school of attendance of the minor children. Each party has the right to be informed by school officials about the children's welfare, educational progress and status, and to attend school and parent teacher conferences. The school is not required to hold a separate conference for each party.

C. In case of an accident or serious illness of a minor child, each party shall notify the other party of the accident or illness, and the name of the health care provider and the place of treatment.

D. Each party has the right of reasonable access and telephone contact with the minor children.

VII. WAGE AND INCOME DEDUCTION OF SUPPORT AND MAINTENANCE. Child support and / or spousal maintenance may be withheld from income, with or without notice to the person obligated topay, when the conditions of Minnesota Statutes, section 518A.53, have been met. A copy of that section is available from any court administrator.

VIII. CHANGE OF ADDRESS OR RESIDENCE. Unless otherwise ordered, each party shall notify the other party, the court, and the public authority responsible for collection, if applicable, of the following information within ten days of any change: residential and mailing address, telephone number, driver's license number, social security number, and name, address, and telephone number of the employer.

IX. COST OF LIVING INCREASE OF SUPPORT AND MAINTENANCE. Basic support and / or spousal maintenance may be adjusted every two years based upon a change in the cost of living (using the U.S. Department of Labor, Bureau of Labor Statistics, consumer price index Mpls. St. Paul, for all urban consumers (CPI-U), unless otherwise specified in this order) when the conditions of Minnesota Statutes, section 518A.75, are met. Cost of living increases are compounded. A copy of Minnesota Statutes, section 518A.75, and forms necessary to request or contest a cost of living increase are available from any court administrator.

X. JUDGMENTS FOR UNPAID SUPPORT; INTEREST. ACCORDING TO MINNESOTA STATUTES, SECTION 548.091:

A. If a person fails to make a child support payment, the payment owed becomes a judgment against the person responsible to make the payment by operation of law on or after the date the payment is due, and the person entitled to receive the payment or the public agency may obtain entry and docketing of the judgment without notice to the person responsible to make the payment.

B. Interest begins accruing on a payment or installment of child support whenever the unpaid amount due is greater than the current support due.

XI. JUDGMENTS FOR UNPAID MAINTENANCE. A judgment for unpaid spousal maintenance may be entered and docketed when the conditions of Minnesota Statutes, section 548.091, are met. A copy of that section is available from any court administrator.

XII. ATTORNEY FEES AND COLLECTION COSTS FOR ENFORCEMENT OF CHILD SUPPORT. A judgment for attorney fees and other collection costs incurred in enforcing a child support order will be entered against the person responsible to pay support when the conditions of Minnesota Statutes, section 518A.735, are met. A copy of that section and forms necessary to request or contest these attorney fees and collection costs are available from any court administrator.

XIII. PARENTING TIME EXPEDITOR PROCESS. On request of either party or on its own motion, the court may appoint a parenting time expeditor to resolve parenting time disputes under Minnesota Statutes, section 518.1751. A copy of that section and a description of the expeditor process is available from any court administrator.

XIV. PARENTING TIME REMEDIES AND PENALTIES. Remedies and penalties for wrongful denial of parenting time are available under Minnesota Statutes, section 518.175, subdivision 6. These include compensatory parenting time; civil penalties; bond requirements; contempt; and reversal of custody. A copy of that subdivision and forms for requesting relief are available from any court administrator.

# Child Support Guidelines Worksheet

Parent A: Sandra
Parent B: David

IV-D Case Number:
Court File Number:

Number of Joint Children: 6
Date: 4/19/2011

| | | Parent A | Parent B | Combined |
|---|---|---|---|---|
| Income | 1a. Monthly Income Received | $20000 | $1456 | ---- |
| | 1b. Child(ren)'s Social Security/Veterans' Benefits Derived From a Parent's Eligibility | $0 | $0 | ---- |
| | 1c. Potential Income | $0 | $0 | ---- |
| | 1d. Spousal Maintenance Orders Obligated to be Paid | $0 | $0 | ---- |
| | 1e. Child Support Order(s) Obligated to be Paid for Nonjoint Child(ren) | $0 | $0 | ---- |
| | 1f. Monthly Gross Income (1a+1b+1c-1d-1e) | $20000 | $1456 | ---- |
| Adjustments | 2a. Number of Nonjoint Child(ren) in the Home (Maximum number allowed is 2) | 0 | 0 | ---- |
| | 2b. Deduction for Nonjoint Child(ren) in the Home | $0 | $0 | ---- |
| | 3. Parental Income for Determining Child Support (PICS) | $20000 | $1456 | $21456 |
| | 4. Percentage Share of Combined PICS | 93% | 7% | ---- |
| | 5. Combined Basic Support Obligation | ---- | ---- | $3949 |
| | 6. Pro Rata Basic Support Obligation | $3673 | [illegible] | ---- |
| Basic Child Support Obligation | 7. Basic Support Obligation After Parenting Expense Adjustment (if applicable) | $3673 | | ---- |
| Child Care Obligation | 8. Child Care Support Obligation for Joint Child(ren) | | | ---- |
| Medical Support Obligation | 9a. Monthly Cost of Health Care Coverage for Joint Child(ren) | $0 | $400 | ---- |
| | 9b. Pro Rata Share of Health Care Coverage Costs | $372 | $28 | ---- |
| Appropriate Coverage Available | 9c. Contribution to Health Care Coverage | $372 | | ---- |
| | 9d. Monthly Cost of Dental Coverage for Joint Child(ren) | $0 | $0 | ---- |
| | 9e. Pro Rata Share of Dental Coverage Costs | $0 | $0 | ---- |
| | 9f. Contribution to Dental Coverage | | | ---- |
| | 9g. Medical Support Obligation-Appropriate Coverage Available | $372 | | ---- |
| No Appropriate Insurance Available | 10. Medical Support Obligation for Public Coverage | | | ---- |
| Uninsured/Unreimbursed Expenses | 11. Share of Uninsured and/or Unreimbursed Medical Expenses | 93% | 7% | ---- |
| | 12. Net Child Support Obligation | $4045 | $0 | ---- |
| Benefits Adjustment | 13. Child(ren)'s Social Security/Veterans' Benefits Derived from Parent's Eligibility | | | ---- |
| Computing a Final | 14. Total Child Support O[illegible] | [illegible]4045 | $0 | ---- |

EXHIBIT 1

| | | | | |
|---|---|---|---|---|
| Obligation | 15a. Monthly Gross Income | $20000 | $1456 | ---- |
| Ability to Pay Calculation | 15b. Income Available for Support | $18811 | $367 | ---- |
| | 16. Monthly Child Support Obligation - No Adjustment Necessary | $4045 | $0 | ---- |
| | 17. Amount of Reduction | $0 | $0 | ---- |
| Child Support Obligation Adjustment | 18. Medical Support | | | |
| | Original Obligation | | | ---- |
| | Amount of Reduction | | | ---- |
| | New Obligation | | | ---- |
| | 19. Child Care Support | | | |
| | Original Obligation | | | ---- |
| | Amount of Reduction | | | ---- |
| | New Obligation | | | ---- |
| | 20. Basic Support | | | |
| | Original Obligation | | | ---- |
| | Amount of Reduction | | | ---- |
| | New Obligation | | | ---- |
| | 21. Monthly Child Support Obligation After Adjustment | | | ---- |
| Presumptive Minimum Order/Basic Support Only | 22a. Presumptive Minimum Order for 1 or 2 Joint Children | | | ---- |
| | 22b. Presumptive Minimum Order for 3 or 4 Joint Children | | | ---- |
| | 22c. Presumptive Minimum Order for 5 or More Joint Children | | | ---- |

*Disclaimer: The child support guidelines worksheet, instructions, and calculator are for information and educational use only and are not a guarantee of the amount of child support that will be ordered. The results obtained are only as accurate as the information used. The actual child support order may be affected by other factors. The Court has the final authority to determine the amount of the child support order. If this worksheet is attached to a court order, it is part of the Court's decision. This worksheet may or may not show the amount the Court decided to order. If the amount in the order is different, that is the amount to be paid.*

File No.: 12007

Parcel 1: Lots Ten (10) and Eleven (11), Plat of Idle Wild, except the West 60 feet of said Lot Eleven (11), in the Village of Balsam Lake, Polk County, Wisconsin.

Parcel 2: Outlot One (1) of Certified Survey Map No. 5073 recorded in Volume 22 of Certified Survey Maps, page 180 as Document No. 709540, being part of Lots Eleven (11), Twelve (12) and Thirteen (13), Plat of Idle Wild, Village of Balsam Lake, Polk County, Wisconsin, located in Government Lot Four (4), Section Three (3), Township Thirty-four (34) North, Range Seventeen (17) West, Village of Balsam Lake, Polk County, Wisconsin.

Tax ID #: 106-00051-0001, 106-00049-0000

EXHIBIT

Z

# SIX-MONTH REVIEW HEARING REQUEST INSTRUCTIONS

See Minn. Stat. § 518.1781

You have the right to request a review hearing within six months after entry of a decree of dissolution or legal separation or order that establishes child custody, parenting time, or child support. Minn. Stat. § 518.1781 (2006). The form you will need to use to request a review hearing is attached.

Purpose of Review Hearing: The purpose of the review hearing is to make certain parties are following the court order regarding parenting time and the payment of child support. The review hearing IS NOT an opportunity to present any other issues or to ask the court to establish or modify custody, parenting time, or support. The court CAN ONLY review parenting time and child support provisions as already established in the order. If there is no court ordered parenting time or child support, the court CANNOT create a parenting plan, establish parenting time, or child support at this review hearing. A petition or motion asking for any other type of relief from the court must be served and filed separately from this request. You may wish to contact an attorney or other legal services provider for more information regarding any other type of relief.

Instructions to the Party Requesting the Review Hearing: If you decide to request a review hearing, you must do the following within six months from the date of entry of the order or decree:

- remove this cover page and complete the Request for Hearing form. Make enough copies of the form and have it served upon all parties, including the County Attorney's Office, if the county child support enforcement agency (public authority) is a party in the case. Keep a copy of the form for yourself.

NOTE: <u>YOU CANNOT</u> HAND DELIVER OR MAIL THE REQUEST FOR HEARING YOURSELF. YOU <u>MUST</u> HAVE SOMEONE ELSE OVER THE AGE OF 18 WHO IS NOT A PARTY TO THE CASE HAND DELIVER OR MAIL THE REQUEST FOR HEARING FOR YOU

- return the completed original Request for Hearing form and a completed Affidavit of Service form to Court Administration in the county listed at the top of the Request for Hearing form. Court Administration will schedule a hearing and send all parties notice of the hearing date, time, and location.

Proof of Child Support Payment: The person who pays support has to provide proof of all the child support payments he/she made. If a party is receiving public assistance or child support enforcement services from the county child support enforcement agency, either party may request that the county child support enforcement agency provide payment information to the parties and the court. Any request made to the county child support enforcement agency must be made at least 14 days before the hearing date.

# SIX-MONTH REVIEW HEARING REQUEST

See Minn. Stat. § 518.1781

State of Minnesota
_____________ County

District Court
_______ Judicial District
Court File Number: ______________
Case Type: ______________

☐ In Re the Marriage of:

______________________________

______________________________
Plaintiff(s) / Petitioner

vs / and

______________________________
Defendant / Respondent

______________________________
Intervenor

Request for Six Month Review Hearing

Check the box or boxes that apply:

Child Support

☐ The other party is not paying child support as ordered. *(Briefly explain)*

______________________________________________________________

______________________________________________________________

______________________________________________________________

Parenting Time provisions

☐ The other party has not complied with the court ordered parenting time as follows:

______________________________________________________________

______________________________________________________________

______________________________________________________________

______________________________________________________________

Dated: ______________

______________________________
Signature
Print Name: ______________________
Address: ______________________
City/State/Zip: ______________________
Telephone: (____)______________________
Attorney for: ______________________

State of Minnesota

District Court

County

Judicial District: ____
Court File Number: ____
Case Type:

☐ In Re the Marriage of:

____

____
Plaintiff / Petitioner

vs / and

____
Defendant / Respondent

____
Intervenor

☐ Affidavit of Personal Service
☐ Affidavit of Service By Mail

STATE OF MINNESOTA )
COUNTY OF ____ ) SS
(County where Affidavit Signed)

I, ____ (Name of person who served documents), being duly sworn, upon oath, state that on ____ (Date service made) I served the attached documents, namely ____ (Title of Documents hand delivered or mailed) ____ upon (check one):

☐ Plaintiff / Petitioner (Name) ____
☐ Defendant / Respondent (Name) ____
☐ County Agency (Name) ____
☐ Other (Name) ____

by (check method of service used):

☐ Personally handing a true and correct copy of the document(s) to ____ named above at ____ o'clock ____.m. at ____ (Address where documents delivered)

☐ Mailing a true and correct copy of the document(s) to ____ named above by placing the document(s) in an envelope with sufficient postage in the United States mail at the Post Office located in the City of ____, State of ____, at the person's last known address of: ____

Dated: ____

____
Signature (Sign only in presence of Notary or Court Deputy)
Print Name: ____
Address: ____
City/State/Zip: ____
Telephone: ( ____ ) ____

Sworn / affirmed before me this ____ day of ____, ____

____
Notary Public/ Deputy Court Administrator

STATE OF MINNESOTA, COUNTY OF DAKOTA
Certified to be a true and correct copy of the original on file and of record in my office this 6th day of Sept 2013
CAROLYN M. RENN, COURT ADMINISTRATOR
BY CMaOfgu DEPUTY

STATE OF MINNESOTA | DISTRICT COURT

COUNTY OF DAKOTA | FIRST JUDICIAL DISTRICT
FAMILY COURT DIVISION

Court File No. 19AV FA 11 1273

In Re the Marriage of:

Sandra Sue Grazzini-Rucki,

Petitioner,

and

David Victor Rucki,

Respondent.

**SUMMARY REAL ESTATE DISPOSITION JUDGMENT**

Check here if part or all of the land herein is Torrens:

Date of parties' marriage: August 31, 1991

Date of entry of Stipulated Judgment and Decree of Dissolution: May 12, 2011

Name of Petitioner's Attorney: Kathryn A. Graves (#16415X)
Katz, Manka, Teplinsky, Graves & Sobol, Ltd.
Suite 4150
225 South Sixth Street
Minneapolis, MN 55402

Name of Respondent's Attorney: David Victor Rucki,
Respondent *pro se*
19675 Ireland Place
Lakeville, MN 55044

Name of Judge who signed Judgment and Decree: Tim D. Wermager

Name of Referee, if any, who signed Judgment and Decree: N/A

Appearances at the Default or Trial: May 12, 2011

FILED
DAKOTA COUNTY
CAROLYN M. RENN, Court Administrator
MAY 23 2011

Name change (if any) of parties in Judgment and Decree: N/A

The Judgment and Decree resulted from a stipulation, and the real property at issue was described by a legal description.

**THE FOLLOWING ARE THE REAL ESTATE DISPOSITIONS IN THE JUDGMENT AND DECREE:** (attach separate page for each parcel of real estate)

| | |
|---|---|
| Legal Description: | Lot 9, Block 1, Paradise Hills |
| Certificate of Title No. (if land is torrens): | N/A |
| Address: | 19675 Ireland Place<br>Lakeville, MN 55044 |
| Names of parties awarded an interest in the above real estate: | Sandra Sue Grazzini-Rucki |
| Interest awarded: | 100% |

Liens, mortgages, encumbrances or other interests in the above real estate created by the Judgment and Decree (include name of person to whom awarded and interest awarded):

None

Triggering or contingent events set forth in the Judgment and Decree affecting the disposition of the above parcel of real estate:

None



Approval of Summary Real Estate Disposition Judgment:

BY THE COURT:

Dated: May 23, 2011

Judge of District Court

I hereby certify that the above Summary Real Estate Disposition Judgment has been filed with me:

COURT ADMINISTRATOR

Dated: May 23, 2011

Deputy

NO. A13-0859

State of Minnesota
# In Supreme Court

In Re Sandra Sue Grazzini-Rucki,

*Petitioner,*

David L. Knutson, Judge of the Dakota County District Court,

*Respondent.*

In Re the Marriage of:

Sandra Sue Grazzini-Rucki,

*Petitioner,*

vs.

David Victor Rucki,

*Respondent.*

## PETITION FOR REVIEW OF DECISION OF COURT OF APPEALS AND APPENDIX

Judge David L. Knutson, Dakota County District Court, 1560 Highway 55, Hastings, MN 55033

Lori Swanson, Esq., Minnesota Attorney General, Minnesota Attorney General's Office, 1100 Bremer Tower, 445 Minnesota Street, St. Paul, MN 55101

Lisa M. Elliott, 2409 West 66th Street, Minneapolis, MN 55423, *attorney for David Rucki*

James Ward Donehower, Dakota County Attorney, 1560 Highway 55, Hastings, MN 55033

John Jerabek, NIEMI BARR & JERABEK PA, 510 Marquette Avenue, #200, Minneapolis, MN 55402-1110

MACDONALD LAW FIRM, LLC

Michelle Lowney MacDonald

Michelle Lowney MacDonald (#182370)
Athena V. Hollins (#0392249)
1069 South Robert Street
West St. Paul, MN 55118
Tel: (651) 222-4400
Fax: (651) 222-1122
michelle@MacDonaldLawFirm.com

*Attorneys for Petitioner*
*Sandra Grazzini-Rucki*

2013 – BACHMAN LEGAL PRINTING – FAX (612) 337-8053 – PHONE (612) 339-9518 or 1-800-715-3582

**I. LEGAL ISSUES AND THEIR RESOLUTION BY COURT OF APPEALS.**

Do courts violate fundamental and constitutional rights by temporarily seizing persons, property and children using divorce laws? Is an extraordinary remedy warranted here? The Court of Appeals avoided the constitutional challenge to Minn. Stat. §518, determining orders are temporary, and not reviewable, even though a violation of fundamental, constitutional rights of citizens to parent, and to be secure in their persons, houses, papers and effects was alleged (APP.202).

**II. CRITERIA RELIED UPON TO SUPPORT PETITION.** Denial of a writ under this rule or Rule 121 by the Court of Appeals is subject to review by the Supreme Court through petition for review under Rule 117. <u>See</u> Minn. R. Civ. App. P. 120.05. The lower court has ruled on the constitutionality of a statute. The question is an important one upon which the Minnesota Supreme Court should rule. In justifying the seizure, the lower courts have so far departed from the accepted and usual course of justice as to call for an exercise of the Supreme Court's supervisory powers. A decision by the Supreme Court will clarify the law as to temporary orders and writs, and has statewide impact. <u>See</u> Minn. R. Civ. App. P. 117, subd. 2(a)(b)(c) and(d)(1) - (3).

**III. STATEMENT OF THE CASE.** Sandra Grazzini-Rucki is the parent of 5 children, ages 10 to 16, Nico, Samantha, Gianna, Nia and Gino, two of which have been missing since February 22, 2013. Our lower courts have determined that Minn. Stat. §518, Dissolution of Marriage, authorizes removing a parent from her home; leaving her children in the care of a non-parent; and prohibiting all contact, with threat of incarceration. A court's discretion to do so, without Minn. Stat. §518 specifying this remedy, is proof positive of its unconstitutionality, as are the over 3000 orders that regulate this family, the last straw being on September 7, 2012, with an order to vacate her home by noon that day; delegating custody rights to a non-parent or "*other individual as recommended by the Guardian...*", and prohibiting all contact by parents with their own children, with a violation triggering "*a contempt proceeding with the possibility of incarceration.*" (APP.18).

The order was initiated by attorneys after the marriage terminated, and prohibited her from the children's schools and church.

After we filed motions on February 12, 2013 relating to the constitution, and to restore her children and property, the court signed a Summary Real Estate Disposition on February 20, 2013, contrary to the award of the home to her on August 28, 2012, at the direction of the attorney who had moved the court to deprive both parents of custody and contact (APP.22). On February 26, 2013, Appellant moved for relief from all orders restricting custody, contact and taking of property to comport with the Constitution and laws of the State of Minnesota, and further to declare Minn. Stat. §518, Marriage Dissolution, unconstitutional as violating the First (freedom of Speech), Fourth (unreasonable searches and seizures), Ninth (protects rights not enumerated in the constitution), Thirteenth (involuntary servitude, except as punishment for a crime); and Fourteenth (Due Process and Equal Protection) Amendments to the Constitution to no avail (APP.66-100).

IV. **BRIEF ARGUMENT IN SUPPORT OF THE PETITION.** Ms. Grazzini-Rucki alleges that the court violated the Minnesota and Federal constitution by seizing her person, children and property on September 7, 2012. That Minnesota divorce law can be interpreted by the lower courts to grant this type of discretion to Judges, and to allow this type of seizure in the "best" interest of the children and family is proof positive the statute is unconstitutional. What's worse is unimaginable. Without a finding of endangerment, abuse, or parental unfitness, the court's entry into the realm of family, can violate fundamental rights. The United States Court of Appeals for the Eighth Circuit has stated that strict scrutiny applies where a regulation "forces family choices," as opposed to merely "affect[ing]" or "encourag[ing]" them. *Gorrie v. Bowen*, 809 F.2d 508, 523 (8th Cir. 1987). The custody proceeding was a forced choice. In *Moore v. East Cleveland* 431 US 494 (1977) and *Meyer v. Nebraska* and *Pierce Society of Sisters* have consistently acknowledged a "private realm of family life which the state cannot enter". Here, the Judge acted via telephone conference by motion initiated by an attorney, after mother met with an expert for ½ hour who had not been involved before,

or since. The children testified that they wanted to be returned to their mother's care, and the Judge sealed the file, even from parents (APP.165). The rules of due process, civil procedure followed by the attorney and Judge are not distinguishable. The lower courts justify the orders separating this family as "temporary" relief, and the order stands even though two of the children are missing (APP.167, 202). The order included custody in any person the guardian may designate, and after the guardian objected to parent's request for removal, she then arranged to withdraw on her own, putting in her place her supervisor with whom the mother had filed a complaint (APP.197). The mother was required to abandon her home and children, without funds to pay an attorney, which she needed.

At the time of the seizure, there were no custody orders relating to this family. That is why vacating orders is critical to restoring this family's liberties. If fundamental rights are recognized, we can see that a family is not operating outside the law just because a court vacates orders and dismisses the case. The over 3000 individual orders regulating this family represent a quagmire to sort out. The lower courts take an order of the "worst" kind, and justified it as in the "best" interest, when "best" should mean "finest", "greatest", "unsurpassed." This type of order is anything but in the "best" interest of children and family. Family members or attorneys could not possibly have notice that a court could do this by reading the constitution, statute, or rules of procedure. And to participate in a custody trial on September 11, expecting the Judge will follow the law that "temporary" orders that drag on interminable have no prejudicial effect resembles a charade, considering the Court already sealed evidence of the children's testimony from their own parents, another order requested to be vacated. (APP.165). No statutory scheme is distinguishable. No answer, counter petition or personal service of process §518.131(9).

There are those of us who still believe in justice for all. Attorneys and Judges are sworn to uphold the constitution for even party opponents, and when they don't there seems to be no recourse except the proliferation of litigation. The changes they mandate can never be reversed. Orders that judges think are

"best" are destroying families in the "worst" way, and these decisions follow them for life. We have disregarded the constitution for family ideology, a set of conscious and unconscious ideas that constitute one's goals, expectations and actions, a comprehensive vision. A myth.

Due Process of Law requires clear rules, government adherence to those rules, speedy trials, adequate legal representation for all parties, impartial decision makers and an appellate process. See eg. *MLB v. SLB*, 519 US 102 (1996); *Stanley v. Illinois*, 406 US 645 (1972); *Armstrong v. Manzo*, 380 US 545 (1965); *Mullane v. Cent. Hanover Bank & Trust C.*, 339 US 306 (1950). In practice, the Family Court provides none of these. Lawmakers and courts have ignored a fit parent's fundamental rights protected by the United States and Minnesota constitutions. See *Rohmiller v. Hart*, 811 N.W.2d 585 (Minn. 2012), (Citing *Troxel v. Granville*, 530 US 57, 65-66 (2000)). Clearly, prohibiting licit contact, and the constitutionality of orders in the context of fundamental rights and duties to parent is an important issue. The statute allows family members to sue one another with their attorneys and "win" orders in court, representing a culture and justice system focused on force and exaction, rather than love and humanity.

Temporary orders per Minn. Stat. § 518.131 (3) provide for ex parte custody orders upon a finding of *immediate* danger of *physical* harm, not alleged here, nor was there an evidentiary hearing. In domestic abuse actions, a court may grant an ex parte custody order to a party if the court finds that the safety of the child will be jeopardized by unrestricted visitation, and involve a speedy evidentiary hearing. Minn. Stat. §518B.01 Subd. 6(a)(4). A litigant can bring a juvenile Petition of domestic abuse, See Minn. Stat. §260C.101, 141. The UCCJA provides a court can assert temporary emergency jurisdiction to decide if it is necessary to protect the child mistreated or abused or neglected or dependent. See Minn. Stat. § 518D.204.

Ms. Grazzini-Rucki had obtained an order for protection against her husband, which the Judge and attorneys negotiated to dismiss. The Judge who ordered the seizure declared the statute constitutional without analysis, and opposing attorney was non-responsive, even though the mother alleged First Amendment violations the

State must prove constitutional beyond a reasonable doubt. *State v. Botsford*, 630 N.W.2d 11, 15 (Minn. App. 2001), *review denied* (Minn. Sept. 11, 2001). *State v. Crawley*, 789 N.W.2d 899 (Minn. App. 2010). A parent ordered away from home and children, with no contact is a disguise for this deprivation. How does it happen that, if it's not child protection, parents can be deprived of children for indefinite periods, with cases drag on interminable? Courts must have the ability to undo injustice as readily as it inflicts it.

As to involuntary servitude, families in the court system can sympathize with those who have been bound. They know how the chain feels, what it's like to be at the will of an adversary, and the court. To do as the court says, receive what they see fit to give, eat and drink, what their will supplies, and await their pleasure. To be forcibly separated from home, spouse, and children, and denied the sweetness of their society. To live in uncertainty, not knowing today, what the adversary or the court will do tomorrow. To be looked down upon by Judges with scorn, reproach, and contempt, even though a law abiding citizen and parent. What we now suffer is for trying to benefit downtrodden family litigants. We feel for them more than we would have, had we not been placed here. We pray that you exceed our petition and grant what we neither asked, nor had faith to hope for, in the present case.

Dated: July 11, 2013

MACDONALD LAW FIRM, LLC

Michelle Lowney MacDonald, #182370
Athena V. Hollins, #0392249
1069 South Robert Street
West St. Paul, MN 55118
Telephone: (651) 222-4400
Facsimile: (651) 222-1122
Michelle@MacDonaldLawFirm.com

ATTORNEYS FOR PETITIONER
SANDRA SUE GRAZZINI-RUCKI

APPELLANT'S APPENDIX

Petition For Writ of Mandamus, Other Appropriate Relief, May 14, 2013 ............... APP.1

Memorandum Of Points And Authorities In Support Of Petition, May 14, 2013 ............... APP.7

Order (granting motion to remove children from custody and care of Petitioner), September 7, 2012 ............... APP.18

Transcript of Proceeding, Judge Knutson presiding, February 26, 2013 ............... APP.22

Affidavit of Petitioner Sandra Sue Grazzini-Rucki, February 12, 2013, attaching: . APP.54

Email February 12, 2013 ............... APP.64

Notice of Motion and Motion For Relief From Judgment And Asserting That Minn. Stat. §518 is Unconstitutional, Other Relief, February 12, 2013 ............... APP.66

Memorandum In Support Of The Motion For Relief From Judgment And Questioning The Constitutionality of Minn. Stat §518 and Vacating Court Orders Restricting Petitioner's Liberty, Other Relief, February 12, 2013, including: ............... APP.70

Register of Actions, February 11, 2013 ............... APP.91
Order granting motion to remove children from custody and care of Petitioner, September 7, 2012 ............... APP.96

Notice to Attorney General Asserting that Minn. Stat. §518 is Unconstitutional As Written and Applied, dated February 12, 2013 ............... APP.100

Copy of Minn. Stat. §518, Marriage Dissolution, February 12, 2013 ............... APP.103

Exparte Amended Findings of Fact, Conclusions of Law and Order For Property Division, November 7, 2012, (purportedly reflecting August 28, 2012 record, and awarding Petitioner her Lakeville home, subject to marital lien) ............... APP.148

Exparte Amended Summary Of Real Estate Disposition Judgment (awarding Lakeville home to Lisa Elliott's client, February 20, 2013, following motion and oral argument on constitution, ex parte) ............... APP.161

Order and Memorandum Sealing Transcript (of proceedings consisting of statements of children), March 29, 2013 ............... APP.165

Order and Memorandum, April 19, 2013, (denying petitioner's motion to declare all or part of Minn. Stat. §518 unconstitutional as written and applied; and motions to vacate orders restricting petitioner's custody and parenting time)....................................APP.167

Memorandum, dated April 19, 2013 ....................................................................APP.174

Pretrial order, September 11-12, 2013, June 13, 2013 ...........................................APP.196

Order Dismissing Guardian Ad Litem, June 17, 2013 ..........................................APP.197

Order vacating appointment of Custody Evaluator and Memorandum, June 20, 2013 ...............................................................................................APP.198

Order, Court of Appeals, June 11, 2013 ..............................................................APP.202

STATE OF MINNESOTA
IN COURT OF APPEALS

In Re Sandra Sue Grazzini-Rucki,

Petitioner

District Court Case No.
19-AV-FA-11-1273

David L. Knutson,
Judge of the Dakota County District Court

Appellate Court Case No.

Respondent

In Re the Marriage of:

In Re Sandra Sue Grazzini-Rucki.

Petition for Writ of Mandamus
and Other Appropriate Relief

Petitioner

vs.

David Victor Rucki,

Respondent

TO: THE COURT OF APPEALS OF THE STATE OF MINNESOTA, 25 REV. DR. MARTIN LUTHER KING JR. BLVD., ST. PAUL, MINNESOTA 55155; JUDGE DAVID L. KNUTSON, DAKOTA COUNTY DISTRICT COURT, 1560 HIGHWAY 55, HASTINGS, MN 55033; LORI SWANSON, ESQ., MINNESOTA ATTORNEY GENERAL'S OFFICE, 1110 BREMER TOWER, 445 MINNESOTA STREET, ST. PAUL, MN 55101; AND DAVID VICTOR RUCKI, BY AND THROUGH HIS ATTORNEY, LISA M. ELLIOTT, 2409 WEST 66TH STREET, MINNEAPOLIS, MN 55423; JAMES WARD DONEHOWER, DAKOTA COUNTY ATTORNEY, 1560 HIGHWAY 55, HASTINGS, MN 55033.

MACDONALD LAW FIRM, LLC

Dated: May 14, 2013

Michelle L. MacDonald, #182370
Athena V. Hollins, #0392249
1069 South Robert Street
West St. Paul, MN 55118
Telephone: (651) 222-4400
Facsimile: (651) 222-1122
ATTORNEY FOR PETITIONER
SANDRA GRAZZINI-RUCKI

STATE OF MINNESOTA
IN COURT OF APPEALS

In Re Sandra Sue Grazzini-Rucki,

No.

Petitioner

David L. Knutson,
Judge of the Dakota County District Court

Respondent

District Court Case

19-AV-FA-11-1273

Appellate Court Case No.

In Re the Marriage of:

In Re Sandra Sue Grazzini-Rucki.

Petitioner

vs.

David Victor Rucki,

Respondent

Petition for Writ of Mandamus and Other Appropriate Relief

PETITION TO THE HONORABLE PRESIDING JUSTICE AND ASSOCIATE JUSTICES OF THE COURT OF APPEALS, STATE OF MINNESOTA:

Petitioner Sandra Sue Grazzini-Rucki , through her attorney, Michelle L. MacDonald, Esq, MacDonald Law Firm, LLC alleges:

1. Petitioner is the petitioner in the action entitled "In Re the Marriage of Sandra Sue Grazzini-Rucki," District Court file no. 19-AV-FA-11-1273, now pending before the Respondent court, even though the parties were divorced May 12, 2011.

2. Respondent is the District court of the State of Minnesota, County of Dakota, in which the above-named matter is pending.

3. Real Party in interest is Petitioner, Sandra Sue Grazzini-Rucki and Respondent, David Victor Rucki, who have interests directly affected by this proceeding because they are the parents of five (5) children born of the marriage, namely, Nico James Rucki, born June 22, 1996; age 16; Samantha Victoria Rucki, born June 24, 1998, age 14; Gianna Jade Rucki, born November 2, 1999, age 13; Nia Gabrielle Rucki, born September 25 2001, age 11; and Gino Paolo Rucki, born January 20, 2003, age 10. They also are the owners of property in the State of Minnesota.

4. On September 21, 2011, the court vacated the Judgment and Decree, entered May 12, 2011; except for the granting of the dissolution of the parties' marriage. In the May 12, 2011 Judgment and Decree, Petitioner was awarded custody of the five minor children, and the homestead real property where they lived.

5. On August 28, 2012, the parties agreed to award the Petitioner the home where she resided with her children located at 19675 Ireland Place, Lakeville, Minnesota. The Court reserved the issue of permanent custody of the children, who resided in the home with the Petitioner pursuant to the May 12, 2011 Judgment & Decree where they had lived all of their lives.

6. On September 5, 2012, Respondent, through his attorney Lisa Elliott, moved to deprive Petitioner and Respondent of custody and contact with their children, and further to deprive Petitioner of the Lakeville home, in a telephone conference with Judge David L. Knudsen, and others, even though the homestead had been awarded to her the week before.

7. On September 7, 2012, the court granted the attorney's motions. A copy of the September 7, 2012 Order, which Petitioner seeks to have vacated, is attached hereto as A.1, and made part of hereof.

8. On September 7, 2012, the Court ordered Petitioner to vacate her home by noon that same day; awarded temporary custody of her children to a relative or "*other individual as recommended by the Guardian ad Litem*"; authorized the relative (who had never petitioned for custody) to move into her home.

9. The Court further ordered that the parties have no contact with the minor children "either directly, indirectly, electronically, by phone, text, mail, or by third party communication." The court added that "*Violation of this no-contact provision shall trigger a contempt proceeding with the possibility of incarceration.*" (A.1).

10. Despite repeated demands, the Petitioner has had parenting time only on her two occasions since the Court's September 7, 2013 order.

11. On November 7, 2012, the court issued an Amended Judgment and Decree for property division purportedly based on the record on August 28, 2012 (A.6). On February 20, 2013, the court signed ex parte an Amended Summary Real Estate

Disposition awarding the home to Respondent Lisa Elliott's client (A.7). Both documents were contrary to the award to the Petitioner, andwere prepared by Lisa Elliott, Esq. and adopted nearly verbatim by the Court.

12. On February 26, 2013, Petitioner moved through her new attorney, Michelle L. MacDonald, Esq. for relief from the operation of the Amended Judgment & Decree; and to vacate the September 7, 2012 order, and any and all orders restricting Petitioner's custody and parenting time as invalid and to comport with the Constitution and laws of the State of Minnesota. Petitioner further requested the court vacate all orders, judgments for attorney's fees. The Notice of Motion and Motion, Affidavit of Sandra Sue Grazzini-Rucki, and Memorandum of Law Supporting the Motion is attached (A.4, and A.3)

13. Petitioner further moved through her attorney, Michelle L. MacDonald, Esq. for the court to declare all or a portion of the Minn. Stat. §518 Marriage Dissolution (incorporating §518.17 temporary orders and restraining orders; §518.17 Custody and Support of Children; Minn. Stat. §518.167 Investigation and Report; Minn. Stat. §518.58 Division of Marital Property) to be unconstitutional as written and applied by the district court in this case, and notified the Attorney General, which Notice is attached (A.5).

14. The Petitioner's motions to restore custody and property, and asserting the unconstitutionality of the statute were heard on February 26, 2013. A copy of the transcript of proceedings is attached hereto as A.2, and made a part hereof.

15. That same day, the court inquired of the parties' children on the record in chambers. A copy of the transcript of proceedings relating to the children is unavailable because the court sua sponte sealed the transcript of proceedings consisting of statement of the children after Petitioner ordered it (A.9).

16. At the conclusion of the August 28, 2013 hearing, the court asked for attorney fee affidavits and later ordered Petitioner to pay attorney fees with no factual findings supporting the award.

17. The Respondent court and Respondent were non-responsive to the Petitioner's constitutional challenge. The Respondent court denied the statute was unconstitutional as written or applied without analysis. A copy of respondent's court's order denying the motions are attached hereto as A.10 and made a part hereof.

18. The Petitioner requested to proceed in forma pauparis which was denied by the court. The Petitioner has been homeless, living with various friends since the September 7, 2012 order that evicted her from her home. A.8.

19. Since the filing of the Petition for dissolution of marriage by the Petitioner, the parties have been subject to no less than 67 orders, with individual orders adding

up to no less than 3000, if they are counted individually. Petitioner and her family cannot possibly sort out these demands of the court, and this is another illustration of why Minn. Stat. 518 is unconstitutional.

20. Respondent Court had no discretion and, therefore, has abused its discretion and or acted in excess of its jurisdiction by the September 7, 2012 Order which deprived Petitioner of her home, and custody and contact with her children without notice and an opportunity to be heard, in violation of Minnesota Law and the State and Federal Constitution . There is no jurisdiction or statutory authority for the Court's order, and Petitioner was not afforded due process.

21. Respondent Court had no discretion and, therefore, has abused its discretion and or acted in excess of its jurisdiction by the Amending the Judgment and Decree, and issuing the Amended Summary disposition, which deprived Petitioner of the home that she was awarded August 28, 2013 and lived in with her children before the order to vacate, and by depriving her of custody and contact with her children without notice and an opportunity to be heard, in violation of Minnesota Law and the State and Federal Constitution .

22. There is no jurisdiction or statutory authority for the court's orders, and Petitioner was not afforded due process.

23. Respondent Court has abused its discretion and/or acted in excess of its jurisdiction by awarding attorney fees without any findings and without first considering petitioner's ability to pay, and by awarding sanctions that impose an unreasonable financial burden on her.

24. Petitioner is a person beneficially interested in the issuance of the writ because she is the party against whom the sanctions were ordered, and who has been deprived of her home and children since September 7, 2012.

25. Petitioner has performed all conditions precedent to the filing of this petition by raising an objection to the orders and motions in the inferior court.

26. At all times mentioned herein, Respondent court has been able to perform the duty stated above and exercise the discretion stated above by restoring to Petitioner her children and her home. But despite petitioner's demand for the performance of the duty and exercise of the discretion, Respondent court continues to fail to perform the duty and exercise the discretion.

27. Petitioner has no plain, speedy, adequate remedy in the ordinary course of law, other than the relief sought in this petition, because the order is considered temporary and reviewable only on appeal from the entire judgment or on petition for extraordinary writ under Minn. App. Rule 120.

28. We seek the immediate reversal of the unlawful orders, and that this court provide a proper analysis and determination as to the constitutionality of the statute.

WHEREFORE, Petitioner, Sandra Grazzini-Rucki Prays:

1. This Court issue a preemptory writ in the first instance commanding Respondent Court to recognize the fundamental, constitutional rights of parents to make decisions regarding the care, custody and control of their children, commanding Respondent Court to restore and protect this family from an affront to liberty, like loss of children or property, and effectively leave these parents and their children alone.

2. This Court issue a writ commanding Respondent Court to vacate any and all orders restricting Petitioner's custody and parenting time as invalid, including the orders of September 7, 2012 to comport with the Constitution and laws of the State of Minnesota.

3. This Court issue a writ commanding Respondent Court to vacate portions of the Amended Judgment & Decree of November 7, 2012; and the Amended Summary Disposition, February in order to restore Petitioner's property rights to her home.

4. This Court, alternatively, first issue an alternative writ commanding Respondent Court to vacate the order for attorney fees or, in the alternative, show cause why it should not do so, and thereafter issue a preemptory writ commanding Respondent to vacate the attorney fees award.

5. This Court issue a writ commanding Respondent Court to vacate the order sealing the transcript, and make the transcript of proceedings consisting of discussions and statement of the children available to the parties and the Court of Appeals.

6. The Court issue a writ commanding Respondent Court to allow the Petitioner to proceed in forma pauperis.

MACDONALD LAW FIRM, LLC

Dated: May 14, 2013

Michelle L. MacDonald, #182370
Athena V. Hollins, #0392249
1069 South Robert Street
West St. Paul, MN 55118
Telephone: (651) 222-4400
Facsimile: (651) 222-1122
ATTORNEYS FOR PETITIONER
SANDRA SUE GRAZZINI-RUCKI

STATE OF MINNESOTA
IN COURT OF APPEALS

In Re Sandra Sue Grazzini-Rucki,

Petitioner

David L. Knutson,
Judge of the Dakota County District Court

Respondent

District Court Case No.
19-AV-FA-11-1273

Appellate Court Case No.

In Re the Marriage of:

In Re Sandra Sue Grazzini-Rucki,

Petitioner

vs.

David Victor Rucki,

Respondent

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION

## MEMORANDUM IN SUPPORT OF PETITION

Pursuant to Minn. App. Rule 120, Petitioner, Sandra Sue Grazzini-Rucki, requests a Writ of Mandamus directed to Dakota County District Court, the Honorable David L. Knutsen, requiring the court to vacate its orders evicting her from her home; depriving her of legal and physical custody of her 5 children; and prohibiting contact with her children in order to restore her parental and property rights. Petitioner further requests that testimony of the children be unsealed; and the Court to reverse the order she pay legal fees.

## INTRODUCTION

Last year, the Minnesota Supreme Court, *In Rohmiller v. Hart*, 811 N.W.2d 585 (2012), citing the United States Supreme Court case of *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000) confirmed that a fit parent's right to make decisions concerning the care, custody, and control of his or her children are fundamental rights protect by the United States and Minnesota. *Rohmiller* 811 N.W.2d. at 594.

The children and their mother lived together in the home for all of the children's lives, until this tragic custody order abruptly separated them from both parents. Without a court finding of endangerment, abuse, or parental unfitness, the court's entry into the realm of family, by means of one parent or the other's service of process was violative of the Constitution. The United States Court of Appeals for the Eighth Circuit has stated that strict scrutiny applies where a regulation "forces family choices," as opposed to merely "affect[ing]" or "encourag[ing]" them. *Gorrie v. Bowen*, 809 F.2d 508, 523 (8th Cir. 1987). The custody proceeding was plainly a forced choice. In *Moore v. East Cleveland* 431 US 494 (1977) and *Meyer v. Nebraska* and *Pierce Society of Sisters* have consistently acknowledged a "private realm of family life which the state cannot enter".

The extraordinary writ petition concerns an Order issued by the District Court of Dakota County in a chambers motion via telephone brought by attorney Lisa Elliott on behalf of David Rucki, against his former spouse, Sandra Sue Grazzini-Rucki.

On September 7, 2012, the trial court, following a telephone conference on September 5, and upon direction of Ms. Elliott , ordered Sandra Grazinni Rucki to:

(1)vacate the home awarded to her, by noon that day; (2) granted legal and physical custody of her children to a relative or "other individual as recommended by the Guardian ad Litem" instructing her to move into the home; and that neither parent "have any contact with the

minor children, either directly, indirectly, electronically, by phone, text, mail, or by third party communication, except as recommended in writing by all therapists involved with the parties and children." The court added that "*Violation of this no-contact provision shall trigger a contempt proceeding with the possibility of incarceration.*" (A.1).

This Order was not authorized by Minn. Stat. 518 Dissolution of Marriage, nor did it comport with eviction or unlawful detainer or foreclosure laws. On August 28, 2012, Petitioner had been awarded the home where she resided with her children by agreement on August 28, 2012. After signing the complained of September 7, 2012 order, the court signed ex parte an Amended Findings of Fact, Conclusion of Law, Order for Judgment and Judgment & Decree, November 7, 2012, and Amended Summary of Real Estate Disposition on February 20, 2013, contrary to the award of the home to her on August 28, 2012, at the direction of attorney Lisa Elliott.

On February 26, 2013, Petitioner, Sandra Grazinni-Rucki through her attorney, Michelle L. MacDonald, Esq. moved the district court pursuant to Minn. Rules, Civ. Pro. 60 (*RELIEF FROM JUDGMENT*), and Minn. Stat. 518.145 (Decree, finality and reopening) from the operation of *the Amended Findings of Fact, Conclusions of Law, Order for Judgment and Judgment and Decree*, dated November 14, 2012; to vacate all orders restricting Petitioner's custody and parenting time as invalid, and asserting the unconstitutional application of Minn. Stat. §518 (Marriage Dissolution) as written and applied.

At the hearing, on February 26, 2013, the court heard arguments (A.2). The court took testimony from the children in chambers, which is the only testimony evidence relating to custody in this matter. Each of the five children were questioned by the Judge, and expressed their desire to be returned to the care of their mother. Upon request for in forma pauperis status, the and the transcript evidence by Petitioner, the same day as the

hearing, the court clerk delayed providing it, and then the court sua sponte sealed the transcript, even from parents on March 29, 2013 (A.8 and A.9).

STATEMENT OF THE FACTS

Other than the testimony of the children in chambers on March 29, 2013, there has been no evidentiary hearing or trial relating to custody of the Rucki children.

The following facts are reflected in the court record and documents submitted with the Affidavit of Petitioner Sandra Sue Grazzini-Rucki.

On May 12, 2011, a default hearing was held, and the same day a Judgment and Decree was entered by the Court where Petitioner was granted sole physical custody of the children, and the marital homestead located at 19675 Ireland place, Lakeville, Dakota County Minnesota. On June 6, 2011, Respondent's attorney, Lisa Elliott, filed a motion to vacate the Judgment & Decree, and for joint legal and joint physical custody, alternating weeks, among other motions. The court reopened the September 21, 2012. There has not been a trial on the merits.

Petitioner was with the children daily until September 7, 2012, a period of 16 years, when she received a phone call. That day, she was also court ordered to leave the home at 19675 Ireland Place, Lakeville, MN where she was raising and had been living with the children on a daily basis, awarded to her both in the original divorce decree, and on August 28, 2012. The order also prohibited the parents from contacting their children, even at school. "except as recommended in writing by all therapists involved with the parties and children. Violation of this no-contact provision shall trigger a contempt proceeding with the possibility of incarceration"

Petitioner could enter or be on the property located a 19675 Ireland Place, Lakeville, Minnesota whatsoever (order 5), nor could the parents be at their children's schools at any time (order 5). The order deprived her of all physical and legal custody of the children, giving temporary physical and legal custody of the children to "the children's aunt, Tammy Love or another individual as recommended by the Guardian as litem..."(Order 3). And further ordered their aunt Tammy to move into my home and reside with the children until further order of the court; and that "the children's aunt Nancy Olson, may contact and visit with the children to assist Ms. Love, or other individual as recommended by the guardian ad litem during this process."

Petitioner states by affidavit"

"I also have expressed my concerns regarding domestic abuse to my attorneys and the courts, and my concerns as to Respondent's care for the children, and abuse to no avail. For example, a voice mail was left, where it sounded like my husband shot a gun 6 times, that I provided to the court and guardian, to no avail. No one seems to care. This was preceded by his being in the house, sitting at the table, and talking about killing all of us. He stated he had a gun with six shots, one for each of us. I had set forth in more detail facts supporting my request for orders for protection in the duly filed Petition, but I was told to dismiss it in one of the divorce hearings and the Judge ordered me to not call the police."

STATEMENT OF THE ISSUE

Whether a Writ of Mandamus should issue, where the district orders summarily deprive a person of their home, and a parent of their children, including any and all contact with them, or be subject to incarceration?

Whether a Writ of Mandamus should issue where the district court has refused to vacate orders that violated a parent's fundamental right to make decisions concerning the care, custody, and control of protect by the United States and Minnesota constitutions?

GROUNDS FOR EXTRAORDINARY RELIEF

This Petition addresses squarely the *absence* of legal authority, jurisdiction, and due process for court decisions, and the unconstitutional application of the Minn. Stat. 518. The children and their mother lived together all of the children's live, until this tragic custody order abruptly separated the children from both parents, without an evidentiary hearing or court finding of endangerment, abuse, or parental unfitness. The court's entry into the realm of family, by means of these orders was violative of the Constitution. Family court orders to include no contact with one's own children essentially placed Petitioner in shackles with respect to the care, custody and control of her children, clearly an significant adverse impact on a parent's liberty rights.

There is no question that Minn. Stat. 518 did not authorize these orders, not to mention the summary fashion in which the court has operate. Appellate review at the conclusion of these proceedings will be ineffective. The question is whether a family court can immediately deprive a citizen of their home, and a parent of contact with children, have someone else move in (who did not even petition to do so). The answer is a resounding "No", and the illustrates that 518 is not constitutional.

What began with a *permissive* Order for Appointment of Guardian, confined to making "parenting time recommendations" (See Order July 14, 2011), concluded with an ex parte phone conference (parents excluded) depriving them of all legal, physical, custodial rights --- and contact with their own children, immediately evicting Petitioner

from her homestead and placing the children in the care of non-parents "or such other person as the guardian determines", relatives not even parties to the action. (See September 7, 2012 Order). The needs of the children for the love and companionship of the parents have gone unaddressed. The circumstances warrant the issuance of a writ at this time.

ARGUMENT

There is a need for the extraordinary remedy. There was no statutory basis for the Order, which should invalidate the Amended Judgment & Decree and Amended Summary Real Estate Disposition. When their mother was ordered to vacate her home on September 7, 2012, the children went to the police station, moved out of the home, and in with another relative. The Petitioner had no control whatsoever, and has no control today.

The court has granted extraordinary relief in matters where children are impacted, and the normal course of appellate proceedings will not provide an adequate remedy for the district court error. See In re Kayachith, 683 NW 2d 325 (Minn. Ct. App. 2004) (issuing writ of prohibition preventing district court from entertaining child custody petition from relatives who lacked statutory standing to seek custody as "interested third parties"), rec denied ( Minn., Sept 29, 2004); Clark v. Clark, 543 NW 2d 685 (Minn. Ct. App 1996) (writ of prohibition issued preventing district court from immediately enforcing order to change custody of parties child to father who intended to bring child on move to Sardinia); El Nashaar v. El Nashaar, 529 NW 2d 13 (Minn. Ct. App. 1995) (writ of prohibition issued preventing district court from extending beyond statutory 14 period ex parte order barring husband-father from contact with children). See also

Latourell v. Dempsey, 518 NW 2d 564 (Minn. 1994) (affirming court of appeals issuance of writ of mandamus directing district court to appoint legal counsel to indigent mother after father admitted to paternity and moved for sole physical and legal custody of child. The same concerns that led this court to issue writs in the cases cited above are present in this case.

There are few instances where Minnesota Courts assert emergency child custody jurisdiction. The court implemented none of these processes. For example, temporary orders pursuant to Minn. Stat. § 518.131, Subd. 3 provide for ex parte custody orders if the court makes a finding of immediate danger of physical harm to the minor child. There was no danger of physical harm even alleged against Petitioner, nor was there an evidentiary hearing. Another example is domestic abuse actions provided by Minn. Stat. §518B.01 Subd. 6(a)(4), where a court may grant an ex parte custody order to a party if the court finds that the safety of the child will be jeopardized by unrestricted visitation. See Baker v. Baker, 494 N.W.2d 282 (Minn. 1992). No domestic abuse action was brought on behalf of the children or even alleged against the Petitioner, which involves a speedy evidentiary hearing. A litigant can also bring a Juvenile Petition of domestic abuse. See Minn. Stat. §260C.101, 141. No child protection was involved. The Uniform Child Custody Jurisdiction Act (UCCJA) provides that Minnesota court can assert temporary emergency jurisdiction to decide if it is necessary to protect the child subjected to or threatened with mistreatment or abuse or otherwise neglected or dependent. See Minn. Stat. § 518D.204; Coleman v. Coleman, 493 N.W.2d 133 (Minn. App. 1992). Not the case.

The District court dispensed with the law and the fields of due process and civil procedure altogether. As a consequence of the improper contact, the Judge issued a series of improper judicial orders that all stemmed from the initial ex parte contact on September 5, 2012. The ex parte Order for Custody, *inter alia*, summarily deprived Petitioner of her custody and due process rights, which rights yielded to a protracted custody proceedings.

The concept that a court can create authority that does not exist anywhere in either Minnesota Chapter 518 within general requests for relief is unsupported by the law and essentially allows attorneys to bypass the plain language of the statute.

As written, Minn. Stat. §518 ignores a fit parent's right to make decisions concerning the care, custody, and control of their own children, which are fundamental rights protect by the the 14th Amendment.

Minnesota Statute §518 does not authorize vague, generalize orders, nor does it allow the court to place with a no-party relative "*or such other person deemed by the Guardian*"; nor does it authorize removing Petitioner from the home awarded to her, so that a relative *never* having petitioned for custody) can move in. Even more egregious is if their mother contacted them, she could be arrested, and four of the children did *not* move back in their own home, choosing to live with another relative. Such orders, not authorized in juvenile protection, are certainly not authorized in a divorce proceeding.

The trial court's attempt to craft that authority out of Minnesota Chapter 518 relating to the children and property and conflating Minn. Stat. 260C (Child Protection) is without merit and unquestionably violates Petitioner's due process rights as an individual.

The Respondent was non-responsive to Petitioner's constitutional challenge, and the district court summarily denied that the statute was unconstitutional with *no* analysis. Instead the court made a series of vague, generalized excuses, justifications and false claims for its orders. The court stated "The proceedings in this case have fully complied with Minn. Stat. §§518.10, 518.12 and 518.13 as applicable" which is false; and that the Amended Judgment & Decree dated November 7, 2012 is valid and enforceable, without explanation; and that the motion to vacate the Amended Judgment and Decree is denied. Petitioner's motion to vacate all prior Orders restricting her custody and parenting time is denied; Petitioner's motion to vacate all orders, judgments for attorney's fees and other costs is denied.

Here, the legal framework of Minn. Stat. §518.18 was not followed, and if Minn. Stat. §518.18 allows this type of court discretion, it violates a fit parents fundamental due process rights. For example, the court states an "emergency" motion was filed on September 5, 2012, based on a report by Dr. Reitman appointed 5 days earlier, dated August 30, 2012, an expert in the field of parental alienation. Dr. met with Petitioner and four of her children for a ½ hour before writing his report on August 31, 2012, and has not been involved since. He says "It was the Court's understanding from the parties' discussions on the record that the removal of the children from Petitioner's care was not contested by any of the parties", and that on August 28, 2012, Petitioner indicated that she was willing to give up custody of all five of the children to Respondent *immediately.* " which are false. And used the Affidavit of the opposing attorney to support that "Petitioner stated at trial on August 28 that she could no longer care for the children and wanted Respondent to have custody of all five children." (Affidavit of Lisa M. Elliott,

Esq. dated February 22, 2013, p.2)" and that the attorneys and the Guardian ad Litem collaborated in finalizing this Order. The fact is that parties cannot stipulate to, nor courts can the court order something not authorized by law. The court cannot make an illegal order just because people agree.

In child protection cases, where a parent can obtain a public defender attorney, and court and experts immediately work towards reunification. How does it happen that if it's not child protection parents can be deprived of their children for "temporary," indefinite periods lasting months? It is difficult to imagine an area where the district court should be more cautious not to meddle, but to ensure that family liberties are reinforced, preserved and not blotted out. In this case, Petitioner has asked the district court to vacate the orders, to restore her to her home and liberate her family. The court has refused.

It is necessary that this court issue an extraordinary remedy. This court must interfere with the district court rulings.

Respectfully Submitted,

MACDONALD LAW FIRM, LLC

Dated: May 14, 2013

Michelle L. MacDonald, #182370
Athena V. Hollins, #0392249
1069 South Robert Street
West St. Paul, MN 55118
Telephone: (651) 222-4400
Facsimile: (651) 222-1122
ATTORNEYS FOR PETITIONER
SANDRA SUE GRAZZINI-RUCKI

| STATE OF MINNESOTA | DISTRICT COURT |
|---|---|
| COUNTY OF DAKOTA | FIRST JUDICIAL DISTRICT<br>FAMILY COURT DIVISION |

In Re the Marriage of:

Sandra Sue Grazzini-Rucki,

Petitioner,

and

David Victor Rucki,

Respondent,

and

County of Dakota,

Intervenor.

Court File No.: 19AV-FA-11-1273
Judge: David L. Knutson

ORDER

The above-entitled matter came duly on for an emergency telephone conference before the Honorable David L. Knutson, Judge of District Court, on September 6, 2012 based upon Respondent's request for the immediate removal of the parties' minor children from the Petitioner's custody and care. Present on the telephone conference were Elizabeth Henry, counsel for Petitioner, Lisa Elliott, counsel for Respondent, and Julie Friedrich, Guardian ad Litem.

Based upon the files and pleadings herein, arguments of counsel, reports of the guardian ad litem, reports and recommendations of the court appointed neutral expert, Dr. Paul Reitman, recommendation of the guardian ad litem, and records and proceedings herein, the Court makes the following:

FILED DAKOTA COUNTY
SEP 7 2012

## FINDINGS OF FACT

1. Paul Reitman, Ph.D., L.P., F.A.C.F.E., was appointed as a neutral expert in this matter by this Court on August 28, 2012. Dr. Reitman was to meet the parties and the children and to provide a report to include the following:

   a) Assessment and diagnosis of mental illness and personality disorders, if any;
   b) Assessment and diagnosis of parental alienation, if any;
   c) Assessment and protocol planning for reunification; and
   d) Identification of barriers to reunification efforts.

2. August 29, 2012, Dr. Reitman met with Petitioner and four out of the five children. Dr. Reitman submitted reports dated August 29 and 31, 2012to the Court. Both parties' counsel and the guardian ad litem received copies of Dr. Reitman's report.

3. Respondent filed an emergency motion, based upon Dr. Reitman's recommendations in the report dated August 31, 2012, requesting to have the minor children immediately removed from Petitioner's custody and placed in either a therapeutic foster care or such other placement as deemed fit by the guardian ad litem.

4. As and for the best interests of these children, the Court has considered all reports that were submitted to this Court by the Guardian ad Litem, Julie Fredrich, and the reports of Dr. Paul Reitman.

5. It is in the children's best interests that the children are provided with as much consistency in their routines as is possible under the current circumstances and that remaining in their home is the least disruptive alternative.

Based upon the foregoing, the Court Orders:

1. Respondent's motion to remove the children from the custody and care of the Petitioner is GRANTED.

2. Petitioner shall vacate the home at 19675 Ireland Place, Lakeville, Minnesota, no later than Friday, September 7, 2012 at or before 12:00 p.m.

3. The children's aunt, Tammy Love, or another individual as recommended by the Guardian ad Litem, shall have temporary physical and legal custody of the minor children. Tammy Love shall move into the Ireland Place residence and will reside with the children at their home until further order of this Court. The children's aunt, Nancy Olson, may contact and visit with the children to assist Ms. Love, or other individual as recommended by the Guardian ad Litem, during this process.

4. Neither party shall have any contact with the minor children, either directly, indirectly, electronically, by phone, text, mail, or by third party communication, except as recommended in writing by all therapists involved with the parties and children. Violation of this no-contact provision shall trigger a contempt proceeding with the possibility of incarceration.

5. Neither party shall enter or be on the property located at 19675 Ireland Place, Lakeville, Minnesota nor are they allowed at the minor children's schools at any time with the limited exception specified in #6 below. Violation of this provision shall trigger a contempt proceeding with the possibility of incarceration.

6. Respondent shall be allowed limited access to the property located at 19675 Ireland Place, Lakeville, Minnesota solely for general maintenance on the homestead. Respondent shall enter the home only during days and times when the children are in school and are not at the home. Respondent shall leave no evidence in the home that he was present at the home. Petitioner shall make every effort to bring the mortgage current before the scheduled sheriff's sale on October 11, 2012. If, by

October 1, 2012, Petitioner has not been able to bring the mortgage current, Respondent shall be allowed to make repairs to the house to prepare for sale under the same access restrictions as stated above. If Respondent makes such repairs, he shall be reimbursed for those repairs from the sale proceeds of the home.

7. The minor children shall immediately begin therapy with James Gilbertson, Ph.d. The parties and the children shall follow all recommendations of Dr. Gilbertson.

8. Respondent's child support obligation to Petitioner is hereby reserved. A child support obligation for the care provider during the time period of this order is reserved.

IT IS SO ORDERED.

BY THE COURT:

Dated: 9/7/12

David L. Knutson
The Honorable David L. Knutson
Judge of District Court



August 20, 2013

OFFICE OF APPELLATE COURTS

STATE OF MINNESOTA

IN SUPREME COURT

A13-0859

In re the Marriage of:
Sandra Sue Grazzini-Rucki,

Petitioner,

vs.

David Victor Rucki,

Respondent.

ORDER

Based upon all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that the petition of Sandra Sue Grazzini-Rucki for further review be, and the same is, denied.

Dated: August 20, 2013

BY THE COURT:

/s/

Lorie S. Gildea
Chief Justice



MACDONALD
LAW FIRM

Mailing & Delivery
1069 So. Robert Street
W. St. Paul, MN 55118
Main: (651) 222-4400
Fax: (651) 222-1122

February 12, 2013

VIA U.S. MAIL

Office of the Minnesota Attorney General
Attn: Lori Swanson, Esq.
75 Rev. Dr. Martin Luther King Jr. Blvd
St. Paul, MN 55155

Re: In Re the Matter of Sandra Sue Grazzini-Rucki and David Victor Rucki
Court File No. 19AV-FA-11-1273

Dear Ms. Swanson:

Enclosed and served upon you in the above matter please find the following:

1. Notice of Motion and Motion Asserting That Minn. Stat. §518 is Unconstitutional as Written and Applied by the District Court, Other Relief;
2. Affidavit of Petitioner, Sandra Sue Grazzini-Rucki;
3. Notice To Attorney General Asserting That Minn. Stat. §518 is Unconstitutional as Written and Applied;
4. Memorandum of Law Supporting Motion That Minn. Stat. §518 is Unconstitutional as Written and Applied, Vacating All Court Orders Restricting A Parents' Liberty Rights to Children and Property; and
5. Affidavit of Service.

Thank you for your consideration in this matter.

Very truly yours,

MACDONALD LAW FIRM, LLC

Michelle L. MacDonald
Attorney at Law

MLM/das
enclosures

cc: Sandra Grazzini (w/encl.)

Golden Rule Mediation & Arbitration — A Division of MacDonald Law Firm

Saint Paul & Suburbs ♦ 1069 So. Robert Street ♦ W. St. Paul, MN 55118 ♦ Office: (651) 222-4400
Minneapolis & Suburbs ♦ 3300 Edinborough Way - Suite 550 ♦ Edina, MN 55435 ♦ Office: (952) 746-4243
Stillwater & Surroundings ♦ 6351 St. Croix Trail ♦ Stillwater, MN 55082 ♦ Office: (651) 455-5529

APP.56

STATE OF MINNESOTA

COUNTY OF DAKOTA

DISTRICT COURT
FIRST JUDICIAL DISTRICT
FAMILY COURT DIVISION

In Re the Matter of:

Court File No.19AV-FA-11-1273
CA File No. CS-2011-00311

Sandra Sue Grazzini-Rucki,

Petitioner,

and

David Victor Rucki,

Respondent

NOTICE TO ATTORNEY GENERAL ASSERTING THAT MINN. STAT. §518 IS UNCONSTITUTIONAL AS WRITTEN AND APPLIED

TO: LORI SWANSON, OFFICE OF THE MINNESOTA ATTORNEY GENERAL, 75 REV. DR. MARTIN LUTHER KIND JR. BLVD., ST. PAUL, MINNESOTA 55155; AND RESPONDENT, DAVID VICTOR RUCKI, BY AND THROUGH HIS ATTORNEY, LISA M. ELLIOTT, ESQ., ELLIOTT LAW OFFICES, P.A., 2409 WEST 66TH STREET, MINNEAPOLIS, MINNESOTA, 55423; JULIE FRIEDRICH, GUARDIAN AD LITEM, PO BOX 25878, WOODBURY, MINNESOTA 55125; JAMES W. DONEHOWER, ESQ., ASSISTANT DAKOTA COUNTY ATTORNEY; 1560 HIGHWAY 55, HASTINGS, MINNESOTA 55033.

YOU WILL PLEASE TAKE NOTICE that on the 26th day of February, 2013, at 8:30 a.m., or as soon thereafter as counsel may be heard before the Honorable David L. Knutson, Judge of the above-named Court, Dakota County Courthouse, 1560 Highway 55, in the City of Hastings, County of Dakota, and State of Minnesota, the Petitioner, Sandra Sue Grazzini-Rucki herein will move the Court for an Order determining that Minn. Stat. §518 is unconstitutional as written and as applied in the above matter.

Petitioner, Sandra Sue Grazini-Rucki, above-named, by and through her attorney, Michelle L. MacDonald, Esq., MACDONALD LAW FIRM, LLC, hereby gives notice to Lori Swanson, Attorney General of Minnesota, pursuant to Minn. R. Civ. P. 5A, that, in the above-

appellate process. See eg. MLB v. SLB, 519 US 102 (1996); Stanley v. Illinois, 406 US 645 (1972); Armstrong v. Manzo, 380 US 545 (1965); Mullane v. Cent. Hanover Bank & Trust C., 339 US 306 (1950). In practice, the Family Court provided none of these.

The lack of speedy trials and lack of adequate legal representation has been well documented in the above matter. Grave due process problems pervade this case, and the family court as well.

Respectfully submitted,

MACDONALD LAW FIRM, LLC

Dated: February 12, 2013

Michelle L. MacDonald, #182370
Athena V. Hollins, #0392249
1069 South Robert Street
West St. Paul, MN 55118
Telephone: (651) 222-4400
Facsimile: (651) 222-1122

ATTORNEYS FOR PETITITIONER

STATE OF MINNESOTA | DISTRICT COURT
FIRST JUDICIAL DISTRICT
COUNTY OF DAKOTA | FAMILY COURT DIVISION

In Re the Matter of:

Court File No.19AV-FA-11-1273
CA File No. CS-2011-00311

Sandra Sue Grazzini-Rucki,

Petitioner,

and

David Victor Rucki,

Respondent

NOTICE OF MOTION AND MOTION FOR RELIEF FROM JUDGMENT AND ASSERTING THAT MINN. STAT. §518 IS UNCONSTITUTIONAL AND OTHER RELIEF.

TO: RESPONDENT, DAVID VICTOR RUDNICK, BY AND THROUGH HIS ATTORNEY, LISA M. ELLIOTT, ESQ., ELLIOTT LAW OFFICES, P.A., 2409 WEST 66TH STREET, MINNEAPOLIS, MINNESOTA, 55423; LORI SWANSON, ESQ., OFFICE OF THE MINNESOTA ATTORNEY GENERAL, 75 REV DR. MARTIN LUTHER KING JR. BLVD, ST. PAUL, MINNESOTA 55155; JULIE FRIEDRICH, GUARDIAN AD LITEM, PO BOX 25878, WOODBURY, MINNESOTA 55125; JAMES W. DONEHOWER, ESQ., ASSISTANT DAKOTA COUNTY ATTORNEY; 1560 HIGHWAY 55, HASTINGS, MINNESOTA 55033.

YOU WILL PLEASE TAKE NOTICE that on the 26th day of February, 2013, at 8:30 a.m., or as soon thereafter as counsel may be heard before the Honorable David L. Knudson, Judge of the above-named Court, Dakota County Courthouse, 1560 Highway 55, in the City of Hastings, County of Dakota, and State of Minnesota, or as soon thereafter as counsel may be heard, Petitioner, Sandra Grazini-Rucki through her attorney, Michelle L. MacDonald, Esq., MACDONALD LAW FIRM, LLC, 1069 South Robert Street, West St. Paul, Minnesota, 55118, will move the Court pursuant to Minn. Rules. Civ. Pro. 60 (*RELIEF FROM JUDGMENT),* and Minn. Stat. 518.145 (Decree, finality and reopening) from the operation of *the Amended Findings of*

Petitioner, Sandra Sue Grazzini-Rucki, by and through her attorney, Michelle L. MacDonald, MACDONALD LAW FIRM, LLC, submits this Memorandum supporting the attached Motion asserting that §518 is unconstitutional as written and as applied in this case. Petitioner requests that orders restricting her liberty rights to her children be vacated; and that the Amended Judgment & Decree of November 14, 2012 be reopened, and that the homestead where she lived with her children be restored to her; and a Judgment for support arrears. See Minn. Stat. §518.145 Subd 2(2)(3)(5). Petitioner's Affidavit is incorporated herein by reference. Attached is the Register of Actions, from the filing of the action, April 21, 2011 to present.

Petitioner asserts that Minn. Stat. §518 Marriage Dissolution (incorporating §518.131; temporary orders and restraining orders; §518.165 Guardians for Minor Children; §518.17 Custody and support of Children; §518.14 Costs, Disbursements; attorney fee; collections; §518.58 Division of Marital Property) is unconstitutional on its face and as applied to the facts of this case. A Notice to the Attorney General citing violations of the First (freedom of Speech), Fourth (unreasonable searches and seizures), Ninth (Protects rights not enumerated in the constitution, Thirteenth (involuntary servitude, except as punishment for a crime); and Fourteenth Amendments (Due Process). The Notice is included herein. This memorandum focuses on the Fourteenth Amendment (Due Process).

## PROCEDURAL AND OTHER FACTS

This matter came on for hearing on May 12, 2011 before the Honorable Tim D. Wermager, who granted the parties a Judgment & Decree of Divorce, entered on May 12, 2011. Petitioner was represented by attorneys Katz & Manka ("Judgment & Decree"). The parents have five (5) children born of the marriage, namely, Nico James Rucki, born June 22, 1996; age 16; Samantha Victoria Rucki, born June 24, 1998, age 14; Gianna Jade Rucki, born November 2,

1999, age 13; Nia Gabrielle Rucki, born September 25 2001, age 11; and Gino Paolo Rucki, born January 20, 2003, age 10. At the time of the divorce filing, April 21, 2011, the parties had been had been married since August 31, 1991, over 20 years.

At the time of the divorce filing, the parties had been living in the home they purchased at 19675 Ireland Place, Lakeville with their 5 children since approximately June, 1998, a period of 13 years. Their son, Nico, was about two years old when they began living there, and the other four (4) children had lived in the home since their births.

At the time of divorce filing, and through today, a juvenile court proceeding, or child protection case involving the children of this matter has NOT taken place in any county or state.

In the original Judgment & Decree of May 12, 2011, the court found it was in the best interest of that Petitioner be granted sole legal and sole physical custody of the children, subject to Respondent's right of reasonable parenting time.

Petitioner was also awarded the marital homestead located at 19675 Ireland place, Lakeville, Dakota County Minnesota, and required to pay the first and second mortgages; and the the Lake property at 707 Idlewild, Balsam Lake, Polk County, Wisconsin, also subject to encumbrances. She was also awarded certain debts.

After the May 12, 2011 Order, the Petitioner paid off the second mortgage of approximately $233,000.00 and additional sums requested. This left an approximately $144,000 mortgage on the property valued in the Judgment & Decree of $410,000.00 (See Judgment & Decree, May 12, 2011).

On the flip side, Respondent was awarded the property at 17549 Flagstaff Avenue, Lakeville property. He was also awarded the parties' business, Rucki Trucking. He was also awarded certain debts.

Still represented by Katz & Manka, a Summary real estate disposition judgment was signed by Judge Poch on May 23, 2011 with respect to the real estate.

On June 6, 2011, Respondent's attorney, Lisa Elliott, filed a motion, and served it on the attorney to vacate the divorce order, and for joint legal and joint physical custody, alternating weeks, among other motions, which was served on the attorney. While Petitioner alleged domestic abuse as to Respondent, Respondent never alleged the Petitioner to be unfit.

There has not been a trial on the merits. Nor has there been a child protection action. Judgment and Decree, entered May 23, 2011. There was never an Answer or Counterclaim by the Respondent.

Over a hundred Motions were filed by attorneys. The truth is this case can be readily stopped by a simple recognition by courts of a parents' competing, constitutional rights to the care, custody and control of their own children.

NO EVIDENCE OF COMPLIANCE WITH MINN.STAT. §518.13(2) (failure to answer; findings; hearing)

The Respondent's attorney failed to Answer the Petition for dissolution. See §518.15. This is important as the motions after motions filed by attorneys disregarding the statutory scheme of Minn. Stat. §518 altogether, which explains how this case got out of control. None of the motions were authorized by Minn. Stat. §518.131 providing for temporary orders.

THE CUSTODY ORDER IN NON-PARENTS IS CONTRARY TO LAW

The September 7, 2012 Order ordered Petitioner to vacate the home she lived in with the children, no later than Friday, September 7; the same date. The order deprived Petitioner of all physical and legal custody of the children, giving temporary physical and legal custody of the children to "*the children's aunt, Tammy Love or another individual as recommended by the*

*Guardian as litem...*"(See Order 3). And further ordered their aunt Tammy to move into the homestead and reside with the children until further order of the court; and that "*the children's aunt Nancy Olson, may contact and visit with the children to assist Ms. Love, or other individual as recommended by the guardian ad litem during this process.*"

On October 3, 2012, another Order was signed by attorneys and the court: "*Nancy Olson and Tammy Love, shall have temporary joint legal and physical custody of the five minor children, Nico, Samantha, Gianna, Nia and Gino.*"(see Order 2). Since the first Order, four of the children have never lived with Tammy Love in the home to this day, living with Nancy Olson (in Nancy Olson's home), and their son Nico has lived in the marital home with Tammy Love.

The parties had just been in court on August 28 ostensibly to award Petitioner the homestead where she lived with the children. There was no statutory basis for this Order which should invalidate the Amended Judgment & Decree, entered over two months later. There are few instances where Minnesota Courts assert emergency child custody. For example, temporary orders pursuant to Minn. Stat. § 518.131, Subd. 3 provide for ex parte custody orders if the court makes a finding of immediate danger of physical harm to the minor child. Another example is domestic abuse actions provided by Minn. Stat. §518B.01 Subd. 6(a)(4), where a court may grant an ex parte custody order to a party if the court finds that the safety of the child will be jeopardized by unrestricted visitation. See Baker v. Baker, 494 N.W.2d 282 (Minn. 1992). A litigant can also bring a juvenile Petition of domestic abuse. See Minn. Stat. §260C.101, 141. The Uniform Child Custody Jurisdiction Act (UCCJA) provides that Minnesota court can assert temporary emergency jurisdiction to decide child custody if the child is in Minnesota and it is necessary to protect the child subjected to or threatened with mistreatment or abuse or otherwise

neglected or dependent. See Minn. Stat. § 518D.204; Coleman v. Coleman, 493 N.W.2d 133 (Minn. App. 1992).

Here, the court dispensed with the fields of due process and civil procedure altogether. As a consequence of the improper contact, the Judge issued a series of improper judicial orders that all stemmed from the initial ex parte contact. In reviewing, taking testimony, and acting on the Respondent's ex parte communication, the Judge can be said to have violated Rule 2.9 of the Minnesota Code of Judicial Conduct which prohibits ex parte communication between a judge and an interested person. See generally Minn. Code of Judicial Conduct, Canon 2.9, see also, Koes v. Advanced Design, Inc., 636 N.W.2d 352,363 (Minn. Ct. App., 2001) (Appellant must establish prejudice). The ex parte Order for Custody, *inter alia*, summarily deprived Petitioner of her custody and due process rights, which rights yielded to a protracted custody proceeding.

In Minnesota, ex parte orders are "*temporary and limited to situations involving an 'immediate threat of violence.'*" As such, ex parte orders may be enforced without notice "*in extraordinary circumstances where the risk of injury is plain.*" Baker v. Baker, 494 N.W.2d at 287. Not the case here.

Petitioner was with the children daily until September 7, 2012, a period of 16 years, when she received a phone call. That day, the children were taken from her by a family court order in the above matter. She was also court ordered to leave the home at 19675 Ireland Place, Lakeville, MN where she was raising and had been living with the children on a daily basis. The order also prohibited the parents from contacting their children, even at school. "except as recommended in writing by all therapists involved with the parties and children. Violation of this no-contact provision shall trigger a contempt proceeding with the possibility of incarceration"

Petitioner could enter or be on the property located a 19675 Ireland Place, Lakeville, Minnesota whatsoever (order 5), nor could the parents be at their children's schools at any time (order 5).

At the same time, as being evicted, Petitioner was ordered to bring the mortgage current before the sheriff's sale on October 11, 2012, and if she did not, the house could be prepared for sale (Order 6). The court order also says "*the minor children shall be immediately begin therapy with James Gilbertson" and the parties and children shall follow all recommendations of Dr. Gilbertson*" (Order 7). To this point, the children had not been in therapy, and the Petitioner had never met Dr. Gilbertson. In addition "*Respondent's child support obligation is hereby reserved, also with the child support obligation for the care provider* "(order 8). As such, neither parent was required to support the children. To the point of September 7, the children had been in the home since approximately June 8, 1998. Under threat of being arrested, Petitioner has complied after the verbal before seeing a copy of the order. Since September 7, 2012, she has not seen her children these many months, except for one supervised visit.

UNCONSTITUTIONALITY OF MINN STAT §518.

Petitioner asserts that Minn. Stat. §518 is unconstitutional as written and as applied. The U.S. Supreme Court has explained that the substantive due process rights provided by the Fourteenth Amendment afford "heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). A parent's right to make decisions concerning the care, custody, and control of his or her children is a protected fundamental right. *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (citing *Meyer v. Nebraska*, 262 U.S. 390, 399, 401 (1923)). Last year, the Minnesota Supreme Court, *In Rohmiller v. Hart*, 811 N.W.2d 585 (2012), citing the United States Supreme Court case of

*Troxel v.Granville*, 530 U.S. 57, 65-66 (2000) confirmed that a fit parent's right to make decisions concerning the care, custody, and control of his or her children are fundamental rights protect by the United States and Minnesota constitutions holding:

> "There is no question in this case that Hart has been determined to be a fit parent and that he objects to Rohmiller's visitation with B.H. independent of visitation by Clayton. Rohmiller acknowledges that a fit parent's right to make decisions concerning the care, custody, and control of his or her children is a fundamental right protected by the federal and Minnesota constitutions. See *Troxel v.Granville*, 530 U.S. 57, 65-66 (2000) (plurality opinion); *SooHoo*, 731 N.W.2d at 820."

*Rohmiller* 811 N.W.2d. at 594.

The children and their mother lived together all of the children's livo, until this tragic custody order abruptly separated them from both parents. Without a court finding of endangerment, abuse, or parental unfitness, the court's entry into the realm of family, by means of one parent or the other's service of process was violative of the Constitution. The United States Court of Appeals for the Eighth Circuit has stated that strict scrutiny applies where a regulation "forces family choices," as opposed to merely "affect[ing]" or "encourag[ing]" them. *Gorrie v. Bowen*, 809 F.2d 508, 523 (8th Cir. 1987). The custody proceeding was plainly a forced choice. In *Moore v. East Cleveland* 431 US 494 (1977) and *Meyer v. Nebraska* and *Pierce Society of Sisters* have consistently acknowledged a "private realm of family life which the state cannot enter". In *Cleveland Board of Education v. La Fleur* 414 US 632 (1974) this court has long recognized that freedom of:

> "personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment. There is a right "to be free from unwarranted governmental intrusion so fundamentally affecting a person as to whether to bear or beget a child".

The method here for assessing whether endangerment has taken place, findings that are critical to deciding whether a parent should retain custody to or parenting time rights with the children, fall woefully short of standards accepted by child protection and criminal justice.

The Guardian's failure to adhere to the simple order to make parenting time recommendation (discussed below), the attitude of attorneys; and the court's failure to adhere to procedure, for example, failing to adhere to Minn. Stat. §518.131 for temporary orders (not ever requiring direction in terms of an Answer and Counter-Petition) set in motion protracted litigation, and perpetuated the unconstitutional deprivation of parental rights, perhaps to the great harm of her children. The court unconstitutionally applied Minn. Stat. §518 when it deprived the Petitioner of legal and physical custody, and contact rights through a proceeding that Respondent initiated, and placed the children with a non-parent.

**A. The Fourteenth Amendment Gives Petitioner A Fundamental Liberty Right To Parent Without Government Interference.**

The Fourteenth Amendment to the Constitution of the United States provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST., Amend. XIV. The Supreme Court of the United States has held that the Due Process Clause to the Fourteenth Amendment "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 719, 720, 117 S.Ct. 2258, ____ (1997). "[T]he interest of parents in the care, custody, and control of their children" is one of the liberty interests that the Fourteenth Amendment protects. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060 (2000). Accordingly, "the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id.*, 530 U.S. at 66, 120 S. Ct. at 2060.

The Due Process Clause of the Fourteenth Amendment to the Constitution of the United States gives Petitioner a fundamental right to parent. That fundamental right is a substantive right which the State may not terminate without giving them full and adequate procedural due process. Here, aside from domestic abuse (which the court chose to ignore), there were no allegations or factual findings of unfitness or "endangerment" which would compel a state to get involved and take the children from the Petitioner. Further, the children were being cared for by Petitioner. In fact, the parents were competing for custody and parenting time, Petitioner expended thousands of dollars of her resources to enforce monetary child support, while Respondent spent money to obstruct payment of child support. With the court's propensity to act upon hearsay affidavits, Guardian reports, and phone requests, the proceedings carry with it serious repercussions of a deprivation of care, custody and control of these children.

The Court's order is prohibited by the long line of U.S. Supreme Court cases protecting a family unit. In *M.L.B. v. S.L.J.* 519 US 102, 117 S. Ct. 555 (1996) states that choices about marriage, family life, and the upbringing of children are among associational rights this Court has ranked as "of basic importance in our society" rights protected by the 14th Amendment." In *Moore v. East Cleveland* 431 US 494 (1977) and *Meyer v. Nebraska* and *Pierce Society of Sisters* the U.S. Supreme Court has consistently acknowledged a "private realm of family life which the state cannot enter". Custody and parenting time of children by a fit parent is no exception.

Minnesota Statute §518 places the burden on each parent to prove best interests. When evaluating a child's best interests, a district court is required to address the 13 best-interest factors enumerated in §518.17, Subd. 1. In nearly two years, this has not been done. The court granted custody to a relative "*or such other person deemed by the Guardian*", removing

Petitioner from the home, and requiring the relative to move in, the relative *never* having petitioned for custody. Even more egregious is if their mother contacted them, she could be arrested, and four of the children do *not* move back in their own home, choosing to live with another relative. Such orders, not authorized in juvenile protection, are certainly not authorized in a divorce.

In custody, a district court is prohibited from relying on one factor to the exclusion of all others. Sec. 518.17, Subd. 1(a). The court shall not consider conduct of a proposed custodian that does not affect the custodian's relationship to the child. Sec. 518.17, Subd. 1(b).

**B. The Court's Application of Minn. Stat. §518 to assert jurisdiction as to Petitioner's Children and Home Represents an Unconstitutional Infringement On Parental and Property Rights.**

Petitioner contends that Minn. Stat. §518 is unconstitutional on its face and as applied in this case because it violates a fit parents to decide the care, custody, and control of his or her children. The paradox is that each parent essentially interferes with the other's parent-child relationship by interfering with the other's fundamental right to the care, custody, and control of his or her child.

In *Troxel*, the Court set out principles necessary for a third-party visitation statute to survive a constitutional challenge: (1) the statute must give some special weight to the fit custodial parent's decision regarding visitation; (2) there can be no presumption in favor of awarding visitation; and (3) the court must assert more than a mere best-interest analysis in support of its decision to override the fit parent's wishes. *Id.* at 69-70. Neither parent was a third party here. As such, is a parent is fit, the statute is not at all narrowly tailored to the governmental interest in protecting the general welfare of children.

A facial challenge to the constitutionality of a statute requires a showing that "'no set of circumstances exists under which the Act would be valid.'" *Ohio v. Akron Ctr. for Reprod. Health*, 497 U.S. 502, 514 (1990). Certainly, there are no instances when the state may constitutionally intrude upon a parent who is providing care and support to their own child. But that is what happened here. Strict scrutiny is the appropriate standard of review when fundamental rights are at issue. Since parental rights are fundamental, Minn. Stat. §518 must advance a compelling state interest, and the statute must be narrowly tailored to further that interest. *See Kahn v. Griffin*, 701 N.W.2d 815, 831 (Minn. 2005) (citing *Bernal v. Fainter*, 467 U.S. 216, 219 (1984)). There was no statutory or legal basis to do what the Court did here.

Minnesota Statute §518 is not narrowly drawn to further any compelling interest of the state. The statute allows a parent *at any time* to commence litigation against the other, using mere best-interest factors as weapons. The statute fails to specify the level of proof required, or who bears the burden of proving the requirements of section Minn. Stat. §518, leaving both parents with equal standing and equal burden as to the other.

The district court should have required Respondent to follow the procedures set forth in Minn. Stat. § 518.131, subds. 3 and 4. It should have required Respondent to present substantial evidence of child endangerment as a precondition to issuing a temporary *ex parte* order depriving Petitioner of her undisputed and constitutionally protected parental rights. Assuming the court honestly believed that Respondent had prima facie evidence that his children were in immediate danger of physical harm, only one issue would and should have been set for hearing as soon as practicable, namely whether Petitioner's care of the children placed them in immediate danger of physical harm as of September 5, 2012, when Respondent made his ex parte request.

In order for courts to be involved, there should be a compelling state interest, such as unfitness, endangerment, or abuse of the child by the other parent. So too, the burden of proof must be on the parent (or third party) seeking *sole* custody of the child, and the standard of proof must be clear and convincing evidence of unfitness.

The Supreme Court explains "the minimum standard of proof tolerated by the due process requirement reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants." *Santosky v. Kramer*, 455 U.S. 745, 755 (1982). The balancing test set forth by the Court in *Mathews v. Eldridge* guides the determination regarding the minimum standard of proof required in these cases. 424 U.S. 319, 335 (1976). That balancing test requires the court to weigh: (1) "the private interests affected by the proceeding"; (2) "the risk of error created by the State's chosen procedure"; and (3) "the countervailing governmental interest supporting use of the challenged procedure." *Santosky*, 455 U.S. at 754. Looking at the *Mathews* factors, the clear and convincing evidentiary standard is mandated when the individual interests in the proceeding are "'particularly important'" and "'more substantial than mere loss of money.'" *Id.* at 756 (quoting *Addington v. Texas*, 441 U.S. 418, 424 (1979)). A parent's right to the care, custody, and control of his or her child is a fundamental right. It is "an interest far more precious than any property right." *Id.* at 758-59.

Additionally, proceedings that "employ imprecise substantive standards that leave determinations unusually open to subjective values of the judge" magnify the risk for erroneous deprivation of private interests. *Santosky*, 455 U.S. at 762. Minnesota Statute §518 employs the mere "best interest" analysis, parent v. parent. This analysis requires the court to make subjective determinations regarding what is in the best interests of the child. The dangers of

utilizing a best-interest analysis as one parent against another, both of them fit, is the potential for a court to make the decision based entirely on the court's subjective estimation. Here the court took the children away from their primary caretaker and home ----- instantly ----- with no legal analysis whatsoever based on hearsay and during a telephone conference the parents were not even involved in.

Finally, the government has no interest as parens patriae in the welfare of the child who has two competing fit parents in promoting relationships among recognized family units. As such, Minn. Stat. §518 can be stricken as unconstitutional. The parent's fundamental right to the care, custody, and control of his or her child carries with it the presumption that both parents are acting in the best interest of the child and requires deference to the parent's wishes. *Troxel*, 530 U.S. at 70. Accordingly, placing the burden on competing parents to prove best interest as to the other, violates that fundamental right.

In this case, where one parent petitions for custody and parenting time under §518.17, the Court evaluates each petition using the factors in Minn. Stat. §518.17. Here Respondent *never* Petitioned, and he motioned for joint legal and joint physical custody , alternating weeks. The factors in Minn. Stat. §518.17 have never been applied here.

Once the court chose to ignore Petitioner's allegation of domestic abuse, without a court finding of parental unfitness, the Court's entry into the realm of family, by means of the other parents' motion was a violation of the Constitution. Here, there was not event a motion, making the situation even more egregious.

In construing a statute, the court cannot supply that which the legislature purposely omits or inadvertently overlooks State v Corbin, 343 N W 2d 874 (Minn Ct App 1984). The trial court's attempt to craft that authority out of Minnesota Chapter 518 relating to the children and

property and conflating Minn. Stat. 260C (Child Protection) is without merit and is another violation of Ms. Grazzini-Rucki's substantive due process rights. The notion that a court has the authority to order no contact , evict you from your home, and have a third party move in your home to take care of your children, with no end in sight unquestionably violates her due process rights as an individual.

The concept that a court can create authority that does not exist anywhere in either Minnesota Chapter 518 within general requests for relief is unsupported by the law and essentially allows attorneys to bypass the plain language of the statute.

As written, Minn. Stat. §518 ignores a fit parent's right to make decisions concerning the care, custody, and control of their own children, which are fundamental rights protect by the United States and Minnesota constitutions. Petitioner attempted to follow court order after court order, not even based in reality.

In re Santoro, 594 nw2D 174, 177 (1999) our Supreme Court cited I Kings 3:16-28 recognizing: "*[ it] is difficult to adjudicate with the wisdom of King Solomon when both parties are willing to split the baby. See I Kings 3:16-28.*" The record shows Respondent resolutely refused to accept Petitioner's authority as primary caretaker, and the children's need for stability. The Santoro court recognized that even if conduct "*[i]f true is reprehensible, contempt sanctions and fines are more appropriate tools to punish such behavior and to deter other families from engaging in such tactics. Children should not become pawns in the wars of adults. When the law states that the best interests of children should guide the courts, then children must be the beneficiaries of justice, not the gavel pounding out the acrimony existing between adults.*" Id at 177.

The legal framework of Minn. Stat. §518.18 allows court discretion that violates a fit

parents fundamental due process rights as an individual and as a fit parent. In short, the need for a child's stability is abrogated to the jurisdiction of the family court, at the will of one parent, by court filings to split the baby again (and again).

In addition, the trial court should not have to make the detailed best interest findings required in custody determinations by section 518.17, subd. 1, *see Olson v. Olson*, 534 N.W.2d at 550 (distinguishing the factual findings required for visitation cases from those required for custody determinations).

THE GUARDIAN MADE UNLAWFUL RECOMMENDATIONS WITHOUT JUDICIAL AUTHORITY AND SHOULD BE DISMISSED

The role and duties of a court appointed guardian are not discretionary or boundless, but confined to the order and related statutes and rules. That began with a *permissive* Order for Appointment of Guardian, which was confined to making "parenting time recommendation" (See Order July 14, 2011), concluded with an ex parte phone conference (parents excluded) depriving each of them of with all legal, physical, custodial rights --- and contact with their own children, immediately evicting Petitioner from her homestead and placing the children in the care of non-parents "or such other person as the guardian determines", relatives not even parties to the action. (See September 7, 2012 Order). The guardian was out of bounds Imagine if state law required every family member, especially children, to undergo a behavioral health assessment --- --an invasive and comprehensive review of physical and mental health, intelligence, school performance, employment, level of function in different domains including family situation, and behavior in the community. Imagine if the law required the assessment for every child, even if there have never been any indications of behavioral issues. That is exactly the situation these parents have faced. And here the "test results" have not been disclosed to the Petitioner.

A guardian ad litem shall not be appointed or serve except upon written order of the court Rule 903.02. An Order Appointing the Guardian must set forth specific duties. Rule 903.03. Rule 903.04 specifically precludes a guardian from evaluating custody. The rule specifically states a guardian ad litem "shall not be ordered to," and "shall not perform" the role of "custody evaluator pursuant to Minn. Stat. 518.18. 'see 903.03 (a). Contrary to the rule, the order with respect to the children specifically made a finding such that the guardian makes parenting time recommendations, which is essentially the role of a custody evaluator. The guardian had been appointed permissively pursuant to § 518.165, Subd. 1.

In addition, the Minnesota Rules of Guardian Procedure 906 prohibits Guardians as to any form of ex parte communication. The reports to the court, where Petitioner was left out, were contrary to this rule.

Rule 905 lists the general responsibilities of a guardian, none of which authorize custody or parenting time recommendations. Specifically, a guardian conducts "an independent investigation to determine the fact relevant to the situation of the child", "advocates for the best interest of the child" but does not take an evaluative role which only, as here, puts that party at odd with the guardian. A child's legal custodian parent decides about the child's residence, and the school the child should be in. That decision is not vested in the guardian or the court, at the will of the other parent who decides to abrogate parental authority. The fact that the trial court ordered a change of custody to a non-parent, change of residence for the child, and no contact, provided Petitioner with no involvement, much less control, over decisions as to her own children.

The court filing places the decision-making relating to the child in the hands of the court, and the court's chosen guardian, clearly violating Petitioner's due process right to the care, custody and control of her children.

The record reflects no grave or weighty reasons justifying such a deprivation of the other parent, such as neglect, abandonment, incapacity, moral delinquency, instability of character, inability to furnish the child with needed care, or that restoring custody would not be in the best interest and welfare of the children. See: In re NAK Rogers v. Knauff, 649 NW 2d 166 (Minn. 2002) Citing Durkin v. Hinich, 442 N.W.2d 148, 152-53 (Minn. 1989).

ATTORNEY FEES FOR ASSERTING HER CUSTODY RIGHTS IN THE PROCEEDINGS IS ERROR

The Respondent's claim that Petitioner pay his attorneys fees had to be a huge distraction for Petitioner. Again, only a family lawyer can disrupt the proceedings to get paid. There is no due process if the bill is disputed for these types of claims. Courts and attorneys fail to recognize that the families' resources are being used. Also with Petitioner having her own attorney giving her advice along the way, it's illogical that the "client" can be penalized by a court, as the opposing attorneys fight to have her pay Respondent's fees. It appears there is more ability in collecting fees in representing a family member in a family dispute. In any other setting, there would be an action against the Respondent's attorney for abuse of process.

The court assessed thousands of dollars to Petitioner in attorney fees for essentially not agreeing to the demands of the Respondent's attorney, as instructed by her own attorney. Also, the court had ordered the Respondent to pay child support, and the Petitioner to pay the house payment, when the child support was not being paid. Family and home expenses obviously fell solely upon Petitioner.

The Court of Appeals has expressed alarm over the amount of attorneys' fees charged in family matters. In *Sinsibaugh*, a judge concurred specially to express his concern over the high fees incurred by the parties in that custody dispute. *Sinsibaugh v. Heinerscheid*, 428 N.W.2d 476 (Minn. App. 1988) (concurring opinion). The parties together had paid $80,000 in legal fees. The judge opined that *"extraordinarily high fees are occurring in family law cases with some regularity" and that the high fees were threatening to limit all but the very wealthy from litigating family law disputes.*" Id. at 481. The judge urged attorneys to be conservative in setting their fees and to exercise control over difficult clients in order to avoid unnecessary motions and "vexatious and fruitless" proceedings. *Id.*

In a later case, the majority opinion discussed at some length the area of attorneys' fees in family matters. *Meyer v. Meyer*, 441 N.W.2d 544, 548 (Minn. App. 1989). The Appeals Court expressed alarm that a party had incurred over $15,000 in legal fees even though she had a poverty level income and received public and charitable assistance to help her meet her basic living necessities. The court opined that the "*system is wrong and must be corrected*" because "*expensive attorney fees in family law matters have become the rule and not the exception.*" *Id.* at 548. The court stated that the "profession has an affirmative duty to provide quality legal services within the ability of the litigant to pay. The BAR Association should make a concerted effort to accomplish this goal." *Id.* The court went on to state that if a "drastic and substantial change" is unable to be made in the charging of fees due to the economics of law office management, then the whole statutory structure for resolving family law disputes will have to be examined in order to provide relief for indigent clients. *Id.* The court suggested one alternative to be the removal of the family law area from the adversarial system. *Id.*

In *Barnier*, the court of appeals affirmed an award to the wife of $20,000 in attorney fees, although it found the amount of fees to be "*extraordinarily high.*" The appeals court reiterated its concern for high fees in family law cases and stated that the legal profession has an affirmative duty to provide quality legal services within the ability of the litigant to pay. *Barnier v. Wells*, 476 N.W.2d 795 (Minn. Ct. App. 1991)

Here, the law seems to allow both attorneys to litigate with family resources. There is no due process available if the attorney's fees are disputed by the other party.

CONCLUSION

The situation Petitioner respectfully presents to this Court is one in which sloppy family court procedure allowed Respondent and his attorney to upset child custody through stealth and sleight of hand without notice and proper evidentiary basis. There was never an emergency in this case. But an emergency exists now since Petitioner has been deprived her five children and home, and requires court "intervention" in terms of vacating the orders, so she is free from the tyranny imposed by courts, facilitated by Respondent's attorney, that has ravaged her family, and spent down all of her resources.

Anyone familiar with the family courts knows how often litigants use children as bargaining chips in expensive power plays that do little more than create anxiety for the other parent and make lawyers rich. This issue likely will recur unless the courts begin to take a critical look at how the district courts apply family law statutes and procedures. Based on the foregoing, Petitioner respectfully requests the relief set forth in the attached Notice of Motion. It is imperative that in the interests of justice, that the custody and property and attorney fee orders be vacated, and that Petitioner's custody of the children and property rights be restored. In order to avoid an unconstitutional infringement on Petitioner's fundamental due process rights to her

home, and to raise her children without governmental interference the court's application of Minn. Stat. § 518 must be narrowly tailored to meet a compelling state interest. No such interest was present here.

Further, evidence of the trial court's overly broad application of its authority within Minn. Stat. §518 can be found in its granting custody and possession of the home to a relative.

In its failure to recognize Petitioner's fundamental right, the court created an unnecessarily voluminous and murky record to decipher. The particular arguments Respondent made to the court, cannot be said to constitute child endangerment. That court filings set in motion protracted litigation and subsequent procedures that merely perpetuated the unconstitutional deprivation of Petitioner's parental rights, and rights to her property, perhaps to the great harm of his minor children.

MACDONALD LAW FIRM, LLC

Dated:____________

Michelle L. MacDonald, #182370
Athena V. Hollins, #0392249
1069 South Robert Street
West St. Paul, MN 55118
Telephone: (651) 222-4400
Facsimile: (651) 222-1122

ATTORNEYS FOR PETITIONER
SANDRA GRAZZINI-RUCKI

STATE OF MINNESOTA DISTRICT COURT
COUNTY OF DAKOTA FIRST JUDICIAL DISTRICT

---

In the Matter of:

Sandra Sue Grazzini-Rucki,

Petitioner,

and File No. 19AV-FA-11-1273

David Victor Rucki,

Respondent.

COPY

---

The above-entitled matter came duly on for hearing before the Honorable David L. Knutson, one of the judges of the above-named Court, on the 26th day of February, 2013, at the Dakota County Judicial Center, City of Hastings, State of Minnesota.

APPEARANCES:

Michelle MacDonald, Attorney at Law, appeared on behalf of the Petitioner.

Lisa Elliott, Attorney at Law, appeared on behalf of the Defendant.

John Jerabek, Attorney at Law, appeared on behalf of the Guardian ad Litem.

Julian Zebot, Attorney at Law, appeared on behalf of Wells Fargo Bank, NA.

(Whereupon, the following proceedings were duly had:)

PROCEEDINGS

THE COURT: This is File 19AV-FA-11-1273. In the matter of Sandra Sue Grazzini-Ruckl and David Victor Ruckl. Let's start I guess on my left, for attorneys to note your appearance, please.

MS. ELLIOTT: Lisa Elliott appearing on behalf of the Respondent David Victor Ruckl who is also present.

MS. MACDONALD: Yes, Your Honor, Michelle MacDonald. I represent Sandra Grazzini-Ruckl.

THE COURT: Okay.

MR. JERABEK: Your Honor, John Jerabek, J-e-r-a-b-e-k, here on behalf of the Guardian ad Litem, Julie Friedrich.

MR. GOLDBERG: Dan Goldberg.

THE COURT: All right.

MR. GOLDBERG: My name is Daniel Jay Goldberg. I'm an attorney representing Nancy Olson, the maternal aunt, who is sitting next to me.

MR. ZEBOT: Julian Zebot, counsel on behalf of Wells Fargo Bank NA, co-trustee of the Albert J. Grazzini Revocable Trust.

THE COURT: How do you spell your last name?

MR. ZEBOT: Z-e-b-o-t. I'm with the Maslon Law Firm.

THE COURT: Anyone else? All right. Well, counsel, I'm wondering what we can dispose of the quickest so that as many people can leave as possible. First of all -- well, to begin with, I received some documents from US Bank. I don't know why. So does anybody know about --

MS. MACDONALD: Your Honor, before we get started, you took a roll call and I would like to know who all these people are in the courtroom on behalf of my client. I've been going around this morning to each and every one of these people trying to find out why they're here, who brought them here, to -- you know, in the interest of justice, I want to know who is in this courtroom.

THE COURT: Well --

MS. MACDONALD: I have a motion on.

THE COURT: Well --

MS. MACDONALD: And I believe Ms. Elliott has a motion on and I wonder why everybody is in this courtroom. There are dozens of people in this courtroom and I'd like a roll call, please. I think it's only fair. You asked who else is here.

And you're -- you know -- and what you want to dispose of first.

THE COURT: Well, there is 11 other people here, so -- and this is a public courtroom. I mean, I'm just as curious as you are as to who is here and why they are here, but I don't know that we have a right to ask. This is a public courtroom.

MS. MACDONALD: I think --

THE COURT: And --

MS. MACDONALD: They've all informed me that they're here on behalf of one party or the other and there is -- the only people I can determine that are here for other reasons is there is a law student here with her professor -- not her --

THE COURT: I'm sorry?

MS. MACDONALD: There is a law student here.

THE COURT: Yes.

MS. MACDONALD: With an attorney, you know, that she's mentoring, or is mentoring her. Everyone else is here because they were either noticed of these proceedings, invited by an attorney, invited by a guardian, invited by somebody who is involved in this case. And I think it's only fair that we know who is here.

Other than, you know -- I'm happy to have the law student and her mentor here. Their names are --

THE COURT: Well, I don't think we need their names. This is a public courtroom, Ms. MacDonald. Anybody could walk in here through this door. Do you want us to query who is here on any kind of a case that anybody has in the courts and restrict people's rights to come into court?

MS. MACDONALD: No, I'm not -- I think that my client has a right to know who is here if they are here on behalf of one side or another. She understands that her children -- she has seen her son wandering around the courtroom -- the courthouse. She doesn't know where her other children are. They are supposedly here. One sister is here saying that she's supposed to bring the kids to school. I will tell you, Your Honor, my client does not know what's going on. There is a due process. So, if anybody is going -- the bank is here. We weren't aware the bank is here. You're saying you received some papers from the bank that you've looked at. That's what I'm asking for is some due process. I want to know who is here. I'm not going to kick them out. I just think for the record, I would like to know

6

who is here in this courtroom on this case. I think Ms. Grazzini has every right to know.

THE COURT: And, Ms. MacDonald, my decision is that we do not have a right to know. I don't have the right to know. Your client doesn't have a right to know. You don't have a right to know. Anybody can come into this courtroom and observe the proceedings here. I don't know who's here or why they are here or who asked them to be here. Okay. I'm going to address these motions one at a time. I'd like to clear up some things before we begin though. As I mentioned, I stopped by the Apple Valley courthouse because the clerks called me yesterday and said that some packets had arrived from US Bank. I don't know what cases they refer to. I picked these up this morning. I want both counsel to approach here and take a look at these documents and determine why I have them. I have not looked at them. I don't know what they are. Ms. MacDonald, if you'd please approach the bench.

(Off the record)

THE COURT: Okay. Counsel, you've had a chance to look at whatever that is? Why do I have them? Why were they sent to me? Does anybody

7

know?

MS. ELLIOTT: I can guess. It looks like --

MS. MACDONALD: Your Honor, I object. I don't want any speculation.

MS. ELLIOTT: From looking at them?

THE COURT: Can you tell me?

MS. MACDONALD: Your Honor, my understanding is, and I know as little about this -- my client did some subpoenas to get this information to you, okay, some of the information --

THE COURT: Are these to go to her then?

MS. MACDONALD: Yes, they are to go to her.

MS. ELLIOTT: And, Your Honor, we filed a motion to quash that subpoena. We were not given notice by Petitioner of the subpoena. We found out purely by accident by checking the court records. So we filed the motion on Friday to quash the subpoena and any right that she has at this point to obtain those records. We weren't given notice and there is no reason for getting records from 2010 through -- middle of 2012.

MS. MACDONALD: Your Honor, this is another reason -- Your Honor doesn't even -- isn't even aware apparently that there were some subpoenas that were signed by court clerks here, and

8

personally served on a variety of people, according to my client. I'm representing her on constitutional issues alone and we have Ms. Elliott here who's done a motion to quash. And you just began this proceeding by saying let's go through the motions one by one. Have you even seen the motion to quash?

THE COURT: I've seen the motion to quash.

MS. MACDONALD: Okay.

THE COURT: But that doesn't answer my question of why somebody sent me documents from US Bank, does it?

MS. MACDONALD: No, it does not, Your Honor.

THE COURT: So, apparently either only you or your client can help me with that answer.

MS. GRAZZINI-RUCKI: They are supposed to go to me.

THE COURT: Okay.

MS. GRAZZINI-RUCKI: May I retrieve them?

MS. ELLIOTT: We're going to object to that because that's part of our motion to quash.

THE COURT: Well, apparently it's happened, so we can address that. Well, thank you, Ms. MacDonald, and, thank you, Ms. Grazzini-Rucki for answering my question finally.

9

This is not the way that I expected to start off this hearing. This doesn't have to be an angry proceeding. We're trying to unify this family and get this family back on track, and all we get is fighting, inability to cooperate, inability to follow Court orders on both sides. And, frankly, the Court's tired of it. So, what can we do with Mr. Zebot from Wells Fargo?

MS. ELLIOTT: Your Honor, I believe this is part of our emergency motion, ex parte motion that we filed back in January regarding the trust, the Albert Grazzini trust. In talking with Mr. Zebot, it appears that that is the general Albert Grazzini trust that will be making distributions and my understanding is that the only distributions that will be made to anybody in the Rucki family might possibly be to the Rucki children and one of our motions is that if there are any distributions made from that --

THE COURT: Okay. I guess we'll get to that. And then why don't we start with Ms. MacDonald's motion asserting that under -- Minnesota Statute 518 is unconstitutional as well as requesting other relief then. Ms. MacDonald.

MS. MACDONALD: Yes, Your Honor. I want to

10

make sure that the Court has received and read my submission which includes a notice of motion and motion asserting that Minnesota Statute 518 is unconstitutional as written and as applied by the District Court in this matter. It also includes an affidavit of Petitioner Sandra Sue Grazzini-Rucki. It also includes a notice to the Attorney General asserting that Minnesota Statute 518 is unconstitutional as written and applied in this matter and a very detailed memorandum of law supporting the motion that Minnesota Statute 518 is unconstitutional as written and applied, and I'm asking that all orders be vacated that have restricted Ms. Grazzini's liberty rights to her children and her property.

Also, Your Honor, what I attached was the most recent order relating to custody. Okay. That ordered is dated September 7th demanding -- or she could be arrested -- Ms. Grazzini leave her children and her home that same day. Apparently on September 5th, there was an emergency telephone conference, and based upon Respondent's request for immediate removal of the parties' minor children from the Petitioner's care and custody, there was a phone call. Elizabeth Henry was

11

involved in the phone call. Lisa Elliott was involved in the phone call. Julie Friedrich, the Guardian ad Litem, who by the way, was only appointed by this Court to determine parenting time, only appointed by this Court to determine parenting time, was involved in this phone call with no statutory basis to begin with. This was not child protection. We're not in juvenile court under those provisions.

The Court granted -- and I'll call it Ms. Elliott's motion -- on behalf of the father to remove the children from my client's care.

Now, as you can see from her affidavit, Your Honor, the children had been in her care, custody and control since their birth, all five of them. And they had been living in that home for years with their mother all five of them. Okay. And what this Court did, okay, also not authorized by the statute, is order her to vacate her home, a home that had just been awarded to her, on the record, at 19675 Ireland Place in Lakeville, Minnesota. It had just been awarded to her on the record August 20th, a few short days before. And it actually ordered that not only did she -- was she deprived of her custody, care and control of

12

her children after all these years with no due process whatsoever, a telephone conference in a judge's chambers, but the children were ordered for Tami Love an aunt, who was apparently recommended by the Guardian ad Litem or such other individual as recommended by the guardian -- Do you see where I'm going with this? The guardian could have recommended that you take custody of the kids; that I take custody of the kids; that Lisa Elliott take custody of the kids. Totally random, totally beyond the discretion of what the guardian was supposed to do anyway with parenting time and gave temporary physical and legal custody of the minor children to Tami Love or such other person, you know, we don't know who that is -- other person as determined by the guardian. The Court also said that Tami Love, a relative, a non-party to the action, mind you, needs to just move into the house and will reside in the home until further order of the Court. So this is a home that's subject to a mortgage that's owned by my client, apparently was going to be awarded to her 100 percent, and this Court ordered in chambers the same day that she is evicted from her home -- that process -- you can't even be evicted

13

from a home that you don't own that quickly, and then her children get to live there with a non-party. Then, the child's aunt, Nancy Olson, was allowed to contact the children and visit the children to assist Ms. Love. Nancy Olson is also not a party to this action whatsoever. She is a non-party, and can contact and assist Ms. Love, and -- and -- or other individuals as recommended by the Guardian ad Litem during this process. So we have the Guardian ad Litem running the show. Okay. First it's Lisa Elliott. Then it's the Guardian ad Litem running the show. And then the facilitation is the Court just signing an order and I understand this was the proposed order by Lisa Elliott after the September 5th telephone conference that was presented to you.

Then, to top things off, the kids get contact that they're going to be living with a non-party. Okay. They are going to be contacted by another non-party or such other person as the guardian decides, and then it says: Neither party shall have any contact with the minor children either directly, indirectly, electronically, by phone, text, mail or other third-party communication. You completely denied Ms. Grazzini of all contact

14

with her children by this order except as recommended in writing by therapists involved with the parties and the children. Okay. So who -- what therapist are we talking about if your order stands alone? Oh, some therapist if they say it's okay in writing, then it's okay for there to be contact, but until then, no contact. Okay. Which -- there was no petition for harassment. I understand the only order for protection was the one that Ms. Grazzini got, that -- again, as you look at the statute it's an impermissible order in a family court trial to vacate an order for protection which was done by this Court.

And that says except in writing by therapists involved with the parties and children. At this point, Your Honor, I just want to explain that Mr. -- I believe his name was Gilbertson -- Reilman -- had evaluated my client -- she didn't even do an evaluation of my client. He didn't have her fill out any paperwork for one hour and she had brought the children to somebody -- it was Gilbertson, right?

MS. GRAZZINI-RUCKI: Reilman.

MS. MACDONALD: Reilman. Brought the children to Mr. Reilman and they spent about a

15

half an hour with the children, if that. She has it on recording, so we know exactly what happened in that hearing. And based on that there was -- he wrote a letter that same day. It wasn't a report, Your Honor. It was a letter. He gives it -- he doesn't show it to my client. He doesn't show it to the parents at all. He gives it to the Guardian ad Litem who proceeds to have discussions with you or something. I don't know how this can come about and I don't know where the due process was. Certainly when you're talking about fundamental rights, it's like your liberty rights. It's like if you're in your home people can't just come into your home and decide they're going to take things out without proper due process. She was deprived of her children without any process whatsoever. And she was deprived of her home without any process whatsoever.

And then, to top it off, if she was to contact the children and there is supposed to be some third-party communication -- if she was to contact the children -- and I submit to you she hasn't -- this was September 7th. It is now February 26th. This is the severity of the deprivation. Okay. She was going to be -- it

16

would trigger a contempt proceeding with the possibility of incarceration. Now, I hope, Your Honor, that wasn't written by you. It's in your order but I don't think it could have been diligently looked at. I believe that Ms. Elliott wrote this order, this proposed order.

Then to top that off, after immediately on September 9th, you order her to leave the home in writing, okay -- usually when you get an order you would get 30 days to even -- you'd be able to appeal it -- something -- you order her to leave the home you presumably just awarded to her. You provided that neither party shall enter the property nor shall she be allowed at the minor children's schools at any time with the limited exceptions specified in Number 6. Now that limited exception was not for this mother. Okay. If they were to go to the schools, Your Honor, violation of that provision would trigger a contempt proceeding with the possibility of incarceration. Ms. Grazzini could not even alter, you know, being with her children go to the children's schools. Okay. And she follows Court Orders. Okay. Obviously, she followed it. And you said violation of this provision shall trigger

17

a contempt proceeding with the possibility -- scary thing.

And then you have some limited access to Ireland Place not by the person that just got awarded the home, which was Ms. Grazzini, a home where maybe she should care for her children, try to get her life back together because of the thousands of dollars, literally thousands, she thinks -- she's estimating $600,000 she paid to attorneys for these proceedings. She tells me that she paid $110,000 in one month to one attorney and then the following month $110,000 again. Lisa Elliott's (sic) retainer was $175,000 for a retainer. Lisa Henry. I'm sorry. Not Lisa Elliott.

And then you order her after ordering her to be out of her house and she already had supposedly been ordered to do this -- shall make every effort to bring the mortgage current before the schedule. So this order disrupts an entire foreclosure proceeding. Okay. Foreclosure is a proceeding that has some due process in it. So I don't think there's anything in the Statute 518 that says that you can disrupt a foreclosure, a Court order or an attorney's motion can disrupt a foreclosure

proceeding and just say, well, you know, you better pay your mortgage before the sheriff's sale. The sheriff's sale is a right that people in foreclosure proceedings have. And the dates are all messed up. Petitioner shall make every effort to bring the mortgage current before the scheduled sheriff's sale on October 11, 2012. If by October 1, Petitioner is not able to bring the mortgage current, Respondent shall be allowed to make repairs to the house to prepare for the sale, under the same restrictions as stated above. If Respondent makes such repairs he shall be reimbursed for those repairs from the sale proceeds of the home. I'm reading from Provision 6 of your order. Okay. So, she's evicted from home immediately. She is deprived completely of any -- not just custody of her children, any contact with her children. The children are -- are -- are -- are given to non-parties that are allowed to move into a home that just got awarded to her that's in her name and she's ordered to make mortgage payments, or else Lisa Elliott's client gets to come into the house and prepare it for sale. Is it sold yet? Has any preparations for sale been done? I think that's irrelevant.

And part of my motion is that November 14th order that you did, I read the record, and I read the order and the other order, that record of that alleged agreement is about as clear -- that agreement is about as clear as mud. And if you take that record and you match it to what Lisa Elliott wrote, doesn't even -- it totally doesn't mean anything. You can't even figure it out, Your Honor. And I -- you're taking instruction from Ms. Elliott and Ms. Elliott is not doing her job. She is not following the law. She is not following the statute.

And the impact of all of this. Can you just imagine you're with your mother, you're afraid to see your father, that's clear just by the letters that I saw yesterday. And you not only take -- now Ms. Elliott wants the kids to go to foster care. And that's actually going to be something that I have to worry about. It is actually something I have to worry about because of the orders that have transpired in this matter.

And, Your Honor, if on -- in October when the parties came for their trial, okay, and if there was an agreement on the record, okay, relating to this home, okay, that should have assured my

client or the Court should have at least thought that it was in the best interest of my client some kind of equity, that order also was -- was to have Mr. Rucki pay child support. He had not paid one dime. Do you know Ms. Grazzini has not received one dime of Court-ordered child support because every time she gets close to getting an order that he pay, Lisa Elliott comes in and reserves it or does something else. She's not been paid one dime, and where is the accountability for that? So she's had to pay all of her -- and she's exhausted all of her resources to attorneys and now she's living with different people. She flies for a living, and since September 7th she's been deprived her home and her children.

So you can see why I can't see this hearing as business as usual, let's just come into court and go down the list of the motions. Because my motion is, you know, not only for constitutional rights, that the statute we think completely -- if you read the statute, Your Honor, and you consider the fact that parents have a fundamental constitutional right to decisions for a child's custody, care and upbringing, okay, to allow parents to just fight about it, you know, without

a finding of unfitness, is the statute -- you've got to think of a fundamental right, Your Honor, as the air that you breathe. What this Court was allowed to do is nothing more then taking away Ms. Grazzini's air from the beginning.

Then, Your Honor, there is a litany of orders -- actually there is a litany of orders -- the Court orders the children to begin therapy with James Gilbertson. James Gilbertson and the parties and children shall follow all recommendations of James Gilbertson. My question -- who is James Gilbertson? Does Your Honor know who he is? And I believe he's the same person that met with -- he's written some letters now. He's demanding in his letters -- and these are letters that my client and I aren't even privy to. My client, as a parent of these children, isn't even able to get any of the records, none of them, zero. So this letter that I've seen now, there's two letters demanding, Your Honor, that you order the children to confront their father -- something absolutely outrageous, not in the law. And Gilbertson has done no evaluation of the children. There's been no psychological evaluations. In fact, my understanding is that

Lisa Elliott said she didn't want a psychological evaluation of the children, that you couldn't order that and that he saw the children six times. The order before the chamber's meeting where neither parent was involved, that order, the doctor had not even seen one of the children, which I believe was Nico. So she's totally clueless and I understand why. I spent three days, three complete afternoons looking at the file to sort it out. And the only thing I could come to is that that statute is unconstitutional as written and as applied in this matter. Because if your children are like the air you breathe you need more than just a chamber's conference. You need more due process than that.

In this order, there's so many inconsistent orders I cannot believe it, starting with this one and going backwards. You get an order to pay support, then you get an order to reserve support. You get an order that says the guardian is supposed to determine parenting time and then all of a sudden there's something else. I could not -- I don't even think the Court can follow it -- if you can follow it with all your other cases -- so the only resolution to this needs to be a

complete dismissal -- all orders are vacated and the children are just back to the parents, complete vacation of the orders, including the November 14th order, Your Honor. The reason that can be reopened -- and the reasoning is simple. You have an alleged agreement on the record, okay, that doesn't match this order and that order brings in -- there was an intervening thing that happened. She was evicted from her home by another -- I'll call it order --

So the first question is: Is there statutory authority for what you did? No. Even if you look at the statute, Your Honor, and you look at what happened here, the motions, even the motions on today are not temporary motions. They're impermissible orders pursuant to 518. And I'll just be clear, 518.131 temporary orders and restraining orders, Subdivision 2, Impermissible orders: No temporary order shall A, deny parenting time to a parent unless the Court finds that the parenting time is likely to cause physical or emotional harm to the children. You -- this order denied parenting time to both parents. By -- it denied contact. It denied everything completely for months now.

The second impermissible order is also contained in B of that section. No temporary order shall - quote - exclude a party from the family home of the parties unless the Court finds that the physical or emotional harm to one of the parties, or to the children of the parties, is likely to result, or that the exclusion is reasonable in the circumstances. Without any due process, after a record was made relating to the property, she was ordered to vacate -- she was ordered excluded from her home. And not only was she excluded, so was Mr. Rucki, and so were -- the children effectively were excluded because my understanding is they went to the police and one of the other sisters took them in and that's where they have been living. They have been living with Ms. Grazzini's sister. And don't you think for a moment that Ms. Grazzini's sister has even communicated -- she won't even talk with her own sister. Talk about the impact, because everybody is afraid that they might go to jail because of this order. Most particularly, Ms. Grazzini because if she contacts the children she thinks she'll be incarcerated.

And then the third impermissible order, Your

Honor, is what you did as I was reading the file and it was presumably an agreement on the record Ms. -- and this might be what I call the poisonous tree, okay, because there was a proceeding started by Ms. Grazzini in a proper way 518 B, which is the domestic abuse statute, and I believe there was some ex parte orders that were signed and those orders were vacated in the family court proceeding. So that's also an impermissible order, Your Honor. It says here Subdivision 2 again, no temporary order shall vacate or modify an order granted under Section 518 B.01 Subdivision 6. So the bottom line is if there was a concern about Mr. Rucki, and there is an ongoing concern and the fear that the children have in contacting him, why punish the children by depriving them of their mother? And why punish their mother by disrupting their entire lives?

Also, Your Honor, your attorney's fee order, remarkable. There's no findings relating to attorney's fees. My understanding is that the attorneys were just going to submit affidavits and then there was just going to be some attorney fee order. First of all, I think that in the temporary orders you can't award temporary costs

26

and reasonable attorneys' fees. Okay. But there's also a statute relating to that. Okay. So, if my client is represented all this time by an attorney, who is telling her what to do at every move including a phone call that's in her affidavit that says move out of your house, you can be subject to arrest, leave the kids there, pack a little suitcase, so she left not only her home, her kids, but all of her property, that -- and it's an impermissible order. She ends up with an order for attorney's fees.

And then, the bank is here. You know why the bank is here? They got some papers from Lisa Elliott in this proceeding with this caption on it, emergency papers, so to speak. You can't even -- you can't do that in a family court matter. You can't start harassing banks, you know, to divulge information. And I saw some materials that said the bank agreed. Okay. To order banks? I mean, to -- part of her motion, Your Honor, I mean, there's a trust. I haven't seen it. Okay. I'm not sure Ms. Grazzini even has a copy. Apparently the children are beneficiaries of the trust. Well, Lisa Elliott wants an order that says any monies that go to the children will go to

27

her client who doesn't even have custody of the kids and hasn't paid a dime in support because after you ordered child support to be paid or at least it was expected to be paid after that agreement that was put on the record in August, August 28th I believe, you told him to stop payment. So where is the logic in all of this? Where is the logic if the children are very afraid of their dad today such that their therapist who's seen him about six times in all of this time is saying that you should order the children to see their father, where is the logic, if the children are that afraid, in taking the children away from their mother? Like, you know, we won't call it temporary, because basically immediately there was irreparable damage to the children, to their family, they don't even live in that home anymore except for one of them who is living with, I believe, the aunt but my understanding is the father is there now because one of your orders said that -- one of the orders that Ms. Elliott provided to you was that if the mortgage isn't paid by a certain date -- again she wasn't even in the home -- then, he's going to be not awarded the property but it will just be titled in his name,

28

so then she puts some other order in.

Now, the statute is designed to provide a due process of law for determining when the state, through its family court may intervene against the wishes of a parent on behalf of a child so that kids' needs and property are met. Okay. What has happened here and it's like a profound problem that I see, is that when -- if you have these fundamental constitutional rights to parent, the only reason you should be coming to Court is if those rights are denied. Not to get them. Do you understand what I mean? If you already have the rights they are inchoate rights. The only reason you should involve a Court or have a Court intervene is to get them -- is not to get them but to enforce them, to reenforce the rights you already have. So, in other words, if -- my understanding is there was no counter petition. Ms. Grazzini petitioned -- that's not another off-the-wall thing that happened, because if she served a petition and then it was another judge who heard the testimony and decided that what Mr. Rucki signed was like, you know, he didn't have any knowledge of it or whatever the thought was -- if they believed his testimony that he didn't know

29

what he signed then was he ever really served with anything because he signed an admission of service too. So was he ever really served to begin with? That brings us to the fact of the personal jurisdiction and what I call the business as usual. So for the same reasons we can reopen the November 14th -- because if you want to call it fraud, you want to call it misconduct of the other party, but if there was a -- some kind of an agreement on the record where she was going to be granted or her home then how come a week later there is an ex parte order evicting her from her home immediately and all the property in it? You know, that's some kind of an intervening circumstance that should completely wipe out the November 14th order.

And I'm asking that all orders be vacated. And I'm asking that the guardian be removed. I'm asking for a number of things but I want to finish up my argument and I thank you for indulging me this long.

And I started to say, Your Honor, that -- and it's in my memo, but the United States Supreme Court Juris Prudence is to enter the realm of family, you know, it's a no-no. You can't just

decide what you're going to, you know, do with a family. It's a no-no. Unless there is a compelling state interest. Now, as I said in my memorandum, there was no compelling state interest here, and that's why the statute's unconstitutional because I submit that there is really no compelling state interest to enter the realm of family and determine custody if we recognize that parents have a fundamental constitutional right to the care, custody and control of their children to begin with. So the only reason a court can even address it is because one parent or the other has decided to petition and that that parent -- and it's because of the best interests statutes which I explained in the memo. There should be only if we recognize the fundamental constitutional liberty rights of parents with respect to their children, and I've cited all the case law in my memorandum, then we should only be going to court or involving the court if we're not getting them.

In other words, if now, now it's an emergency, Ms. Rucki -- Ms. Grazzini has been deprived of her rights. Now she's coming into court and saying, Your Honor, I need them. Now, I

submit to you that just dismissing this whole thing, you know, it will be back to square one and the children can be with their mother and seeing their father, however that ends up going without any -- and my understanding is the children were never in therapy until the Court ordered it. So in reality, Your Honor, the protection of the system itself is overshadowing the protection of the children. Again, I say this is not child protection. Only in child protection juvenile court hearings and that's why at the beginning I'm saying who are all these people, you know, all these people just come and they're able to discuss the child, and that's when a state has involuntary answered the realm because there's police action and taken the children away, even in those particular instances they don't take the children away for five or six months temporarily. Immediately, those children are seeing the parents on a regular basis. So how is this happening in family court? It's because the statute's unconstitutional. How is this happening in family court? Because we do it in other proceedings like third party custody proceedings -- yeah, there's a whole process there that allows non-parents -- so

the protection of the children has been lost in all of this.

The initial hearings are not fact finding hearings at all. There's been no fact-finding hearings. There's been no evidentiary hearing at all? I didn't see it in the record except to reopen the divorce, the simple divorce that this was to begin with. With attorneys like Katie Graves who should have known what she was doing, from Larry Katz's office who is an icon in the family law community. So the initial hearings are not fact-finding hearings. All the fact-finding concerns past activity, okay, to the contract hearing, Your Honor, the sole issue should be whether the children, now under supervision of the Court, will be neglected or abused in the future. I submit to you these children are not -- have not been -- they are not under the supervision of the Court. They are not supposed to be. This isn't a juvenile court proceeding where the children are supposed to be under the supervision of the Court.

And the one order that I believe one of the judges did, I believe it was you, that ordered the guardian. It was -- as far as Ms. Grazzini knew there was one little paragraph that said they were

going to -- the guardian was going to investigate parenting time. Parenting time as the attorney for the guardian will tell you for the father, not to deny parenting time of the mother.

So the sole issue should be whether the children, now under the supervision of the Court will be neglected or abused in the future. I submit to you that there's been an abuse of process here and the children have been in their -- abandoned, is that a word? I mean, they were just left at a house. They had to go to the police. Ms. Grazzini couldn't contact them. Their father couldn't contact them. They end up somewhere else that now Ms. Elliott's complaining about that. You know? So the children are where they wanted to be at the time. Are the children violating a Court order? They will be if they -- maybe if the Court's going to order them to confront their father. I don't think the Court has any authority to order children to confront their father.

So, you know, U.S. District Judge Patrick Schultz described an attorney's tactics and it's a civil Plaintiff's attorney as - quote - a method of torture by which heavier and heavier weights

34

are placed on the chest of the Defendant until the Defendant either confesses or suffocates. That's what seemingly has happened here and it's not -- it just hasn't been recognized by the Court. I mean, I can just envision you sitting in chambers, somebody calls you, the attorneys are talking, oh, okay, I'll just do this order. Next case. Okay. Because I know, as you said, all you want to do is get this case resolved. And I submit to you, Your Honor, you can resolve it by finding that the statute is unconstitutional. I've done the research. I've got no substantive response from the other side, so I'd invite Your Honor to do more research, but I'm convinced that our statute, in a variety of ways, is unconstitutional, the whole thing. And certainly as applied it's unconstitutional. I gave you some pieces on the impermissible orders. Okay.

What I'm trying to get at, Your Honor, is yeah, you can order in a third-party custody case custody of a third party. This wasn't a third party custody case. And that's after a whole big process, you know, where there is clear and convincing evidence of endangerment of a child. You can also order kids to go to foster care in a

35

proceeding in juvenile court. So, as I read the record, I didn't see one, you know, piece of law, one legal memorandum by Ms. Elliott. All I saw, Your Honor, and if you read very carefully the statute, the temporary statute, all I saw was her just asking the Court for this or that, and every kitchen sink imaginable, you know. And, so, there's no statutory authority and the statute's unconstitutional. I want to remind -- I guess I was reminded of my oath to support the constitution at a recent swearing in of about 400 law students and I understand judges also take an oath and they have to file it with the Attorney General's Office. And the oath is what you do to get in, you know, you're in the club if you -- you make this oath and so, you're in the club of attorneys. You become an officer of the court, and you're sworn to uphold the oath and it goes like this: "I swear I will support the constitution of the United States and that of the state of Minnesota and will conduct myself as an attorney and counselor at law in an upright and courteous manner with fidelity, no falsehood and no deceit, nor delay any person's cause, for lucre or malice, so help me God." I think that the

36

system right now where we have five months where the parents -- I don't think either of them -- have seen at least four of the children. We have no support having been paid since day one. No monetary child support to Ms. Ruckl, we have her still being evicted from her home. This is a symptom of what happened -- of the statute. The statute -- If Your Honor is saying, well, I can do this because of the family law statute then the statute is clearly unconstitutional. And I'm asking, Your Honor, to make a finding that the statute is unconstitutional as written and as applied, 518.

I'm asking that the amended judgment and decree be invalidated. It's violative of the constitution and also that the ex parte order of September 7th be invalidated as violative of the constitution on and if you're looking at 518.131 -- and I think the solution, Your Honor, is to get the courts, you know, to stop -- the Court shouldn't be intervening at all. The whole thing should just be dismissed. They are already divorced and the children should go home wherever home is for them at this point. I'm asking that the guardian be dismissed. Again, she's gone way

37

out of her bounds. You know, it was business as usual for the guardian. I can't even see where she read that order and said, okay, I'm supposed to get parenting time for the dad. Let's make some recommendations here, should it be every other weekend? Should it be once a week? She didn't do any of that. She continually engaged -- engaged in endless information gathering, you know. You can never get all of the information especially when you're talking about 16 years of being a mother and a father.

And, Your Honor, I'm also asking for the support which hasn't been paid. They are here wanting bank records and harassing Wells Fargo for information, you know, wanting their attorney's fees paid, and she hasn't been paid anything. She's expended attorney's fees. How can she be -- again, I go back to how can she be ordered to pay somebody else's attorneys' fees out of her pocket when she had her own attorney all this time. How could it be bad faith? How could she be carrying on the proceedings erroneously? She had an attorney who dropped her or she dropped, you know, and that's very clear from the record. When they ran out of money after she paid one -- two,

hundred-ten-thousand dollars and then some, they drop her. They don't even show up for the second day of the evidentiary hearing. Lisa Elliott (sic) after she puts that agreement on the record allegedly drops her because she hasn't gotten her bill paid. And then everybody's, you know, attributing what they are doing to her? She's just following orders including yours, Your Honor, of September 7th and others. It's to the best of her ability. And vacating all orders and judgments relating to attorney's fees, again, the best way to resolve this, Your Honor, is dismiss the whole thing. They are already divorced and let this family go on in what I call their innocence.

THE COURT: Ms. Elliott.

MS. ELLIOTT: Your Honor, I certainly don't want to add any more drama to this case. There's been enough drama since May of 2011, I think, to last all of us that have been involved in this case a life time. I'm not going to add a lot other than what I have submitted in my brief and memorandum to the Court except that the United States Supreme Court and the Minnesota Supreme Court have said that the state may intrude on

parental rights in order to protect the rights of children, which is exactly what this Court did. The temporary order granting temporary custody both to Tami Love and to Nancy Olson were to protect the emotional harm of the children, to prevent the emotional harm of the children. The order temporarily removing Petitioner from the Ireland Place home was also done to prevent additional emotional harm to the children.

The order for protection that was vacated in open court was not done in the family court proceeding. It was stipulated to by Petitioner. She agreed to dismiss it in open court in that proceeding. So that doesn't apply.

Certainly the attorney's fees orders are more than valid. I think your memorandum attached to your January 7th order spells out why the last $10,000 was awarded based on as a result of Petitioner's conduct throughout this dissolution. Minnesota statutes allow conduct-based attorney's fees to be awarded in marriage dissolution cases. Petitioner disseminated Respondent's banking information, social security number, and other personal information around town. She completely refused to answer any discovery and blocked our

efforts at any discovery. We had to obtain any and all records by subpoena. The parties' cabin was foreclosed upon and was trashed by Petitioner. The parties' home is foreclosed upon and trashed by Petitioner. She failed to follow Court orders to pay mortgages, pay utilities, to produce items of personal property, all of that conduct justifies the $10,000 in attorney's fees. The original $20,000 was based on her fraud and misrepresentation in obtaining the judgment and decree and the resulting two days of trial.

The Court does have personal jurisdiction over the parties, apparently -- at least to dissolve the marriage -- I'm not sure what Ms. MacDonald thinks is going to happen to the rest of the personal property. They were going to go on living together in the same home? Her request is nonsensical.

Most of the complaints that she is making are orders that were the result of stipulations entered into by the parties and orders signed by this Court. The last order which Ms. MacDonald fails to mention is the order of -- regarding custody -- is the order of September -- there was the September 7th order originally awarding

temporary custody of the children to Tami Love. Then the parties stipulated in the next order at Petitioner's request that Ms. Love and Petitioner's sister, Nancy Olson, share the temporary physical custody and that the four younger children reside with Ms. Olson and the oldest child, Nico, reside with Ms. Love. That's a binding contract by the parties. There's no -- the Court certainly doesn't over step its bounds when the parties agree on a temporary basis that the children shall reside with a third party while they are undergoing therapy.

The emotional harm in this case on the children has been by Petitioner's alienation of the children from their father. The Court has taken appropriate steps in trying to stop that alienation. The children are now -- the oldest child is reunified with his father. We're hoping that the four younger children will follow in the steps based on our motions going forward. We believe the statute is constitutional and as written and as applied.

And my last request, Your Honor, is that the Court consider Rule of Evidence sanctions against Ms. MacDonald for attorney's fees based on the

42

arguments she's made. She clearly has not read the record, has not followed and reviewed all of the orders and the transcripts from the proceedings and has made some pretty strong accusations against me and the Court that somehow we are colluding against this family and I strongly object to that and I am asking for an award of attorney's fees.

MS. MACDONALD: Your Honor, with respect to any alleged stipulations, I don't see -- I've read the full file. It took me hours. I've read the transcripts. You can't stipulate to unlawful orders. There is nothing in the statute that allows parties to just give custody to third parties, so such there's nothing that allows the Court -- you can't stipulate to unlawful orders. And, again, I am -- I did mention to you, Your Honor, that I think that you've been misled by attorneys, you know, if there is no collusion here, and I didn't say that anywhere in my argument, I think you've been misled by attorneys that the statute with these impermissible orders, you know, temporary orders have not been followed and these orders aren't even statutorily able to have -- non-parties -- relating to non-parties.

43

Now, there haven't been any findings. There hasn't been any evidentiary hearings. There's been no finding of alienation. That's what the Court is doing, so I guess there's a presumption, some kind of a presumption that everybody's operating on assumptions, oh, it must be the mother. And since my client, this mother, has been completely, by Court order, alienated from her children requested by the counsel, she has -- she knows nothing about the status. She can't even get the record. She's asked.

And as far as the jurisdiction. There's no subject matter jurisdiction. There's not -- I can even argue there's no personal jurisdiction because nobody was ever served. If he didn't sign that service document, then there was no personal jurisdiction. So the subject matter is off. The personal jurisdiction is off. The statute doesn't authorize, you know, the myriad of step by step things that were done.

And the findings about the attorney's fees, my understanding, Your Honor, is it was all in attorney affidavits. And that's another thing, Ms. Elliott seems to be testifying. I've read the record and it's another affidavit from Ms. Elliott

44

testifying. I'm appalled at attorneys testifying to facts. That's not -- that's clearly against the Rules of Ethics and so what ends up happening is when an attorney does an affidavit and say here are the facts, Your Honor, then you kind of, you know, you get this cloud of I guess you're an officer of the court and you're -- you're supposed to tell the truth so what you say goes. And that's what's been happening here. And, you know, if everything is agreed to supposedly at this August 28th hearing, how did it unravel a week later? You know, where is the due process in that? Where is the due process in the attorneys' fees award? Where is the due process that the bank got in getting, you know, service -- where is the due process in, you know, the paperwork? There hasn't been an evidentiary hearing except for one, and that evidentiary hearing, to my knowledge, was the one that reopened this whole thing, where Ms. Grazzini's attorney didn't show up and she was reprimanded and admonished by the Court for, you know, showing up on her own and asking for a continuance. Thank you.

THE COURT: Mr. Jerabek, anything?

MR. JERABEK: With regard to the

45

constitutional argument that was set forth, if you go through and examine the cases cited in the constitutional argument you're going to notice that most of them are either third party custody cases, child school cases or other cases where the government steps in.

Now, there was a statement that the Supreme Court has said we don't step in on family law cases. That's right, the Supreme Court does not step in in family law cases because that is left to determination by the states. And it's left to the determination by state court and it's left by determination by statute. And what occurred here was authorized under statute, the Court reopened, nobody did anything with regard to that reopening appeal -- the Court reopened the matter. The Court made determinations regarding temporary custody and parenting time pursuant to Minnesota Statute 518.131. The Court is allowed to do so. Now there's an allegation that there's not sufficient findings in that particular order. What I would note about that particular order, it specifically cites the report of Dr. Reitman. If you examine the reports of Dr. Reitman, the Court accepted that on a temporary basis. The Court was

46

clearly concerned with regard to these children. And the Court being concerned with regard to the children made a determination. This is what I need to do on a temporary basis to protect them. And it's this Court's obligation to protect the children first and foremost.

My client believes the Court has done so here and that was the justification behind that particular order.

With regard to long-term, yes, a trial and evidentiary hearing has to be set at some point in time. Yes, it's correct, a temporary order can't go on forever. The statute indicates that the temporary order goes on -- an unappealable order that goes on until the final determination is made. This Court took a very logical step in appointing Dr. Gilbertson to take some action and make some determinations with regard to how parenting time is going to proceed in this particular family. I know Dr. Gilbertson is here and I believe he does want to address the Court and contrary to what was said, the guardian is not acting on behalf of Dr. Gilbertson. The guardian received some information from Dr. Gilbertson. The guardian then contacted Dr. Gilbertson and

47

told Dr. Gilbertson to submit the information to the Court. The guardian is not representing Dr. Gilbertson.

There is one piece that the guardian believes needs clarification in this particular case. She was originally appointed to examine the issue of parenting time, solely pertaining to the issue of parenting time. Now, the order does not clarify father's parenting time or mother's parenting time, but at the time the initial order was issued, mother had custody and father was seeking parenting time. So those were the circumstances. That's not what the order says, but the guardian does -- the Guardian ad Litem office does want clarification. If the Court wants the Guardian ad Litem office to be appointed to make recommendations with regard to the best interests of the child pertaining to the issue of permanent custody and permanent parenting time, that should be directed in the Court order.

So, the Guardian ad Litem office requests that a determination be made if that's what the Court intends. Obviously it's up to the Court. There's been a request made to dismiss the Guardian ad Litem. That is up to the Court as

48

well. The Guardian ad Litem denies the allegations made in mother's affidavit. She denies the allegations of her alleged role here. The Court, not the guardian, the guardian didn't appoint herself to make determinations or recommendations. She has two authorities here, one she's ordered to do what the Court recommends. She was ordered to examine the issues of -- the issue of parenting time under law. And she's also mandated with regard to 518.165 of her certain responsibilities under law and when the allegation is made the guardian is examining and getting into these family issues, the guardian is required, it's her responsibility under law to take particular actions and conduct an independent investigation.

Now, she has not presented a permanent custody recommendation and she has not done so because she was not ordered to do so. She will do so if the Court orders her to do so or if the Court orders -- I should say the Guardian ad Litem office -- I think the order actually goes to the office to make the determination with regard to the Guardian ad Litem and any decisions or any recommendations they should provide to the Court.

49

The Guardian ad Litem further requests that the Court, because they appointed Dr. Gilbertson, give Dr. Gilbertson a chance to address the Court. Thank you.

THE COURT: And he wants to do that at this time?

MR. JERABEK: Yes, at this time, Your Honor.

THE COURT: Dr. Gilbertson.

DR. GILBERTSON: Yes, Your Honor.

THE COURT: First of all, step forward so everybody can clearly hear you and if you could state your full name for the record.

DR. GILBERTSON: James Harmon Gilbertson, G-i-l-b-e-r-t-s-o-n.

MS. MACDONALD: I'm objecting to Mr. Gilbertson and any comments he has to make until my motion is resolved.

THE COURT: That's denied. Go ahead, Mr. Gilbertson.

MR. GILBERTSON: Well, Your Honor, I just want to let you know I have the five Rucki children in a conference room down the hallway. They've been waiting since about 9 o'clock and they are somewhat anxious and apprehensive. And I had notified the Court through Ms. Friedrich about

50

the possibility of the children addressing the Court and also about scheduling a meeting with their father here today in the courtroom and that was my intent.

As you know, I was appointed the children's therapist and what I've been operating under is a sort of rule of thumb that most of us who work in this field have adopted that there is a rebuttable presumption that reasonable and free access to both parents is in the children's best interests and that's been my operating philosophy, and my goal is to establish parenting time between both parents that will meet that goal. I don't have to tell the Court that this has been a highly litigious matter and there have been many voices and many people who have weighed in on the matter. I think it's very clear from my perception that if you try to wear two hats in this case you're instantly defeated so I'm trying just to be the children's therapist. I'm not a custody evaluator in this matter. I have no problem making recommendations regarding parenting time consistent with being the children's therapist and viewing it from their best interests.

I would make this recommendation, Your Honor,

51

I do not believe the Guardian ad Litem should be appointed as a custody evaluator. I believe that what you need in this case because of the complexity of the case is a professional custody evaluator and I'm sure the Court has a roster that they can access who is not only skilled in family law, forensic family law, but also as a psychologist so they can both do the 13 factors under 518.17, and, secondarily, do all the psychological testing, all the rating scales, all the observations, all the forensic instruments that might be needed to bear upon it. If the guardian does the custody evaluation, oftentimes they have to farm the psychological issues out to someone else and that becomes somewhat a fragmented report. So, I would say that if a custody evaluation is to be required here, that we get a set of fresh eyes on it with someone who is skilled in the area, has experience and whom the Court may have confidence.

If the Court would like -- since I am a forensic psychologist in addition to being a clinical psychologist, if the Court would want me to present a roster of individuals that I believe have the necessary skills, qualifications and

52

interests, and time, I would certainly do that. Those are my comments, Your Honor.

THE COURT: Okay. Well, a couple questions I guess from the Court. Any questions before I begin from counsel?

MS. MACDONALD: Your Honor, we would -- I think the statute of course I would want to declare it unconstitutional, but does allow the children to talk with the Judge in chambers with attorneys present and I would be comfortable with that and so would my client. I think maybe you can get to the heart of some things, because the children might want to speak. I don't think the Court ordering the children as is this -- Mr. Gilbertson's request to confront their father is going to do any good. So, if Ms. Elliott is not opposed, I would be comfortable. My client has not seen her children for five months. And I can't -- you know, it seems like there's a pretense that now that we've taken the children from mother we're reunifying them. That's nonsensical to me. This is -- if a parent is taken away to go to the army and comes home to see their children -- if there's a need for reunification right now of mother and children,

53

then the system has created that in what's happened here, nobody else. Because these children walked into Mr. Gilbertson's office with their mother -- Mr. Rollman's office. So, that is something that, you know, might help the Court get to the heart of some things.

THE COURT: Ms. Elliott?

MS. ELLIOTT: Your Honor, I'd just like some clarification. I thought Ms. MacDonald was only representing Petitioner on the constitutional issues. It sounds like she's representing her on the custody and parenting time issues as well.

THE COURT: Ms. MacDonald, that's correct then?

MS. MACDONALD: Yeah, I mean, I'm asking that all of your orders be vacated. I'm just -- and that the statute be declared unconstitutional and asking you -- after, you know, you do the research to take that bold step.

THE COURT: I understand what your motion is.

MS. MACDONALD: And I am --

THE COURT: I'm curious today now based on your comments that you just made following Dr. Gilbertson whether or not you are representing Ms. Grazzini-Rucki with respect to the custody matter

and parenting time?

MS. MACDONALD: Absolutely I am, because I'm asking that all the custody orders be revoked.

THE COURT: All right. I just want to be clear. So you are representing her on all these matters?

MS. MACDONALD: On this motion which is asking that the custody orders be revoked, yes.

THE COURT: Well, that you're representing her on the custody and parenting time issues?

MS. MACDONALD: Well, I'm asking -- yeah, and that's what we're asking to have done.

THE COURT: Okay. Anything else?

MS. ELLIOTT: Your Honor, we would agree that Dr. Gilbertson recommend a custody evaluator. We have no problem with that, somebody that could gather all of the testing or do all the testing themselves and have one person in charge of making that recommendation.

We still object to the children having a voice because we know that that voice has been tainted. We know that there's been findings throughout this case of the alienation which continues so we don't believe there is any basis for what -- for whatever requests they would have

at this point.

THE COURT: Okay. Dr. Gilbertson, a couple things, so, yes, I would like some recommendations with respect to the -- a qualified psychologist that would do the custody evaluation to make permanent recommendations in this case.

DR. GILBERTSON: I will, Your Honor.

THE COURT: When can you get that to me?

DR. GILBERTSON: Within the next few days, Your Honor.

THE COURT: Okay. And then, as you do so, I would like you to copy all of the parties in your submission of that to the Court, okay?

DR. GILBERTSON: I will, Your Honor.

THE COURT: And this is to the parties. I believe Dr. Gilbertson is the third therapist or counselor -- fourth -- that we've had appointed in this case and others have taken themselves off of this case because of the difficulty and the complexity of this case but specifically in the Court's eyes the non-cooperation of the parties. Anybody we appoint as a custody evaluator is going to need to be paid and the parties are going to have to cooperate with meeting with those people and getting the children to participate and meet

with the custody evaluator. That has been an enormous problem in this case. So, Dr. Gilbertson, in your experience, what would the cost of this be? And who usually typically pays that?

DR. GILBERTSON: Your Honor, I've heard quotes anywhere from seven to $15,000 for a total evaluation, that does not include, in my understanding, expert testimony if that's required.

THE COURT: Okay. And in this case, both parties throughout have claimed to be penniless without the ability to pay for anything even their own needs, personal needs and yet, they both continue to survive. So, Ms. MacDonald, Ms. Elliott, how are we going to pay for this?

MS. MACDONALD: Your Honor, I'm objecting to the custody evaluation. I think that the Court -- why are we putting more obstructions than to the Court just talking with the children?

THE COURT: Because this Court is going to rely on a custody evaluator --

MS. MACDONALD: What I've --

THE COURT: Don't interrupt me, Ms. Macdonald.

MS. MACDONALD: I'm objecting to the custody evaluation.

THE COURT: I understand that, and I'm overruling the objection and I'm going to appoint a custody evaluator in this case. I'm not going to make a decision on permanent custody without having a benefit -- an independent third party that -- This case is one of the most complex cases I've seen. The non-cooperation, the issues involved in this case are enormous and I'm not going to simply make a decision without having the benefit of professionals in this case as we have tried to do all along here. So, how are the parties going to pay for this?

MS. ELLIOTT: Your Honor, my client has, I think, consistently paid what the Court has ordered. Child support was included in the final judgment and decree regarding the property settlement and now neither party has custody so there is -- there are no obligations between the two parties going back and forth. But with respect to any of the therapy or any of the other -- through Moxie, through Genesis 2, for the efforts of reunification for Dr. Rellman and Dr. Gilbertson, my client has paid everything that

58

he's been ordered to pay. I think it's only fair that the parties at this point be ordered to each pay half and then a determination can be made at the final hearing if one or the other should reimburse the other parent.

THE COURT: Well, we know how this is going to play out. And we know that one party is not going to pay and then the custody evaluation doesn't get done and the time that these children are away from both of these parents, which I find absolutely disgusting, continues to pass by. So, I guess I see very little commitment by either parent to resolve these issues, to get the help that they need, to get the children into therapy and have these psychological evaluations done and to come up with money to accomplish this? Ms. MacDonald.

MS. MACDONALD: I just want to make a suggestion, Your Honor, every case doesn't need a custody evaluation. These are --

THE COURT: Ms. MacDonald, this case needs a custody evaluation. To say otherwise --

MS. MACDONALD: I think both --

THE COURT: -- Ms. Mac Donald, to say otherwise, clearly shows that you haven't read the

59

file.

MS. MACDONALD: No, I have read the file, Your Honor.

THE COURT: Okay. Well, I've made my decision so that's over, okay?

MS. MACDONALD: I just want --

THE COURT: So the question is whether or not your client is going to be cooperative and is going to find the resources available to pay her fair share of this custody evaluation?

MS. MACDONALD: That isn't the question.

THE COURT: No. That's my question. So I'm asking you to --

MS. MACDONALD: The fact that you're ordering a custody evaluation is a symptom of the constitutionality of the statute.

THE COURT: I understand.

MS. MACDONALD: And I would like -- I want to be certain that Ms. Grazzini is heard on that matter. She has been cooperative, Your Honor.

THE COURT: She has been to a degree but this is the most important thing that needs to happen in the lives of these children in order to get these children back in the care of their parents. If you're not --

60

MS. MACDONALD: You can vacate your order and dismiss everything and they'll go where they go.

THE COURT: Okay.

MS. MACDONALD: Both of these parents have a fundamental, constitutional right to their children that's been --

THE COURT: I understand. You've made those arguments.

MS. MACDONALD: -- disrupted.

THE COURT: You've made those arguments. All right. Mr. Gilbertson, then my next question is: What do you propose today with respect to the children?

DR. GILBERTSON: Well, I would like to have the children meet with their father today in a room adjacent to the courtroom here. We have one down in the juvenile division. It's a little small, I think, to accompany six of us however. Also, I had informed the children, if the Court was so inclined, to prepare no more than a one-minute response so the Court could hear what their thoughts and beliefs are. Again, as the children's therapist, I'm their advocate and so what they tell me is that -- and these are the two older Rucki girls, Samantha and Gianna, is that

61

they are left in the dark. They don't know what's going on. No one is listening to them, so they feel sort of disenfranchised from the system but at the same time argue they are of age and they should have some ability to communicate their thoughts and beliefs.

THE COURT: And what are your recommendations to accomplish the goals that you previously stated to the courtroom here today, with respect to the children addressing the Court?

DR. GILBERTSON: That the Court be -- that they be brought into Court, Your Honor, and be allowed to each in their own way speak directly to the Court in the short message that I asked them to prepare, if the Court were so inclined. That's all I had in mind, Your Honor.

THE COURT: And you believe that's in their best interests in moving this case forward, your goal of ensuring that eventually we can get these children back to both parents?

DR. GILBERTSON: I do, Your Honor, in this sense, that they distrust the Court. They distrust this system. They don't believe that they have a voice. This will give them an opportunity to at least, I think, maybe gives a

62

foot-hold to say, yes, you have been in front of the Court, you have expressed yourself. The Court may disagree with you, or agree with you, but you've had -- you've had a say, now, let's move on. So, yes, I do believe it would be in the best interests.

THE COURT: Okay. I'm going to allow that then. We'll do that in chambers on the record with the parties and the attorneys present.

DR. GILBERTSON: Your Honor, will that be today then, this morning?

THE COURT: Yes.

MS. ELLIOTT: If I could have one request?

THE COURT: Yes.

MS. ELLIOTT: Could we start with the youngest child first and move up because I'm afraid that Samantha seems to be the most out spoken and I'm afraid if she speaks first the others will simply parrot what she says. So if we could start with the youngest and then go up in age.

MS. MACDONALD: I'm going to object to any micromanagement, step-by-step process that Ms. Elliott is suggesting.

THE COURT: Mr. Jerabek?

63

MR. JERABEK: Your Honor, I was going to ask that the Guardian ad Litem be allowed to be present.

THE COURT: Yes, the Guardian ad Litem will be present.

MR. JERABEK: Thank you.

THE COURT: The Guardian ad Litem is a party so I'm allowing the Guardian ad Litem and the attorneys be present as well.

MR. JERABEK: And I didn't know if the request in granting of the custody evaluation impacted the Court's determination about what they want from the Guardian ad Litem long-term pertaining to this particular case?

THE COURT: Well, I'll have to decide that.

MR. JERABEK: Thank you.

THE COURT: Dr. Gilbertson, anything else?

DR. GILBERTSON: Then, Your Honor, the meeting with their father -- an opportunity to have Mr. Rucki join the five children; we have all five children present and in talking with Mr. Rucki I asked him to prepare a preface so he could address the children. I'd be present. And this will be the first time he has seen all the children together since I think November of 2011.

64

We need to handle -- what I call handle to get it going. I've been sold out by the children in any attempt to try to schedule time with the father and the children -- and they will tell me as they may tell you, Your Honor, that no one can physically force them to do anything they don't want to do, so some are firm. Two issues they have with their father, some degree of fear and discomfort and anger. Both of those issues are therapeutically accessible. But I have to have them with their father to really work on those issues.

THE COURT: Okay.

MS. MACDONALD: Your Honor, can I request clarification? I didn't see that the guardian was a party. I thought in your order she was a permissive appointment and she was not a party specifically?

THE COURT: Mr. Jerabek.

MR. JERABEK: Your Honor, I didn't check back over that whether it's a permissive appointment or mandatory appointment. In this case I question whether this is mandatory because it came up actually under a -- the domestic abuse case originally, but I would certainly think there's

65

concerns here based upon the issues that were presented by the parties throughout this proceeding or they should be a mandatory appointment anyway. And the other piece with that regard is the Court at any time can make the Guardian ad Litem a party. Now, the Guardian ad Litem doesn't have to a be a party for the Court -- in order to conduct an investigation of any information. That's up to the Court to make that decision, but the guardian does have that responsibility of doing those things in all cases and being present in important -- when important events are occurring throughout the proceedings. Because we believe this to be important and the Court has asked her again to make a recommendation with regard to parenting time, permanent parenting time, at the end of this proceeding it's important that she be there. Thank you.

THE COURT: She's going to be there. Okay. Mr. Goldberg.

MR. GOLDBERG: Mr. Goldberg, Your Honor. I represent Nancy Olson, the maternal aunt, sister of the Petitioner. She asked me to come here today, Your Honor, to instruct the parties and the Court that she and her family are no longer in a

66

position to provide an open-ended, long-term place for the children to stay. It's been six months now. It's been very stressful on her immediate family. She's worked very hard to provide the children with a stable home. It's been costly, you know, with four kids. She's not asking for money from anybody but it's been a financial burden on her home. And she wants to tell the Court -- I was originally going to advise the Court that we don't oppose the Respondent's motion to either place the children with another family member or, you know, we prefer not to have foster care involved but the way we see this going here is there's going to be another custody evaluation before a decision is made. That could be many months, evidentiary hearings, more months, and she can't continue in that role. She is perfectly willing to continue to provide a home for the children for several weeks so there can be some kind of orderly transition and follow recommendations of Dr. Gilbertson and how this is going to be communicated to the children and how that transition is going to take place but she can't go on more than a couple weeks. The only other thing, you know, I would observe and I'm no

67

expert in juvenile law, but if neither -- if the Court believes that neither parent is in a position to take physical custody of the children and there's no other family member available, this may be a case where there has to be a CHIPS petition filed in juvenile court, perhaps. We're not there yet, but Ms. Olson needs to have some end date here within several weeks.

THE COURT: I can certainly sympathize with your client and we appreciate what she's done so far for this family and it's not surprising that this is -- there has to come an end and -- just for her own family, so I appreciate her position here today. I don't know where we go from here.

MS. ELLIOTT: Your Honor, if we can figure out some transition, I believe Ms. Love is still in the home and Nico is there, so if we could find a way to transition the other four children I believe she -- at least I'm assuming until the custody evaluation is done --

MS. LOVE: Absolutely.

MS. ELLIOTT: -- is still willing to stay in the Ireland Place home with all five children.

THE COURT: Well, let me -- that may be the only option.

68

MS. MACDONALD: Well, Your Honor, if you read my motion there's another option, getting this mom back in that home which was awarded to her.

THE COURT: That was an option at one time but the home went into foreclosure, nobody was paying on it and the home was in terrible condition and somebody had to fix it, somebody has to bring it up to speed so that the parties don't lose any equity of that home.

MS. MACDONALD: And that's according to --

THE COURT: And that's why, Ms. MacDonald, the previous order required Ms. Grazzini-Rucki to get the mortgage current so that the parties wouldn't lose any equity in the home before a foreclosure and trying to preserve that asset for the parties and the children. Since that didn't happen, the Court had no choice so I don't know what options you're talking about at this time.

MS. MACDONALD: There was no -- absolutely no due process in that order.

THE COURT: I understand. You made those arguments.

MS. MACDONALD: And --

THE COURT: All right. The issue I have -- as throughout this entire case -- is we're dealing

69

with things moment by moment and changes in circumstances. There is no motion right now in front of me. Mr. Goldberg has indicated his client's intentions, desires and kind of the end of her generosity, so to speak, and the parties have to deal with it. I don't have a motion in front of me.

MS. ELLIOTT: Your Honor --

THE COURT: I'm not going to rule on anything --

MS. ELLIOTT: Your Honor, our motion --

THE COURT: -- today. Your motion does have the --

MS. ELLIOTT: -- requests the four younger children be turned over to Tami's custody.

THE COURT: And we'll go -- I guess we'll go through the rest of these. I'm just wondering how much longer the children are going to survive and --

MS. MACDONALD: Your Honor, it all goes back to the unconstitutional order where you placed the children already with relatives.

THE COURT: Right. So why don't we continue with -- we'll continue with the motions here. It's 11 o'clock. We've been going since 9

70

o'clock. We'll take a 15-minute recess.

(Recess taken)

THE COURT: Okay. Then with respect to the other motions that the parties have brought, I'm taking them in the order of filing, I guess, and Ms. Grazzini-Rucki filed another notice of motion and motion with seeking eight paragraphs of relief, so I don't know -- Ms. MacDonald.

MS. MACDONALD: Your Honor, before we begin, I think Mr. Gilbertson approached the bench and there was an exchange going on between Your Honor and Mr. Gilbertson. Could you please state for the record --

THE COURT: I'd be happy to. He asked how long we thought this was going to go. And I gave him my best estimate. I said, tell the children hopefully by 12:30 we could be -- get to them.

MS. MACDONALD: Thank you.

THE COURT: Ms. MacDonald, are you arguing these motions or?

MS. MACDONALD: No, Your Honor, I'm resting on the pleadings.

THE COURT: Okay. Ms. Grazzini-Rucki?

MS. GRAZZINI-RUCKI: I'm looking for it.

THE COURT: Again, I'm confused here, you're

71

resting on the pleadings on her motions so you're representing her on this as well?

MS. MACDONALD: Your Honor, I'm representing her on a motion to vacate all the orders which involve custody. So the motions that she brought she is resting on the pleadings.

THE COURT: Okay. Ms. Grazzini-Rucki, that's correct?

MS. GRAZZINI-RUCKI: Okay. Resting on what I filed.

THE COURT: Okay. So you don't want to make any arguments with respect to your eight paragraphs of relief requested in the motion that you filed on February 11th?

MS. GRAZZINI-RUCKI: I can't find it. I thought I had it right here. I'd like to show it to her first. Can I show her your copy because I can't find mine.

THE COURT: Sure.

MS. MACDONALD: Your Honor, I'm looking at a motion of February 5, 2013, and I just argued -- I mean, basically, if the Court vacates all the orders and dismisses the proceeding then all of this will take care of itself. So, she, most clearly, should have immediate unsupervised

72

parenting time with her children. There's no question about that in my mind. That -- there is a statute that has -- is inconsistent with the Court's order where both parents, whether they have custody or not, are able to have copies of school, medical, dental, religious training, police reports and other important records and information about her children as specified in Minnesota Statutes 518.17 Subd. 3B. And I believe the Court is going to be interviewing the children in chambers with their mother and their father present today, and that we've asked that the Court-appointed guardian be dismissed. We've asked that the judgment be vacated which would practically mean that she would be going back to her home and that we have also -- she's looking for the location of a speed boat. That's personal property. She's been deprived of all of her personal property by the September 7th order and all of her -- and that the father informed the mother of any damage to the vehicle before it's delivered to mother. To me this is an important motion that takes care of itself practically speaking if the Court accepts and grants my motion that was filed February 13, 2013.

73

THE COURT: Okay. So you're representing her on this motion and your previous arguments apply to this motion as well?

MS. MACDONALD: Yes, they do, Your Honor.

THE COURT: Okay. Ms. Grazzini-Rucki, then nothing more you wish to say with respect to these motions?

MS. GRAZZINI-RUCKI: No, I think they speak for themselves. You got the documents, didn't you?

THE COURT: Yes.

MS. GRAZZINI-RUCKI: So you're aware that the car was filed with the police as stolen two months after you awarded it to me? You saw that and all that?

THE COURT: Uh-huh.

MS. GRAZZINI-RUCKI: Do you want this back?

THE COURT: Sure. Thank you. Okay. Ms. Elliott.

MS. ELLIOTT: In response to the motion that was filed by Petitioner on February 8th, we would ask the Court to deny the request set forth. The only other comment other than what's contained in our responsive papers is that she's asking for her boxes of legal records that were at the Ireland

Place home. Nancy and Jay Olson came and collected those and so they should be at Nancy's residence. They are no longer at the Ireland Place home. Other than that we just ask the Court to deny them.

THE COURT: Okay. Then with respect to --

MR. JERABEK: Your Honor, can I briefly.

THE COURT: Yes.

MR. JERABEK: I would just like to say, and I think I made this clear before, but I would like to just make a statement for the record that the Guardian ad Litem specifically asks the Court to deny request Number 4 pertaining to the Guardian ad Litem. That being said, the Guardian ad Litem did request clarification with regard to what her role would be.

With regard to Number 2, as far as authorizations for the mother to obtain certain information, the Guardian ad Litem would point out that 518.17 Subdivision 3B, simply cites the notice requirements of 518.68. If you look at the notice requirements in 518.68 Subdivision 1, it indicates and I believe this is what the Court intended, the Court may waive all or part of the notice requirements under Subd. 2 relating to

parental rights under 518.17 Subd. 3 if it finds it necessary to protect the welfare of a party or child. So the Court can certainly make determinations pertaining to what information is going to be available to either parent based on those recommendations. Thank you.

THE COURT: Okay. Then with respect to, Ms. Elliott, your motion that was filed with the Court on February 14th, I think it's actually dated the 14th as well.

MS. MACDONALD: Your Honor, and I object. I just want to state for the record I object to each and every request by Ms. Elliott in her motion, and I also object and move to strike her affidavit which is an affidavit of attorney providing factual statements and contrary to, I think, the Rules of Ethics don't allow attorneys to do affidavits such as the one presented by Ms. Elliott. So I just want to state that for the record.

THE COURT: Okay. Ms. Elliott.

MS. ELLIOTT: Thank you, Your Honor. I'd like to take them out of order just to accommodate another attorney that's in the courtroom so he can get back to his office. So this would be the

issue regarding Wells Fargo, the Albert J. Grazzini Revocable Trust, Julian Zebot is here and I don't want to hold him up for the rest of these issues, so our request with respect to that is that if Wells Fargo makes any distributions for the benefit of the parties' minor children in this case, that they be distributed to Mr. Rucki as trustee for the benefit of each minor child. Based on the history of the case and the evidence that was produced at the evidentiary hearing in August of 2011, the Petitioner has misused trust funds of the children previously and --

MS. MACDONALD: I'm going to object. There is no evidence of that.

THE COURT: Okay. Ms. Elliott.

MS. ELLIOTT: So we're simply asking that -- so that those assets won't be dissipated that they be placed in a trust fund for the benefit of the children naming Mr. Rucki as the responsible parent.

THE COURT: Okay. Mr. Zebot.

MR. ZEBOT: Thank you, Your Honor, as you know, my client, Wells Fargo, is not a direct party to this proceeding. It was implicated of course by the order that Your Honor issued back on

January 16th which froze assets held in a Wells Fargo bank account that in fact belongs to the Albert J. Grazzini Revocable Trust. My client is one of two co-trustees of the trust. The order was subsequently modified pursuant to a request and with the consent of Respondent's counsel. As things stand now, the co-trustees, my client and the other co-trustee who is Ann Grazzini-Dunn, who is not present here and I don't directly represent her, she's got separate counsel, but, the co-trustees are fine with the existing order as it pertains to the Albert J. Grazzini revocable trust account in question.

As to the separate issue that counsel raises, my client, since it's not a party to this proceeding, I'm not here to advocate for one position or another. There are a couple of facts that I just want to bring to the Court's attention with respect to this particular request. Under the trust instrument that governs the Albert J. Grazzini Revocable Trust, the co-trustees, Wells Fargo and Ms. Grazzini-Dunn are required to the extent there are distributions made to Albert Grazzini's grandchildren which include the children of Respondent and Petitioner, are

78

required under the exact language used in that trust instrument to distribute those funds to the children -- the grandchildren's irrevocable minor trusts to the extent those trusts still exist. Now, it's my understanding, I don't know this for a fact, but it's my understanding that at least for some of the children, Petitioner's and Respondent's children, those trusts -- those IMTs as I will refer to them, are still in existence. And it's also my understanding, although again I do not know this for a fact, that Petitioner and Respondent are co-trustees of those trusts.

Now under the Albert J. Grazzini Revocable Trust and the governing instrument, Wells Fargo and Ms. Grazzini-Dunn are required to distribute the funds for the benefit of the grandchildren to those IMTs by making a distribution to -- and this is a direct quote from the trust instrument itself: The then acting trustees of the irrevocable minors' trust established for the benefit of said grandchild to be held, managed, administered --

(Whereupon, the court reporter asked the attorney to repeat.)

The trust instrument requires co-trustees,

79

Wells Fargo and Ms. Grazzini-Dunn to make the distribution to those IMTs by distributing the funds to the then acting trustees of the IMTs. Again, my understanding is as the situation currently stands, both Petitioner and Respondent are named as the co-trustees of those IMTs. Again, my client has no real interest in asserting itself into these proceedings but in light of their pendency, there are obviously issues that have been raised regarding the fitness of one or more of the co-trustees of those IMTs. Again, I know nothing of the background, the underlying facts, but the other issue that the Court should be aware of when it considers this requested relief is the fact that the Albert J. Grazzini Revokable Trust, specifically the co-trustees of that trust, are subject to the continuing judicial supervision of the Hennepin County Probate Court. In fact, there's an open file in which I have a hearing on later today in front of Referee Dean Maas, pertaining to the trust. To the extent there are concerns regarding what may or may not have happened to assets held by the IMTs or concerns about future distributions by my client to the IMTs, first of all, the co-trustees share I

80

think everybody's stated interests in making sure those funds go to whom Albert J. Grazzini intended they go to which is the children in trust for their benefit.

To the extent there are concerns that that won't occur, if the co-trustees make the distribution that the trust instrument requires them to, it strikes me there are several options. Any interested party could seek instruction or directions from the Hennepin County Probate Court and the ongoing matter there. As I stated, that Court has supervision and jurisdiction pursuant to Minnesota Statute Chapter 501 B, over the Albert J. Grazzini Revokable Trust. To the extent there is going to be a direction of the co-trustees, I would respectfully submit it probably should be made by that Court in that proceeding. Alternatively, there's always the option if there's been wrongdoing by one or more of the co-trustees that an interested party would respect the IMTs at issue, could seek to remove one or more or seek alternative appointment of a different trustee in a separate proceeding that would presumably be venued here in Dakota County. I don't again know where the principle place of

81

operation are for those IMTs to the extent they still exist, but that strikes me as an alternative.

What I'm less clear of and, again, I'm not taking a position here but what I'm less clear of is this Court's authority to issue the requested relief. Again, all of this is by way of background. We're not taking a position but we do want to highlight both of those issues for the Court's consideration in considering the requested relief. Thank you.

THE COURT: Okay. Thank you. I appreciate that, Mr. Zobot. Then, Ms. MacDonald, you're going to be arguing?

MS. MACDONALD: Well, I just want to say based on his comments I don't think the Court has any jurisdiction whatsoever to grant Ms. -- Mr. Rucki's attorney's motion to have payments just be made to her client. I don't think there's any jurisdiction to do that and I would request that that motion be denied.

THE COURT: Okay. Ms. Elliott, anything else?

MS. ELLIOTT: Your Honor, I think this Court does have jurisdiction. Right now we're still in

a family court proceeding that has jurisdiction over the assets of the parties and the children, and we're not asking that these assets be awarded to Respondent but simply that he be named as the sole trustee. We don't -- as far as we know, the IMTs that were at US Bank, those were the ones that were in existence -- were closed. So if Ms. Grazzini-Rucki opened new ones, we don't know where they are. So, if Mr. Rucki is a co-trustee, he certainly has a right to that information if there are additional trusts in existence for the children. However, if there are any further distributions given what has happened and in fact he would be fine for the appointing of a neutral trustee as long as it's not Ms. Grazzini-Rucki or somebody that she's associated with. I just want those assets protected and I'm afraid based on the history of this case that if there are any assets distributed and Ms. Grazzini-Rucki is a co-trustee or a trustee of those funds, they will be gone.

THE COURT: Okay. Then is everybody -- anyone else have any further need for Mr. Zebot?

(No response)

THE COURT: All right. Thank you very much for your patience here this morning.

MR. ZEBOT: Thank you for your time, Your Honor.

MS. MACDONALD: I do want to note for the record, I did see the stipulated order. Ms. Grazzini wasn't involved in it and we object to that order. Again, we do not feel like the Court has any jurisdiction in this matter to order Wells Fargo to do anything.

THE COURT: Okay. All right. Then, Ms. Elliott, with respect to the rest of the relief.

MS. ELLIOTT: Thank you. Order Number 2 in our notice of motion and motion requesting that the four youngest of the parties' minor children that are presently in the custody and care of Nancy Olson be placed with Tami Love, and whether we do that a few at a time, maybe the two younger children initially, and then gradually get the two older girls moved over. We understand this has to be accomplished at Ms. Olson's request over the next couple of weeks and we're certainly willing, and Ms. Love is willing, to do whatever is necessary in order to make that happen in an expeditious but considerate manner so the children can adjust.

Second, we're asking that Mr. Rucki be given

sole -- temporary sole physical and legal custody of the minor child, Nico. He's the one that has been living with Tami Love and has been reunified with his father. The relationship is doing very well and we would like the restrictions that are contained in the most recent order, I believe it's from October of 2012 lifted and that he be awarded custody of Nico.

The next few, Number 4, finding Petitioner in civil constructive civil contempt of the Court's August 6, 2012 order that she failed to complete her psychological evaluation by Dr. Millinaker. And if she has, then we ask that she be ordered to provide that to Dr. Gilbertson. I understand now that there's going to be a custody evaluation, a lot of this will be tied into that rather than ordering her to complete a new one with Dr. Millinaker, leave that to the discretion of the custody evaluator if that's who the evaluator wants to use to -- rather than reinventing the wheel, at least have them start or conduct one themselves.

Five, ordering that Petitioner not be allowed to have any contact with the minor children unless supervised by Dr. Gilbertson, and we believe this

is -- she's continuing to have influence on the children against their father.

Six, ordering Petitioner to have no unsupervised contact until she's completed her psychological evaluation and following any recommendations of that psychological evaluation. That Dr. Gilbertson and the guardian and the custody evaluator in this case be allowed to have any and all records of therapy of either party including Petitioner's therapy with Life Development Resources. We understood she was seeing them for a period of time. We don't know if she still is. We would like the experts in this case to have access to those records.

The next one ordering -- oh -- Petitioner was ordered to participate in parent approaching therapy, that was another attempt we tried and Petitioner never followed through. So since she hasn't followed the Court order, finding her in constructive civil contempt of that order as well unless she can provide proof that she did.

Nine, ordering that Respondent be allowed to retain his passport book with the U.S. Department of State. He's received notice his passport is going to be rescinded because the child support

86

issue is still out there which was tied into the property division, but it's hard to explain that to the child support office as well as the passport. I think we can get that resolved if we have a final evidentiary hearing on this if that still isn't resolved at that point. But in the meantime, we'd like him to have access to his passport.

Number ten, Petitioner -- or Respondent was awarded the Disney timeshare as part of the judgment and decree of November 7, 2012. They need a document signed. It's a timeshare so they don't operate by court order from Minnesota. They have provided us with documents that they need Petitioner to sign so we're asking the Court to order her to sign it in your presence today. We have the documents with us to effectuate that transfer of property.

Eleven, ordering Petitioner to execute all the appropriate documents allowing the parties' son, Nico, to renew his passport book. He's been given an opportunity to travel with his music and theater group -- music group at school -- to Italy. His grandparents have agreed to pay the expense but he needs to have his passport book

87

renewed and they can't do that without both parents' consent. And we have that document here as well. They have an appointment on Thursday at Minneapolis. They're going to need to expedite the process in order so he can get his passport in time for the trip. As part of it, we also need copies of both sides of Petitioner's driver's license and then to sign the consent.

Number 12, ordering Petitioner to disclose her physical address. We have her phone number and she's provided her post office box address but we don't know a place of residence where she's residing.

Finally, on 13, asking the Court to order Petitioner to return the 2007 Chevy Suburban to Respondent, or in the alternative, awarding Respondent one-half of the value of the Petitioner's 2003 Cadillac Escalade that she had and owned at the time of the property division in August of 2012. She failed to disclose that asset. And, in fact, because she claims she didn't have a car we ultimately agreed that she would get the 2007 Chevy Suburban. We understand that there are some mechanical issues with the Suburban but I think if my client is going to have

88

the kids he's going to need to get that fixed and have a vehicle he can transport them which is part of the reason why we transferred that vehicle to Petitioner at that time.

Petitioner has claimed that she is destitute and has no money and in fact I believe she's filed an affidavit to proceed in this case in forma pauperis, yet she seems to find more and more monies to retain attorneys' fees and to continue the expense and lengthen this litigation, so we'd ask her to disclose where it is she's getting the funds to do this when she can't afford apparently to pay for a custody evaluation, therapy for the children, and anything else the Court has ordered that's necessary to get these parties on with their lives. And to that same extent, we're asking the Court to order her to execute the appropriate authorizations so we could obtain her tax records. We believe she has -- and always did -- significant assets that were undisclosed and we also need to determine what her income is at some point when we're figuring out what, and if any, child support will be.

THE COURT: Okay. Ms. MacDonald.

MS. MACDONALD: Yes, Your Honor. Well,

89

again, I think my motion has to be ruled on before the Court can do anything. My client has no legal custody pursuant to your order. She has no temporary legal custody even of her children. So, now, it's again a symptom of the statute and the order that she is now being pulled into court to sign some paperwork relating to the child's passport. I think that is a clear indication of --

THE COURT: Okay.

MS. MACDONALD: -- why the statute's unconstitutional.

THE COURT: Do you want to go through each one of these then?

MS. MACDONALD: Yeah, I think I also said in my -- I'm objecting to the motion in its entirety. And I -- when something is unconstitutional the facts are pretty much irrelevant. But I'll tell you that Ms. Millinaker, Ms. Grazzini tells me she went to Ms. Millinaker a couple times. She brought me a bill. She brought me a patient authorization that says here, cannot give report. She won't give Ms. Grazzini the report. The client was seen at our office signed by someone else. She's not getting any records from Ms.

90

Millinaker and -- the request that -- you know, Ms. Grazzini has not seen her children for five months, so the fact of the matter that wasn't the cure for whatever issues that Ms. Elliott raised regarding my client, wasn't the cure. It is now, you know, seemingly -- there's a need now to reunify Ms. Grazzini with her own children. And they're still here claiming that it's Ms. Grazzini's fault for some reason.

THE COURT: You've made all those arguments. I understand all those arguments.

MS. MACDONALD: And as far as holding somebody in civil contempt, okay -- and I saw that there was some -- a lot of motions by Ms. Elliott, what I'm calling lawless motions, because the statute doesn't allow it. But we all know about the Hoppe (ph) factors so if she's here to answer to contempt then we need to deny it and have an evidentiary hearing on whether she's in contempt or not. There's been, you know, baseless allegations just in the words of Ms. Elliott to date about, you know, funds and things of that nature.

THE COURT: Okay. So --

MS. MACDONALD: So I'm just asking --

91

THE COURT: -- let me go through each one then and see if we can't get resolution or response here. Okay. So, Number 1, or actually Paragraph Number 2 ordering that the youngest children presently in the care of Nancy Olson be removed and placed with Tami Love, what's your position on that? Do you want the children all to be returned to your client?

MS. MACDONALD: We object to that, Your Honor.

THE COURT: Okay.

MS. MACDONALD: We object. We want the children -- all the restrictions on parenting time being completely removed.

THE COURT: Okay. And then who gets the kids? Where do they go? Where do they live?

MS. MACDONALD: If you vacate the November 14th order as requested, then you put Ms. Grazzini back in the position she was in before which was in the house and her children are free to go there.

THE COURT: And what happens to the foreclosure proceeding?

MS. MACDONALD: The foreclosure proceeding? They -- I guess they were disrupted. I don't know

92

what happens to the foreclosure but there's been no evidence --

THE COURT: There was no disruption of any foreclosure proceedings. I don't have any jurisdiction over the foreclosure proceedings.

(Off-the-record discussion between Ms. MacDonald and Ms. Grazzini-Rucki.)

MS. MACDONALD: The foreclosure proceedings, Your Honor, as I understand -- you know, those are all questions. Again, the facts are irrelevant, you know, what the Court did that day was award her her house and her property and took it away a week later with no due process.

THE COURT: So where are we at with Michelle Millinaker and the psychological evaluation that was required?

MS. MACDONALD: She saw Michelle Millinaker twice.

THE COURT: Okay.

MS. GRAZZINI-RUCKI: Three times.

MS. MACDONALD: And Michelle Millinaker won't talk to her.

MS. GRAZZINI-RUCKI: It was completed, Your Honor. I've testified to this numerous times. It has been completed. It was done.

93

THE COURT: Okay. Can you get a copy of that?

MS. MACDONALD: Why can't Michelle Millinaker provide it? I don't know.

THE COURT: Because this is --

MS. MACDONALD: Michelle Millinaker will not provide a copy to my client.

THE COURT: Why is that?

MS. MACDONALD: She's saying she needs everything in writing per the state, Michelle Millinaker needs something in writing.

THE COURT: What is it she needs?

MS. GRAZZINI-RUCKI: A written Court order.

THE COURT: Okay. So you need a written Court Order to -- directed to Ms. Millinaker to release --

MS. GRAZZINI-RUCKI: Your question -- the question was: Did I go? Ms. Elliott accused me of numerous things --

THE COURT: No, no, no. We understand you went.

MS. GRAZZINI-RUCKI: But I've gone. I -- supposedly it was already submitted to the state. You guys have already -- you guys I guess got it.

THE COURT: Okay. I'm not aware of that.

94

MS. GRAZZINI-RUCKI: Do we have Mr. Rucki's? They keep questioning mine. Well, where's his?

THE COURT: Ms. Elliott.

MS. ELLIOTT: Your Honor, Mr. Rucki did complete it and the completed report is with the Guardian ad Litem. And from our understanding, yes, Ms. Grazzini-Rucki did visit with Dr. Millinaker but has not completed it and has refused to -- to do what's necessary to complete it.

MS. GRAZZINI-RUCKI: Your Honor, I'm requesting that I can choose to go to anybody else and have a more current one done. Can I -- will the Court honor me that to at least go to get a different one done since we've had so many issues with Michelle and we can get a more up-to-date one?

THE COURT: What issues have we had with Michelle?

MS. GRAZZINI-RUCKI: Well, we're going back and forth. I'm asking if I can go someplace different of my choosing.

THE COURT: No, because this was agreed upon by the parties. She was agreed upon and you've already spent the money and paid for it, I

95

presume.

MS. GRAZZINI-RUCKI: I didn't agree upon it, Your Honor. I did not agree upon Michelle Millinaker.

THE COURT: I'm not going to get into a dispute about who agreed, but on your behalf your attorney agreed and that's who was chosen. I didn't choose her.

MS. GRAZZINI-RUCKI: And I'm asking to have a more up-to-date one, Your Honor.

THE COURT: Well, I think an up-to-date one would be done by Dr. Gilbertson and whoever we find to do the custody evaluation.

MS. GRAZZINI-RUCKI: So are you saying I cannot have a second opinion or a choice in the matter?

THE COURT: I'm saying that we're going to -- he's going to make a recommendation. I'm going to choose somebody off the list and they're probably going to do an updated one then. So, what are you telling me, Ms. Grazzini-Rucki, that there is no report? It wasn't completed?

MS. MACDONALD: Your Honor, there is -- what I'm going to tell you is that Michelle Millinaker, she went to her three times. She did what she

96

thought she was supposed to do and, you know, she hasn't been able to get the report. So if the Court wants the report --

THE COURT: So there is a report?

MS. GRAZZINI-RUCKI: I went three times. I went to Michelle every time.

MS. MACDONALD: That would be the responsibility of Michelle Millinaker. You know, I can just state for the record, Your Honor, that Michelle Millinaker is extremely expensive, number one. And, number two, she does nothing without being paid and she -- I don't know what her charges were or anything like that, but -- and she's also in most cases what I'd call a hired gun, but, you know -- you know, again...

THE COURT: She wasn't recommended or chosen by either side.

MS. MACDONALD: Well --

THE COURT: It was a joint agreement.

MS. MACDONALD: Again, Your Honor, whatever the representations were to the Court of prior counsel, Ms. Grazzini did not agree. She certainly didn't agree to have -- she didn't agree.

THE COURT: Okay.

97

MS. MACDONALD: And I don't see anything signed by her.

THE COURT: Okay. Number 5 then, any disagreement? I think I know your position on that. Number 6?

MS. MACDONALD: Well, obviously, she wants contact with her children, you know, liberally and freely so to say no unsupervised contact is just -- you've already taken away all her contact with the children and the children's school so it's superfluous. We asking that all of her liberty rights with her children be given to her so we obviously approve of unsupervised -- no unsupervised contact.

THE COURT: Okay. Number 7.

MS. MACDONALD: Ms. Grazzini is telling me there was no therapy with Life Development Resources PA.

THE COURT: She never went there?

MS. GRAZZINI-RUCKI: There was no therapy done there. There was no therapy done there.

THE COURT: Did you ever go there?

MS. GRAZZINI-RUCKI: Yes, I went there to talk to them about this case which they were already aware of what was going on here.

98

THE COURT: Okay. And how many times did you go?

MS. GRAZZINI-RUCKI: I talked to Michelle Formberg (ph). I can't say exactly.

THE COURT: You don't know?

MS. GRAZZINI-RUCKI: No, I can't say exactly.

THE COURT: Well, more than once?

MS. GRAZZINI-RUCKI: I can't say exactly.

MS. MACDONALD: More than once?

MS. GRAZZINI-RUCKI: I can't say for sure.

THE COURT: Well, I'm not cross-examining you.

MS. GRAZZINI-RUCKI: I'm saying, Your Honor, I do not want to implement (sic) myself by saying something wrong so I can't say for sure. I went there one time. I guarantee I went there one time.

THE COURT: All right. Number 8.

MS. MACDONALD: Number 8, ordering Petitioner to provide for this Court all records of her parenting coach therapy with Dr. Karen Irvine, another expensive person --

MS. GRAZZINI-RUCKI: And, yes, I did go to Karen Irvine's appointment.

MS. MACDONALD: Okay.

99

MS. GRAZZINI-RUCKI: So it's another false accusation, Your Honor. I'm being accused of not doing these things, and I am doing these things.

THE COURT: Well, I think we all agree that you did those, and now -- because we ordered you to do that, then all we need is to obtain records. I think that's what they are asking for. So we just need you to cooperate in obtaining those records so that the guardian can have those.

MS. MACDONALD: And --

THE COURT: Okay. Number 10.

MS. GRAZZINI-RUCKI: Your Honor, I'd be more than happy to cooperate if they would give me the records. I'm doing my best to cooperate with the Court.

THE COURT: Okay.

MS. GRAZZINI-RUCKI: She said I didn't go. I told you I went.

MS. MACDONALD: Number 10 then, the Disney timeshare. I think that, Your Honor, there again, I need my motion to be heard and ruled on because, that entire property settlement which was undone about a week later when Ms. Grazzini-Rucki was taken out of the house so I need mine ruled on before any transfers. In fact, I think there was

100

an immediate transfer in October with Ms. Elliott's order -- your order didn't even come out until November 14th.

THE COURT: Okay. Do you have the documents?

MS. ELLIOTT: I do, Your Honor.

THE COURT: Then, Ms. Grazzini-Rucki I'm going to have you sign those documents and then the Court will hold them in escrow so to speak until I rule on the other issues.

MS. ELLIOTT: Your Honor, I've gone through the document, and --

THE COURT: All right.

MS. ELLIOTT: -- the spot where Ms. Grazzini-Rucki needs to sign.

THE COURT: Okay. Ms. MacDonald, could you have your client sign that, please?

MS. GRAZZINI-RUCKI: Your Honor, would you please write it into writing because this is a request by the IRS and the Minnesota Department of Revenue that I do nothing from the bench, that I do have it in writing from you.

THE COURT: It will be in writing. It will be part of my order.

MS. GRAZZINI-RUCKI: What is it going to state, that you Court ordered me to do it?

101

THE COURT: That I Court ordered you to sign it.

MS. GRAZZINI-RUCKI: So in your order you're going to specifically state that I did this against my will because I do not want to sign this. I'm against signing this. This is not what I agreed to. I want that on the record.

THE COURT: Okay.

MS. GRAZZINI-RUCKI: I did not agree to any of this and you're ordering me to sign over more property and you're going to write that in your order? So we're clear, I'm signing this against my will?

THE COURT: Yep.

MS. GRAZZINI-RUCKI: (Signing document).

MS. MACDONALD: And, Your Honor, my understanding is you're going to hold it?

THE COURT: Yes.

MS. MACDONALD: In escrow?

MS. GRAZZINI-RUCKI: Okay. Again, I'm signing completely and totally against my will.

THE COURT: That's been made clear.

MS. MACDONALD: And, Your Honor, I'd like a copy of it.

MS. GRAZZINI-RUCKI: I never agreed to this,

Michelle.

THE COURT: What about the Number 11 then?

MS. MACDONALD: Nico's passport.

THE COURT: Any problems?

MS. MACDONALD: Again, I point to the fact that she shouldn't even have to be Court ordered to sign something --

THE COURT: I understand that.

MS. MACDONALD: -- because she doesn't have any legal custody, so we're objecting.

THE COURT: So you don't want him to travel?

MS. GRAZZINI-RUCKI: I do not want to sign the passport, no. And I don't understand why Mr. Rucki needs his passport reinstated if he doesn't have any money.

MS. MACDONALD: And until she gets her legal custody back it should have no effect, so, again, that's the problem we have here.

THE COURT: All right. Your current physical address?

MS. GRAZZINI-RUCKI: I do not have one. I have a post office box. I have a phone number. I have an email. That was -- that's what you ordered and that is what I have.

THE COURT: Okay. Ms. Elliott?

MS. ELLIOTT: Your Honor, first with respect to the passport, we do need -- if the Court's going to order it, we need a copy of her driver's license, the front and back. And she has to be living somewhere. She's asking for custody of the children or even parenting time with the children. We have no idea where she's residing.

MS. GRAZZINI-RUCKI: Per the state, once I do get custody they have -- we already got it situated with a place to go per the CDA. They are just waiting for the order from you that I do have custody of my kids and I will have a place to live. I already worked that out with the state. CDA is involved.

MS. MACDONALD: Your Honor, again, she was evicted from her home immediately. You signed an order September 9th evicting her September -- I mean, I'm sorry, September 7th evicting her from her home September 7th and all of the property in it.

THE COURT: Okay. Do you have -- what documents do you need for this passport?

MS. ELLIOTT: Your Honor, we've got the statement of consent for special circumstances. I think we need two things. We need her to sign the

consent form. We need a copy of her driver's license, front and back in front of a notary, her signature in front of a notary, and -- and if we can't get that -- Your Honor, Ms. Love.

THE COURT: State your name, please.

MS. LOVE: My name is Tami Love. I'm guardian of Nico right now. For the passport, I need that document signed in front of a notary. I need a copy of the front and back of her driver's license. If we can't obtain that, could you write a Court order stating that we weren't able to obtain that and we should be able to get his passport with a Court order.

THE COURT: Okay. Well, I'm not going to punish your son.

MS. MACDONALD: You already have, Your Honor.

THE COURT: I appreciate your comments there, Ms. MacDonald, unsolicited and uncalled for.

MS. MACDONALD: Well, I'm just saying --

THE COURT: I don't think you need to say anything else.

MS. MACDONALD: -- I want you to recognize it.

THE COURT: I do. So, Ms. Grazzini-Rucki, I'm going to ask you to sign this document in

front of the clerks downstairs so they can notarize that.

MS. GRAZZINI-RUCKI: Are you Court ordering me, Your Honor, because if I sign it I'm doing it against my will.

THE COURT: Yes, it's a court order.

MS. GRAZZINI-RUCKI: So you're ordering me to sign --

THE COURT: It's a Court order. I'm ordering you to sign it.

MS. GRAZZINI-RUCKI: For the record, it's against my will again.

THE COURT: Fine. I also want a copy of the front and back of your driver's license.

MS. GRAZZINI-RUCKI: I don't have it with me.

THE COURT: How did I know you were going to say that?

MS. GRAZZINI-RUCKI: I don't have it with me, Your Honor.

THE COURT: Right.

MS. GRAZZINI-RUCKI: I did not drive.

THE COURT: Okay. We'll issue an order then on that.

MS. ELLIOTT: And we don't have -- we don't have a lot of time because even now we're going to

have it expedited and I highly doubt even with a Court order that she's going to provide us with a copy of her driver's license and --

THE COURT: No, I thought I could issue a Court order without having a driver's license.

MS. LOVE: He flies out at the end of March so we have an appointment this Thursday to go to Minneapolis to get it in time.

THE COURT: Okay. The Court's going to issue a separate order saying that the front and back license of the mother is not available and that she's not provided that to the Court and is not available today, so that it shall be issued without that -- without the photocopy.

MS. GRAZZINI-RUCKI: Your Honor, may I place on the record that it's not that I'm not able to, I can't produce it. I don't have it to produce. It's not that I'm not doing what you say. I don't have it.

THE COURT: Right.

MS. GRAZZINI-RUCKI: And if you don't believe me, you can check the DMV.

THE COURT: Okay. So before you leave the courthouse here today I want you to go down there with your attorney and Ms. Elliott downstairs to

find -- have a notary witness your signature.

Okay. Number 13 then, you do have the 2007 Chevy Suburban?

MS. GRAZZINI-RUCKI: It's being held by a mechanic because there's thousands of dollars due to towing and work on it and all that. They won't release it until it's all paid for.

THE COURT: Okay. And you haven't been using it?

MS. GRAZZINI-RUCKI: Well, in November when Mr. Rucki filed with the Lakeville Police Department that it was a stolen vehicle after you awarded it to me, they told me even if I get it running and all that that if I'm caught driving it I will be arrested because Mr. Rucki refused to give me the title. The DMV was unable to do a forced title on it even though I showed them the Court order that said I owned it. I would like to be able to fix it. I do not own a vehicle. They claim this Escalade is mine. It is not mine. The title transfer was done on May 29th of 2012 which is on record with the DMV. I don't have a car. I would like to fix the suburban, if possible, so I can get it to drive. But I need Mr. Rucki to give me the title and notify the police that it's not

stolen. He filed the false police report.

THE COURT: Who has the title to the vehicle?

MS. ELLIOTT: I believe I provided that to Ms. Henry.

MS. GRAZZINI-RUCKI: No. She gave me all the documents. She specifically stated she does not have it. I spoke with her.

THE COURT: Do you have a transmittal letter or?

MS. ELLIOTT: This is the first I've heard that the title had not been transferred, so I can look to see if I've got something -- I'm sure --

MS. GRAZZINI-RUCKI: It also has a false police report of being a stolen vehicle, Your Honor.

MS. ELLIOTT: That's false. There's no police report that the suburban was stolen.

MS. GRAZZINI-RUCKI: Yes, there is. Lakeville Police Department.

THE COURT: Lakeville Police Department. Then, Mr. Rucki, if you could call --

MR. RUCKI: I went in to talk to them after the one time we were in Court maybe a couple months ago. She had stated that it disappeared, it was gone, and that the junk yard had it. So I

went around to all the junk yards and found out they won't take anything seven years or newer without title. I know that my attorney had the title. I went to the Lakeville Police Department to talk to them about if we could find this vehicle, and that if it showed up -- because it was before winter -- if it showed up in a parking lot that I be notified. We talked about a stolen report and they said they wouldn't do that. And I said, well, if it does show up somewhere, can I be notified? And they said yes.

THE COURT: Okay.

MS. GRAZZINI-RUCKI: Can I have the title, Your Honor, so I can hopefully have a car to drive.

THE COURT: Yes, you can have the title. Ms. Elliott said she gave it to Ms. Henry.

MS. GRAZZINI-RUCKI: Ms. Henry does not have the title, Your Honor.

THE COURT: Then we need the parties to cooperate and talk to each other to create a new title.

MS. GRAZZINI-RUCKI: What should I do about the police? Can you give me something stating that it's not stolen so I can bring it in because

110

there was a report filed.

THE COURT: Where is it right now?

MS. GRAZZINI-RUCKI: A mechanic's got it out in Burnsville.

THE COURT: What's the name?

MS. GRAZZINI-RUCKI: His name is Slim.

THE COURT: What's the name of the --

MS. GRAZZINI-RUCKI: That's the name of a mechanic. He's a friend of a friend.

THE COURT: Okay. All right. Ms. MacDonald, any other response to the remaining paragraphs in the motion?

MS. MACDONALD: Again, Your Honor, in looking at the order and comparing it to the statute, I don't believe that the Court has statutory authority to do any of these things.

THE COURT: Okay. And the motion had -- okay. Ms. Elliott just filed a motion denying -- requesting the denial of everything in Petitioner's motion and then filed another motion seeking to quash the subpoenas. Okay. Ms. Elliott.

MS. ELLIOTT: Yes, Your Honor. We did file our motion, I believe it was on Friday when we discovered that Ms. Grazzini-Rucki served five, I

111

believe, subpoenas with no notice to us, no notice of taking deposition. We found out when we were checking court records that those subpoenas had been served in contradiction to the Minnesota Rules of Civil Procedure 45.02 and 45.03, so we're asking the Court to quash them first based on that that she failed to follow the Rules of Civil Procedure. And, second, all of the parties' property and financial matters have been resolved. She's subpoenaed King Construction, several banks, asking for records from 2010, 2011 and 2012 which are irrelevant to any proceedings we have going forward. We believe it's just again more of Petitioner's attempt to increase the cost and length of this litigation.

THE COURT: Ms. MacDonald.

MS. MACDONALD: My understanding, Your Honor, is that Ms. Grazzini-Rucki got the subpoenas signed and she presented them exactly the way she has seen Ms. Elliott. And nobody showed up. The only -- the one person that provided documents to the Court was the one bank. So, you know, what she was told when she called the clerk is you're not going to rule on the motions to quash until today, which I believe the documents were due

112

yesterday, so, again, it's another sympton of a problem, some random things happening.

THE COURT: Okay. So why are these subpoenas being issued or what are we -- what's under --

MS. MACDONALD: Well, that's for, you know, the Court to decide. She's asking for various bank --

THE COURT: Well, the Court didn't issue the subpoenas. What is the purpose of the subpoenas?

MS. GRAZZINI-RUCKI: To retrieve information, Your Honor.

THE COURT: Well, based on what -- what's before the Court on where we would consider --

MS. GRAZZINI-RUCKI: I have issues with the Minnesota Department of Revenue. I have issues with the IRS and advocates. They are going to have to go through Mr. Rucki's information because of the J&D and what was issued and I was left with nothing. It makes it very confusing to them, so I mean, they are going to pull all the records. I'm trying to put together something to show them, you know, that he does have money. He's never produced any of it, as much as Ms. Henry did ask and the Court never held him in contempt for not producing the documents. So I'm trying to get

113

some information about what is going on to produce to the Court and to the state of Minnesota. That's all I'm trying to do.

And as for how I issued them, I did them exactly the way I watched Ms. Elliott do this, how she issues, when she sends them to my attorney, when she notifies my attorney, it's usually a week to two weeks after they've -- the deposition's already taken place so I assumed that was the proper way because that's how she's always served my attorney. They didn't find out until weeks after. So, I do exactly what she's been doing. As to the way the document was filed and the time frame, I did it exactly the way Elliott's always done it. I assume if the Court accepts the way she does it it must be correct.

THE COURT: Okay. Anything else on the subpoenas?

MS. ELLIOTT: Nothing, Your Honor, except for that it's untrue that we don't provide copies of the notice of deposition until weeks after we received them. We serve the notice of the subpoenas along with the notice of taking deposition, then we got the documents and then we provide the documents after we receive them.

Typically the deposition doesn't go forward because we get the documents in lieu of the deposition. We received no notice of anything until we checked on the court records. And copies of the vast majority of these documents were provided to Ms. Henry by my office and I can provide -- if the Court wants the correspondence sending those documents over. But at this point, they were all disclosed, they were here when we were ready for trial in August of 2012. We're not sure what she's looking for and we certainly object to her providing my client's personal financial records to the state of Minnesota without his authorization. She's already disseminated his personal financial information, social security --

MS. GRAZZINI-RUCKI: No, I did not. And it was never proved in a court of law. You had no witnesses. You had 60 days to produce, so I think we should just quash that part right now. That was never proven. It was thrown out. I didn't do it and you know it.

THE COURT: Okay. I'll take that matter under advisement. Any other motions?

MS. ELLIOTT: No, Your Honor, except for the

attorneys' fees. Oh, we do have the authorization here that we need to have her sign so we can get Ms. Grazzini-Rucki's taxes so we can find the information about GFP and the other assets that were not disclosed prior to trial that were reserved in part of the judgment and decree.

THE COURT: All right. Where are both parties at in filing your 2012 income tax returns?

MR. RUCKI: Mine are generally delayed until about September just for the company purpose.

THE COURT: What's the company purpose?

MR. RUCKI: That's how it's always been done. It just gives the accountant more time to put it all together.

THE COURT: You need to speak out loud.

MR. RUCKI: It's going to be filed K&K contracting. I'm a partner, an employee of the company. I don't solely -- I'm a minor partner. I'm not majority. And taxes will be done in September. We filed for an extension.

THE COURT: Ms. Grazzini-Rucki, have you received Mr. Rucki's 2011 tax returns?

MS. GRAZZINI-RUCKI: No, I have not, Your Honor.

MS. ELLIOTT: Yes, we did. We provided those

before trial in August.

MS. GRAZZINI-RUCKI: I've received all the documents from Lisa Henry and they are not in there, Your Honor.

THE COURT: Okay. Can you provide the 2011 tax returns to Ms. Grazzini-Rucki?

MS. ELLIOTT: Yes, and I'm assuming she has to provide copies to us as well for 2011?

THE COURT: Yes. You can do that. Did you file 2011?

MS. GRAZZINI-RUCKI: No.

THE COURT: 2010?

MS. GRAZZINI-RUCKI: No.

THE COURT: 2009?

MS. GRAZZINI-RUCKI: That was joint. He had those.

THE COURT: Did you file joint 2009?

MS. ELLIOTT: Yes.

MR. RUCKI: Yeah, we've always done taxes.

THE COURT: When did you last file joint?

MS. ELLIOTT: 2010 is done as well. That was joint, 2011 and 2012 are the ones that we're trying to obtain.

MS. MACDONALD: Your Honor, just for the record, they filed joint taxes, and she just has a

job. I mean, all the taxes are going to show as her job at the airlines. They are not -- she didn't file any taxes on behalf of any trusts or anything like that.

THE COURT: Okay. Well, at the point that anybody has filed taxes, you're to provide those copies to the other party, okay?

MS. ELLIOTT: And, Your Honor, if I could have her sign the authorization from McGladery (ph) because that's -- we know that's who she used in the past. And we believe she has filed taxes for 2011 and '12, and that would include the trust taxes and we have that authorization with us today.

THE COURT: Well, you filed the 2011?

MS. GRAZZINI-RUCKI: Your Honor, I did not file in 2011. I did not file 2012. No. I told you I didn't. There is no trust taxes. There is no taxes. There is no personal taxes. You gave the company that we owned to him, remember?

THE COURT: Yep.

MS. GRAZZINI-RUCKI: So, I don't have anything.

MS. MACDONALD: And also, Your Honor, you know, if all of the property was resolved, why is

discovery even an issue right now? Just a question.

THE COURT: Because there's still unaccounted assets out there.

MS. GRAZZINI-RUCKI: Where are they?

MS. ELLIOTT: So, Your Honor, if she didn't file taxes for 2011 and '12 she should have no problem signing this authorization and we could find that out for ourselves.

THE COURT: Okay. Thank you. I will take all the motions under advisement.

MS. ELLIOTT: Your Honor, could we have her sign this authorization again, pull that with the other one until you decide that issue?

MS. MACDONALD: I'm objecting to that. I'm objecting to --

THE COURT: I'm not going --

MS. MACDONALD: -- any type of authorization.

THE COURT: I'm not going to have her sign that at this point in time.

MS. MACDONALD: Thank you, Your Honor. And I do want to apologize for the comment I made earlier.

THE COURT: Now --

MS. MACDONALD: It was uncalled for.

THE COURT: Now, where is Mr. Gilbertson. Is he out in the --

MS. ELLIOTT: Your Honor, we do have one house-keeping issue. If you recall, there's the criminal contempt charge against Mr. Rucki for him going to the children's school. That has been re-scheduled in Apple Valley today at 1:30 for a pretrial. We didn't -- we thought this was going to be a much simpler motion at the time it was filed, and so we'd need either an order -- we contacted the Court to let them know we're here and most likely won't be making it there. But if we can just get an order granting a continuance of that we can get a date from the court administrator in Apple Valley. I've got the court file number.

THE COURT: Okay. Mr. Goldberg.

MR. GOLDBERG: Your Honor, Ms. Olson would like to know what's going to happen with the children. Are we awaiting your order then, is that what we're doing?

THE COURT: Yes.

MS. GRAZZINI-RUCKI: Again, Your Honor, just for the record, I'm prepared to take those children. I will have a home to stay in. I will

have all that. I have all the means necessary to do it I just need the order from you.

THE COURT: I understand that. And what I need from the parties is to cooperate with the Court-ordered therapy, counseling, psychological evaluations. This is not that hard to understand. We have issued those from the very beginning in this case as recommended by the Guardian ad Litem when she first got on this case, and then further recommended by every therapist that we have sent the parties to.

MS. GRAZZINI-RUCKI: And I've completed all mine.

THE COURT: And you say you've completed it and yet we don't have a report.

MS. GRAZZINI-RUCKI: What can I do if they don't give them to me.

THE COURT: Which just baffles this Court.

MS. MACDONALD: Your Honor, she wasn't even -- you know, the guardian reports she wasn't even privy to -- so again she had attorneys --

MS. GRAZZINI-RUCKI: I gave to my attorney the letter from Michelle Millinaker refusing to give it to me. I don't know what more you want me to do.

THE COURT: Okay.

MS. GRAZZINI-RUCKI: As for Karen Irving, you're going to have to get it from her. They refuse to release anything to me.

THE COURT: Okay.

MS. GRAZZINI-RUCKI: I don't know whose order is telling them not to but they say they can't.

THE COURT: Well, then all you need to do is ask why can't they. Do you need an authorization from you? Do they need payment from you in full? Do they -- what do they need?

MS. GRAZZINI-RUCKI: Have --

THE COURT: Well, it's -- you're in the perfect position to find out and all you have to do is make one phone call.

MS. MACDONALD: It's not that simple --

THE COURT: We need to know why.

MS. MACDONALD: -- when you have an order that -- it's just not that simple.

THE COURT: Okay. Dr. Gilbertson, are they ready to come in? Are the children ready to come in? Are they out there?

DR. GILBERTSON: They are out there. They are ready to come in.

THE COURT: Then I'm going to certainly allow

mom and dad and their attorneys and the Guardian ad Litem and the attorney and I think that's all that we need back -- we're going to do it in the corner conference room, meet with the children and it's going to be on the record. There is going to be no discussion by any parties or any attorneys. I don't see that that's necessary at all. This is somewhat scripted by Dr. Gilbertson in that he's asked the children to prepare a statement and I'm going to allow the children to talk to me as the Court and then I'll have some comments for them. Any questions?

MR. GOLDBERG: Your Honor, will there be any rulings today or will the hearing be over now?

THE COURT: The hearing is concluded then.

MR. GOLDBERG: Okay.

THE COURT: Thank you. Any questions? All right, we are in recess until we meet in the corner conference room.

(Whereupon, the courtroom proceedings were concluded.)

REPORTER'S CERTIFICATE

STATE OF MINNESOTA)

ss.

COUNTY OF DAKOTA)

I, RHONDA L. ROUTE, Official Court Reporter for the State of Minnesota, one of the official court reporters of the First Judicial District, State of Minnesota, do hereby certify that as such reporter, I reported in shorthand the proceedings had on the hearing of the aforementioned action; that I thereafter transcribed the foregoing into typewriting by means of computer-aided transcription to the best of my ability; and that the foregoing transcript consisting of 122 pages is a true and correct transcript of the proceedings had herein.

COPY

Rhonda L. Route, RPR
Official Court Reporter
Dakota County Judicial Center
Hastings, Minnesota 55033
651-438-8097

Dated: May 9, 2012

The foregoing certification of this transcript does not apply to any reproduction of the same by any means unless under the direct control and/or direction of the certifying reporter.

STATE OF MINNESOTA | DISTRICT COURT

COUNTY OF DAKOTA | FIRST JUDICIAL DISTRICT
FAMILY COURT DIVISION

In Re the Marriage of:

Sandra Sue Grazzini-Rucki,

Petitioner,

and

David Victor Rucki,

Respondent.

Court File No.: 19AV-FA-11-1273
Judicial Officer: David L. Knutson

**AMENDED SUMMARY OF REAL ESTATE DISPOSITION JUDGMENT**

1. The parties were married on August 31, 1991, in Edina, Minnesota.

2. The Judgment and Decree dissolving their marriage was signed by Judge Tim D. Wermager, entered on May 12, 2011.

3. The Order for Property Division and Judgment was entered on October 26, 2012.

4. An Amended Order for Property Division and Judgment was entered on November 7, 2012;

5. Petitioner was represented by:

CHESTNUT CAMBRONNE, P.A.
Elizabeth C. Henry
17 Washington Avenue N
Suite 300
Minneapolis, MN 55401

FILED DAKOTA COUNTY
CAROLYN M. RENN, Court Administrator
FEB 20 2013

6. Respondent is represented by:

ELLIOTT LAW OFFICES, P.A.

Lisa M. Elliott
2409 West 66th Street
Minneapolis, MN 55423

6. The name of the judge who signed the order for property division is the Honorable David L. Knutson. The order was entered on October 26, 2012. An Amended Order was entered on November 7, 2012.

7. The stipulation for property division was read into the Court Record on August 28, 2012. Petitioner was represented by Elizabeth C. Henry, Esq. of Chestnut and Cambronne, P.A. Respondent was represented by Lisa M. Elliott of Elliott Law Offices, P.A., pursuant to the Certificates of Representation on file with the Court herein.

8. In the written Order dated October 26, 2012 and Amended Order dated November 7, 2012, following the oral stipulation, the real property was described in a legal description.

9. Neither party changed their name through the oral stipulation.

10. The Summons and Petition for Dissolution of Marriage was served personally on the respondent, pursuant to the Rules of Civil Procedure, Rule 4.03(b).

11. The following real estate disposition in the Order for Property Division relates to real property located at 19675 Ireland Place, Lakeville, Minnesota 55044, Dakota County, Minnesota, and legally described as:

Lot 9, Block 1, Paradise Hills, Dakota County, Minnesota

Respondent, David Victor Rucki was awarded all right, title and interest in and to said property, subject to any valid liens, mortgages, encumbrances or other interests on said property on file and of record with the county.

12. This Amended Summary Real Estate Disposition Judgment shall serve to effectuate transfer of title on said property.

Approval of Amended Summary Real Estate Disposition Judgment:

Dated: 2/19/, 2013.

BY THE COURT:

David L. Knutson
Judge of District Court

I hereby certify that the above Amended Summary Real Estate Disposition Judgment has been filed with the Court Administrator:

Carolyn M. Renn, Court Administrator

Dated: 2-20, 2013

Deputy

**State of Minnesota** | **District Court**

| County Dakota | Judicial District: | |
|---|---|---|
| | Court File Number: | 19AV-FA-11-1273 |
| | Case Type: | General |

Sandra Gruzzini-Ruckl
Petitioner

vs.

David Victor Ruckl
Respondent

# Supplemental Order for Proceeding In Forma Pauperis (Minn. Stat. § 563.01)

Upon the affidavit of Sandra Gruzzini-Ruckl and based on the authority of Minn. Stat. § 563.01, the Court makes the following Findings of Fact and Conclusions of Law:

☑ Petitioner's claim is not frivolous, and petitioner is entitled to proceed under Minn. Stat. § 563.01.

☐ ______ is a witness to this case, has evidence material and necessary to this case and is within the State of Minnesota.

☐ In order to adequately prepare, present or decide an issue presented by this action, it is necessary to depose ______ and prepare a transcript of that deposition.

☐ In order to adequately prepare, present or decide an issue presented by this action, it is necessary to obtain a transcript of the hearing, trial, or deposition held on ______.

☐ Other: ______

☐ Applicant is not entitled to expenses.

**IT IS ORDERED:**

The following costs to be paid by the state courts:

☐ Witness expenses incurred in subpoenaing ______ and the fees and costs of this witness not to exceed $______.

☐ Deposition expenses incurred in deposing ______ and the costs of obtaining a transcript of the deposition not to exceed $______.

☑ Expenses incurred in obtaining a transcript of the hearing, trial, or deposition held on 8/28/12 not to exceed $ 9.00.

☐ Other: ______
Not to exceed: $______.

☐ If money is recovered in this action, these costs shall be paid directly to the court administrator by the losing party.

☐ The application for payment of expenses is denied.

FILED
CAROLYN M. RENN, Court Administrator
DAKOTA COUNTY
FEB 25 2013

Dated: 2/25/13

______
Judge of District Court

STATE OF MINNESOTA | DISTRICT COURT

COUNTY OF DAKOTA | FIRST JUDICIAL DISTRICT

In Re the Marriage of:
Sandra Sue Grazzini-Ruckl,

Petitioner,

v.

David Victor Ruckl,

Respondent.

Court File No.: 19AV-FA-11-1273

**FINDINGS OF FACT AND ORDER DENYING PETITIONER'S REQUESTS TO PROCEED IN FORMA PAUPERIS**

The above matter came on pursuant to Petitioner's requests for Supplemental Orders for Proceeding In Forma Pauperis, before the Honorable David L. Knutson, Judge of District Court, at the Dakota County Judicial Center, in Hastings, Minnesota.

Petitioner filed the requests Pro Se.

NOW, THEREFORE, the Court having considered the matter, being fully advised in the premises, and based upon all the files, records and proceedings herein, makes the following:

## FINDINGS OF FACT

1. Petitioner has requested to proceed In Forma Pauperis and now requests nine (9) Supplemental Orders for proceeding In Forma Pauperis requesting various pleadings and transcripts in the above-captioned matter.
2. Pursuant to the agreement of the parties reached on August 28, 2012, and placed on the record and entered as the Amended Findings of Fact, Conclusions of Law and Order for Property Division on November 7, 2012, "[t]he Petitioner is employed by U.S. Airways and has the ability to earn a gross annual salary of $60,000. Petitioner

FILED DAKOTA COUNTY
CAROLYN M. RENN, Court Administrator

MAR 2 9 2013

is self-supporting, is not in need of spousal maintenance." (Page 3, Paragraph 12, Findings of Fact.)

3. Petitioner's annual income is many times greater than 125 percent of the poverty line established under U.S. Code.
4. Petitioner is not receiving public assistance.
5. Petitioner's children have not currently resided with her since October 3, 2012.
6. Petitioner does not pay any child support for her five children.
7. Petitioner is capable of full-time employment and continues to be employed by U.S. Airways.
8. Petitioner has not paid any of the parties' mortgages since at least the fall of 2012.
9. Petitioner is financially able to pay the fees and costs in this litigation.
10. Petitioner is not entitled to expenses.

Based upon the foregoing Findings of Fact, the court issues the following:

ORDER

1. This Court rescinds its previous Order allowing Petitioner to proceed In Forma Pauperis dated February 4, 2013.
2. Petitioner's requests to proceed In Forma Pauperis and for the payment of expenses are **DENIED.**

BY THE COURT:

Dated: March 27, 2013

David L. Knutson
Judge of District Court

State of Minnesota
Dakota County

District Court
First Judicial District
Court File Number: 19AV-FA-11-1273
Case Type: Dissolution with Child

## Notice of Filing of Order

MICHELLE L MACDONALD
MACDONALD LAW FIRM L L C
1069 SOUTH ROBERT STREET
WEST SAINT PAUL MN 55118-1456

---

In the Marriage of SANDRA SUE GRAZZINI-RUCKI vs DAVID VICTOR RUCKI *** Judge Knutson Assigned ***

You are notified that an order was filed on this date.

Dated: March 29, 2013

Carolyn M. Renn
Court Administrator
Dakota County District Court
14955 Galaxie Avenue
Apple Valley MN 55124
952-891-7256

cc: LISA MARIE ELLIOTT
DAKOTA COUNTY DEPT - CHILD SUPPORT

A true and correct copy of this notice has been served by mail upon the parties herein at the last known address of each, pursuant to Minnesota Rules of Civil Procedure, Rule 77.04.

STATE OF MINNESOTA | DISTRICT COURT
COUNTY OF DAKOTA | FIRST JUDICIAL DISTRICT

In Re the Marriage of:
Sandra Sue Grazzini-Rucki,

Petitioner,

v.

David Victor Rucki,

Respondent.

Court File No.: 19AV-FA-11-1273

ORDER AND MEMORANDUM SEALING TRANSCRIPT

This Order and Memorandum is issued sua sponte by David L. Knutson, Judge of District Court, at the Dakota County Judicial Center, in Hastings, Minnesota.

NOW, THEREFORE, the Court having considered the matter, being fully advised in the premises, and based upon all the files, records and proceedings herein, makes the following:

ORDER

1. The transcript of the proceedings consisting of a discussion and statements of the minor children at the Dakota County Judicial Center Second Floor Conference Room, on February 26, 2013 is hereby sealed.

BY THE COURT:

Dated: March 29, 2013

David L. Knutson
Judge of District Court

FILED DAKOTA COUNTY
CAROLYN M. RENN, Court Administrator

MAR 29 2013

MEMORANDUM

The Court conducted a listening session of the five children involved in the above-captioned case at the recommendation of the Court-appointed reunification therapist, Dr. James H. Gilbertson. This session was attended by the Petitioner, Respondent, Guardian ad Litem and their respective attorneys, as well as by Dr. Gilbertson. The session was on the record in an informal setting and in the presence of all parties and their respective attorneys. It is no secret what occurred or what was said in this session. The session was held for the sole purpose of facilitating therapy previously ordered by the Court.

No good use could come from the publication and dissemination of any transcript of this session, except to further damage the children, which this Court will not allow. This session was not pursuant to any motion or issue under consideration at the time. No specific testimony or information was sought by the Court. The Court made no decision on any issues based on anything said in this session.

The Court issues this order sealing the transcript pursuant to Rule 11.06 of the Minnesota General Rules of Practice for the District Courts. Pursuant to Minnesota Rules of Civil Procedure 26.03 the sealing of this transcript is done in the interest of justice to protect these children from annoyance, embarrassment, oppression, or undue burden. Any release of this transcript would be contrary to the children's best interests. The Court further makes this decision to seal this portion of the transcript based on the Court's inherent judicial authority.

D.L.K.

# Criminal/Traffic/Petty Case Records Search Results

Skip to Main Content Logout My Account Search Menu New Criminal/Traffic/Petty Search Refine Search Location : All MNCIS Sites - Case Search Help

Record Count: 20

Search By: Defendant Exact Name: on Party Search Mode: Name Last Name: Rucki First Name: David Case Status: All Sort By: Filed Date

| Case Number | Citation Number | Defendant Info | Filed/Location | Type/Status | Charge(s) |
|---|---|---|---|---|---|
| 19-TX-05-070802 | 5 534238 | RUCKI, DAVID VICT 02/03/1963 | 08/05/2005 - Dakota-Apple Valle | Moving - Petty Misd Converted Closed | CHILD RESTRAINT-UNDER 4YR |
| 19-T6-07-035873 | TW 006613 | RUCKI, DAVID VICT 02/03/1963 | 09/25/2007 - Dakota-West St. Pa | Non-Moving Petty Mi Converted Closed | WINDOW TINT TOO DARK-11% |
| 19AV-VB-08-9754 | LA08002196 | RUCKI, DAVID VICT 02/03/1963 | 06/30/2008 - Dakota-Apple Valle | Crim/Traf Non-Mand Closed | Motor Vehicle Registration - Failure |
| 19AV-CR-08-17007 | LA08003297 | RUCKI, DAVID VICT 02/03/1963 | 10/03/2008 - Dakota-Apple Valle | Crim/Traf Mandatory Closed | Assault-5th Degree-Fear of Bodily I |
| 19AV-CR-09-22432 | LA09004451 | RUCKI, DAVID VICT 02/03/1963 | 09/15/2009 - Dakota-Apple Valle | Crim/Traf Mandatory Closed | CR-DISORDERLY CONDUCT IN / |
| 19AV-VB-10-701 | LA10000123 | RUCKI, DAVID VICT 02/03/1963 | 01/11/2010 - Dakota-Apple Valle | Crim/Traf Non-Mand Closed | REG-EXPIRED REGISTRATION / |
| 19AV-VB-10-15073 | LA10002671<br>LA10002671 | RUCKI, DAVID VICT 02/03/1963 | 06/24/2010 - Dakota-Apple Valle | Crim/Traf Non-Mand Under Court Jurisdic | DL-DRIVING AFTER SUSPENSIO<br>INS-FAIL TO PRODUCE PROOF ( |
| 19AV-VB-11-4161 | LA11000745 | RUCKI, DAVID VICT 02/03/1963 | 03/02/2011 - Dakota-Apple Valle | Crim/Traf Non-Mand Under Court Jurisdic | ORD-DOG AT LARGE(6-1-9-A) |
| 70-VB-11-5313 | VP09499<br>VP09499 | RUCKI, DAVID VICT 02/03/1963 | 03/14/2011 Scott | Crim/Traf Non-Mand Closed | Drivers' Licenses-Driving restrictior<br>Motor Vehicle Registration - No Pla |
| 19AV-CR-11-11288 | LA11002269 | RUCKI, DAVID VICT 02/03/1963 | 06/21/2011 - Dakota-Apple Valle | Crim/Traf Mandatory Closed | Domestic Abuse - Violate Order foi |
| 19AV-CR-11-14179 | LA11002728 | RUCKI, DAVID VICT 02/03/1963 | 07/27/2011 - Dakota-Apple Valle | Crim/Traf Mandatory Closed | DOMEST-VIOLATE ORDER FOR |
| 19AV-CR-11-14682 | LA11002815 | RUCKI, DAVID VICT 02/03/1963 | 08/01/2011 - Dakota-Apple Valle | Crim/Traf Mandatory Under Court Jurisdic | DOMEST-VIOLATE ORDER FOR |
| 19HA-VB-11-6533 | 2134587 | RUCKI, DAVID VICT 02/03/1963 | 09/28/2011 Dakota-Hastings - Ci | Crim/Traf Non-Mand Closed | Traffic Regulation - Driver Must Ca |
| 70-VB-11-25188 | 70061112056 | RUCKI, DAVID VICT 02/03/1963 | 11/18/2011 Scott | Crim/Traf Non-Mand Closed | MOV-INSURANCE-OWNER FAIL ' |
| 19AV-CR-12-1215 | 191100001177 | RUCKI, DAVID VICT 02/03/1963 | 01/20/2012 - Dakota-Apple Valle | Crim/Traf Mandatory Closed | Domestic Abuse - Violate Order foi |
| 70-VB-12-2890 | 869000011468 | RUCKI, DAVID VICT 02/03/1963 | 02/08/2012 Scott | Crim/Traf Non-Mand Under Court Jurisdic | Traffic Regulation- Operate Vehicle |
| 19AV-VB-12-11303 | 889000086264<br>889000086264 | RUCKI, DAVID VICT 02/03/1963 | 06/13/2012 - Dakota-Apple Valle | Crim/Traf Non-Mand Closed | Traffic Regulation- Equip Vehicle -<br>Traffic Regulation - Driver Must Ca |
| 19AV-VB-12-20508 | 191112904011 | RUCKI, DAVID VICT 02/03/1963 | 10/22/2012 - Dakota-Apple Valle | Crim/Traf Non-Mand Closed | DNR-FAILURE TO EXTINGUISH / |
| 19AV-VB-12-23929 | 191112904539<br>191112904539 | RUCKI, DAVID VICT 02/03/1963 | 12/11/2012 - Dakota-Apple Valle | Crim/Traf Non-Mand Closed | SEATBELT- REQUIRED-DRIVER .<br>INS-FAIL TO PRODUCE PROOF ( |
| 19AV-CR-12-24812 | 191100001160 | RUCKI, DAVID VICT 02/03/1963 | 12/24/2012 - Dakota-Apple Valle | Crim/Traf Mandatory Closed | Contempt of Court - Willful Disobec |



SUSAN J. REICHENBACH
JUDICIAL DISTRICT DEPUTY ADMINISTRATOR
CENTRAL ASSIGNMENT

DAKOTA COUNTY JUDICIAL CENTER
HIGHWAY 55
HASTINGS, MINNESOTA 55033

CARVER, DAKOTA, GOODHUE, LESUEUR, McLEOD
SCOTT AND SIBLEY COUNTIES

TELEPHONE (651) 438-4331
FAX (651) 438-8327

STATE OF MINNESOTA
FIRST JUDICIAL DISTRICT

August 10, 2011

STATE OF MINNESOTA, COUNTY OF DAKOTA
Certified to be a true and correct copy of the original on file and of record in my office this 6th day of 22 Oct, 2013
CAROLYN M. RENN, COURT ADMINISTRATOR
BY CHalfe DEPUTY

Kathryn Graves
225 South Sixth Street
Suite 4150
Minneapolis MN 55402

RE: In the marriage of Sandra Sue Grazzini-Rucki vs David Victor Rucki
Dakota County File # 19AV-FA-11-1273 & ~~19AV-FA-11-1760~~

Dear Counsel:

The above-referenced matter has been assigned to the Honorable David Knutson, District Court Judge. All future hearings shall be scheduled before Judge David Knutson.

Yours truly,

Susan J. Reichenbach

SJR / tmb

cc: Judge David Knutson
Court Administration Civil Division
Lisa Elliott

FILED DAKOTA COUNTY
CAROLYN M. RENN, Court Administrator
AUG 11 2011





# LAKEVILLE POLICE DEPARTMENT

9237 183rd Street West
Lakeville, MN 55044

Office: (952) 985-2800
Fax: (952) 985-4899

Dakota County District Court
Attn: Traffic Division
14955 Galaxie Ave. West
Apple Valley, MN 55124

FAX: 952-891-7312

To the Court Administrator:

Please void the following Citation:

- Citation Number: LA11002728
- Issued to: David Victor Rucki (DOB: 2/3/63)
- Date: 7/17/11
- Violation: OFP Violation

I, as the issuing officer, request that this citation be deleted and no data entered in Minnesota Court Information System (*MNCIS*).

If you have any questions, please feel free to contact the Lakeville Police Department Records Division at 952-985-2800. Thank you for your assistance.

Respectfully,

Officer Jim Dronen
Badge 4816
Lakeville Police Department

Thomas Vonhof, Chief of Police

Skip to Main Content Logout My Account Search Menu New Civil Search Refine Search Back    Location : All MNCIS Sites - Case Search Help

# REGISTER OF ACTIONS
CASE NO. 19AV-FA-11-1760

In the Matter of SANDRA SUE GRAZZINI-RUCKI vs DAVID VICTOR RUCKI §§§§§

Case Type: Domestic Abuse
Date Filed: 06/06/2011
Location: - Dakota-Apple Valley

## RELATED CASE INFORMATION

Related Cases
19AV-FA-11-1273 (Companion Case)

## PARTY INFORMATION

| | | | Lead Attorneys |
|---|---|---|---|
| Petitioner | GRAZZINI-RUCKI, SANDRA SUE<br>13600 Nicollet Blvd<br># 4631<br>Burnsville, MN 55337 | Female<br>DOB: 09/30/1965 | Pro Se |
| Respondent | RUCKI, DAVID VICTOR<br>17549 Flagstaff Avenue<br>Farmington, MN 55024 | Male<br>DOB: 02/03/1963 | PATRICK H ELLIOTT<br>*Retained*<br>612-400-7102(W) |

## EVENTS & ORDERS OF THE COURT

DISPOSITIONS

06/22/2011 | Order for protection (Judicial Officer: Wermager, Tim D.)

OTHER EVENTS AND HEARINGS

06/06/2011 | Petition for Order for Protection
*Petitioner's Affidavit and*
06/06/2011 | OFP Initiation Sent to OFP System
06/06/2011 | ExParte Order for Protection (Judicial Officer: MacDonald, Erica H.)
*faxed to DCSO for service*
06/06/2011 | Law Enforcement Information Sheet-Service
06/09/2011 | Affidavit of Service
*by DCSO*
06/13/2011 | Order for Protection Hearing (9:00 AM) (Judicial Officer King, Robert R., Jr.)
Result: Held
06/13/2011 | Order for Continuance (Judicial Officer: King, Robert R., Jr.)
06/13/2011 | Certificate of Representation
06/17/2011 | Order for Continuance (Judicial Officer: King, Robert R., Jr.)
06/17/2011 | Notice of Filing of Order
06/22/2011 | Evidentiary Hearing (9:00 AM) (Judicial Officer Wermager, Tim D.)
*OFP*
*06/16/2011 Reset by Court to 06/17/2011*
*06/17/2011 Reset by Court to 07/12/2011*
*07/12/2011 Reset by Court to 06/22/2011*
Result: Held
06/22/2011 | Order for Protection (Judicial Officer: Wermager, Tim D.)
07/14/2011 | Order for Appointment of Guardian Ad Litem (Judicial Officer: Knutson, David L.)
07/14/2011 | Order-Other (Judicial Officer: Knutson, David L.)
*Appointment of GAL Consent Oath and Order*
07/14/2011 | Notice of Filing of Order
11/08/2011 | Certificate of Representation
11/08/2011 | Notice of Motion and Motion
*to Modify Order for Protection*
11/08/2011 | Affidavit-Other
*of Sandra Grazzini - Rucki*
11/23/2011 | Affidavit-Other
*Responsive Aff of David V Rucki*
11/23/2011 | Affidavit of Mailing
11/28/2011 | Motion Hearing (1:30 PM) (Judicial Officer Knutson, David L.)
*11/28/2011 Reset by Court to 11/28/2011*
Result: Held
11/28/2011 | Amended Order for Protection (Judicial Officer: Knutson, David L.)
12/16/2011 | Notice of Withdrawal of Counsel
12/16/2011 | Affidavit of Service
01/19/2012 | Report of Guardian Ad Litem
01/27/2012 | *CANCELED* Review Hearing (1:30 PM) (Judicial Officer Knutson, David L.)
*Other*
*see dissolution file 19avfa11-1273*
01/27/2012 | Order for Dismissal (Judicial Officer: Knutson, David L.)

Skip to Main Content Logout My Account Search Menu New Civil Search Refine Search Back — Location : All MNCIS Sites - Case Search Help

# REGISTER OF ACTIONS
CASE NO. 19AV-FA-11-1940

In the Matter of SANDRA SUE GRAZZINI-RUCKI, on behalf of minors vs DAVID VICTOR RUCKI

Case Type: Domestic Abuse
Date Filed: 06/24/2011
Location: - Dakota-Apple Valley

## PARTY INFORMATION

| | | | Lead Attorneys |
|---|---|---|---|
| Petitioner | GRAZZINI-RUCKI, SANDRA SUE<br>on behalf of minors<br>13800 Nicollet Blvd<br># 4531<br>Burnsville, MN 55337 | Female<br>DOB: 09/30/1965 | NAOMI SHIRA GARFINKEL<br>*Retained*<br>612-746-5525(W) |
| Respondent | RUCKI, DAVID VICTOR<br>17549 Flagstaff Avenue<br>Farmington, MN 55024 | Male<br>DOB: 02/03/1963 | LISA MARIE ELLIOTT<br>*Retained*<br>612-466-7190(W) |

## EVENTS & ORDERS OF THE COURT

DISPOSITIONS

08/30/2011 Dismissed (Judicial Officer: Bibus, Thomas William)

OTHER EVENTS AND HEARINGS

06/24/2011 Petition for Order for Protection
*Petitioner's Affidavit and*
06/24/2011 OFP Initiation Sent to OFP System
06/24/2011 ExParte Order for Protection (Judicial Officer: Baxter, M. Michael)
*faxed to DCSO for service*
06/24/2011 Law Enforcement Information Sheet-Service
06/29/2011 Affidavit of Service
08/30/2011 Order for Protection Hearing (9:00 AM) (Judicial Officer Bibus, Thomas William)
Result: Held
08/30/2011 Order for Dismissal (Judicial Officer: Bibus, Thomas William)

Skip to Main Content Logout My Account Search Menu New Criminal/Traffic/Petty Search Refine Search Back

Location : All MNCIS Sites - Case Search Images Help

# REGISTER OF ACTIONS
## CASE NO. 19AV-CR-12-1215

State of Minnesota vs DAVID VICTOR RUCKI

§ § § § §

Case Type: Crim/Traf Mandatory
Date Filed: 01/20/2012
Location: - Dakota-Apple Valley

### PARTY INFORMATION

| | | | Lead Attorneys |
|---|---|---|---|
| Defendant | RUCKI, DAVID VICTOR<br>17549 FLAGSTAFF AVE<br>FARMINGTON, MN 55024 | Male<br>DOB: 02/03/1963 | LISA MARIE ELLIOTT<br>*Retained*<br>612-466-7190(W) |
| Jurisdiction | State of Minnesota<br>NONE | | LAKEVILLE CITY<br>ATTORNEY'S OFFICE |

### CHARGE INFORMATION

| Charges: RUCKI, DAVID VICTOR | Statute | Level | Date |
|---|---|---|---|
| 1. Domestic Abuse - Violate Order for Protection-Misdemeanor | 518B.01.14(b) | Misdemeanor | 10/12/2011 |

### EVENTS & ORDERS OF THE COURT

DISPOSITIONS

03/07/2012 Plea (Judicial Officer: Knutson, David L.)
1. Domestic Abuse - Violate Order for Protection-Misdemeanor
Not guilty

05/17/2012 Disposition
1. Domestic Abuse - Violate Order for Protection-Misdemeanor
Acquitted

OTHER EVENTS AND HEARINGS

01/20/2012 Citation
02/13/2012 Arraignment (1:30 PM) (Judicial Officer Knutson, David L.)
Result: Held
02/14/2012 *CANCELED* Arraignment (8:30 AM) (Judicial Officer Wermager, Tim D.)
*Other*
*Per Judge Knutson*
03/07/2012 Pre-trial (1:30 PM) (Judicial Officer Knutson, David L.)
*Before J. Knutson*
Result: Held
03/07/2012 Order-Other (Judicial Officer: Knutson, David L.)
*Schedule for court trial in Hastings 05/07/12 at 9:00 in Hastings.*
03/07/2012 Notice of Evidence and Identification Procedures (Judicial Officer: Knutson, David L.)
05/07/2012 Court Trial (1:30 PM) (Judicial Officer Knutson, David L.)
*to be heard before Judge Knutson*
*05/07/2012 Reset by Court to 05/07/2012*
Result: Held
05/07/2012 Taken Under Advisement (Judicial Officer: Knutson, David L.)
05/17/2012 Findings of Fact, Conclusions of Law and Order (Judicial Officer: Knutson, David L.)
05/17/2012 Notice of Filing of Order
05/17/2012 Other Document
*Court Minutes*
05/21/2012 Correspondence
*Exhibit Letter*

STATE OF MINNESOTA
FIRST JUDICIAL DISTRICT
FAMILY COURT DIVISION

FILE NUMBER: 19AV-FA-11-1760 & 19AV-FA-11-1273

APPOINTMENT OF GUARDIAN AD LITEM
CONSENT, OATH AND ORDER
Dakota County Family Court

ORDER TO
APPOINT
GUARDIAN AD LITEM

In re the Matter of:
Sandra Sue Grazzini-Rucki
And
David Victor Rucki

Dakota County Family Court hereby appoints the Dakota County Guardian ad Litem Program to represent the best interests of Gianna Rucki, DOB: 11/2/99, Gino Rucki, DOB: 1/20/03, Nia Rucki, DOB: 9/25/01, Nico Rucki, DOB: 6/22/96, and Samantha Rucki, DOB: 6/24/98, and advise the Court with respect to permanent parenting time. The individual Guardian ad Litem representing the Program in this assignment is Julie Friedrich, subject to change by the Director of the Dakota County Guardian ad Litem Program as approved by the Court.

Further, it is ordered that any privilege existing by and between the above named child(ren) and any other party which runs in favor of said child(ren) or any issue under the Data Privacy Act relating to disclosure of any information concerning said child(ren) is hereby ordered waived as to the Guardian ad Litem Program, and the Guardian ad Litem shall have free access to all materials, whether they be written or oral.

7/8/11
Dated

[signature]
Judge of District Court

***************

The undersigned represents to the Court that he/she is a responsible citizen who has completed Guardian ad Litem Supreme Court training and hereby consents to act as Guardian ad Litem for the above named juvenile; and affirms that, "I will faithfully and justly perform all the duties of the office and trust which I now assume as Guardian ad Litem of the juvenile named in the aforementioned order in the above entitled proceedings to the best of my ability."

July 11, 2011
Dated

Julie Friedrich
Guardian ad Litem signature

Julie Friedrich
Guardian ad Litem printed name

FILED DAKOTA COUNTY
CAROLYN M. RENN, Court Administrator

JUL 14 2011



# CLINICAL & FORENSIC PSYCHOLOGY, LTD.

*James H. Gilbertson, Ph.D.*
*Licensed Psychologist*
*Licensed Marriage/Family Therapist*

*Assessment, Treatment and Consultation*
Office (612)581-6665
Fax (651)633-9406
Cell (612)581-6665
E-Mail drjhgilbertson@aol.com

February 6, 2013

Ms. Julie Friedrich
Guardian Ad Litem
P.O. Box 95878
Woodbury, MN 55125
VIA U.S. MAIL & EMAIL: julie.friedrich@courts.state.mn.us

Dear Ms. Friedrich:

This communicae follows our telephone conversation on Friday, February 1st, in which I noted for you the impasse I am experiencing working with the Rucki children as their therapist and with the goal of them moving to a position where they can enjoy reasonable access to both parents.

I need not emphasize to you that the children's psychological wellbeing is inextricably tied to a reduction of the Rucki family polarization. Reducing that intrafamilial conflict will enhance each child's emotional wellbeing.

I have met with the Rucki children in various combinations on six different occasions, three each, in the homes of their maternal and paternal aunts; I have met with Mr. David Rucki, Sr., and Ms. Grazzini Rucki in separate, face-to-face interviews in my office, have convened with them on a telephone conference call, have had a conference call with the maternal and paternal aunts, and have received and made various phone calls to the adult parties in question in arranging schedules and responding to questions and future goal setting.

At this time, it is my opinion that we need an assertive stance from the court to order these children attend a face-to-face session with their father. The children are of the belief, and will state quite openly, that no one can force them to see their father if that is their choice.

My every attempt to explore common ground with the children and to work through their emotionality has been met with stubbornness, anger, and accusations that my work, your work, and others who have been involved in this matter, i.e. Children's Supervisory Center and other mediators, are simply an instrument of their father, his money and influence.

There are two prevailing emotional themes that these children speak to: One is fear of being in the presence of their father given what they allege to be being an angry and violent person. A second theme is the anger they have over his alleged mistreatment and a corollary of this - a belief that their father is morally flawed, i.e. womanizer, drinks too much, is hiding money.

It is my opinion that the children's fear issue needs to be addressed directly, and that can only happen when there is exposure to the specifically feared object, situation or person, i.e. father.

In thinking about this matter, I was hopeful the court may take an assertive stance in this matter, as has been the history to date, and actually have the children appear in court and then order them to have a session with their father in an adjoining room, i.e. a jury or conference room, at the courthouse.

The presence of the court, a bailiff nearby, my own presence, and then the meeting with their father, in my opinion, would deal with the fears that they experience, real or imagined.

I would be willing to clear my schedule to be at the court to conduct an extended session with the children and their father. I would plan for a 2 hour session to try to desensitize the face-to-face meeting and to facilitate the interactions between all parties.

Prior to that time, I would work with Mr. Rucki to have him present a certain structure and accounting of his own behavior while the family was intact that would acknowledge the volatile family history and express his empathy for the children's painful memories.

I have spoken with Mr. Rucki and put him on notice that I would require that of him if the court were so willing to order such a session.

As we spoke about this matter, you informed me that there was a court hearing on February 26th at which other matters in the Rucki matter will be venued.

It would be my suggestion that the children be brought in after the adult parties have addressed their concerns.

I understand this may represent a somewhat unorthodox recommendation, but I do not believe that there can be an initial bridging of the gap between the children and their father, at this point in time, unless all are physically present under the authoritative and safe umbrella of the court.

I am forwarding this letter to you in your role as officer of the court and as the children's advocate.

If you believe I should address the court directly in making this recommendation, please so advise.

Sincerely,

(electronically signed)

James H. Gilbertson, Ph.D.
Licensed Psychologist
Licensed Marriage and Family Therapist

JHG/bk14



# CLINICAL & FORENSIC PSYCHOLOGY, LTD.

James H. Gilbertson, Ph.D.
Licensed Psychologist
Licensed Marriage/Family Therapist

Assessment, Treatment and Consultation
Office (612)501-6056
Fax (651)633-9485
Cell (612)501-6056
E-Mail drjhgilbertson@aol.com

February 21, 2013

Ms. Julie Friedrich
Guardian Ad Litem
P.O. Box 95878
Woodbury, MN 55125
VIA U.S. MAIL & EMAIL: julie.friedrich@courts.state.mn.us

Dear Ms. Friedrich:

We are scheduled to meet on 02/26/13 at Dakota County Court in Hastings.

I was contemplating the possible logistics of that particular meeting that would have, as its goal, a supervised visit of the children with their father, Mr. David Rucki.

In my original communicae to you, I had mentioned that this could probably take place after the Rucki hearing in which adult business would be discussed. If that were the court's pleasure, then the children may not need to arrive until approximately 10:00 o'clock or so. I would like your estimation of what would be the best time for the children's arrival to provide a seamless transition from the adult hearing to the children being brought in.

From a logistical standpoint, I thought it might be appropriate for the children to actually come into the courtroom, and if the judge were so willing, to announce that a session would be held and then, at that time, direct us to the appropriate jury room or conference room wherever that might be.

I understand from materials that I have received from Ms. Elliott that the adult Rucki hearing will directly address issues of expanded parenting time and other issues that may be germane to the children.

When I heard that, I wondered whether or not it might be appropriate for the children, at least some of them, perhaps, the three eldest, to actually sit in on the hearing to view the arguments and counter arguments that may have to do with supervised parenting time.

As you know, one of the issues I have been trying to address with these children is to keep them as informed as I am informed about where things are, legally.

I understand that there are certain adult issues that these children do not have to hear, but they constantly want to know what is in their future, why they cannot live with their mother, and when a predictable parenting time arrangement will be available with their mother (curiously, they do not include that same demand for their father).

The children feel out of the loop and, as they view it, some disembodied group of individuals, whether it is the court, you or me, are making decisions in which they believe they need to play a part.

As I have indicated to you, these are very bright and very perceptive children, and they have been so sensitized to the dynamics of their family that anything that they may hear through the grapevine about what has been happening begins to increase their anxiety, apprehension and rumination.

I have been trying to impart to them as much factual knowledge as, indeed, I have.

I could argue that it might be helpful for them to actually sit in on the court process where the discussion does involve them and parenting time, and the expectations the court has in them honoring access to both parents under the direction of a program that I would supervise.

One other point that keeps coming up in working with the Rucki children is that they want to have some say or they want to address the court in this matter.

I am asking you whether it would be presumptuous for the court to hear the children out in a very brief fashion (for instance, I would have the three elder children prepare a less than 1 minute statement that they could present to the court on their feelings about the matter). I am not recommending a separate hearing.

I believe this act would, at least, take away one of their arguments that they have not been heard or have not had an audience.

You might accuse me of thinking out loud in this matter, and that might be quite true. However, I am trying to straddle the direction that the court wants me to pursue and, at the same time, maintain my rapport and trust with the children.

The more I can deliver to them in the spirit of keeping them informed, appreciating their input, but, however, confronting their presumptions, denial and refusal, will help this entire process.

Again, I am forwarding this to you for your consideration. You were kind enough to present my previous submission to the court, and, again, I simply request that if I should address the court directly or the court's paralegal and/or legal assistant in this matter, I would do so.

There are so many players in this family matter that I find myself oftentimes placing, at least, three phone calls at a time just to make sure that I keep all family members in the loop.

Thank you for hearing me out in this matter. If you have any questions, please feel free to contact me.

Sincerely,

(electronically signed)
**DICTATED BUT NOT GRAMMATICALLY PROOFED**

James H. Gilbertson, Ph.D.
Licensed Psychologist
Licensed Marriage and Family Therapist

JHG/bk14



DAVID L. KNUTSON
JUDGE OF DISTRICT COURT

DAKOTA COUNTY JUDICIAL CENTER
1560 HIGHWAY 55
HASTINGS, MINNESOTA 55033

File Copy

CARVER, DAKOTA, GOODHUE, LeSUEUR,
McLEOD, SCOTT AND SIBLEY COUNTIES

COURT REPORTER: 651-438-8087
LAW CLERK: 651-438-8177
FAX: 651-438-8160
david.knutson@courts.state.mn.us

STATE OF MINNESOTA
FIRST JUDICIAL DISTRICT

April 1, 2013

Sandra Grazzini-Rucki
13800 Nicollet Blvd – Box 1531
Burnsville, MN 55337

Re: Grazzini-Rucki v. Rucki, Court File No.: 19AV-FA-11-1273

Dear Ms. Grazzini-Rucki:

I received your submission to the Court entitled "Petition for a Writ of Habeas Corpus" which appears to contain several motions that you wish to have considered at the court hearing scheduled for April 10, 2013. The only issue that will be considered at the April 10, 2013 hearing is whether Respondent David Rucki will be allowed to retain his passport. All parties were previously informed that this hearing would relate only to the limited issue regarding Mr. Rucki's passport.

Further, the Court cannot consider the motions that you refer to in your paperwork because they are premature. The Court currently has under advisement a number of motions relating to the issues you raise in your paperwork, including temporary custody of the children. These issues were submitted to the Court for consideration at the hearing on February 26, 2013. The record closed at the hearing and no additional submissions on the issues taken under advisement by the Court were allowed.

Lastly, the Court notes that several of the issues you raise in your motion are already subject to temporary court orders which remain in full force and effect. The parties need to be following the current court orders in order to move toward a final resolution of the issues you raise in your motion. I recommend that you speak to your attorney regarding any outstanding concerns you may have regarding this case. Thank you.

Sincerely,

David L. Knutson
Judge of District Court

cc: Michelle MacDonald, Esq.
Lisa Elliott, Esq.
John Jerabek, Esq.
Tammy Love
Jim Donehower, Esq.
Daniel Goldberg, Esq.
Dr. James Gilbertson

STATE OF MINNESOTA

COUNTY OF DAKOTA

DISTRICT COURT

FIRST JUDICIAL DISTRICT

In Re the Marriage of:

Sandra Sue Grazzini-Rucki,

Petitioner,

and

David Victor Rucki,

Respondent,

and

County of Dakota,

Intervenor.

Court File No.: 19AV-FA-11-1273

ORDER AND MEMORANDUM

The above-entitled matter came before the Honorable David L. Knutson, Judge of District Court, at the Dakota County Judicial Center in Hastings, Minnesota, on June 12, 2013 on various motions of the parties.

Michelle MacDonald, Esq. appeared representing Petitioner, who also appeared.

Lisa Elliott, Esq. appeared representing Respondent, who also appeared.

John Jerabek, Esq. appeared representing the Guardian ad Litem, Laura Miles, who also appeared.

NOW, THEREFORE, the Court having considered the matter, being fully advised in the premises, and based upon all the files, records and proceedings herein, and based upon the argument of counsel, issues the following:

FILED DAKOTA COUNTY
CAROLYN M. RENN, Court Administrator

JUL 29 2013

ORDER

1. Within 10 days of the date of this Order, Dr. Michelle Millenacker of the Associated Clinic of Psychology shall release a copy of Petitioner's psychological evaluation and any other associated records and reports directly to the parties' attorneys as follows:

Lisa Elliott, Esq.
2409 W. 66th St.
Minneapolis, MN 55423

Michelle MacDonald, Esq.
1069 South Robert Street
West St. Paul, MN 55118

John M. Jerabek, Esq.
510 Marquette Ave. – Suite 200
Minneapolis, MN 55402

2. Within 10 days of the date of this Order, Life Development Resources, P.A. shall release directly to the parties' attorneys (listed above) copies of all records relating to Petitioner's therapy with its office.

3. Within 10 days of the date of this Order, Dr. Karen Irvin of the Minnesota Mediation and Counseling Center shall release directly to the parties' attorneys (listed above) copies of all records relating to Petitioner's therapy with her.

4. The attached memorandum is incorporated herein by reference.

BY THE COURT:

Dated: July 22, 2013

David L. Knutson
Judge of District Court

State Of Minnesota

District Court

| County | |
|---|---|
| SCOTT | |

| | |
|---|---|
| Judicial District: | First |
| Court File Number: | 70-CV-13-15408 |
| Case Type: | Harassment |

*AMENDED*
PLEASE SEE ATTACHED

**Petitioner's Affidavit and Petition for Harassment Restraining Order (Minn. Stat. §609.748)**

| Petitioner | | vs. | Respondent |
|---|---|---|---|
| Name: SANDRA GRAZZINI-RUCKI | | | (Person harassing you or your minor child): |
| Address: 13800 NICOLLET BLVD #1531 | | | Name: DAVID VICTOR RUCKI |
| BURNSVILLE, MN 55337 | | | Address: 17549 Plassdale Ave Farmington, MN |
| Date of Birth: 9-30-65 | | | 19675 Iceland Place |
| On behalf of: (names of minor children who are victims of harassment and their dates of birth) | | | LAKEVILLE MN 55044 |
| Name: | DOB: | | |
| Name: | DOB: | | Date of Birth: 2-3-63 (If known, or approximate age) |
| Name: | DOB: | | |

FILED
AUG 05 2013
SCOTT COUNTY COURTS

STATE OF MINNESOTA )
COUNTY OF Scott ) ss
(COUNTY WHERE AFFIDAVIT IS SIGNED)

I understand that I am under oath/affirmation and I must tell the truth. I state that:

1. I am the Petitioner in this case. The victim of the harassment is ☒ me ☐ a minor child for whom I am the parent, legal guardian or stepparent. (If you are the guardian, attach a copy of the order appointing you.) The name of each victim, other than me, is: ______

How does each victim know the Respondent and what is their relationship? Ex-Husband

If you are filing on behalf of another person, what is your relationship to each victim? ___________

2. a) How many restraining orders have been in effect, ordering Respondent to stay away from the victims you included at #1 above? ☐ none ☐ one ☒ two or more. For each restraining order provide:

| Court File Number, if known | County and State where the court is located |
|---|---|
| | |
| | |
| | |

b) Does Respondent have a current Harassment Restraining Order or Order for Protection against you?
☐ Yes, Case File Number (if known) ___________ ☒ No, I am not aware of any.

3. The following court cases involve me and the Respondent in issues of child custody or parenting time:

| Court File Number | County and State where the court is located |
|---|---|
| | |
| | |

4. Respondent has harassed the victim(s) as follows:
   - *Check all boxes that apply and give the date and details of each incident.*
   - *To get a Restraining order, you must describe actions that meet the legal definition of harassment in Minnesota. See the Instructions for the definition of harassment.*
   - *One incident of physical or sexual assault can meet the definition of harassment. For any other act, there must be more than one incident.*
   - *If you need more space, attach a full sheet of paper and continue your description there. Do not write on the back.*

☐ Respondent physically or sexually assaulted the victim as follows: ___________

☒ Respondent has followed, pursued or stalked the victim as follows: ___________
Pictures are in first complaint

☒ Respondent made uninvited visits to the victim as follows: ______________________

______________________________________________________________________________

______________________________________________________________________________

☒ Respondent made harassing phone calls to the victim as follows: ______________________

______________________________________________________________________________

______________________________________________________________________________

☒ Respondent made threats to the victim as follows: ______________________

______________________________________________________________________________

______________________________________________________________________________

☒ Respondent frightened the victim with threatening behavior as follows: ______________________

______________________________________________________________________________

______________________________________________________________________________

☒ Respondent broke into and entered the victim's residence as follows: ______________________

______________________________________________________________________________

______________________________________________________________________________

☒ Respondent damaged the victim's property as follows: ______________________

______________________________________________________________________________

______________________________________________________________________________

☒ Respondent stole property from the victim as follows: ______________________

______________________________________________________________________________

______________________________________________________________________________

☒ Respondent took pictures of the victim without permission as follows: ______________________

______________________________________________________________________________

______________________________________________________________________________

☐ More than once, Respondent has done acts that meet the legal definition of "targeted residential picketing" by: ______

☐ I told Respondent not to come to certain public events that I or the children attend because: ______

After that, Respondent attended public events I/we attended: (List dates, places and name of events) PLESE SEE Attached

These acts by Respondent show a pattern of attending public events while knowing that attending is harassing to me/children.

☐ Other: ______

5. Describe the effect the harassment has upon the victim's safety, security or privacy:
SEE Attached

6. Do you believe the harassment will continue? Why?
SEE Attached
I'M SCARED FOR MY FRIENDS AND MY SAFTEY.

7. I ask the Court to issue a Restraining Order as follows: *Check all boxes (a through e) that apply.*

☒ a. Respondent shall not harass ☒ me ☐ minor child (ren) for whom I am the parent, legal guardian, or stepparent. List the full names of the minor children included in this Petition: ______

☒ b. Respondent shall have no contact with ☒ me ☐ the minor child(ren) listed above.

☒ c. Respondent shall stay away from where I/we live (address) 500 FT. FROM FRIENDS HOMES I VISIT; PLACES I GO. AND MUST LEAVE IMMEDIATELY OR THE OFFICES MAY ARREST

☐ d. Respondent shall stay away from my/the victim's job site located at ______

☐ e. Other: ______

8. Court Hearing

*Petitioner: Read these Notices about a Hearing*

- *You have a right to request a court hearing.*
- *If the Judge dismisses your case because it has no merit, no hearing will be held.*
- *The Judge can issue a Restraining Order without a court hearing if the Judge finds there is immediate and present danger of harassment.*
- *If the Judge issues a Restraining Order without a hearing, the Respondent can request a hearing within 45 days of the date the Restraining Order is issued. If Respondent requests a hearing, the court will notify you by mail at least five days before the hearing date.*
- *If there is a hearing, you must attend the hearing and prove that the statements in your Petition & Affidavit are true, and that Respondent's actions are harassment, as defined by Minnesota law.*

*Choose a. or b.*

☐ a. I am not requesting a court hearing at this time.
But if the court denies my request for a restraining order because the court finds there is no immediate and present danger of harassment, then (check one) ☐ I want ☐ I don't want a court hearing.

OR

☐ b. I am requesting a court hearing.

9. I request a Restraining Order for a length of:

☐ 2 years

☐ Until the following date:____________________, which is less than 2 years from today.

☑ Up to 50 years because:

☑ I have two or more prior restraining orders against Respondent (listed at #2 above.)

☑ Respondent has violated a prior or existing restraining order between us on two or more occasions. 500 FT AWAY

I understand the court will likely schedule a court hearing for any request over 2 years.

Dated: 8-5-13

[signature]
Signature (sign only in front of notary public or court administrator.)

Name SANDRA GRAZZINI - RUCKI

MAILING Address 13800 NICOLLET BLVD #153

City/State/Zip BURNSVILLE MN 55337

Telephone ( ) N/A

*Notice: If your address or telephone changes, you must give Court Administration your new information right away, in writing.*

Subscribed and sworn to before me

Date: 8-5-13

Audrey K Brown
Notary Public / Deputy Court Administrator

STATE OF MINNESOTA
SCOTT COUNTY

DISTRICT COURT
FIRST JUDICAL COURT
CASE TYPE;
HARASSMENT

PETITIONER
SANDRA GRAZZINI-RUCKI

VS

RESPONDNT
DAVID VICTOR RUCKI

To the Clerk of courts

Attn Judge Michael Fahey and Judge Ann M Offerman

Enclosed are documents from Scott County a well as some history from Dakota County regarding my request for a Immediate issue of an HRO. Due to the fact there have been 2 incidents in Scott County within 1 week and his past history of violence. I am scared for my friends and myself that he may do something prior to the hearing. I am hoping that a hearing may not be necessary and the HRO may be issued.

Thank you
Sandra Grazzini-Rucki

STATE OF MINNESOTA DISTRICT COURT

COUNTY OF SCOTT FIRST JUDICIAL DISTRICT

---

Sandra Sue Grazzini-Rucki,

Petitioner,

vs. 70-CV-13-15408

David Victor Rucki, Admit/Deny Hearing

Respondent.

---

The above-entitled matter came duly on for hearing before the Honorable Ann M. Offermann, one of the Judges of the above-named court on the 8th day of August, 2013, at the Scott County Courthouse, Shakopee, Minnesota.

* * *

APPEARANCES

Sandra Sue Grazzini-Rucki, the Petitioner, appeared pro se.

Lisa Elliott, appeared with and on behalf of the Respondent, David Rucki.

ALSO PRESENT

Sandra Grazzin-Rucki, the Petitioner.

David Victor Rucki, the Respondent.

(Whereupon, the following took place on August 8, 2013.)

THE COURT: Sandra Sue Grazzini-Rucki versus David Victor Rucki, 70-CV-13-15408. If the parties would please note their appearances.

MS. GRAZZINI-RUCKI: Sandra Grazzini-Rucki.

MS. ELLIOTT: Lisa Elliott, E-L-L-I-O-T-T, on behalf of the respondent, David Victor Rucki, who's also present.

THE COURT: This is on for an admit/deny hearing not an evidentiary hearing as I believe the parties are aware. And the ex parte request for relief was denied. Has there been any -- has there been any discussion of resolution in this matter?

MS. ELLIOTT: No, Your Honor, there won't be. And we would ask that venue be changed. There is a current dissolution pending in Dakota County and there's an order from that county from the judge that's assigned to the case that all matters involving these two parties need to be assigned to him.

THE COURT: Do I have a copy of that

order?

MS. GRAZZINI-RUCKI: Your Honor, I wish that you please deny that. This happened and took place in Scott County and per the statute it can be heard in the county that it is heard. Judge Knutson does not have the authority to take criminal harassment orders throughout the whole state, so I'm requesting that you please deny Ms. Elliott's motion.

THE COURT: Well, the order is currently not in place so I will take a look at the legal authority and the order by Judge Knutson ordering that everything be heard by him.

MS. GRAZZINI-RUCKI: Does that mean any action he takes in any county of the State of Minnesota goes back to Dakota?

THE COURT: Okay, ma'am. I said I'm going to consider the arguments of the parties and I understand that you wish that any evidentiary hearing in this matter be heard in Scott County. The other side is telling me that there's legal authority and support for having it heard in Dakota County. I need to take a look at your respective arguments and make a decision. There's currently not an order in

effect, it was not granted, so the next step would be for this to go to an evidentiary hearing. Do both parties agree with that? Counsel, do you believe that's the next step?

MS. ELLIOTT: It would be the next step. I would ask that it just be denied outright. There's no basis for even an evidentiary hearing. But if the court is considering setting an evidentiary hearing we would ask again that it be set in Dakota County where both parties reside, where their divorce is pending, and where there is a current order from Judge Knutson.

MS. GRAZZINI-RUCKI: I do not reside in Dakota County, Your Honor. And there is not an order regarding what she's claiming. When other things happen regarding us, it's only the divorce. Any other action that Mr. Rucki takes against me everything doesn't just go in front of him.

THE COURT: All right. I understand both parties' arguments, counsel, do you have a copy of the order for the court?

MS. ELLIOTT: I do, Your Honor.

THE COURT: And has Ms. Rucki had an

opportunity to look at it?

MS. GRAZZINI-RUCKI: Right now she's just giving it to me.

THE COURT: Why don't you take a moment then and look it over to see if it appears to be an accurate copy of the order that was issued.

MS. GRAZZINI-RUCKI: There's over 3,000 orders that he has proposed and he has signed. So I'm assume that this is correct.

MS. ELLIOTT: And for the court's information we do have a trial set in Dakota County on September 11th, for judicial economy it might make sense to combine this with that trial.

MS. GRAZZINI-RUCKI: Your Honor, that's regarding custody.

THE COURT: Ma'am, only one person -- please don't roll your eyes at me.

MS. GRAZZINI-RUCKI: Sorry.

THE COURT: Only one person can talk at a time so that the court reporter can take it down, and I believe I understand the arguments that the parties are making. I'll summarize one more time. You believe this matter, ma'am,

should stay in Scott County and an evidentiary hearing should be heard on your allegations in Scott County. I hear counsel saying that based upon an order that Judge Knutson issued, do you have any other legal support or authority for the venue being in Dakota County other than his order?

MS. ELLIOTT: Yes, Your Honor, the fact that the parties have current litigation pending in Dakota County. Both parties do reside, at least the last address that we have for Ms. Grazzini-Rucki is in Burnsville. Reside in Dakota County. That I believe most or the two witnesses would be from Dakota County and that we already have a trial scheduled. And that I believe that this issue can simply be added on to that trial. And if the court could maybe check with Judge Knutson's clerk and see if we could add this issue onto it, I believe he would accept it.

THE COURT: Your argument is then under the court's authority for judicial economy purposes, are you citing any other rule or case?

MS. ELLIOTT: Or non convenience. The

parties reside and all of the evidence, other evidence, is in Dakota County.

THE COURT: All right.

MS. ELLIOTT: There's a lot of evidence in this case and it's all in Dakota County. The file, if you'd seen the MNCIS ledger you'll see, and if this goes to an evidentiary hearing a lot of that evidence will be coming in.

THE COURT: All right. I believe I understand the arguments of both parties, I'll take it under advisement and issue a ruling. Ma'am, what is your correct address then?

MS. GRAZZINI-RUCKI: That is simply a mailing address. I do not reside in Dakota County. Ms. Elliott is aware of that. I do not have a residence. But as for the hearing that's coming up, it is a custody and custody alone hearing.

THE COURT: Okay. Ma'am, the question I asked you is where do you reside?

MS. GRAZZINI-RUCKI: I do not have a home. I am homeless per court order by Judge Knutson.

THE COURT: How is it that you get your legal documents from the address that Court Administration has then?

MS. GRAZZINI-RUCKI: I am court ordered to have a mailing address, but I do not have a residence. So I do not have a residence of living in Dakota County.

THE COURT: Where did you sleep last night?

MS. GRAZZINI-RUCKI: Scott County.

THE COURT: At what location?

MS. GRAZZINI-RUCKI: At a friend's house. I don't mind I'd rather not say due to my protection, that's why I'm kind of in this situation.

THE COURT: All right. I'll take the matter under advisement and I'll issue an order.

MS. GRAZZINI-RUCKI: Thank you.

(Whereupon, the proceedings were concluded.)

CERTIFICATE

I, Mary Jo LeGrand, one of the official court reporters for the Fourth Judicial District of the State of Minnesota, do hereby certify that the foregoing 8 pages of typewritten material constitute a full, true and correct transcript of my original stenographic notes, as they purport to contain, of the proceedings reported by me at the time and place hereinbefore mentioned.

DATED: 8/13/13

______________________________
Mary Jo LeGrand, RPR

State of Minnesota

County
SCOTT

District Court

| | |
|---|---|
| Judicial District: | FIRST |
| Court File Number: | 70-CV-13-15408 |
| Case Type: | Harassment |

Sandra Sue Grazzini-Rucki
Petitioner(s)

vs.

David Victor Rucki
Respondent(s)

## Order for Harassment Hearing
(Minn. Stat. § 609.748)

FILED A
AUG 08 2013
SCOTT COUNTY COURTS

To the Petitioner/Respondent named above: This matter was schedule for a hearing August 8, 2013 to address Petitioner's Petition and Amended Petition. Respondent requested the hearing be transferred to Dakota County to be heard before Judge David L. Knutson pursuant to an Order signed By Judge Knutson and filed on August 17, 2013.

It is ordered that Respondents request is Denied.

It is ordered that a hearing will be held at: Scott County Government Center
Address

on August 19, 2013 at 9:00 a.m.
Date Time

If Petitioner fails to appear at the hearing, the case may be dismissed. If Respondent fails to appear at the hearing, the court may grant whatever the Petitioner has requested.

Date: August 8, 2013

[signature]
Judge of District Court
Ann Offermann

Distribution

_____ Certified copy or original - Return to Court Administrator with Affidavit of Personal Service attached

_____ Copy for Petitioner(s)
_____ Copy for file until original returned
_____ Copy for Sheriff
_____ Dissolution File
_____ Copy for Respondent(s)
_____ Copy for local police department
_____ Other: __________

STATE OF MINNESOTA | DISTRICT COURT
COUNTY OF DAKOTA | FIRST JUDICIAL DISTRICT

In Re the Marriage of:

Sandra Sue Grazzini-Rucki,

Petitioner,

and

David Victor Rucki,

Respondent,

and

County of Dakota,

Intervenor.

Court File No.: 19AV-FA-11-1273

**ORDER AND MEMORANDUM**

The above-entitled matter came before the Honorable David L. Knutson, Judge of District Court, at the Dakota County Judicial Center in Hastings, Minnesota, on June 12, 2013 on various motions of the parties.

Michelle MacDonald, Esq. appeared representing Petitioner, who also appeared.

Lisa Elliott, Esq. appeared representing Respondent, who also appeared.

John Jerabek, Esq. appeared representing the Guardian ad Litem, Laura Miles, who also appeared.

NOW, THEREFORE, the Court having considered the matter, being fully advised in the premises, and based upon all the files, records and proceedings herein, and based upon the argument of the parties, issues the following:

FILED DAKOTA COUNTY
CAROLYN M. RENN, Court Administrator

AUG 26 2013

ORDER

Respondent David Rucki's Motion dated May 29, 2013 and Amended Motion dated June 4, 2013 filed by Lisa Elliott, Esq.

1. Respondent's Motion to hold Petitioner in contempt of this Court's September 7, 2012 Order by failing to refrain from having contact with the minor children is denied.
2. Respondent's Motion to hold Petitioner in contempt of this Court's April 19, 2013 Order by having unsupervised contact with the minor children is denied.
3. If either party has any information about the whereabouts of the parties' two oldest girls, Samantha and Gianna, they shall immediately disclose this information to the other party and to the appropriate authorities.
4. The issue of Petitioner's failure to cooperate with Dr. Beth Harrington is addressed by a separate Court Order dated June 18, 2013. Petitioner shall be responsible for any costs that Respondent incurred related to Petitioner's failure to cooperate with Dr. Beth Harrington.
5. The issue of Petitioner's failure to cooperate with court-ordered therapy and to produce her records from Dr. Michelle Millenacker, Life Development Resources, and Dr. Karen Irvin is addressed by a separate Court Order dated July 23, 2013. Petitioner shall be responsible for any costs that Respondent incurred related to Petitioner's refusal to cooperate with therapy and to produce these records.
6. Respondent's Motion to hold Petitioner in contempt of this Court's April 19, 2013 Order by failing to disclose her physical residence and phone number is granted.
    a. Petitioner has failed to comply with this Court's April 19, 2013 Order as evidenced by Lisa Elliott's Affidavit dated May 29, 2013.

    b. Petitioner shall be sentenced to the Dakota County Jail for a period not to exceed 10 days, stayed for a period of 2 years from the date of this order on the following conditions:

i. Petitioner shall immediately disclose to Respondent her physical residence and phone number.

If the jail sentence is imposed, Petitioner has the ability to be released if she meets the conditions of this contempt order.

c. The Court finds the conditions of the stay of Petitioner's jail sentence are appropriate for Petitioner because Petitioner has the ability at this time to meet the conditions of the stay.

d. The Court finds that conditional confinement of Petitioner is reasonably likely to produce compliance with the Order.

7. Respondent's Motion to hold Petitioner in contempt of this Court's Order dated November 22, 2011 by canceling the minor children's medical insurance coverage through her employer is granted.

a. Petitioner has failed to comply with this Court's November 22, 2011 Order as evidenced by Tammy Love's Affidavit dated May 29, 2013 and Lisa Elliott's Affidavit dated May 29, 2013.

b. Petitioner shall be sentenced to the Dakota County Jail for a period not to exceed 10 days, stayed for a period of 2 years from the date of this order on the following conditions:

i. Petitioner shall immediately re-enroll the five minor children under her medical insurance plan provided by her employer, U.S. Airways.

Petitioner shall provide verification of the reinstatement of medical insurance by September 11, 2013.

If the jail sentence is imposed, Petitioner has the ability to be released if she meets the conditions of this contempt order.

c. The Court finds the conditions of the stay of Petitioner's jail sentence are appropriate for Petitioner because Petitioner has the ability at this time to meet the conditions of the stay.

d. The Court finds that conditional confinement of Petitioner is reasonably likely to produce compliance with the Order.

8. Respondent is granted a credit toward his child support arrears in the amount of $6,165.00, which represents one-half the value of the undisclosed asset relating to Petitioner's 2003 Cadillac Escalade.

9. Petitioner shall immediately execute an authorization releasing her 2011 and 2012 tax records.

10. Respondent's request for temporary sole physical and sole legal custody of the parties' children is denied. The parties shall continue to follow the recommendations of Dr. Gilbertson and the Guardian ad Litem with respect to temporary custody, therapy and parenting time.

11. Respondent's motion to dismiss Petitioner's separate Complaint captioned "Sandra Sue Grazzini-Rucki v. David Victor Rucki, Lisa M. Elliott, Julie Friedrich, Dr. James Gilbertson and Dr. Paul Reitman" is denied. Any motions relating to a separate action should be considered under the court file number of that separate action.

12. Respondent's request for attorney's fees is reserved for consideration at the final trial in this matter on September 11, 2013.

Petitioner Sandra Grazzini-Rucki's Motion dated May 31, 2013 filed by Michelle MacDonald, Esq.

13. Petitioner's motion for a stay of the proceedings is denied.

Petitioner Sandra Grazzini-Rucki's Notice to Remove dated June 10, 2013 filed *Pro Se.*

14. Petitioner's motion to remove Judge David L. Knutson as the Judge of the proceeding entitled "Sandra Sue Grazzini-Rucki v. David Victor Rucki, Lisa M. Elliott, Julie Friedrich, Dr. James Gilbertson and Dr. Paul Reitman" is denied. Any motions relating to a separate action should be considered under the court file number of that separate action.

The Guardian ad Litem's Motion dated June 10, 2013 filed by John M. Jerabek, Esq.

15. The Guardian ad Litem's motion to dismiss Petitioner's separate Complaint is denied. Any motions relating to a separate action should be considered under the court file number of that separate action.

16. All other requests for relief not specifically addressed herein are denied.

17. The attached memorandum is incorporated herein by reference.

BY THE COURT:

Dated: August 23, 2013

David L. Knutson
Judge of District Court

STATE OF MINNESOTA | DISTRICT COURT
COUNTY OF DAKOTA | FIRST JUDICIAL DISTRICT

In Re the Marriage of:

Sandra Sue Grazzini-Rucki,

Petitioner,

and

David Victor Rucki,

Respondent,

and

County of Dakota,

Intervenor.

Court File No.: 19AV-FA-11-1273

ORDER AND MEMORANDUM

The above-entitled matter came before the Honorable David L. Knutson, Judge of District Court, at the Dakota County Judicial Center in Hastings, Minnesota, on September 6, 2013 on several non-party witnesses' motions to quash subpoenas served upon them by Petitioner and on Respondent's Motion in Limine.

Michelle MacDonald, Esq. appeared representing Petitioner, who was not present.

Lisa Elliott, Esq. appeared representing Respondent, who was not present.

Linda Olup, Esq., Petitioner's former attorney and a non-party witness, appeared on her motion to quash Petitioner's subpoena.

Gary K. Luloff, Esq. appeared representing Elizabeth Henry, Esq., Petitioner's former attorney and a non-party witness, on Ms. Henry's motion to quash Petitioner's subpoena.

FILED DAKOTA COUNTY
CAROLYN M. RENN, Court Administrator

SEP 09 2013

Jennifer Evans, Esq., Petitioner's former attorney and a non-party witness, appeared on her motion to quash Petitioner's subpoena.

Laura Miles, Guardian ad Litem, was also present in the courtroom.

The proceedings were scheduled for 8:30 a.m. All attorneys were present in the courtroom at 8:30 a.m. save and except Ms. MacDonald. The Court delayed beginning the proceedings until 8:45 a.m. Ms. MacDonald arrived in court at 8:50 a.m.

At the hearing, the Court ruled from the bench that Ms. Elliott's Motion in Limine would be heard prior to the commencement of trial on September 11, 2013 to allow Petitioner sufficient time to respond. The Court proceeded to hear arguments on the motions to quash brought by the three non-party witnesses due to the need for a timely decision to inform all parties prior to the trial scheduled to begin the following week. The Court asked the attorneys to submit proposed orders before the end of the day on Friday, September 6, 2013, for the Court's consideration.

NOW, THEREFORE, the Court having considered the matter, being fully advised in the premises, and based upon all the files, records and proceedings herein, and based upon the argument of counsel, issues the following:

**ORDER**

1. The attorney for Petitioner, Michelle MacDonald, Esq., has failed to meet the Rule 45 burden to show why the named attorneys should be subjected to testify to lay foundation for their bills for service, in the event the Court deems the issue of attorney fees is a relevant issue for trial.

2. The motion of non-party witness Linda Olup, Esq. to quash the subpoena served on her on August 30, 2013 is granted.

3. The motion of non-party witness Elizabeth Henry, Esq. to quash the subpoena served on her on September 3, 2013 is granted.

4. The motion of non-party witness Jennifer Evans, Esq. to quash the subpoena served on her on September 3, 2013 is granted.

5. The subpoenaed non-party witness attorneys are entitled to compensation for the time they spent and the expenses they incurred in bringing this motion. These expenses shall be assessed as sanctions against Michelle MacDonald, Esq. and the MacDonald Law Firm, LLC, which shall be payable directly by Michelle MacDonald, Esq. and the MacDonald Law Firm, LLC to the subpoenaed non-party witness attorneys.

6. Within 10 days of the date of this Order, the subpoenaed non-party witness attorneys shall submit affidavits detailing the time they spent and the expenses they incurred related to this motion and their respective hourly rates.

7. The attached memorandum is incorporated herein by reference.

BY THE COURT:

Dated: September 9, 2013

David L. Knutson
Judge of District Court

FILE COPY

DAVID L. KNUTSON
JUDGE OF DISTRICT COURT

DAKOTA COUNTY JUDICIAL CENTER
1560 HIGHWAY 55
HASTINGS, MINNESOTA 55033

STATE OF MINNESOTA
FIRST JUDICIAL DISTRICT

CARVER, DAKOTA, GOODHUE, LeSUEUR,
McLEOD, SCOTT AND SIBLEY COUNTIES

COURT REPORTER: 651-438-8087
LAW CLERK: 651-438-8177
FAX: 651-438-8160
david.knutson@courts.state.mn.us

July 26, 2013

Michelle MacDonald
Attorney at Law
1069 S. Robert St.
West St. Paul, MN 55118

Lisa M. Elliott
Attorney at Law
2409 W. 66th St.
Minneapolis, MN 55423

James Donehower
Assistant Dakota County Attorney
1 Mendota Road W.
Suite 220
West St. Paul, MN 55118

John Jerabek
Attorney at Law
510 Marquette Ave.
Suite 200
Minneapolis, MN 55402

Re: Grazzini-Rucki v. Rucki; File Number 19AV-FA-11-1273

Dear Counsel:

Enclosed for your information is a copy of a document that was served upon me at my home by a process server working for the MacDonald Law Office. I have filed it in the court file. It is ex parte communication in this file and a violation of Court Rules. Obviously, serving me personally at home with this nonsensical document has no purpose other than to attempt to intimidate me. I expect that this conduct will stop so we may have a fair trial to resolve the remaining issues in September.

Very truly yours,

David L. Knutson
Judge of District Court

Enclosure

# Form COL Violation Warning

## Denial of Rights Under Color of Law

Violation Warning—18 U.S.C. §242; 18 U.S.C. §245; 42 U.S.C. §1983

Sandra Grazzini-Rucki Individually and on behalf of her children, Nico, Samantha, Glenna, Nia, and Gino
13800 Nicollett Blvd #531 Burnsville, MN 55337
Name and address of Citizen

David L. Knutson
Appointed Judicial Officer

16587 Iredale Court
Lakeville, MN 55044

Name and address of Notice Recipient & Title (Notice/Appointed Representative)

**Citizen's Statement:**

*Court proceedings in Dakota County, State of Minnesota, court file no. 19-AV-FA-11-1273, including that on or about September 7, 2012, I was ordered to leave my home, property and children and was restrained from all contact with my children, including their school and church, with the threat of incarceration.*

I certify that the forgoing information stated here is true and correct.

Sandra Grazzini-Rucki — Citizen's signature

7-23-13 — Date

## Legal Notice and Warning

**Federal law provides that it is a crime to violate Constitutional Rights of a citizen under the Color of Law. You can be arrested for this crime and you can also be held personally liable for civil damages.**

Attempting to coerce or deceive a citizen to surrender his **Constitutional Rights** is a **Federal Crime.**

**18 U.S.C. §242** provides that Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than

ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

**18 U.S.C. §245** provided that Whoever, whether or not acting under color of law, intimidates or interferes with any person from participating in or enjoying any benefit, service, privilege, program, facility, or activity provided or administered by the United States; [or] applying for or enjoying employment, or any perquisite thereof, by any agency of the United States; shall be fined under this title, or imprisoned not more than one year, or both, and if death results or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be subject to imprisonment for any term of years or for life or may be sentenced to death.

**42 U.S.C. §1983** provides every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**Warning**, you may be in violation of Federal Law and persisting with your demand may lead to your arrest and/or civil damages. Also, understand that the law provides you can be held personally responsible and liable, as well as your company or agency.

**You are advised** to cease and desist with your demand and to seek *personal* legal counsel if you do not understand the law.

**Notice of Personal Service:**

I, [signature] certify that I delivered this notice to above named recipient at 16587 [illegible] St. {ADDRESS} on 7/23/13 {DATE}
Lakeville, MN 55044

# Endangered Runaway

## GIANNA RUCKI

**DOB:** Nov 1, 1999
**Age Now:** 14
**Missing:** Apr 19, 2013
**Missing From:**
LAKEVILLE
MN
United States
**Sex:** Female
**Race:** White
**Hair:** Brown
**Eyes:** Brown
**Height:** 5'8" (173cm)
**Weight:** 145lbs (66kg)

## SAMANTHA RUCKI

**DOB:** Jun 24, 1998
**Age Now:** 15
**Missing:** Apr 19, 2013
**Missing From:**
LAKEVILLE
MN
United States
**Sex:** Female
**Race:** White
**Hair:** Brown
**Eyes:** Brown
**Height:** 5'6" (168cm)
**Weight:** 130lbs (59kg)

Gianna and Samantha were last seen on April 19, 2013.

ANYONE HAVING INFORMATION SHOULD CONTACT
National Center for Missing & Exploited Children
1-800-843-5678 (1-800-THE-LOST)

Lakeville Police Department (Minnesota) 1-952-322-2323

# STATE OF MINNESOTA
# IN MINNESOTA COURT OF APPEALS
## Case No. A13-0590

In Re the Matter of:

Robert J. Smith,

Petitioner,

and

Angela Opstad,

Respondent.

**AFFIDAVIT OF ATTORNEY FOR APPELLANT IN SUPPORT OF MOTION FOR LEAVE TO FILE INFORMAL BRIEF, AND EXTENSION OF TIME TO FILE BRIEF**

STATE OF MINNESOTA )
)ss
COUNTY OF DAKOTA )

Michelle L. MacDonald, Esq., MacDonald Law Firm, LLC, being first duly sworn, states that:

1. Our firm represents the Appellant, Angela Opstad in the above proceedings. I submit this Affidavit in support of the attached *Motion for Leave to File Informal Brief, and for Extension of Time to File Brief.*
2. The Appellant's brief is currently due on Thursday, September 19, 2013.
3. On September 3, 2013 the Court of Appeals granted an extension to file the brief until September 19, 2013, due to my status, case load and the contested custody trial in re: the marriage of: David Rucki v. Sandra Grazzini-Rucki Rucki, Dakota County Court file no. 19-AV-FA-11-1273, scheduled for September 11 2013 (see Affidavit of attorney) That trial was scheduled on MBNSBS for one day only, September 11, 2013.

4. This custody trial was ordered, even though David and Sandra Ruckl were already divorced, May 2011, and Sandra Grazzini-Ruckl had been awarded sole legal and sole physical custody of her 5 children, with parenting time in their father.

5. Upon request for writ of mandamus, this Appellate court ruled the order "temporary" and not appealable. This court's denial of the writ of mandamus was again appealed to the Supreme Court of Minnesota, and the plan is to petition to the United States Supreme Court, Washington, DC. In short, this Court determined that a post-decree custody order, where Ms. Grazzini-Ruckl was ordered in one day (September 7, 2012) to abandon her home, and her 5 children, and have no contact or be incarcerated was "temporary" ,and not appealable, so the post-decree trial process was to proceed (*See* In re: *Sandra Sue Grazzini-Ruckl Petitioner, David L. Knutson, Judge of the Dakota County District Court, Respondent,* Appellate Court file no. A13-0859)

6. On the day of the trial, September 11, 2013, I filed a federal court class action lawsuit for civil rights violations, *Sandra Grazzini-Ruckl, individually on behalf of Nico, Samantha, Gianna, Nia, Gino , on behalf of themselves and all others similarly situated v. David L. Knutson, an individual, John and Mary Does 1-20* (United States District Court for the District of Minnesota, Civil Action No. 0-13-CV-02477.

7. Despite my filing of the federal action, and notification to the Judge, he proceeded with trial or would hold me in default, stating he could be neutral and would not remove himself. The trial developed into an ordeal that has continued through this very moment, including a first day of trial (September 11) when the judicial officer should have removed himself, as requested; a second day of trial (September 12), when Mensis had it canceled.

8. Further, when I was provided with a break by Judge Knutson the morning of September 12, to go find a 2011 court calendar, he left the bench, and two or three deputies came at me, and detained me during the break and put me in a cell. I returned to the courtroom in handcuffs and a wheel chair, with no jewelry, no eye glasses, stripped of belongings. Opposing attorneys, et al, said or did or said nothing, as a deputy wheeled me into the court room in this debilitated state.

9. Judge Knutson came back on the bench, and stated something to the effect of "*something must have happened during the break*", and noted that my client, Sandra Grazzini-Rucki was not present, , along with her supporters, and that all of my file boxes, etc, were gone. Judge Knutson stated that I could call my office to have them returned or be in default. I advised that the deputy had my phone as well.

10. Judge Knutson said something like, do you want to default and I said no, and then he said it's about the kids (two of the five children have been missing since April, 2013 and are on the national missing children list), and he would proceed in any event.

11. Judge Knutson proceeded with opposing attorney witnesses, including two guardians, the father (who said he was the father, and said nothing derogatory about the mother), and other witnesses, over my objection.

12. At the close of the evidence, Judge Knutson asked the attorney for the father (who also does not have custody), and the attorney for the guardian, if they "rested" their case. Both said "yes". Then he looked at me and stated he would take the matter "under advisement." I knew that I had a rebuttal, and he did not ask if I rested, which I did not.

13. The Judge left the bench at approximately 2:20. During this time my client, and no one that was supporting her (except me) that were there before the break at 10:15 or soto get the 2011 calendar, were not in the courtroom.

14. The sheriff wheeled me to the back jail, and then adjacent jail. Until the next day, September 13, 2013, approximately 5:00 pm, where I underwent what can only be described as a process of torture at the various jails and cells. I had never received a citation, I never was booked, and never was arrested (ie Mirada, etc.).

15. The next afternoon, I was wheeled into a different courtroom before Judge Wermager, who told me I did not have to be booked, and that I was released. Even after I had a release order in my hands, they put me in solitary confinement again, purportedly for 30 more days, until and unless a took a few moments to be "booked".

16. I was then released on the *same* release order I had from Judge Wermager, in the jail cell, and on Monday, September 16, another Judge told me to go to the Federal Bureau of Investigation, which I did that day, with my husband, Thomas. Federal supoenas relating to the federal court class action civil rights case were served on Monday, September 16, and Tuesday, September 17, and I have been working on this since my release, not to mention in a traumatic state.

17. While I was jailed, the opposing attorney Elliott, filed on MENSB more motions and paperwork to Judge Knutson that oppressed my client, which I have not seen to date. Then she refused to bring the motion to a retraining order court hearing in Scott County on Monday, September 16, 2013, involving my client. That restraining order was pending for 5 weeks relating to Ms. Grazzini, which I argued on September 16.

18. The morning of September 12, when I was wheeled with handcuffs into another courtroom, I told Judge Wermager a piece of my overnight ordeal. He released me, told me I did not have to be booked

19. This ordeal, has all been disturbing and confusing to me, and very disruptive to my personal and professional life, and law practice. As I advised the court, we are a small firm, and Athena Hollins is on maternity leave until September 26. As such, I believe we will require approximately until Monday, October 21, 2013.

20. My client, Angela Opstad, has been very understanding and is supportive of an extension for her case. For these reasons, I am in need of an extension to complete the brief for the Court's consideration.

21. I respectfully request that this court grant an extension to Monday, October 21, 2013, that represents a reasonable extension considering the circumstances, and Athena's return from maternity leave.

FURTHER, AFFIANT SAYETH NOT.

Michelle L. MacDonald,
Attorney for Appellant

Subscribed and sworn to before
me this 19 day of September, 2013.

Notary Public

JACOB JAMES BRODIN
NOTARY PUBLIC • MINNESOTA
MY COMMISSION EXPIRES 01/31/18

19AV-FA-11-1273

Filed in First Judicial District Court
9/13/2013 3:17:52 PM
Dakota County, MN

STATE OF MINNESOTA — DISTRICT COURT

COUNTY OF DAKOTA — FIRST JUDICIAL DISTRICT
FAMILY COURT DIVISION

---

In Re the Marriage of:

Sandra Sue Grazzini-Rucki,

Petitioner,

and

David Victor Rucki,

Respondent.

Court File No.: 19AV-FA-11-1273

AFFIDAVIT OF NON-COMPLIANCE
AND
REQUEST FOR ARREST WARRANT

---

STATE OF MINNESOTA }
{ss.
COUNTY OF HENNEPIN }

Bradley C. Mann, being first duly sworn upon oath, states and alleges as follows:

1. That I am one of the attorneys representing Respondent David Victor Rucki in this proceeding;

2. This Court's Order dated August 26, 2013, paragraph 6, states as follows:

> '6. Respondent's Motion to hold Petitioner in contempt of this Court's April 19, 2013 Order by failing to disclose her physical residence and phone number is granted.
>
> a. Petitioner has failed to comply with this Court's April 19, 2013 Order as evidenced by Lisa Elliott's Affidavit dated May 29, 2013.

b. Petitioner shall be sentenced to the Dakota County jail for a period not to exceed 10 days, stayed for a period of 2 years from the date of this order on the following conditions:

i. Petitioner shall immediately disclose to Respondent her physical residence and phone number.

If the jail sentence is imposed, Petitioner has the ability to be released if she meets the conditions of this contempt order.

c. The Court finds the conditions of the stay of Petitioner's jail sentence are appropriate for Petitioner because Petitioner has the ability at this time to meet the conditions of the stay.

d. The court finds that conditional confinement of Petitioner is reasonably likely to produce compliance with the Order."

3. Attached hereto as Exhibit A is a true and correct copy of this Court's Order dated August 26, 2013;

4. That on September 11, 2013, Petitioner testified in open Court that her cell phone number of 612-919-1737 is her current phone number. Today, Friday, September 13, 2013, my office called said phone number provided by Petitioner and a recording stated: "the number or code you have dialed is incorrect";

5. That on September 11, 2013, Petitioner testified in open Court, that she will not provide her physical address, as was Ordered by this Court on August 26, 2013;

6. To date the Petitioner has not complied;

7. Accordingly, Respondent requests that the Court to issue a warrant for Petitioner's arrest pursuant to this Court's August 26, 2013 Order.

19AV-FA-11-1273

Further your affiant saith not.

Bradley C. Mann

Subscribed and sworn to before me this 13th day of September, 2013.

Notary Public

JACQUELYN MAE SPENCER
Notary Public-Minnesota
My Commission Expires Jan 31, 2015

STATE OF MINNESOTA | DISTRICT COURT
COUNTY OF DAKOTA | FIRST JUDICIAL DISTRICT

In Re the Marriage of:

Sandra Sue Grazzini-Rucki,

Petitioner,

and

David Victor Rucki,

Respondent,

and

County of Dakota,

Intervenor.

Court File No.: 19AV-FA-11-1273

ORDER AND MEMORANDUM

The above-entitled matter came before the Honorable David L. Knutson, Judge of District Court, at the Dakota County Judicial Center in Hastings, Minnesota, on June 12, 2013 on various motions of the parties.

Michelle MacDonald, Esq. appeared representing Petitioner, who also appeared.

Lisa Elliott, Esq. appeared representing Respondent, who also appeared.

John Jerabek, Esq. appeared representing the Guardian ad Litem, Laura Miles, who also appeared.

NOW, THEREFORE, the Court having considered the matter, being fully advised in the premises, and based upon all the files, records and proceedings herein, and based upon the argument of the parties, issues the following:

FILED DAKOTA COUNTY
CAROLYN M. RENN, Court Administrator

AUG 26 2013

ORDER

Respondent David Rucki's Motion dated May 29, 2013 and Amended Motion dated June 4, 2013 filed by Lisa Elliott, Esq.

1. Respondent's Motion to hold Petitioner in contempt of this Court's September 7, 2012 Order by failing to refrain from having contact with the minor children is denied.

2. Respondent's Motion to hold Petitioner in contempt of this Court's April 19, 2013 Order by having unsupervised contact with the minor children is denied.

3. If either party has any information about the whereabouts of the parties' two oldest girls, Samantha and Gianna, they shall immediately disclose this information to the other party and to the appropriate authorities.

4. The issue of Petitioner's failure to cooperate with Dr. Beth Harrington is addressed by a separate Court Order dated June 18, 2013. Petitioner shall be responsible for any costs that Respondent incurred related to Petitioner's failure to cooperate with Dr. Beth Harrington.

5. The issue of Petitioner's failure to cooperate with court-ordered therapy and to produce her records from Dr. Michelle Millenacker, Life Development Resources, and Dr. Karen Irvin is addressed by a separate Court Order dated July 23, 2013. Petitioner shall be responsible for any costs that Respondent incurred related to Petitioner's refusal to cooperate with therapy and to produce these records.

6. Respondent's Motion to hold Petitioner in contempt of this Court's April 19, 2013 Order by failing to disclose her physical residence and phone number is granted.

    a. Petitioner has failed to comply with this Court's April 19, 2013 Order as evidenced by Lisa Elliott's Affidavit dated May 29, 2013.

b. Petitioner shall be sentenced to the Dakota County Jail for a period not to exceed 10 days, stayed for a period of 2 years from the date of this order on the following conditions:

i. Petitioner shall immediately disclose to Respondent her physical residence and phone number.

If the jail sentence is imposed, Petitioner has the ability to be released if she meets the conditions of this contempt order.

c. The Court finds the conditions of the stay of Petitioner's jail sentence are appropriate for Petitioner because Petitioner has the ability at this time to meet the conditions of the stay.

d. The Court finds that conditional confinement of Petitioner is reasonably likely to produce compliance with the Order.

7. Respondent's Motion to hold Petitioner in contempt of this Court's Order dated November 22, 2011 by canceling the minor children's medical insurance coverage through her employer is granted.

a. Petitioner has failed to comply with this Court's November 22, 2011 Order as evidenced by Tammy Love's Affidavit dated May 29, 2013 and Lisa Elliott's Affidavit dated May 29, 2013.

b. Petitioner shall be sentenced to the Dakota County Jail for a period not to exceed 10 days, stayed for a period of 2 years from the date of this order on the following conditions:

i. Petitioner shall immediately re-enroll the five minor children under her medical insurance plan provided by her employer, U.S. Airways.

Petitioner shall provide verification of the reinstatement of medical insurance by September 11, 2013.

If the jail sentence is imposed, Petitioner has the ability to be released if she meets the conditions of this contempt order.

c. The Court finds the conditions of the stay of Petitioner's jail sentence are appropriate for Petitioner because Petitioner has the ability at this time to meet the conditions of the stay.

d. The Court finds that conditional confinement of Petitioner is reasonably likely to produce compliance with the Order.

8. Respondent is granted a credit toward his child support arrears in the amount of $6,165.00, which represents one-half the value of the undisclosed asset relating to Petitioner's 2003 Cadillac Escalade.

9. Petitioner shall immediately execute an authorization releasing her 2011 and 2012 tax records.

10. Respondent's request for temporary sole physical and sole legal custody of the parties' children is denied. The parties shall continue to follow the recommendations of Dr. Gilbertson and the Guardian ad Litem with respect to temporary custody, therapy and parenting time.

11. Respondent's motion to dismiss Petitioner's separate Complaint captioned "Sandra Sue Grazzini-Rucki v. David Victor Rucki, Lisa M. Elliott, Julie Friedrich, Dr. James Gilbertson and Dr. Paul Reitman" is denied. Any motions relating to a separate action should be considered under the court file number of that separate action.

12. Respondent's request for attorney's fees is reserved for consideration at the final trial in this matter on September 11, 2013.

<u>Petitioner Sandra Grazzini-Rucki's Motion dated May 31, 2013 filed by Michelle MacDonald, Esq.</u>

13. Petitioner's motion for a stay of the proceedings is denied.

<u>Petitioner Sandra Grazzini-Rucki's Notice to Remove dated June 10, 2013 filed *Pro Se*.</u>

14. Petitioner's motion to remove Judge David L. Knutson as the judge of the proceeding entitled "Sandra Sue Grazzini-Rucki v. David Victor Rucki, Lisa M. Elliott, Julie Friedrich, Dr. James Gilbertson and Dr. Paul Reitman" is denied. Any motions relating to a separate action should be considered under the court file number of that separate action.

<u>The Guardian ad Litem's Motion dated June 10, 2013 filed by John M. Jerabek, Esq.</u>

15. The Guardian ad Litem's motion to dismiss Petitioner's separate Complaint is denied. Any motions relating to a separate action should be considered under the court file number of that separate action.
16. All other requests for relief not specifically addressed herein are denied.
17. The attached memorandum is incorporated herein by reference.

BY THE COURT:

Dated: <u>August 23, 2013</u>

David L. Knutson
Judge of District Court

## MEMORANDUM

I. **Respondent David Rucki's Motion dated May 29, 2013 and Amended Motion dated June 4, 2013 filed by Lisa Elliott, Esq.**

A. **Respondent's Motion relating to Petitioner having contact with the parties' minor children.**

Pursuant to this Court's Order dated April 19, 2013, the children's maternal aunt, Nancy Olson, was ordered to coordinate a transfer of temporary custody to the children's paternal aunt, Tammy Love. The custody transfer was to be facilitated by Dr. Gilbertson and the Guardian ad Litem. On April 19, 2013, custody of the two older girls, Samantha and Gianna, was transferred to Ms. Love. The children arrived at Ms. Love's home at 6:45 p.m. with the assistance of Officer Jason Jensen of the Lakeville Police Department. The children fled from Ms. Love's home after being at her home for approximately 30 minutes. Ms. Love stated that the girls left in such a hurry that they left their shoes, coats and backpacks behind. Ms. Love dialed 911 to report that the children had run away.

Ms. Love believes that the children are with Petitioner. On April 22, 2013, Ms. Love received two letters from the girls along with a court petition from Petitioner. Petitioner also contacted Trish Van Pilsum of Fox 9 to investigate this case and the issue of "Parental Alienation." Respondent alleges that Petitioner, or someone on her behalf, arranged for Ms. Pilsum to meet with and interview Samantha and Gianna for the story. Both children appeared in the news special, which aired on May 15, 2013. Respondent moves to hold Petitioner in contempt for allegedly having contact with the children and abducting them from Ms. Love's care. This Court is without any sufficient direct evidence of contact between Petitioner and the children to hold Petitioner in contempt on this issue. This Court is very concerned about the welfare of these children, who never returned to finish the school year and who are allegedly still

missing. If either party has any information about the whereabouts of these two girls, they shall immediately disclose this information to the other party and to the appropriate authorities.

B. **Respondent's Motion relating to Petitioner's refusal to cooperate with Dr. Beth Harrington and Petitioner's refusal to cooperate with therapy and produce records from Dr. Michelle Millenacker, Life Development Resources, and Dr. Karen Irvin.**

As detailed in this Court's Order dated June 18, 2013, Petitioner is flagrantly in contempt of this Court's Order ordering the parties to participate in a custody evaluation with Dr. Beth Harrington. In a letter to the Court dated May 16, 2013, Dr. Harrington indicated that she received an email from Petitioner on May 8, 2013, in which Petitioner stated "I do not accept you as my parenting consultant and will not meet with you." At the hearing on June 12, 2013, Petitioner made it clear to the Court that she has no intention of cooperating with the custody evaluator. The Court ultimately discharged Dr. Harrington as a custody evaluator, given Petitioner's refusal to cooperate with the custody evaluation and given that a new Guardian ad Litem had been appointed to make temporary and permanent custody and parenting time recommendations. Respondent incurred substantial costs relating to Petitioner's refusal to cooperate with the custody evaluation in this case. Therefore, this Court is ordering that Petitioner shall be responsible for any costs that Respondent incurred related to Petitioner's failure to cooperate with Dr. Beth Harrington.

As detailed in this Court's Order dated July 23, 2013, Petitioner defied multiple Court Orders with respect to completing a psychological evaluation, undergoing therapy, and providing verification and records of her therapy to Respondent. In her responsive memorandum, Petitioner made it clear that she "will not sign any authorization for the release of anything." (Petitioner's Response to Order Filed April 19, 2013 and April 22, 2013, dated May 6, 2013, p.3) The Court ultimately ordered these providers to release these records directly to the other parties since it

was clear that Petitioner was never going to produce them. The Court Trial in the matter is scheduled for September 11, 2013, and the Court found that it was essential that all parties have access to these records prior to the trial as they are relevant to the ultimate custody determination in this matter. The Court will not allow the trial in this matter to be delayed further by Petitioner's refusal to cooperate. Respondent incurred substantial costs relating to Petitioner's flagrant defiance of this Court's Orders regarding the completion of therapy and the production of these records. Therefore, this Court is ordering that Petitioner shall be responsible for any costs that Respondent incurred related to Petitioner's contempt of Court relating to her refusal to cooperate with court-ordered therapy and the production of these records.

**C. Respondent's Motion relating to Petitioner's refusal to disclose her physical residence and phone number.**

Pursuant to this Court's April 19, 2013 Order, Petitioner was ordered to disclose her physical residence and phone number. There is no Order for Protection in place and no other reason why Respondent should not have Petitioner's current contact information. Petitioner has indicated to this Court that she has no intention of complying with this Court's Order regarding disclosure of her address and phone number. (*See* Petitioner's Response to Order Filed April 19, 2013 and April 22, 2013, dated May 6, 2013, p.4) Therefore, the Court is finding Petitioner in contempt of Court on this issue. Petitioner shall immediately disclose her physical residence and phone number to Respondent or shall be subject to the contempt sanctions described above.

**D. Respondent's Motion relating to Petitioner's cancellation of the minor children's medical insurance coverage.**

Pursuant to this Court's November 22, 2011 Order, Petitioner was ordered to maintain medical insurance coverage for the minor children. The children's temporary custodian, Tammy Love, indicated that the children's medical insurance coverage has been cancelled. Petitioner

has not refuted this allegation. The Court finds that Petitioner is in contempt of Court on this issue. Petitioner shall immediately re-enroll the five minor children under her medical insurance plan and provide verification of the reinstatement or shall be subject to the contempt sanctions described above.

**E. Respondent's Motion relating to the undisclosed asset of Petitioner's 2003 Cadillac Escalade.**

Pursuant to this Court's April 19, 2013 Order, Respondent is entitled to a child support arrears credit in the amount of one-half of the Blue Book value of the 2003 Cadillac Escalade, an asset which Petitioner failed to disclose to Respondent. According to the Blue Book documentation provided by Respondent, Respondent is entitled to a child support arrears credit in the amount of $6,165.000, which represents half of the Blue Book value of the vehicle.

**F. Respondent's Motion relating to release of Petitioner's tax returns.**

Pursuant to this Court's April 19, 2013 Order, both parties were ordered to provide the other party with copies of their tax records from both 2011 and 2012 as soon as they are filed. The parties' income information is relevant to the outstanding issue of child support. If Petitioner has not already done so, she shall immediately execute an authorization releasing her 2011 and 2012 tax records.

**G. Respondent's Motion for temporary sole physical and sole legal custody of the parties' children.**

The Guardian ad Litem's report recommended that Tammy Love continue to have temporary custody of the parties' five children as the court-appointed professionals continue to facilitate the children's reunification with Respondent. The Court agrees that this temporary custody arrangement continues to be in the children's best interest pending the outcome of the final evidentiary hearing on custody scheduled for September 11, 2013. Respondent's request for

temporary sole physical and sole legal custody of the parties' children is denied at this time. The parties shall continue to follow the recommendations of Dr. Gilbertson and the Guardian ad Litem with respect to temporary custody, therapy and parenting time.

II. Petitioner Sandra Grazzini-Rucki's Motion dated May 31, 2013 filed by Michelle MacDonald, Esq.

A. Petitioner's motion for a stay of the proceedings.

Petitioner moves the Court for an Order restoring her parental rights and restoring her rights to the homestead. The Court notes that it continues to be baffled by Petitioner's requests in this case. Petitioner previously made a motion to vacate all prior Court Orders which was denied by this Court by an Order and Memorandum dated April 19, 2013. As described in this Court's April 19, 2013 Order, the prior orders that Petitioner seeks to vacate are temporary orders that were *agreements* entered into by the parties on the record when *both parties were represented by counsel.* The Court's temporary orders with respect to custody and the homestead were based on the best interests of the children, were informed by the reports of the court-appointed parental alienation expert and the Guardian ad Litem, and were based upon the parties' agreements. Based on the above, and all of the reasons previously detailed in this Court's April 19, 2013 Order, Petitioner's request for an Order restoring her parental rights and restoring her rights to the homestead is denied.

Petitioner also moves the Court to stay the execution of any proceedings to enforce this Court's orders pending the disposition of an appeal and a petition for writ mandamus that Petitioner filed with the Court Appeals. Petitioner's appeal of this Court's April 19, 2013 Order was denied by the Court of Appeals on June 11, 2013—one day prior to the hearing in this matter. Petitioner also petitioned the Court of Appeals for a writ of mandamus to compel this

Court to hear her petition for a writ of habeas corpus, which was also denied on by the Court of Appeals on June 11, 2013. At the hearing on June 12, 2013, Petitioner's attorney indicated that her motion for a stay of the proceedings was not moot because she intended to appeal to the Minnesota Supreme Court. Petitioner subsequently appealed to the Minnesota Supreme Court, which denied her petition for further review on August 20, 2013. Since all of Petitioner's appeals and petitions for further review have been denied, there is no basis to stay the proceedings in this matter. Petitioner's motion for a stay of the proceedings is denied.

III. Petitioner Sandra Grazzini-Rucki's Notice to Remove dated June 10, 2013 filed *Pro Se.*

Petitioner moves to remove Judge David L. Knutson as the judge of the proceeding entitled "Sandra Sue Grazzini-Rucki v. David Victor Rucki, Lisa M. Elliott, Julie Friedrich, Dr. James Gilbertson and Dr. Paul Reitman." Petitioner's motion is denied. Any motions relating to a separate action should be considered under the court file number of that separate action. It also appears that Petitioner's motion may now be moot. According to MNCIS, a motion to dismiss in Petitioner's related action titled "Sandra Sue Grazzini-Rucki v. David Victor Rucki, Lisa M. Elliott, Julie Friedrich, Dr. James Gilbertson, Dr. Paul Reitman, Laura Miles, Steven Kennedy and Todd Kaiser" (Court File No. 19HA-CV-13-2770) was heard on August 12, 2013. Ms. Grazzini-Rucki did not appear at the hearing, and Judge Sutherland granted the motion to dismiss and awarded attorney's fees and costs to the defendants.

IV. The Guardian ad Litem's Motion dated June 10, 2013 filed by John M. Jerabek, Esq.

The Guardian ad Litem also moves to dismiss Petitioner's Complaint captioned "Sandra Sue Grazzini-Rucki v. David Victor Rucki, Lisa M. Elliott, Julie Friedrich, Dr. James Gilbertson

and Dr. Paul Reitman." As described above, any motions relating to a separate action should be considered under the court file number of that separate action. However, it appears that this motion may now be moot, given that Judge Sutherland granted the defendants' motion to dismiss in Court File No. 19HA-CV-13-2770.

D.L.K.

19AV-FA-11-1273

APPENDIX A

NOTICE IS HEREBY GIVEN TO THE PARTIES:

I. PAYMENTS TO PUBLIC AGENCY. According to Minnesota Statutes, section 518A.50, payments ordered for maintenance and support must be paid to the Minnesota child support payment center as long as the person entitled to receive the payments is receiving or has applied for public assistance or has applied for support and maintenance collection services. Parents mail payments to: P.O. Box 64326, St. Paul, MN 55164-0326. Employers mail payments to: P.O. Box 64306, St. Paul, MN 55164.

II. DEPRIVING ANOTHER OF CUSTODIAL OR PARENTAL RIGHTS – A FELONY. A person may be charged with a felony who conceals a minor child or takes, obtains, retains, or fails to return a minor child from or to the child's parent (or person with custodial or parenting time rights), according to Minnesota Statutes, section 609.26. A copy of that section is available from any court administrator.

III. NONSUPPORT OF A SPOUSE OR CHILD – CRIMINAL PENALTIES. A person who fails to pay court-ordered child support or maintenance may be charged with a crime, which may include misdemeanor, gross misdemeanor, or felony charges, according to Minnesota Statutes, section 609.375. A copy of that section is available from any district court clerk.

IV. RULES OF SUPPORT, MAINTENANCE, PARENTING TIME.

A. Payment of support or spousal maintenance is to be as ordered, and the giving of gifts or making purchases of food, clothing, and the like will not fulfill the obligation.

B. Payment of support must be made as it becomes due, and failure to secure or denial of parenting time is NOT an excuse for nonpayment, but the aggrieved party must seek relief through a proper motion filed with the court.

C. Nonpayment of support is not grounds to deny parenting time. The party entitled to receive support may apply for support and collection services, file a contempt motion, or obtain a judgment as provided in Minnesota Statutes, section 548.091.

D. The payment of support or spousal maintenance takes priority over payment of debts and other obligations.

E. A party who accepts additional obligations of support does so with the full knowledge of the party's prior obligation under this proceeding.

F. Child support or maintenance is based on annual income, and it is the responsibility of a person with seasonal employment to budget income so that payments are made throughout the year as ordered.

G. A *Parental Guide to Making Child-Focused Parenting-Time Decisions* is available from any court administrator.

H. The nonpayment of support may be enforced through the denial of student grants; interception of state and federal tax refunds; suspension of driver's, recreational, and occupational licenses; referral to the department of revenue or private collection agencies; seizure of assets, including bank accounts and other assets held by financial institutions; reporting to credit bureaus; interest charging, income withholding, and contempt proceedings; and other enforcement methods allowed by law.

I. The public authority may suspend or resume collection of the amount allocated for child care expenses if the conditions of Minnesota Statutes, section 518A.40, subdivision 4, are met.

J. The public authority may remove or resume a medical support offset if the conditions of section 518A.41, subdivision 16, are met.

K. The public authority may suspend or resume interest charging on child support judgments if the conditions of section 548.091, subdivision 1a, are met.

V. MODIFYING CHILD SUPPORT. If either the obligor or obligee is laid off from employment or receives a pay reduction, child support may be modified, increased, or decreased. Any modification will only take effect when it is ordered by the court, and will only relate back to the time that a motion is filed. Either the obligor or obligee may file a motion to modify child support, and may request the public agency for help. UNTIL A MOTION IS FILED, THE CHILD SUPPORT OBLIGATION WILL CONTINUE AT THE CURRENT LEVEL. THE COURT IS NOT PERMITTED TO REDUCE SUPPORT RETROACTIVELY.

VI. PARENTAL RIGHTS FROM MINNESOTA STATUTES, SECTION 518.17, SUBDIVISION 3, UNLESS OTHERWISE PROVIDED BY THE COURT:

A. Each party has the right of access to, and to receive copies of, school, medical, dental, religious training, police reports, and other important records and information about the minor children. Each party has the right of access to information regarding health or dental insurance available to the minor children. Presentation of a copy of this order

to the custodian of a record or other information about the minor children constitutes sufficient authorization for the release of the record or information to the requesting party.

B. Each party has the right to be informed by the other party as to the name and address of the school of attendance of the minor children. Each party has the right to be informed by school officials about the children's welfare, educational progress and status, and to attend school and parent teacher conferences. The school is not required to hold a separate conference for each party.

C. Each party has the right to be notified by the other party of an accident or serious illness of a minor child, including the name of the health care provider and the place of treatment.

D. Each party has the right to be notified by the other party if the minor child is the victim of an alleged crime, including the name of the investigating law enforcement officer or agency. There is no duty to notify if the party to be notified is the alleged perpetrator.

E. Each party has the right of reasonable access and telephone contact with the minor children.

VII. WAGE AND INCOME DEDUCTION OF SUPPORT AND MAINTENANCE. Child support and / or spousal maintenance may be withheld from income, with or without notice to the person obligated to pay, when the conditions of Minnesota Statutes, section 518A.53, have been met. A copy of that section is available from any court administrator.

VIII. CHANGE OF ADDRESS OR RESIDENCE. Unless otherwise ordered, each party shall notify the other party, the court, and the public authority responsible for collection, if applicable, of the following information within ten days of any change: residential and mailing address, telephone number, driver's license number, social security number, and name, address, and telephone number of the employer.

IX. COST OF LIVING INCREASE OF SUPPORT AND MAINTENANCE. Basic support and / or spousal maintenance may be adjusted every two years based upon a change in the cost of living (using the U.S. Department of Labor, Bureau of Labor Statistics, consumer price index Mpls. St. Paul, for all urban consumers (CPI-U), unless otherwise specified in this order) when the conditions of Minnesota Statutes, section 518A.75, are met. Cost of living increases are compounded. A copy of Minnesota Statutes, section 518A.75, and forms necessary to request or contest a cost of living increase are available from any court administrator.

X. JUDGMENTS FOR UNPAID SUPPORT; INTEREST. According to Minnesota Statutes, section 548.091:

A. If a person fails to make a child support payment, the payment owed becomes a judgment against the person responsible to make the payment by operation of law on or after the date the payment is due, and the person entitled to receive the payment or the public agency may obtain entry and docketing of the judgment without notice to the person responsible to make the payment.

B. Interest begins accruing on a payment or installment of child support whenever the unpaid amount due is greater than the current support due.

XI. JUDGMENTS FOR UNPAID MAINTENANCE. A judgment for unpaid spousal maintenance may be entered and docketed when the conditions of Minnesota Statutes, section 548.091, are met. A copy of that section is available from any court administrator.

XII. ATTORNEY FEES AND COLLECTION COSTS FOR ENFORCEMENT OF CHILD SUPPORT. A judgment for attorney fees and other collection costs incurred in enforcing a child support order will be entered against the person responsible to pay support when the conditions of Minnesota Statutes, section 518A.735, are met. A copy of that section and forms necessary to request or contest these attorney fees and collection costs are available from any court administrator.

XIII. PARENTING TIME EXPEDITOR PROCESS. On request of either party or on its own motion, the court may appoint a parenting time expeditor to resolve parenting time disputes under Minnesota Statutes, section 518.1751. A copy of that section and a description of the expeditor process is available from any court administrator.

XIV. PARENTING TIME REMEDIES AND PENALTIES. Remedies and penalties for wrongful denial of parenting time are available under Minnesota Statutes, section 518.175, subdivision 6. These include compensatory parenting time; civil penalties; bond requirements; contempt; and reversal of custody. A copy of that subdivision and forms for requesting relief are available from any court administrator.

19AV-FA-11-1273

Filed in First Judicial District Court
9/13/2013 3:17:52 PM
Dakota County, MN

STATE OF MINNESOTA

COUNTY OF DAKOTA

DISTRICT COURT

FIRST JUDICIAL DISTRICT
FAMILY COURT DIVISION

---

In Re the Marriage of:

Sandra Sue Grazzini-Rucki,

Petitioner,

and

David Victor-Rucki,

Respondent.

Court File No.: 19AV-FA-11-1273
Judicial Officer: David L. Knutson

ORDER FOR ARREST WARRANT

---

The above-entitled matter came on before the Honorable David L. Knutson, Judge of District Court, on ____________, 2013, based upon the Affidavit of Non-Compliance and Request for Arrest Warrant submitted on behalf of the above-named Respondent and his counsel of record, Lisa M. Elliott, Esq., and Bradley C. Mann, Esq., the Court Finds:

Petitioner has failed to comply with this Court's April 19, 2013 Order.

**THEREFORE, IT IS HEREBY ORDERED:** That the Dakota County Sheriff's Department shall issue an arrest warrant immediately for the detention of the Petitioner, Sandra Sue Grazzini-Rucki, as outlined in its August 26, 2013 Order.

Dated:____________________

____________________
David L. Knutson
Judge of District Court

19AV-FA-11-1273

Filed in First Judicial District Court
9/13/2013 3:17:52 PM
Dakota County, MN

STATE OF MINNESOTA

DISTRICT COURT

COUNTY OF DAKOTA

FIRST JUDICIAL DISTRICT
FAMILY COURT DIVISION

In Re the Marriage of:

Court File No.: 19AV-FA-11-1273
Judicial Officer: David L. Knutson

Sandra Sue Grazzini-Rucki,

Petitioner,

and

CERTIFICATE OF ELECTRONIC FILING AND SERVICE

David Victor Rucki,

Respondent.

I hereby certify that on September 13, 2013 I caused the following documents:

**Affidavit of Non-Compliance and Request for Arrest Warrant**

to be served electronically with the Court Administrator through Odyssey File and Serve, and that Odyssey File and Service will send an e-notice of the electronic filing and Service to the following:

Attorneys for Petitioner:
Michelle L. MacDonald, Esq.
MacDonald Law Firm, LLC
1069 South Robert Street
West St. Paul, MN 55118
debbie@macdonaldlawfirm.com

Attorney for Guardian Ad Litem
John M. Jerabek, Esq.
Niemi, Jerabek & Kretchmer
510 Marquette Ave
Minneapolis, MN 55402
Jjerabek@njklawyers.com

Dakota County Attorney's Office
James Donehower, Esq.
Dakota County Northern Service Center
Suite 220
1 Mendota Road West
West St. Paul, MN 55118
james.donehower@co.dakota.mn.us

Dated: September 13, 2013

Rita L. Martin

**Debbie Sampson**

| | |
|---|---|
| **From:** | S RUCKI <dcc.jdk@gmail.com> |
| **Sent:** | Wednesday, October 23, 2013 9:09 AM |
| **To:** | Debbie Sampson |
| **Subject:** | Fwd: Investigation |
| **Attachments:** | image001.jpg; Sandra Grazzini-Rucki R.xlsx |

Dvs Report for Sam

---------- Forwarded message ----------
From: S RUCKI <dcc.jdk@gmail.com>
Date: Mon, Oct 21, 2013 at 6:27 PM
Subject: Fwd: Investigation
To: Dede Evavold <dedeevavold@hotmail.com>

---------- Forwarded message ----------
From: <dcc.jdk@gmail.com>
Date: Mon, Oct 21, 2013 at 3:52 PM
Subject: Fwd: Investigation
To: "rjmcd@digitron.net" <rjmcd@digitron.net>

Sent from my iPhone

Begin forwarded message:

> **From:** dcc.jdk@gmail.com
> **Date:** October 21, 2013, 15:39:20 CDT
> **To:** "rjmcd1@digitron.net" <rjmcd1@digitron.net>
> **Subject:** **Fwd: Investigation**
>
> Sent from my iPhone
>
> Begin forwarded message:
>
> > **From:** "Jacobson, Kim (DPS)" <kim.jacobson@state.mn.us>
> > **Date:** October 21, 2013, 14:24:41 CDT
> > **To:** S RUCKI <dcc.jdk@gmail.com>
> > **Subject:** **RE: Investigation**
> >
> > The data you requested are specifically classified as "electronic access data." State law defines "electronic access data" as "data created, collected, or

maintained about a person's access to a government entity's computer for the purpose of: (1) gaining access to data or information; (2) transferring data or information; or (3) using government services." Minn. Stat. § 13.15, Subd. 1(a). It further classifies such data "as private data on individuals or nonpublic data." The individuals querying your name accessed a governmental entity's computer for purposes of gaining access to data and information. Therefore, it is considered private data on the user pursuant to the statute. Consequently, the data are "electronic access data" and the Department may not disseminate these names. Based on the law, attached is the spreadsheet containing the information that the Department can release to you by statute.

Each line is a separate and single query. There are several types of queries that users can make, each of which returns different data. Under the column headed EsupportPath:

- /dvsinfo/dvsnewdl/CardData.asp is a photo only query, which includes basic demographic information;
- /dvsinfo/dvsnewdl/Demographics.asp is a DL record query, which includes the photo and all motor vehicles registered to the data subject;
- /dvsinfo/VH20/VH20Select.asp lists all vehicles registered to the individual queried.
- /dvsinfo/dv09/DV09.asp—Deputy Registrar Online DL Issuance
- /dvsinfo/dloffline/DLOffLineSearchTarget.asp—Deputy Registrar Offline DL Report
- DLRecord Lookup—self explanatory

Some of the data screens have tabs to view additional information within the data returned. For example, a Demographics query includes driver license data, motor vehicle data, and driver's license photo. When selecting the different elements to view, a "new" query is recorded. When the audit trail report is run, it filters out duplicate queries that occur within the same minute. But if the review of the data stretches over a longer period, it can appear as though there was a second query of the data. The yellow highlighted queries are examples of what appears to be a second query but is likely not.

The blue highlighted fields appear to be a duplicate query, but are actually queries of current and historical photos. Included are the last four digits of the driver license number queried.

Because there were queries by different employees of the same agency, I numbered them to differentiate the users. For example, all Lakeville PD User 1 queries are the same individual, Lakeville PD User 2 is a different individual, etc.

Please let me know if you have any questions.

*Kim Jacobson*

Data Practices Coordinator

Minnesota Department of Public Safety

Driver and Vehicle Services Division

651-201-7607

**From:** S RUCKI [mailto:dcc.jdk@gmail.com]
**Sent:** Friday, September 27, 2013 8:24 PM
**To:** Jacobson, Kim (DPS)
**Subject:** Investigation

Data Services,

Can you please conduct an investigation on who has accessed my DVS information from June 2011 thur today's date 9-27-13. I was informed that someone from Dakota County District Court has been looking up my information and disseminating it inappropriately. Thank you for your assistance.

Sandra Grazzini-Rucki

09/30/1965

Y076294869612

| ReportRequestor | EsupportStationName | EsupportPath |
|---|---|---|
| sandraruckl | Lakeville PD User 12 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Lakeville PD User 8 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Lakeville PD User 5 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Dakota Co Sheriff User 3 | /dvsinfo/dvsnewdl/CardData.asp |
| sandraruckl | Lakeville PD User 12 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Burnsville PD User 1 | /dvsinfo/dvsnewdl/CardData.asp |
| sandraruckl | Dakota Co Sheriff User 1 | /dvsinfo/dvsnewdl/CardData.asp |
| sandraruckl | Human Services User 1 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Dakota Communications Center User 2 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Lakeville PD User 13 | /dvsinfo/dvsnewdl/CardData.asp |
| sandraruckl | Lakeville PD User 11 | /dvsinfo/dvsnewdl/CardData.asp |
| sandraruckl | Polk Co WI Sheriff | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Lakeville PD User 1 | /dvsinfo/dvsnewdl/CardData.asp |
| sandraruckl | Lakeville PD User 1 | /dvsinfo/dvsnewdl/CardData.asp |
| sandraruckl | Burn, Chan, Farm, Hamp, Lakev, & Ply City Attorney | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Lakeville PD User 15 | /dvsinfo/dvsnewdl/CardData.asp |
| sandraruckl | Lakeville PD User 15 | /dvsinfo/dvsnewdl/CardData.asp |
| sandraruckl | Human Services User 2 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Lakeville PD User 17 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Dakota Communications Center User 1 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Lakeville PD User 7 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Lakeville PD User 9 | /dvsinfo/dvsnewdl/CardData.asp |
| sandraruckl | Lakeville PD User 9 | /dvsinfo/dvsnewdl/CardData.asp |
| sandraruckl | Lakeville PD User 9 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Burnsville PD User 3 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Burnsville PD User 4 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Burnsville PD User 4 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Lakeville PD User 9 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Lakeville PD User 9 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Lakeville PD User 9 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Burnsville PD User 2 | /dvsinfo/dvsnewdl/Demographics.asp |

| | | |
|---|---|---|
| sandraruckl | Lakeville PD User 4 | /dvsInfo/dvsnewdl/CardData.asp |
| sandraruckl | Lakeville PD User 10 | /dvsInfo/dvsnewdl/Demographics.asp |
| sandraruckl | Dakota Co Community Corrections | /dvsInfo/dvsnewdl/Demographics.asp |
| sandraruckl | Savage PD | /dvsInfo/dvsnewdl/CardData.asp |
| sandraruckl | Savage PD | /dvsInfo/dvsnewdl/CardData.asp |
| sandraruckl | Minneapolis PD | /dvsInfo/dvsnewdl/CardData.asp |
| sandraruckl | District Courts User 4 | /dvsInfo/dvsnewdl/Demographics.asp |
| sandraruckl | District Courts User 2 | /dvsInfo/dvsnewdl/Demographics.asp |
| sandraruckl | Lakeville PD User 16 | /dvsInfo/dvsnewdl/CardData.asp |
| sandraruckl | Lakeville PD User 16 | /dvsInfo/VH20/VH20Select.asp |
| sandraruckl | No. Metro (Arden Hills) Exam Station | DLRecord Lookup |
| sandraruckl | Burnsville Driver License Office | /dvsInfo/dvsnewdl/Demographics.asp |
| sandraruckl | Lakeville PD User 10 | /dvsInfo/dvsnewdl/Demographics.asp |
| sandraruckl | Lakeville PD User 10 | /dvsInfo/dvsnewdl/Demographics.asp |
| sandraruckl | Lakeville PD User 14 | /dvsInfo/dvsnewdl/Demographics.asp |
| sandraruckl | Lakeville PD User 13 | /dvsInfo/dvsnewdl/CardData.asp |
| sandraruckl | Lakeville PD User 2 | /dvsInfo/dvsnewdl/CardData.asp |
| sandraruckl | Lakeville PD User 2 | /dvsInfo/dvsnewdl/Demographics.asp |
| sandraruckl | Apple Valley Driver License Office | /dvsInfo/dv09/DV09.asp |
| sandraruckl | Lakeville PD User 10 | /dvsInfo/dvsnewdl/Demographics.asp |
| sandraruckl | Lakeville PD User 10 | /dvsInfo/dvsnewdl/Demographics.asp |

| | | |
|---|---|---|
| sandraruckl | Lakeville PD User 10 | /dvsInfo/dvsnewdl/Demographics.asp |
| sandraruckl | Lakeville Driver License Office | DLRecord Lookup |
| sandraruckl | Lakeville Driver License Office | /dvsinfo/dv09/DV09.asp |
| sandraruckl | Lakeville PD User 14 | /dvsInfo/dvsnewdl/Demographics.asp |
| sandraruckl | Apple Valley Driver License Office | /dvsInfo/dv09/DV09.asp |
| sandraruckl | INS | /dvsInfo/dvsnewdl/CardData.asp |
| sandraruckl | US Postal Inspector | /dvsInfo/dvsnewdl/Demographics.asp |
| sandraruckl | Lakeville PD User 3 | /dvsInfo/dvsnewdl/CardData.asp |
| sandraruckl | APPLE VALLEY Deputy Registrar | /dvsInfo/VH20/VH20Select.asp |
| sandraruckl | APPLE VALLEY Deputy Registrar | /dvsInfo/VH20/VH20Select.asp |
| sandraruckl | District Courts User 1 | /dvsInfo/dvsnewdl/CardData.asp |
| sandraruckl | APPLE VALLEY Deputy Registrar | /dvsInfo/VH20/VH20Select.asp |
| sandraruckl | APPLE VALLEY Deputy Registrar | /dvsInfo/VH20/VH20Select.asp |
| sandraruckl | APPLE VALLEY Deputy Registrar | /dvsInfo/VH20/VH20Select.asp |
| sandraruckl | District Courts User 3 | /dvsInfo/dvsnewdl/Demographics.asp |
| sandraruckl | FBI Mpls | /dvsInfo/dvsnewdl/CardData.asp |
| sandraruckl | PRIOR LAKE Deputy Registrar | /dvsInfo/dvsnewdl/Demographics.asp |
| sandraruckl | St Croix Co WI Sheriff | /dvsInfo/dvsnewdl/CardData.asp |
| sandraruckl | St Croix Co WI Sheriff | /dvsInfo/dvsnewdl/CardData.asp |
| sandraruckl | PRIOR LAKE Deputy Registrar | /dvsInfo/dvsnewdl/Demographics.asp |
| sandraruckl | PRIOR LAKE Deputy Registrar | /dvsInfo/VH20/VH20Select.asp |

| | | |
|---|---|---|
| sandraruckl | Elko New Market Driver License Office | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Elko NewMarket Deputy Registrar | /dvsinfo/VH20/VH20Select.asp |
| sandraruckl | Elko New Market Driver License Office | /dvsinfo/dloffline/DLOffLineSearchTarget.asp |
| sandraruckl | Elko NewMarket Deputy Registrar | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Shakopee Driver License Office | DLRecord Lookup |
| sandraruckl | Elko NewMarket Deputy Registrar | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Shakopee Driver License Office | DLRecord Lookup |
| sandraruckl | Elko New Market Driver License Office | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Shakopee Driver License Office | DLRecord Lookup |
| sandraruckl | Elko NewMarket Deputy Registrar | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | District Courts User 5 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | District Courts User 5 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Shakopee Driver License Office | DLRecord Lookup |
| sandraruckl | Apple Valley Driver License Office | /dvsinfo/dv09/DV09.asp |
| sandraruckl | Dakota Co Sheriff User 4 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Dakota Co Sheriff User 4 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Dakota Communications Center User 3 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Elko NewMarket Deputy Registrar | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Shakopee Driver License Office | DLRecord Lookup |
| sandraruckl | Elko/New Market PD | /dvsinfo/dvsnewdl/Demographics.asp |
| sandraruckl | Lakeville PD User 6 | /dvsinfo/dvsnewdl/Demographics.asp |

| | | |
|---|---|---|
| sandrarucki | Dakota Co Sheriff User 2 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandrarucki | Human Services User 3 | /dvsinfo/dvsnewdl/Demographics.asp |
| sandrarucki | Human Services User 3 | /dvsinfo/dvsnewdl/Demographics.asp |

| AccessDay | AccessDate | AccessType | AccessedData |
|---|---|---|---|
| Wed | 6/1/2011 20:25 | DLNumber | |
| Thu | 6/2/2011 15:13 | DLNumber | |
| Sun | 6/5/2011 22:08 | DLNumber | |
| Tue | 6/14/2011 16:18 | DLNumber | |
| Mon | 6/20/2011 18:19 | DLNumber | |
| Mon | 6/20/2011 18:44 | DLNumber | |
| Tue | 6/21/2011 4:48 | DLNumber | |
| Tue | 6/21/2011 13:50 | DLNumber | |
| Wed | 6/22/2011 11:37 | DLNumber | |
| Wed | 6/22/2011 15:37 | DLNumber | |
| Tue | 7/19/2011 13:38 | DLNumber | |
| Fri | 7/22/2011 4:40 | DLNumber | |
| Mon | 7/25/2011 22:49 | DLNumber | |
| Tue | 7/26/2011 4:16 | DLNumber | |
| Wed | 7/27/2011 15:19 | DLNumber | |
| Fri | 7/29/2011 5:12 | DLNumber | |
| Fri | 7/29/2011 5:12 | DLNumber | |
| Thu | 8/4/2011 11:12 | DLNumber | |
| Sun | 8/7/2011 9:12 | DLNumber | |
| Fri | 8/12/2011 20:35 | DLNumber | |
| Sat | 8/13/2011 17:56 | DLNumber | |
| Sat | 8/20/2011 10:57 | DLNumber | 8754 |
| Sat | 8/20/2011 10:57 | DLNumber | 9612 |
| Sat | 8/20/2011 10:57 | DLNumber | |
| Fri | 9/2/2011 17:19 | DLNumber | |
| Wed | 9/7/2011 14:10 | DLNumber | |
| Wed | 9/7/2011 14:11 | DLNumber | |
| Wed | 9/7/2011 15:21 | DLNumber | |
| Wed | 9/7/2011 15:26 | DLNumber | |
| Wed | 9/7/2011 15:43 | DLNumber | |
| Wed | 9/14/2011 11:08 | DLNumber | |

| Mon | 10/17/2011 9:35 | DLNumber | |
|---|---|---|---|
| Mon | 10/24/2011 16:14 | DLNumber | |
| Tue | 10/25/2011 9:48 | DLNumber | |
| Wed | 11/16/2011 3:21 | DLNumber | 8764 |
| Wed | 11/16/2011 3:21 | DLNumber | 9612 |
| Sun | 11/27/2011 0:04 | DLNumber | |
| Wed | 12/28/2011 11:01 | DLNumber | |
| Tue | 3/6/2012 15:28 | DLNumber | |
| Fri | 3/30/2012 7:13 | DLNumber | |
| Fri | 3/30/2012 7:17 | DLNumber | |
| Fri | 5/11/2012 16:30 | DLNumber | |
| Tue | 5/29/2012 14:53 | DLNumber | |
| Fri | 6/22/2012 9:25 | DLNumber | |
| Fri | 6/22/2012 15:42 | DLNumber | |
| Thu | 7/5/2012 23:04 | DLNumber | |
| Mon | 7/9/2012 10:15 | DLNumber | |
| Wed | 7/11/2012 0:34 | DLNumber | |
| Wed | 7/11/2012 0:34 | DLNumber | |
| Wed | 7/11/2012 13:55 | DLNumber | |
| Wed | 7/11/2012 16:15 | DLNumber | |
| Wed | 7/11/2012 16:19 | DLNumber | |

| | | | |
|---|---|---|---|
| Wed | 7/11/2012 16:21 | DLNumber | |
| Tue | 7/17/2012 12:31 | DLNumber | |
| Tue | 7/17/2012 12:38 | DLNumber | |
| Thu | 7/19/2012 1:09 | DLNumber | |
| Mon | 7/23/2012 14:09 | DLNumber | |
| Tue | 8/28/2012 10:41 | DLNumber | |
| Fri | 8/31/2012 12:38 | DLNumber | |
| Thu | 9/6/2012 9:14 | DLNumber | |
| Thu | 9/6/2012 10:37 | DLNumber | |
| Thu | 9/6/2012 10:39 | DLNumber | |
| Fri | 9/7/2012 12:17 | DLNumber | |
| Fri | 9/14/2012 14:28 | DLNumber | |
| Fri | 9/14/2012 14:29 | DLNumber | |
| Fri | 9/14/2012 14:32 | DLNumber | |
| Wed | 9/19/2012 12:27 | DLNumber | |
| Mon | 10/1/2012 10:59 | DLNumber | |
| Fri | 10/26/2012 9:28 | DLNumber | |
| Mon | 10/29/2012 13:10 | DLNumber | 9612 |
| Mon | 10/29/2012 13:11 | DLNumber | 8754 |
| Mon | 10/29/2012 16:37 | DLNumber | |
| Thu | 11/1/2012 10:59 | DLNumber | |

| | | | |
|---|---|---|---|
| Fri | 11/30/2012 10:02 | DLNumber | |
| Fri | 11/30/2012 10:06 | DLNumber | |
| Fri | 11/30/2012 10:20 | DLNumber | |
| Wed | 1/9/2013 13:35 | DLNumber | |
| Wed | 1/9/2013 13:36 | DLNumber | |
| Fri | 1/25/2013 12:05 | DLNumber | |
| Fri | 1/25/2013 12:05 | DLNumber | |
| Wed | 2/13/2013 16:27 | DLNumber | |
| Wed | 2/13/2013 16:29 | DLNumber | |
| Mon | 2/25/2013 12:38 | DLNumber | |
| Tue | 2/26/2013 14:19 | DLNumber | |
| Tue | 2/26/2013 14:20 | DLNumber | |
| Fri | 3/1/2013 14:05 | DLNumber | |
| Tue | 3/26/2013 13:34 | DLNumber | |
| Fri | 4/19/2013 17:42 | DLNumber | |
| Fri | 4/19/2013 17:48 | DLNumber | |
| Fri | 4/19/2013 22:37 | DLNumber | |
| Wed | 5/29/2013 13:51 | DLNumber | |
| Wed | 5/29/2013 13:53 | DLNumber | |
| Sat | 7/27/2013 17:29 | DLNumber | |
| Sun | 8/4/2013 9:06 | DLNumber | |

| | | | |
|---|---|---|---|
| Thu | 9/12/2013 14:58 | DLNumber | |
| Fri | 9/27/2013 8:39 | DLNumber | |
| Fri | 9/27/2013 8:59 | DLNumber | |

**ELLIOTT LAW OFFICES, P.A.**
Attorneys at Law

2409 West 66th Street
Minneapolis, Minnesota 55423

Telephone: 612-861-3000
Fax: 612-861-3004

Lisa M. Elliott
Patrick H. Elliott
Bradley C. Mann

Also Admitted in Colorado and South Dakota
Also Admitted in Wisconsin and Arizona

Of Counsel
Jon W. Blanchar

*Writer's Direct Dial:* 612-466-7191
*E-Mail:* rita@elliottlaw.net

October 11, 2013

Michelle L. MacDonald, Esq.
MacDonald Law Firm, LLC
1069 South Robert Street
West St. Paul, MN 55118

Re: In Re the Marriage of Grazzini-Rucki and Rucki
Court File No.: 19-AV-FA-11-1273

Dear Ms. MacDonald:

Enclosed please find a copy of the Subpoena and Notice of Taking Deposition Duces Tecum in which we are serving upon US Airways, Inc., in reference to the above matter. Thank you.

Sincerely,

Rita L. Martin
Paralegal

RLM:abm
Enc.
cc: David Rucki
All Counsel of Record

STATE OF MINNESOTA | DISTRICT COURT

COUNTY OF DAKOTA | FIRST JUDICIAL DISTRICT
FAMILY COURT DIVISION

---

In Re the Marriage of:

Court File No.: 19AV-27-FA-11-1273

Sandra Sue Grazzini-Rucki,

Petitioner,

and

David Victor Rucki,

Respondent.

---

**NOTICE OF DEPOSITION DUCES TECUM OF CUSTODIAN OF RECORDS FROM U.S. AIRWAYS, INC.**

---

**PLEASE TAKE NOTICE** that the deposition of duces tecum of the custodian of records of U.S. Airways, Inc., by oral examination, will be taken before a qualified court reporter at the offices of Elliott Law Offices, P.A., 2409 West 66th Street, Minneapolis, Minnesota 55423, on the 22nd day of October, 2013, at 1:00 p.m., for the production, inspection and copying of the documents requested in Exhibit A attached hereto.

Dated: 10-11-13

ELLIOTT LAW OFFICES, P.A.

By: [signature]
Lisa M. Elliott, #201923
Attorney for Respondent
2409 West 66th Street
Minneapolis, MN 55423
612-861-3000

**State of Minnesota** **District Court**

| County of Dakota | |
|---|---|

| | |
|---|---|
| Judicial District: | First |
| Court File Number: | 19AV-FA-11-1273 |
| Case Type: | Family Court Division |
| | Judge: David L. Knutson |

Sandra Sue Grazzini-Rucki,

Petitioner

and

David Victor Rucki,

Respondent

**SUBPOENA IN A CIVIL CASE**
**(COMMAND TO APPEAR)**
Minn. R. Civ. Pro. 45

TO: US Airways, Inc., C/O CT Corporation Systems, Inc, 100 South 5th Street, #1075, Minneapolis, Minnesota 55402.

☐ You are commanded to appear as a witness in the district court to give testimony at the place, date, and time specified below.

| Place of Testimony | Courtroom |
|---|---|
| | Date and Time |

☐ You are commanded to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| Place of Deposition | Date and Time |
|---|---|

☒ You are commanded to produce and permit inspection and copying of the listed documents or objects at the place, date and time specified below (attach list of documents or objects if necessary): SEE ATTACHED EXHIBIT A

| Place | Date and Time |
|---|---|
| Elliott Law Offices, P.A.<br>2409 West 66th Street<br>Minneapolis, MN 55423 | October 22, 2013 at 1:00 p.m. |

☐ You are commanded to permit inspection of the following premises at the date and time specified below.

| Premises | Date and Time |
|---|---|

NOTE: **FAILURE TO OBEY A SUBPOENA WITHOUT BEING EXCUSED IS A CONTEMPT OF COURT.**

| Lisa M. Elliott [signature]<br>Signature of Court Administrator / Plaintiff's Attorney / (Defendant's Attorney) (Circle) | 10-11-13<br>Date |
|---|---|
| Lisa M. Elliott, Esq., #201923<br>Elliott Law Offices, P.A.<br>2409 West 66th Street<br>Minneapolis, MN 55423<br>612-861-3000<br>Name, Address and Phone Number (if issued by Attorney as an Officer of the Court) | SEAL (if issued by Court Administration) |

EXHIBIT A

Please produce the following:

1. Employee travel records (Non rev/Airline Staff Discount) for Ms. Grazzini-Rucki/Ms. Grazzini that had been given as Guest Passes to friends or family from January 1, 2012 to present.

2. Employee travel records for Ms. Grazzini-Rucki/Ms. Grazzini relating to Registered Guests from January 1, 2012 to present.

STATE OF MINNESOTA )

) SS

COUNTY OF Dakota )

(County where Affidavit signed)

I Michelle Lowney MacDonald, being sworn, state that that on October 22 2013

I received the following voice mail message, a true and correct copy of what I heard is below:

VOICE MESSAGE
DATE: OCTOBER 22, 2013; at 7:05 a.m. Central time.
FROM: Susan Somma US Airways, 480-693-5945;
TO: Attorney Michelle MacDonald's cell phone; voice mail; 612-554-0932.

*"Hi Ms. MacDonald, this is Susan Somma for US Airways, 480-693-5945. I tried to call you back yesterday; I really didn't understand your message yesterday. In any event I did call the court and the Judge told me the case is still... uh... in process and I was told to comply with the Subpoena, and I did produce the documents yesterday afternoon, just to let you know. So the documents have been produced at the direction of the judge, as normally I have to comply with the subpoena. If you have any questions give me a call back, 480-693-5945. Thank you and have a great day."*

Dated: 10/30/13 [signature]

Signature (Sign only in front of notary public or court administrator.)

Name: Michelle L. MacDonald attorney

Sworn/affirmed before me this

Address: 1069 S. Robert St

______ day of ________, ______.

City/State/Zip: W. St Paul, MN 55118

____________________

Telephone: (651) 222-4400

Notary Public \ Deputy Court Administrator