```
 1                 UNITED STATES DISTRICT COURT

 2                   DISTRICT OF MINNESOTA

 3     ---------------------------------------------------------------

 4  Sandra Sue Grazzini-Rucki,        Case No. 13-cv-2477 (SRN/JSM)
    individually and behalf of
 5  her children, N.J.R., S.V.R.,
    G.J.R., N.G.R., J.P.R. on
 6  behalf of themselves and all
    others similarly situated,
 7
          Plaintiffs,
 8
      vs.
 9                                     St. Paul, Minnesota
    David L. Knutson,                  Courtroom 7B
10  an individual, et al.              January 10, 2014
                                       2:00 p.m.
11          Defendants.

12     ---------------------------------------------------------------

13          BEFORE THE HONORABLE SUSAN RICHARD NELSON

14            UNITED STATES DISTRICT COURT JUDGE

15

16        HEARING ON DEFENDANT'S MOTION TO DISMISS

17

18                       APPEARANCES

19  For the Plaintiff:       Michelle Lowney MacDonald, Esq.
                             Athena Hollins, Esq.
20                           MacDonald Law Firm, LLC
                             1069 S. Robert St.
21                           West St. Paul, MN 55118

22
    For the Defendant:       Alethea M. Huyser, Esq.
23                           Minnesota Attorney General's Office
                             445 Minnesota St., Ste. 1100
24                           St. Paul, MN 55101-2128

25
```

1                          I N D E X                    Page #:

2     Argument by Ms. Huyser................................ 3

3     Argument by Ms. MacDonald............................ 13

4     Response by Ms. Huyser............................... 47

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23    **DIGITAL RECORDING TRANSCRIBED BY:**
      Official Court Reporter:  Heather Schuetz, RMR, CRR, CCP
24                              U.S. Courthouse, Ste. 146
                                316 North Robert Street
25                              St. Paul, Minnesota 55101


      Heather A. Schuetz, RMR, CRR, CCP
      (651) 848-1223
      Heather_Schuetz@mnd.uscourts.gov

```
 1              P R O C E E D I N G S

 2                  IN OPEN COURT

 3          THE COURT:  We are here this afternoon on the matter

 4   of Sandra Sue Grazzini, is it Rucki or Rucki?  How do we say

 5   it?

 6          MS. MacDONALD:  Rucki.

 7          THE COURT:  Rucki, versus Judge David Knutson, et

 8   al.  This is civil file number 13-247.  I invite Counsel to

 9   stand, please, and note your appearances.

10          MS. MacDONALD:  Yes, Your Honor, my name is Michelle

11   Lowney McDonald Sheroda, and I'm the attorney for Sandra

12   Grazzini-Rucki and her five children.

13          THE COURT:  Good afternoon.

14          MS. HUYSER:  Alethea Huyser on behalf of David

15   Knutson.

16          THE COURT:  Very good.  We are here today to

17   consider Defendant Knutson's motion to dismiss or, in the

18   alternative, for summary judgment.

19          Ms. Huyser, you may come to the podium.

20          MS. HUYSER:  Thank you, Your Honor.  Plaintiff in

21   this case has brought claims against a State Court Judge based

22   on acts he took while presiding over a family law case in

23   State Court in which she was a litigant.  Because the acts

24   taken were judicial in nature and within the Court's

25   jurisdiction, judicial immunity bars Plaintiff's damages
```

1   claims.  In addition, Plaintiff's claims for declaratory and

2   injunctive relief are barred by the domestic relations

3   exception, are not permissible under the civil rights

4   statutes, cannot be obtained against a State employee in an

5   individual capacity, and are otherwise inappropriate.

6          At the outset, Your Honor, I would like to clarify

7   that the Defendants' arguments today are not intended to

8   suggest that a State Court litigant is wholly without redress

9   from State Court decisions.  Indeed, both the Federal and

10  State Court systems have well-established appellate procedures

11  for doing just that.  Rather, Defendant is simply pointing to

12  longstanding law which holds that this particular forum, in

13  other words filing a claim in Federal Court for damages and

14  other relief against a presiding State Court Judge, is an

15  inappropriate method of redress; and, as such, Defendants ask

16  that all claims be dismissed with prejudice.

17         As to factual background, most of the State's

18  District Court orders have been provided to the Court and

19  Defendants' brief sets forth that history.  In short, however,

20  in May 2011, Plaintiff obtained a non-contested divorce.  In

21  June 2011, her ex-husband moved the Court to reopen that

22  decree.  The Court eventually found that the decree was

23  entered under mistaken and/or fraudulent circumstances and

24  agreed to reopen.  The named Defendant, Judge Knutson, has

25  presided over the resulted State Court family law case.  As

1   the Plaintiff has pointed out, Dakota County typically doesn't

2   appoint a single Judge to a file as a matter of procedure.

3   However, it is the District's practice that when certain cases

4   require a more consistent hand, they will assign a Judge.

5          And for that reason, Judge (inaudible) has

6   assigned -- did assign Judge Knutson to this file.  And on

7   August 11th, 2011, a letter was issued to that effect.  This

8   family law case has been extensively litigated and lasted for

9   over two years in State Court.  It has resulted in a number of

10  appeals already and presumably will result in more, including

11  currently a Petition to the United States Supreme Court.

12         Plaintiff's primary focus appears to be a series of

13  orders that occurred in the fall of 2012 and are specifically

14  related to a property dissolution order and a temporary

15  custody order.  As to the first issue, the property

16  dissolution, that disposition was reached by the settlement of

17  the parties.  The Court's order is merely a formalization of

18  their agreement.  The temporary custody order was entered

19  following a request for and subsequent emergency telephone

20  hearing.  Plaintiff's attorney appeared at those hearings, as

21  did counsel for the father, and the Guardian ad Litem.  The

22  transcript has been submitted to the Court.  The order that

23  was entered was reviewed and approved by counsel for both

24  parties before it was entered.

25         Plaintiff is now bringing suit against Judge Knutson

1    based on his actions in Dakota County.  She's alleging damages

2    in excess of $300 million, and seeks injunctive and

3    declaratory relief.  Defendants ask that this case be

4    dismissed under Rule 12(b)(6) for lack of subject matter

5    jurisdiction or, in the alternative, under the summary

6    judgment standard.  A motion to dismiss for failure to state a

7    claim must be granted where the Complaint does not allege

8    sufficient facts to state a claim.  And although the Court

9    typically assumes the truth of allegations in the Complaint

10   for purposes of a Rule 12 motion, the Court is not precluded

11   from taking notice of items in the public record, and we ask

12   that the Court do so today.

13           Plaintiff's damages claims are clearly barred by

14   judicial immunity.  Judicial immunity is a long established

15   and absolute bar to all civil rights damages claims asserted

16   against Judges acting in their official capacities, including

17   those filed under 42 U.S.C. § 1983 and 1985.  There are, in

18   fact, only two very narrow exceptions to judicial immunity.

19   First, a Judge is not immune for non-judicial acts; and

20   second, immunity does not apply for actions taken in complete

21   absence of all jurisdiction.

22           As to the first exception, a "judicial act" is

23   defined as "one normally performed by the Judge;" it is also

24   indicated "where the complaining party is dealing with the

25   Judge in his judicial capacity."  Case law makes clear that

1    judicial immunity survives even allegations that the Judge's

2    actions were taken in error, were in excess of his authority,

3    or even if he's alleged to act with malice or bias.  In this

4    case, Judge Knutson has had no interaction with the Plaintiff

5    outside of the pending litigation matters in the courtroom.

6    And as such, he was interacting with them at all times in his

7    judicial capacity.

8            In addition, the actions taken by Judge Knutson --

9    which involved holding hearings, working with the parties,

10   issuing decisions, among other things -- are all very

11   quintessential judicial acts.  As such, the first exception

12   doesn't apply.  As to the second exception, the purpose -- for

13   the purposes of judicial immunity, jurisdiction is to be very

14   broadly construed.  The Court applies a clear absence of all

15   jurisdictional standard to define the jurisdictional exception

16   to judicial immunity, and that exception is intended to be

17   limited.  Indeed, the mere fact that Minnesota courts are

18   courts of general jurisdiction, and that because

19   jurisdiction -- that includes jurisdiction over family law

20   matters, Plaintiff cannot meet the exception.

21           Nonetheless, Plaintiff's response was largely

22   directed to this jurisdictional argument.  Plaintiff makes

23   arguments related to procedure and assertions that Judge

24   Knutson somehow precluded Child Protection jurisdiction.  As

25   is evident from Plaintiff's submissions, Plaintiff was filing

1    or involved in a fairly voluminous number of cases before the

2    Dakota County courts at the time in question and most of which

3    were related to her relationship with her ex-husband.

4          The Court attempted to consolidate the related

5    matters between the two parties.  And as Plaintiff's own brief

6    makes clear, there were certainly a number of matters over

7    which he didn't preside, nonetheless.  But Plaintiff fails to

8    explain why the act of consolidating these matters would

9    result in a clear absence of all jurisdiction.  Indeed, it is

10   my understanding that the procedure of consolidating such

11   cases is, while not typical, is certainly not extraordinary in

12   Dakota County.  And as our brief suggests, well-established

13   Supreme Court and Eighth Circuit precedent indicates that such

14   arguments do not meet that jurisdictional exception.

15         In addition, Plaintiff seems to construe this -- the

16   Court's order consolidating the matters as somehow preventing

17   a Child Protection matter.  My understanding, Your Honor, is

18   that that is a hypothetical question, as well as an inaccurate

19   one.  Regardless, Plaintiff misunderstands jurisdiction at

20   least as it is construed within the context of judicial

21   immunity.  The standard is whether a Judge is acting in clear

22   absence of all authority; it is not enough to merely argue

23   that the Judge was acting in excess of jurisdiction.

24         Because Dakota County has jurisdiction over family

25   law cases and that is the venue in which these cases were

1    filed, jurisdiction exists.  The cases cited by Plaintiff in

2    their brief are entirely inconsistent with this position.

3    Plaintiff has also sought injunctive and declaratory relief,

4    but that relief is also barred.  First and foremost, this case

5    is appropriate for dismissal under the domestic relations

6    exception --

7              THE COURT:  Let me interrupt you there a moment.

8    Doesn't judicial -- couldn't judicial immunity also bar the

9    claims for injunctive and declaratory relief?

10             MS. HUYSER:  My understanding is that judicial

11   immunity doesn't reach to claims of injunctive relief.

12             THE COURT:  Does not?

13             MS. HUYSER:  Does not.  Correct.

14             THE COURT:  Okay.  Go ahead.

15             MS. HUYSER:  However, it is our position that

16   domestic relations exception would.  The exception is one --

17   is created out of a recognition that State Courts are more

18   well-suited to determining family law matters and have at

19   their disposal a number of tools which make them more

20   well-suited to that issue.  And as such, the Supreme Court has

21   determined that it is a jurisdictional bar in most cases for

22   Federal Courts to weigh in to actions, the subject matter

23   which is divorce, alimony, child custody, or matters in which

24   those topics are inextricably intertwined.

25             This limitation was originally borne out of the

```
 1    statute related to diversity of citizenship, but it has been

 2    applied by the Supreme Court to cases involving Article III

 3    standing.  And these cases make clear that Federal Courts will

 4    refrain from involving themselves in matters pertaining to

 5    child custody and divorce.  Looking to the injunctive and

 6    declaratory relief sought here, the requests go straight to

 7    the orders entered in the State family law case related to

 8    custody and property dissolution.  And, indeed, given that

 9    Judge Knutson's interaction with the Plaintiff has been solely

10    limited to actions taken from the bench, that would be the

11    only factual predicate for this such relief.

12            In addition, the civil rights statutes, by their

13    plain language, do prohibit injunctive relief against

14    Judges who are acting in a judicial capacity.  And more

15    generically, Plaintiff has sued Judge Knutson in his

16    individual capacity.  Section 1983 does not provide for

17    injunctive relief against State employees acting in their

18    individual capacities.  And this is -- as I understand it -- I

19    actually don't know that there's any Eighth Circuit precedent

20    on this, but there is some well-established Seventh Circuit

21    precedent.  And the rationale, as I understand it, for this is

22    that because Section 1983 is predicated off facts that

23    indicate the individual was acting within the course and scope

24    of their employment, any injunctive relief would have to go to

25    their official capacities in order to be applicable under
```

1    Section 1983.  And so therefore you have to -- it has to be an

2    official capacity claim for injunctive relief.

3            If the Court has any further questions, I'd be happy

4    to answer them now.  Otherwise, I'll reserve my remaining time

5    for rebuttal.

6            THE COURT:  You also mentioned *Younger* abstention

7    and *Rooker Feldman* in your briefing.

8            MS. HUYSER:  I did.

9            THE COURT:  They're slightly different.  What do you

10   think is most applicable in this case?

11           MS. HUYSER:  I would have argued that *Younger*

12   abstention was.  However, the United States Supreme Court has

13   recently issued a decision that dramatically narrowed the

14   *Younger* abstention from established Eighth Circuit precedent

15   on that, and so they directly overturned an Eighth Circuit

16   case.  So, I think at this point, *Younger* abstention is no

17   longer applicable because it has been limited to civil

18   enforcement in criminal matters.

19           THE COURT:  What is that Supreme Court case?  Do you

20   have that --

21           MS. HUYSER:  It's cited in my reply brief.  It is

22   *Sprint Communications* --

23           THE COURT:  If it's in your reply, we're in good

24   shape.

25           MS. HUYSER:  It is in my reply, and I can give you

1    the cite here really quickly.

2              THE COURT:  Okay.

3              MS. HUYSER:  It's 134 S.Ct. 584, and it was just

4    handed down on December 10th.

5              THE COURT:  What's the name of it again?

6              MS. HUYSER:  *Sprint Communications v. Jacobs.*

7              THE COURT:  Okay.  And what about *Rooker Feldman*,

8    did you say?

9              MS. HUYSER:  So *Rooker Feldman* may apply to the

10   property dissolution in this case.  *Rooker Feldman*, of course,

11   in order to be applicable has to -- it has to be a concluded

12   State Court matter before the Federal Complaint was filed.  In

13   this case, the custody issues were clearly pending, as this

14   case was filed on the eve of the State Court trial.  The

15   property dissolution, however, had been finalized before that.

16             And I have to be honest, Your Honor, I'm not

17   entirely positive -- I believe that the 90 days for appeal on

18   that would have run without an appeal having been filed, so

19   *Rooker Feldman* may apply.  However, I do think that, you know,

20   the claims for injunctive and declaratory relief can be

21   probably more easily dealt with under the arguments I've set

22   forth for the Court today.

23             THE COURT:  Thank you very much.

24             MS. HUYSER:  Thank you.

25             THE COURT:  Ms. MacDonald.

```
1              MS. MacDONALD:  Your Honor, may it please the Court.
2     I'm Michelle Lowney MacDonald Shimota.  I'm representing
3     Sandra Grazzini-Rucki individually and on behalf of her five
4     children:  Nico, Samantha, Gianna, and -- I'm not -- I'm
5     sorry, Nico -- there's so many of them, I usually ask her.
6     Nico, Samantha, Gianna, Nia, and Gino.  And I just want to be
7     clear that there are facts in cases where judicial immunity
8     applies.  This is not one of those cases.
9              Sandra Grazzini-Rucki brought this civil rights case
10    on the basis that Judges do not have immunities to violate
11    constitutional and civil rights.  In fact, Judges are sworn to
12    uphold the Constitution of the United States and the State
13    Constitution, and immunities are not permission nor are they
14    to be viewed as permission to violate civil rights; for
15    example, by making orders and conducting court trials that are
16    designed and with the objective to violate rights.  To be
17    clear, Sandra Grazzini-Rucki was already divorced.  She was
18    already awarded custody.  She was already awarded property,
19    including the home where she had lived with her five children
20    for 14 years.  And she was awarded sole custody, and the
21    father was awarded parenting time as agreed upon.
22             Judges are not immune for non-judicial acts and also
23    they're not immune if there is no jurisdiction.  And I submit
24    to you today the acts complained of were not judicial acts.
25    I'll be surprised if anyone believes that the -- Judges have
```

1    authority to do what they did to this family.  And I also

2    submit to you that the Court, or Judge Knutson, had absolutely

3    no jurisdiction.

4              What are the acts complained of?  Okay.  What

5    happened was that there was a phone call; the Judge took a

6    phone call.  There was no pleadings filed or motion filed,

7    there was no drafting of it or service of it, there was no

8    hearing scheduled, there was no ability to respond to the

9    paperwork, there was no due process whatsoever.  The Judge

10   took a phone call and a conversation took place, just

11   chitchat.  And during the course of that phone call that

12   Ms. Grazzini-Rucki was not involved in, the Judge requested

13   one of the attorneys, officers of the Court, to prepare an

14   order and didn't even give the details of the order; just said

15   you guys work it out, get me an order.

16             And the very next day, an order was submitted by one

17   of the attorneys -- an officer of the Court -- and it was

18   signed word for word by Defendant David Knutson.  What was the

19   date of that order?  The date of that order was September 7th,

20   2012.  What day was it signed?  September 7th, 2012.  What day

21   was the notice of entry mailed from the Court?  September 7th,

22   2012.

23             What did that order require Sandra Grazzini-Rucki to

24   do?  Well, you see, she never saw it.  She got a phone call

25   the night before from one of the officers of the Court, one of

1    the attorneys that participated in that phone call, and she

2    was told what to do on September 7th.  She was told that an

3    order was coming, and here is what she was to do.  So, living

4    in a home owned solely by her, having raised her five children

5    in that home for the last 14 years, she was told that she

6    needed to leave her home and abandon her children there, and

7    she could have no contact with them whatsoever.  No contact at

8    their schools, no contact with anybody -- a third-party, or

9    she would be incarcerated.

10           That's what the order said.  But she was just told

11   that on the phone, and she was told she can't tell her kids

12   what's going on.  And to make matters worse, it was the first

13   week of school.  So, she had already gotten her five kids in

14   their three different schools.  And that morning, she drove

15   them to school and she went home and she was told she could

16   pack one suitcase -- because she didn't own it, she worked for

17   the airlines, and that's another job she's had since the

18   1980s -- same job and same home and same School District that

19   the kids have been living in, same doctors, same churches.

20   And those are the facts set forth in Sandra Grazzini-Rucki's

21   Affidavit.

22           And she was told she could take the suitcase,

23   because it was owned by the airlines, and she needed to pack

24   whatever she could in that suitcase and leave, now -- or she

25   would be arrested.  So, she left, and that was

1     September 7th -- I think I said 12th, I meant 7th -- 2012.

2     That order also said that a non-parent third-person was going

3     to have temporary sole custody of her children.  It also

4     applied to both parents so that the children could not be

5     contacted, nor could the parents contact, even though

6     third-parties, their own children.  That person was to move

7     into her home and care for her children, the home that she

8     owned.

9            So, I submit to you that that's not what Judges do.

10    In fact, in -- when we seek family justice, we are asking

11    Courts to not deprive our parental rights, not to deprive us

12    of our property, but to actually enforce the civil rights and

13    the constitutional rights to our children and our property

14    that we have.  And your children are fundamental rights;

15    they're like the air you breathe.  So, really you don't have

16    to go to court to get the rights; you give birth, you have

17    these fundamental constitutional rights and, you know, they're

18    just coate rights.

19           So, that was the act complained of.  And since that

20    time, that order has been in full force and effect until

21    September 11th of this year.  So, a year and a half later,

22    purportedly a custody trial was going to take place.  In the

23    meantime, two of the children ran away, and they're still

24    missing.  So comes the "custody trial," and I do the custody

25    trial in quotes because the kids weren't around.  And that

1   order remained in place until the custody trial.

2           And before the custody trial, when I became involved

3   in the case, I did a writ for extraordinary relief, a writ of

4   mandamus, after Defendant Knutson denied my constitutional

5   challenge and I asked that he vacate the order.  He had an

6   opportunity to vacate the order and did not.  In fact, things

7   got worse for Sandra Grazzini-Rucki and her children.  That

8   same day that I argued that the, uh, orders be vacated, I also

9   arranged and requested that the Court meet with the children,

10  and he did.  He met with them in chambers.

11          And now he calls that meeting a "listening session."

12  And I don't think Judges -- correct me if I'm wrong -- but I

13  don't think a Judge is -- that's a judicial act to conduct a

14  listening session where the children reported to him that they

15  wanted to go back to their mother.  They did not know what was

16  going on.  They reported to him what they had witnessed, abuse

17  of themselves and abuse to their mother by their father.  And

18  in that listening session, it can only be described as a

19  Judge -- as he spoke to each child, he got more and more

20  coercive.  And he said, you will follow any order that I might

21  make, decide on.

22          And promptly, I -- Ms. Grazzini-Rucki had an IFP at

23  the time.  I thought that was good; it was signed by a

24  different Judge, by the way.  So, I ordered the transcript and

25  I ordered -- of the meeting, because it was all on

```
 1    transcript -- and I was promised that transcript until I
 2    was -- happened to be at the courthouse and asked for it and
 3    all of a sudden -- or, I'm at the courthouse, calling the
 4    clerk saying, I'm here to pick up the transcript, and orders
 5    kind of come through, one of them sealing the transcript, and
 6    the other denying her her IFP.  And those orders were signed
 7    by Judge Knutson.
 8              So, then -- so, that day Judge David Knutson made
 9    Ms. Grazzini-Rucki homeless on September 7th, 2012.  David
10    Knutson held a custody trial before the custody trial, while
11    my writ of extraordinary relief was pending and after I
12    notified everyone involved that I would be filing with the
13    Supreme Court.  And then I notified I'd be filing with the
14    United States Supreme Court, Washington D.C. -- and that has
15    been filed and accepted for filing -- not the writ yet -- a --
16    he -- I appeared at the trial.  That was September 11th.  And
17    I notified Defendant David Knutson the day before of that I
18    had filed this action with your court relating to
19    Ms. Grazzini-Rucki's and her family's civil rights violations.
20              And I asked him to remove himself, and I asked him
21    to restore the family.  And he insisted on proceeding, so --
22    and that was -- and so I proceeded.  And I put
23    Ms. Grazzini-Rucki on the stand, and she testified.  She
24    testified to roughly the things in her Affidavit, that she had
25    been living in the same home for 14 years, same School
```

1    Districts with the kids for 14 years, same churches.  They all

2    had their sacraments, same doctors.  Two of the children had

3    special schooling that they had to do.

4           And she testified to criminal activity, in

5    particular an incident where Mr. David Rucki sat the family

6    down at the kitchen table -- the children and herself -- and

7    said he had a gun for -- and a bullet for each of them.

8    When -- and that was the course of her testimony.  I just want

9    to say that she didn't say anything other than that negative

10   about their father.  The next day was trial day two.  It was

11   canceled on MNCIS, which is the Minnesota State Court system.

12   I appeared, and Defendant David Knutson had asked that we be

13   there at 8:30.  It hadn't started.

14          At some point, David Knutson got on the bench and

15   commenced day two of the trial, and I said the same thing.  I

16   said, have you seen the civil rights action that I filed in

17   U.S. District Court, District of Minnesota?  And he said

18   something like, yes.  And I said, could you please restore

19   this family or -- and then remove yourself.  And he said, no,

20   we are proceeding with this trial.  And he said he could be

21   impartial and neutral.  I asked him that question, as well, as

22   I recall.

23          So, we proceeded with day two of the trial, and I

24   was -- it was the second day of trial.  I had completed my

25   case.  And in the middle of the trial, about 10:00 a.m. or so,

1    I was looking for a 2011 calendar so that I could go back to

2    2011 and cross-examine a witness.  And I understood that

3    Defendant David Knutson recognized that I was looking for a

4    calendar, and he said, well, you can go look for a calendar;

5    it's a good time to take our morning break.  And he got off

6    the bench and left the room.

7            At that point, deputies approached me and my client,

8    Sandra Grazzini-Rucki, and took me in the back.  And basically

9    they were, you know, pushing me ahead of themselves.  And they

10   took me in the back and had me arrested, where they -- and I

11   never -- I was asking, what did I do.  I was not informed.

12   And they had me -- took off my jewelry and my glasses and my

13   shoes, and they put me in handcuffs and they put me in the

14   cell.

15           And I was in shock, wanting to get back -- I mean, I

16   was in shock, crying for my husband, Tom.  And at one point,

17   they came to me and -- because I was not resisting, they

18   brought a wheelchair and wheeled me back into the courtroom.

19   And it was -- it felt like a long time after that.  It

20   certainly wasn't a short break.  And they wheeled me into the

21   courtroom.  And no one was on the bench at this point, and

22   Defendant David Knutson came on the bench and he said

23   something to the effect of, something must have happened

24   during the break.

25           And he said something to the effect of, well, you

```
 1   can call your office.  He said, for the record -- I recall him
 2   saying that, your client is gone, all of your boxes have gone,
 3   all of her supporters are gone.  So, I was sitting there in
 4   handcuffs before an empty table.  I think I remember seeing
 5   one piece of paper and a pen.  And he said, you could probably
 6   call your office and have them returned.  And I said, they
 7   took my cellphone.  And he said something to the effect of,
 8   well, we're going to proceed; this is a custody trial about
 9   the kids -- so, it was over my objection that he proceeded
10   with me in this humiliating state.
11          And it's -- you know, unthinkable, as an officer of
12   the Court, that -- but I did what I needed to do.  In fact,
13   this is -- at this point, David Rucki got on the stand, and he
14   really did not say anything negative about the mother either.
15   He basically I remember him saying something to the effect of,
16   you know, I used to be in that van, too, when we'd drive the
17   kids around.  He didn't discredit her testimony in any way.
18   But he did say that when he was sitting around the table that
19   day, he threatened to kill himself; he didn't threaten the
20   whole family.
21          So, that was the gist of the -- the argument.  So,
22   at the -- there was various witnesses and, at one point, the
23   trial concluded.  Again, I'm still in handcuffs, no glasses,
24   no paper, no pen, no client, and this custody trial about
25   children that are missing and runaways since April.  And he
```

1   looked at the attorney for the Guardian and he said, do you

2   rest your case?  And the attorney for the Guardian said yes.

3   And he looked at the attorney for the other parent, and he

4   said do you rest your case, and that attorney said yes.  And

5   then he looked me straight in the eye and he said, I will take

6   the matter under advisement.  And then he left the bench.

7        Now, at this point I have no one behind me, no

8   supporters behind me, and it's pretty much an empty courtroom

9   except for the Guardian, the attorney, and the other parent

10   and the attorney.  And they wheel me to an overnight process

11   of -- it wasn't a very pleasant process.  The point I'm making

12   here about -- is that that's the second act we complain of,

13   that they're saying is a judicial act.  You can say

14   Judges have hearings, but this was a telephone conference, the

15   initial act of the September 7th, 2012.  And you can say

16   Judges have trial, but they don't have trials about custody of

17   children that are missing, nor do they have trials while an

18   attorney has been placed under arrest.  So, that's another

19   violation of Sandra Grazzini-Rucki and her family's civil

20   rights.

21        When I -- you wonder, what is this, why -- what's

22   the motive?  And up until this September 7th, 2012,

23   Ms. Grazzini-Rucki was caring for her children for 14 years in

24   their home.  She has no criminal record, no criminal activity,

25   no parking tickets, no speeding tickets.  And she has just --

1  she just was a mother, raising her children.  Now, in the

2  file, Your Honor, we talk about -- you talk about judicial

3  immunities, judicial acts.  And I submit to you Defendant

4  David Knutson does not have judicial immunities for those

5  judicial acts I just described to you.

6          Number one, having a telephone conference and

7  signing word for word a document that the officer of the

8  Court sends to him that's implemented immediately that day

9  that removes a mother from her life, seizes her from all of

10  her property and her home and her children; nor is it a

11  judicial act to have a trial -- a custody trial with the

12  children missing and an attorney in handcuffs with no parent,

13  no client to represent, and no paper, no files, no shoes.  So,

14  I investigated further.  And, Your Honor, I provided you with

15  the Affidavit of Attorney, facts the Defendant usurped court

16  files and improper assignments.  And I analyzed this as best I

17  could in an Affidavit.  But I submit to you that we have

18  substantial evidence, clear and convincing evidence, that

19  various files, including the dissolution file, were usurped,

20  that there was improper assignment of cases to Defendant David

21  Knutson.

22          So, let's start with the divorce case.  The divorce

23  case, Your Honor, as I said before, was -- the divorce was

24  concluded.  She was already divorced, already had custody of

25  her children.  The father already had parenting time, and the

1   home had been awarded to her.  There was even an order -- it's

2   called a Summary Real Estate Disposition -- that disposed of

3   the property to her 100 percent.  So, that home that they had

4   lived in for 14 years was awarded to her.

5         At some point, there was -- that -- when you look at

6   the file, Your Honor, there was other Judges assigned, and

7   then at some point Judge Knutson, before the case was even

8   reopened, filed an order appointing a Guardian in two cases,

9   in an Order for Protection case and in a dissolution case.

10  Now, I need to mention that Sandra Grazzini-Rucki had an Order

11  for Protection signed by another Judge that was in place for

12  two years.  She also had filed an Order for Protection on

13  behalf of her children around the same time.  Her Order for

14  Protection was in place, and it was in place for a number of

15  months, all the way until January of 2013.

16        So, at some point an order appears, and a Guardian

17  order is in the Order for Protection file and a Guardian order

18  is in the dissolution file, and that's signed by Defendant

19  David Knutson.  And that Guardian order appointed the Guardian

20  as a permissive Guardian, like there's no abuse, there's no

21  problems here, we're just going to appoint a Guardian.  And it

22  was very limited.  The Guardian was not a party to the action,

23  and it was very limited to parenting time.  It said "permanent

24  parenting time," something like that.  You have it in your

25  file.

```
 1              And it wasn't until after that there was an
 2     evidentiary hearing before David Knutson, that
 3     Ms. Grazzini-Rucki's attorney had dropped -- there was -- had
 4     dropped her -- and I can explain that that attorney was paid
 5     handsomely a flat rate and dropped her or somehow didn't show
 6     up for the hearing -- and she, with an Order for Protection in
 7     place, had to cross-examine and do the Judge thing.  She asked
 8     for a continuance, and it was denied.  So, I submit to you
 9     that that's not a judicial act either, but that's another
10     story.
11              The reason I say he "usurped" is that this Guardian
12     order appeared and the -- a different Judge had ordered that
13     an evidentiary hearing to take place, and he inserted himself
14     into this file to preside over this evidentiary hearing.  And
15     then, of course, as I explained, Ms. Grazzini-Rucki was pro se
16     and had an Order for Protection in place and handled that by
17     herself.  Needless to say, it was reopened.  What else
18     happened?  What other cases were going on all at the same
19     time?
20              We have -- as I told you, there was an Order for
21     Protection, it was granted by a different Judge.  Defendant
22     David Knutson undertook that file, usurped that case file, and
23     dismissed the Order for Protection several months later.  So,
24     there's an order for dismissal signed by him.  And then there
25     is, even though what I found was a letter where he was only
```

```
 1    assigned to the divorce case, where the Order for Protection
 2    was crossed out, that case -- because I know how these -- you
 3    don't get -- contrary to what Counsel says, I know how things
 4    operate in Dakota County, and I think I provided you with
 5    evidence that it's random assignments.  I also researched that
 6    the Chief Judge assigns cases, so Judges -- it's -- Your
 7    Honor -- I know you know this, but just like litigants can't
 8    come in, have 19 Judges to choose from, and say, I want that
 9    one; Judges can't come in and say, I want that case, and, oh,
10    I'll take this case, and so on and so forth.
11            So, he --
12            THE COURT:  Ms. MacDonald, let me just interrupt you
13    a moment.  What Eighth Circuit authority are you relying on
14    here as the basis of your claims?
15            MS. MacDONALD:  The Eighth Circuit authority as the
16    basis of my claims for civil rights?
17            THE COURT:  Yeah.  What Eighth Circuit authority do
18    you have that permits a case like this against a sitting State
19    Court Judge to proceed?
20            MS. MacDONALD:  So, I don't --
21            THE COURT:  I'm bound, of course, by Eighth Circuit
22    authority.  So I'm wondering what Eighth Circuit authority you
23    are citing in support of your position that you have
24    adequately articulated a claim in your Complaint under *Iqbal*
25    *Twombly*.
```

```
 1            MS. MacDONALD:  It's the -- under Iqbal Twombly?
 2    Well, again, I'm -- I've asserted various facts.  I --
 3            THE COURT:  I'm just looking for your legal
 4    authority.
 5            MS. MacDONALD:  Legal authority.  It's a civil
 6    rights Complaint, U.S.C. 1983 --
 7            THE COURT:  Right, I got that.  How about cases
 8    under -- in the Eighth Circuit which have addressed these very
 9    questions?
10            MS. MacDONALD:  The very questions of judicial
11    immunity?
12            THE COURT:  Yeah, that -- to start with, yep.
13            MS. MacDONALD:  Okay.  There are two in my brief.  I
14    mean, judicial immunity, that's been addressed by the United
15    States Supreme Court, so I provided you with a number of
16    cases.  I don't know that I needed to distinguish between the
17    Eighth Circuit and other Circuits, but if you --
18            THE COURT:  Well, of course in Federal Court we're
19    bound by our Circuits, by the United States Supreme Court, as
20    well.  So, I'm wondering if you are aware of any case within
21    the Eighth Circuit which binds this Court which would permit,
22    under Iqbal Twombly, this Complaint to proceed?
23            MS. MacDONALD:  I don't know.  I provided you with
24    cases.  If there isn't an Eighth Circuit one in there --
25    again, the motion to dismiss is about judicial immunities, and
```

1    so I provided you with various cases, including United States,

2    you know, Supreme Court case where there was a four -- it was

3    years ago, but there was a 4-3 decision.  And it was -- you

4    know, I provided you with the dissenting position.

5          But I do want to finish, because it's really, really

6    important because a Judge doesn't have jurisdiction if he

7    usurps files.  And I think pursuant to *Iqbal Twombly*, I have a

8    very detailed Affidavit which explains factually, to get us to

9    the next level, the usurpation.  Your Honor, not only did he

10   improperly assign himself to cases, to -- I said the divorce

11   case; I also explained that he put himself on the Order for

12   Protection file and dismissed that.  He also assigned his

13   cases to -- there were four, I believe, criminal matters

14   against David Rucki that he became assigned to.

15         So, the *State versus David Rucki* cases, he took on,

16   and he dismissed those cases.  He dismissed two of the

17   violations of her Order for Protection after assigning

18   himself, and he also dismissed a contempt, as well.  So, not

19   only was he taking over cases that involved the divorce

20   between the parties, but he took over the Order for Protection

21   case.  And he also took over cases where the State of

22   Minnesota had charged Mr. Rucki with criminal -- with crimes,

23   and he dismissed those.  And you'll note the ones that he did

24   not dismiss were essentially presided over by other Judges in

25   other counties.  So, I provided an Affidavit with the various

1    criminal convictions, if you will, of David Rucki.

2              Also, Your Honor, there was a case -- there were

3    three letters that I found -- they were all identical -- where

4    Lakeville police faxed a letter to the Court Administrator,

5    Carolyn Renn, requesting a citation that an Order for

6    Protection be voided and that the citation, quote, be deleted

7    and that no data be entered on the MNCIS court system.  So,

8    there were letters tucked away in files where police officers

9    had written to the Court Administrator relating to other

10   violations that they would just be voided.

11             THE COURT:  And what is that evidence of?

12             MS. MacDONALD:  Okay.  It's evidence of -- well,

13   that we need an investigation.  But first of all, I don't know

14   that police have the authority to write to the Court

15   Administrator after they have a domestic abuse violation and

16   say that they're going to be voided and not be on the court

17   system at all.

18             THE COURT:  But I don't know what that has to do

19   with this case.  You need to limit yourself to claims you have

20   against the Judge.

21             MS. MacDONALD:  And the claims against -- well, Your

22   Honor, the importance of the improper assignment is that David

23   Knutson doesn't have jurisdiction if he wasn't properly

24   assigned to cases --

25             THE COURT:  But we don't know if it's proper or not,

1    do we.  We have no idea --

2         MS. MacDONALD:  That's what we need to investigate.

3    We know that it was illegal because the statute -- as I

4    explained in my paperwork, the statute provides that the Chief

5    Judge assigns cases.  And I even gave you a letter from the

6    Chief Judge that explains how cases are assigned.  And David

7    Knutson, the way -- David Knutson assigned himself to cases,

8    and he also made orders that he was going to be assigned to

9    cases that involved the Sandra Grazzini-Rucki or David Rucki

10   whatsoever.  In fact, Your Honor, what he did was he actually

11   assigned himself to a case -- here's how this one went --

12   where someone had sued Sandra Grazzini-Rucki.  So, David Rucki

13   wasn't even involved in the case.  Sandra Grazzini-Rucki was

14   sued by other individuals who were David Rucki's parents, and

15   he entered the case and made a judgment against Sandra

16   Grazzini-Rucki.

17        He also, when another Judge was assigned to a case

18   that Sandra Grazzini-Rucki had served pro se against a number

19   of other individuals -- again, not including David Rucki --

20   what happened was he just entered the case just to deny an

21   IFP -- an *in forma pauperis* -- so that she was denied the

22   funds to file the case.  And then another case -- attorney --

23   another Judge just took the case.  So, he just entered the

24   case, didn't sign the IFP, she couldn't file her pleadings,

25   and then another Judge proceeded with this case and proceeded

1   to dismiss the case.

2            THE COURT:  Well, it seems to me, then, your

3   recourse is hardly a 1983 case in Federal Court but rather a

4   complaint to the Chief Judge of the District that you believe

5   that the assignments are not fairly made.

6            MS. MacDONALD:  But what does that do about the

7   Judge's civil rights violations?  This is a 1983 action

8   against Sandra Grazzini-Rucki and our client.

9            THE COURT:  Well, again, this is being done in his

10  official capacity as a Judge, and these only have to do with

11  official proceedings.  And you probably don't even have a

12  recourse about the way a court assigns its cases.  You

13  wouldn't in Federal Court; the way we assign our cases doesn't

14  provide some private recourse.  But you could certainly

15  complain to the Chief Judge if you thought it was --

16            MS. MacDONALD:  I would -- complain to the Chief

17  Judge?  What's done is done.  I'm just saying that it's

18  illegal.  There's a statute that says that the Chief Judges

19  assign cases.  And Defendant David Knutson started assigning

20  himself to all -- any case that involved Sandra

21  Grazzini-Rucki, including, Your Honor, trying to usurp cases

22  in other counties where there were arguments made that he

23  should be the Judge and that case should come back to Dakota

24  County.  So, I just want you to get the impact of that.

25            This is not a complaint about a custody order

```
 1    because immunity -- immunities -- Judges have immunities.  I

 2    mean, you can't just go around complaining that you didn't get

 3    enough custody or that you, you know, should have gotten a

 4    better property settlement and -- or that you didn't get

 5    enough support or paid too much support.  So, that's not what

 6    this is.  This is not any -- we're not trying to get a

 7    different result.  And nor does the -- do the -- does the

 8    Rooker Feldman even apply here, because in State Court, Your

 9    Honor, we have just -- what I've done is petitioned to -- for

10    a writ.  So, I -- you know, she's -- it's not that I'm

11    appealing that based on the -- any type of erroneous decision.

12    It's a writ of extraordinary relief.

13            And what the importance and the impact of the fact

14    that he assigned himself to various cases and improperly --

15    case assignments is huge, Your Honor.  It means he has no

16    jurisdiction because you can't -- that's one of the reasons,

17    because you can't just walk into a courthouse and say, what

18    you got on Sandra Grazzini-Rucki and David Rucki today, make

19    sure I'm on that case.  And I provided you with evidence --

20    and this is just the surface.  I mean, we're entitled to

21    discovery to see what was going on, but I provided you with

22    evidence that that's what took place.

23            So, if it's an administrative act -- and there are

24    certainly cases on that -- if he's started to administer by

25    taking on and usurping files and actually -- and I have the
```

```
 1   facts to conclude that he usurped files, that's the Iqbal
 2   Twombly.  I've set forth for you all of the facts.  Then he
 3   has absolutely no jurisdiction, because otherwise our system
 4   doesn't -- it would be nonsensical because either a Judge
 5   could just come in and start taking cases and assigning
 6   himself to cases.  So, what he -- by -- he broke the law,
 7   essentially.
 8           And even the letters that I provided relating to the
 9   way -- the random assignments that they do in Dakota County --
10   by "random," I mean that any time a case is filed or a motion
11   is filed -- so, I talked with the Court calendar clerk; they
12   have 19 Judges, and she goes down the line and creates the
13   calendar.  So, even -- you could have one case in Dakota
14   County that's not assigned -- it's assigned to the first file,
15   and then you can have another motion and another motion and
16   each motion can be a different Judge.  That's how Dakota
17   County operates --
18           THE COURT:  Ordinarily, but there are examples of
19   cases in Dakota County, when I was a practicing lawyer, I know
20   of cases in Dakota County where, for various reasons, a case
21   will be assigned permanently to one Judge, anything related to
22   the case.  So, any other sorts of motions or claims that are
23   related -- say to the custody or property rights of these
24   people -- might, in fact, be properly assigned under the law
25   to one Judge.
```

1            MS. MacDONALD:  One case might be properly assigned

2    to one Judge.  And in this case, we have a situation where the

3    State of Minnesota brought charges against one of the parties,

4    David Rucki, and he assigned himself to those cases.  So, how

5    do you explain that?  It's unimaginable that the Chief Judge

6    would decide to just assign David Rucki -- any case involving

7    David Rucki or Sandra Grazzini-Rucki, even if somebody gets

8    criminally charged, to one Judge.  What he created was his own

9    Grazzini-Rucki forum.  And even today, if something was

10   filed -- probably in any county -- there would be arguments

11   made that that would be -- have to be before David Knutson.

12           So, how is that jurisdiction?  It's not.  If you --

13           THE COURT:  Jurisdiction has to do with the

14   authority of that Court to rule in a particular area, and

15   there's no doubt that the Dakota County court, through any of

16   its Judges, has jurisdiction over any of the matters that

17   you've identified.  You're not talking about jurisdiction.

18   What you're arguing is there was some shenanigans or some

19   improper assigning of cases to one Judge.  Are you familiar

20   anywhere in the country with a 1983 claim that has succeeded

21   in Federal Court in any jurisdiction based on that sort of

22   allegedly improper assignment of cases?

23           MS. MacDONALD:  It's -- no.  I don't have to.  I

24   didn't think I had to find a case where Judges are exactly

25   identical to this one.  This is a different case.  You -- Your

```
1   Honor, you have to file a case to even have the Court have

2   jurisdiction, file and serve.  And even in any case, you get

3   an automatic removal within 10 days once you find out a Judge

4   has been assigned.  So, I -- it's very important, Your Honor,

5   that you understand that if there was an improper

6   assignment -- and I'm not -- there's no -- complaint about it;

7   this is what happened to orchestrate what ended up happening

8   to Sandra, because the trial that I explained to you about,

9   what ended up happening there after he took the matter under

10  advisement, Your Honor, is that he made an order pretty much

11  not even relaxing the original order of September 7th.

12          He made an order on September -- on November 25th

13  that terminated Ms. Grazzini-Rucki's custodial rights.  So,

14  that order, Your Honor, was filed with you before Sandra

15  Grazzini-Rucki and I ever saw it.  It was actually filed as an

16  exhibit in this case.  Part of the usurping, as well, Your

17  Honor, is the fact that Scott County, Ms. Grazzini-Rucki had a

18  pending harassment restraining order proceeding.  It had

19  started off as an Order for Protection and he attempted,

20  though an officer of the Court, to -- and there's paperwork

21  and everything -- to have that case heard before him.

22          So, the -- there was kind of a pretended omniscient,

23  omnipresence that he thought he could -- any case he could get

24  control of and reel in relating to this family, or even if

25  somebody was sued by one of the parties or they sued them --
```

1    let's just reel it in.  And I submit to you, Your Honor -- and

2    I submitted to you in an Affidavit -- that there were numerous

3    other cases that Defendant, David Knutson, wasn't on where

4    there were convictions.  So, I think I -- so I just want you

5    to understand the importance, and I believe you do, of

6    improper assignments because if a statute, a Minnesota statute

7    says that the Chief Judge makes assignments of Judges and

8    that's the law.  And then one of the Judges -- one of the 19

9    Judges decides that he's going to hand pick which cases and

10   even make orders that he's going to assign himself, he is

11   doing an assignment function which is not a judicial function.

12   And he loses all jurisdiction and thus all immunities by doing

13   that.  That's one of the reasons.  And that is why -- you

14   know, that's one of the reasons why we need to go forward with

15   this case.

16          Also, Your Honor, when we talk about civil rights,

17   when he improperly assigned himself, he created his own global

18   forum.  And as I said earlier, in a pretended effort to be

19   omniscient and omnipresent relating to the parties and to keep

20   matters under his control, I believe Ms. Grazzini-Rucki's

21   Affidavit indicated the various court cases in other counties

22   where -- that Judge Knutson was not involved in where the --

23   there were convictions.

24          For example -- oh, another important thing I want to

25   say is that by assigning himself to all of the cases that he

1   could have general jurisdiction on, he precluded Juvenile

2   Court Child Protection for these children.  I repeat:  By

3   assigning himself -- which I provided evidence just scratching

4   the surface that that happened -- he precluded Juvenile Court

5   jurisdiction for these children.  He could not be a Judge

6   presiding over Child Protection or Juvenile Court, and if he

7   did move the case to Juvenile Court, all actions in the other

8   court, the Family Court, would have been stayed.  So, that's

9   the importance, and that is conceivably why children are still

10  missing since April.  And it doesn't seem like anybody is

11  taking any action about it.

12          In fact, the custody order that he filed terminating

13  Ms. Grazzini-Rucki's custody rights for no reason -- because I

14  explained to you what the parents testified to -- that order

15  with respect to the missing children finally places custody in

16  a parent -- because, as I told you, there was no -- that's

17  another thing, Your Honor.  You can only have two parties to a

18  divorce.  There was no third-party custody action.  So, by

19  ordering that a non-parent have custody, he brought the kids

20  out of his jurisdiction because he didn't have jurisdiction at

21  all over the non-parent.  He had no jurisdiction over the

22  non-parent, none, because the non-parent was a non-party.  So

23  he didn't have jurisdiction.

24          So, anyway, I provided a case, Supreme Court of

25  Minnesota, where in 1944 -- and I want to get to how, you

```
 1   know, how -- I think what you're telling me is he has general
 2   jurisdiction -- you know, Judges do custody orders all the
 3   time, they do property orders all the time, there's eviction
 4   proceedings that evict them out of their house, there's
 5   Juvenile Court proceedings, I guess, that these children
 6   weren't able to be in it where they go in foster care and
 7   whatnot -- so, you know, that's what we do.  Well, I submit to
 8   you, Your Honor, that, no, that's not -- the Court doesn't
 9   have general jurisdiction.  There was no law that I can
10   distinguish that would allow a Court to do this.  And first of
11   all, you have to have some kind of a due process, and there
12   was none.
13         Where is the due process in a phone call and in an
14   order that says, by noon on September 7th, signed on
15   September 7th, you are to abandon your children and your
16   property, have no contact with them even though third-parties,
17   or be incarcerated --
18         THE COURT:  Well, then you appeal the order.  You
19   disagree with the order, so you appeal the order.
20         MS. MacDONALD:  So you appeal the order.  And what I
21   did was a Petition for writ of mandamus.  That's in the United
22   States Supreme Court right now.
23         Again, Your Honor, back to what I was trying to
24   explain as I brought that piece in, you can't just order -- go
25   around ordering a deprivation of property and custody of
```

children.  You just can't.  There was -- you can't.  And this
is why, Your Honor.

          In 1944, in the case of *Theide versus Town of
Scandia Valley*, a woman, her husband, and their six children
were forcibly removed from their home in subzero weather by
the Sheriff and forced to return to their legal settlement in
another town for the purpose of obtaining poor relief.  The
Sheriff acted pursuant to statutes and removed the family.
So, in this case there was a statute that allowed the family
to be removed from their home and be placed in another home in
order to obtain poor relief, which I believe is welfare.  The
Minnesota Court found that the statute read counter to the
fundamental law and thus could not be construed by a Judge to
permit the action.

          The Court stated, and I quote, "The entire social
and political structure of America rests upon the cornerstone
that all men have certain rights which are inherent and
unalienable.  Among these are the right to be protected in
life, liberty, and the pursuit of happiness; the right to
acquire, possess, and enjoy property; and the right to
establish a home and family relations, all under equal and
impartial laws which govern the whole community and each
member thereof; the rights, privileges, and immunities of
citizens existing, not withstanding there is no specific
enumeration thereof in the State Constitution."

1          So, Your Honor, I am not aware and I don't think

2     Your Honor is aware of any statutes in the United States that

3     allows a parent to be forcibly removed from her home and

4     children in circumstances like the Grazzini-Rucki case.  And

5     if such law did exist, a Court is not obligated -- is

6     obligated to -- not to construe it to allow such violations of

7     fundamental law.  And that case is cited, Your Honor, in the

8     Hamline Law Review Volume 7, Number 1, January 1984, the

9     Minnesota Bill of Rights:  Wrapt in the Old Miasmal Mist.  And

10    that's by Terrance J. Fleming and Jack Nordby.

11         So, you see, Your Honor, even if there was a law

12    that said, you know, in one day, I could -- a law that said

13    pursuant to a phone call, I can sign something that's

14    implemented immediately that day or you'll be incarcerated and

15    the law -- the Judges are not supposed to interpret it that

16    way.  They're supposed to interpret it not to do that, no

17    matter what, because it violates the fundamental law.  So, by

18    this Judge's actions -- and I just want to be clear, Your

19    Honor, he doesn't have judicial immunity.  Judges are not

20    immune from violating constitutional and civil rights.

21         That's the basis that I brought this case on, and

22    it's their burden to show that he has immunity for what he

23    did.  And I submit to you, he doesn't have immunities.  When

24    we talk about Judge immunities as if they can do -- as long as

25    they're in a robe, that they can violate -- that's the whole

1    color of law, right?  That's the whole color of law that

2    you're -- you're -- you're either wearing a robe or a uniform

3    and you perform an act, that's color of law.  So, sometimes

4    it's hard to see, but that means that because he -- just

5    because you're wearing a robe and have -- you are a Judge or

6    just because you are wearing a uniform and are a police

7    officer on duty or relieving yourself from on duty, doesn't

8    mean you can go around violating civil and constitutional

9    rights and to this extent.

10            I explained also, Your Honor, in my brief, that

11   Judges -- put another way, a Judge using his discretion can

12   and will make mistakes of fact and law, even in ordering the

13   death penalty, and be immune and rightly so.  If afterwards he

14   or she discovers or it's called to his attention that a civil

15   rights violation has occurred by his own directive, he must

16   first be judicial enough and practical enough to even

17   recognize it, and then be free to repair his error as

18   accountability for conferred immunities and stand down rather

19   than stubbornly advocating ongoing, persistent violations, or

20   designing forums and protracting litigation to justify.

21            So, Defendant David Knutson's spacious argument that

22   he's immune indicates wrong thinking.  Even *Stump*, where a

23   Judge granted a Petition 30 years ago to have -- by a mother

24   to have a minor child sterilized, there was a Petition.  And

25   it's unlikely that Judge Stump, having been granted immunity

```
 1    by the highest court in the land, the United States Supreme

 2    Court -- and as I explained, that was a 4-3 decision 30 years

 3    ago now when orders were typewritten and not just e-filed.

 4    So, imagine the damage that can be done with the push of a

 5    button now, e-filing, e-service.

 6              It's unlikely Judge Stump, having been granted

 7    immunity by the highest court in the land, would feel free to

 8    grant any Petition put in front of him because he had immunity

 9    for granting an egregious one.  Immunity for a mistaken error

10    is not the equivalent of ongoing permission or legal authority

11    for routine violations or the liberty of granting Petitions

12    for sterilization or anything short of that by virtue of

13    holding a judicial office.  With this attitude, there is no

14    accountability or recompense to the violated citizens, and

15    Judges would feel free to be Gods of their own forums, ruling

16    any which way they feel or not ruling at all if it serves

17    their whim.

18              And, Your Honor, the problem is much worse when the

19    personal jurisdiction of the Court over the parties is wide

20    and increasingly intimate into people's lives in forums like

21    Family Court where the power retained by the law and Judges

22    over the lives, finances, property, children, and all personal

23    activity of the litigants who come under a Judge's rule is

24    virtually boundless.  The law seems to grant

25    Judges jurisdiction with no immediate oversight to review and
```

1    the awesome power to control every aspect of the lives of

2    families and children pulled into that forum and at the mercy

3    of the Judge.  Attorneys appearing before such Judges may be

4    reluctant to pursue anything that would put them in a bad

5    light, as a Judge can impact an attorney's career since their

6    discretion in the moment to rule one way or another in a case

7    is relatively arbitrary.

8            Appellate review, as you pointed out, takes months

9    to years, during which time any damage done becomes permanent.

10   Here, Ms. Grazzini-Rucki has not had time with her children

11   since September 7th, 2012.  And in the final order, the same

12   thing.  And then I -- as I mentioned, we did do a writ of

13   mandamus; so, right from the start, we asked for an

14   extraordinary writ because of what we recognized as a civil

15   rights violation.  Mandamus actions are rendered ineffectual

16   by the same dynamic as appeals.  Even if some kind of

17   oversight is achieved, the damage cannot be undone, and the

18   supposed relief becomes nominal and academic.

19           And the other avenue that an aggrieved party usually

20   has to try to -- is to try to detach when it comes to Judges.

21   But even then they may fail to attach from their adversaries,

22   and the Family Court actions continue involuntarily.  So, this

23   is a weak and -- victory, with such a devastating cost that's

24   tantamount to a defeat.  So, in this case, what would that

25   serve?  There's a civil rights violation here.  More and more

1    families are being forced into our legal system and thrust

2    into the courts whether they want to or not.  They find they

3    cannot afford attorneys and choose to go pro se in those

4    actions.

5              Now, here's where the direct interactions of the

6    litigants and the Judges is now more common, including direct

7    friction without pacifying, ingratiating, and the formalized

8    buffer that attorneys provide.  So, Defendant, as I want to

9    make clear, is being sued personally, not in his judicial

10   capacity.  And Defendant is held civilly liable as any other

11   person would be when they violate civil and constitutional

12   rights.  When Plaintiffs consider tyranny -- what Plaintiffs

13   consider tyranny should not be allowed to continue.

14             Defendant broke the law with improper assignments to

15   himself, ordering that, quote, "All court proceedings of any

16   type involving the parties in this case are blocked

17   exclusively to this Court and the undersigned Judge" on

18   February 1, 2012.  And in a couple of orders and any time they

19   were properly assigned, he got a hold of them somehow.

20   Defendant was required to police himself in a lawful and

21   effective manner in order to preserve and in light of judicial

22   immunity, judicial immunity that should be designed and

23   enabled the judiciary to take direct, personal, and swift

24   action when they violate due process requirements and cause

25   unjust injury to people under their jurisdiction.  In other

1    words, Defendant, David Knutson, was required to be

2    accountable to his immunity and failed.

3             THE COURT:  A couple more minutes, Counsel.

4             MS. MacDONALD:  The improper assignment of Defendant

5    David Knutson to the divorce file and the other files aside,

6    the only parties to the marriage dissolution proceeding were

7    Sandra Grazzini-Rucki and David Rucki, the parents of the five

8    Rucki children.  The parents were already divorced, their

9    marriage was terminated, property settled, with the house

10   where the family resided awarded to the Plaintiff, Sandra

11   Grazzini-Rucki.  Juvenile court protection or third-party

12   custody proceedings were not commenced by anyone.  Tammy Love

13   or Nancy Olson were not nor were they ever parties, nor was

14   the Guardian ad Litem to any of the Court actions Defendant

15   purported to preside over.

16            As such, Defendant David Knutson can be said to have

17   undertook a function for which there is no judicial immunity.

18   And I want to direct again the Court to my Affidavit of

19   Attorney facts that Defendant usurped court files and the

20   improper assignments because there are many cases involving

21   not just these parties, not just this one case.  By his

22   actions, Your Honor, he eviscerated the availability of

23   Juvenile Court Child Protection jurisdiction for a family

24   where such court jurisdiction was and still today is

25   absolutely essential.  The function that he undertook for

1   which there is no judicial immunity is the role of parent,

2   which he usurped from Sandra Grazzini-Rucki and David Rucki,

3   the parents of the Rucki children.  And by this, we are not

4   referencing the role of *in local parentis*.  So, Your Honor, in

5   other words, I -- both parents were subject to this order of

6   September 7th, 2012, not just one.  Both parents.

7            And also, Your Honor, I want to point out, too, that

8   there has been 98 -- and that's attached to my client's

9   Affidavit -- where somebody at the court was looking 98 times

10  at Sandra Grazzini-Rucki's driver's license.  It's a DVS

11  report --

12           THE COURT:  You haven't made a DPPA claim --

13           MS. MacDONALD:  I haven't made a DPPA claim, but we

14  should be entitled to discover about this and about the

15  usurping of the files --

16           THE COURT:  But there's no 1983 action --

17           MS. MacDONALD:  Right, but why were those -- yes, I

18  understand.

19           And I have one last thing I want to say.  They say

20  if you put a frog into a pot of boiling water, it would leap

21  out right away to escape the danger.  But if you put a frog in

22  a kettle that is filled with water that is cool and pleasant

23  and then you gradually heat the kettle until it starts

24  boiling, the frog will not become aware of the threat until it

25  is too late.  The frog's survival instincts are geared towards

1    detecting sudden changes.  This parable is used to illustrate

2    the American people and family members have to be careful to

3    watch slowly changing trends in their environment, not just

4    the sudden changes.  It's a warning to keep us paying

5    attention, not just to obvious threats but to more

6    slowly-developing ones.

7            And, Your Honor, for these reasons, Sandra

8    Grazzini-Rucki and her five children, Nico, Samantha, Gia,

9    Nia, and Gino, request this Court deny Defendant David

10   Knutson's motions to dismiss their claims against them and

11   that their civil rights action proceed.  Thank you.

12           THE COURT:  Thank you.

13           Ms. Huyser, a brief response.

14           MS. HUYSER:  I'm happy to answer any questions the

15   Court may have.  Opposing Counsel has made a bevy of factual

16   representations that the public record is -- contradicts in

17   many instances.  We've put the public record into the Court's

18   file.  We've also set forth some of those facts within the

19   briefing.

20           But as a couple examples, the public record, for

21   example, indicates that opposing counsel attributes quite a

22   few facts to the Defendant in this case that clearly were the

23   acts of other individuals; for example, representations

24   related to occurrences in Scott County.  The facts all suggest

25   that those were actors unassociated with Defendant.  The

```
 1    Lakeville police are obviously not associated with the

 2    Defendant; Dakota County officials.  So, the public record

 3    that we've submitted in this case should help to address a

 4    number of the underlying facts pertaining to this case.

 5              But I think the more relevant -- to address the sort

 6    of more relevant points, the judicial acts exception, the

 7    specific examples identified by opposing counsel include the

 8    September 7th hearing, the trial, and I think at one point

 9    the -- a continuance that was denied during the initial

10    evidentiary hearing.  These are all very typically judicial

11    acts.  The hearing was commenced at the request of the

12    parties.  All parties were represented by counsel that day on

13    September 5th, including Plaintiff in this case's attorney who

14    participated in that call and who helped to give input on the

15    order that was eventually issued in that case.

16              The actions at -- the holding of a trial is

17    certainly a judicial act.  The events that surround the arrest

18    were done by the Dakota County officials and not by the

19    Defendant in this case, so they are irrelevant to these

20    proceedings.  And I think there are some facts related to the

21    continuance, but certainly the decision of whether to grant

22    continuances for hearings is a quintessential judicial act.

23              Moving to the question of jurisdiction, you know,

24    the standard in this case is whether or not there's a clear

25    absence of jurisdiction.  The statute to which opposing
```

1   counsel cites is -- I'll grab it here -- it's 484.69.  That

2   statute, upon review, is one that sets out the authorities of

3   the Chief Justice to do appointments.  It is not one that I

4   think is intended to proscribe all manners of appointment

5   within Dakota County.  As the Court has recognized,

6   consolidation of related matters before a single Judge in

7   certain cases is not an atypical procedure in Dakota County,

8   even if it is not the procedure that is used in every single

9   case.  And it is the assignment of Judge Knutson in this case

10  was done by the decision of Court Administration and not by

11  the Defendant.

12          I think in sum, what opposing counsel's arguments

13  made clear is that this case is really an attempt to

14  re-litigate and rediscuss the matters that took place in the

15  State Court proceedings.  It is obviously -- was a contentious

16  family law case.  And I think for those reasons, this falls

17  squarely within the judicial relations exception, as well as

18  judicial immunity.

19          I would like to point the Court to one other case

20  related to the judicial relations exception.  The Eighth

21  Circuit cases I cited both involved -- both the Plaintiff and

22  Defendant who were parties to the underlying family law case.

23  There is a United States Supreme Court case from 2004 called

24  *Elk Grove v. Newdow*, the cite is 542 U.S. 1, and this is a

25  case in which the United States Supreme Court looked at the

```
 1   domestic relations exception.  In this case, the father had --
 2   was attempting to assert a claim on behalf of his daughter, I
 3   believe it was, over whom he did not have legal rights at that
 4   time.  In analyzing his -- they decided the domestic relations
 5   exception and held that under that exception they would not
 6   reconsider whatever rights he had to the daughter.  So, it
 7   shows that this exception does apply outside of just straight
 8   family law cases.
 9            And in conclusion, Your Honor, resolving disputed
10   matters is something that is a core purpose of courts.  It
11   often results in the disappointment of one or both parties,
12   but it would lock up our system if disgruntled litigants were
13   permitted to personally sue judicial officers for damages or
14   other relief in these courts.  The court system provides a
15   number of tools and resources for litigants who are unhappy
16   with how the proceedings have gone.  Those include
17   opportunities for removal, appeals to the Court Administration
18   and Chief Judges, the Board of Judicial Standards, and, of
19   course, the appellate process.  One or several of those would
20   have -- would be the more appropriate forums for the
21   allegations that Plaintiff makes here today.
22            And for the reasons we discussed today, as well as
23   all those set forth in our brief, Defendant does ask this
24   Court to dismiss all the claims against him with prejudice in
25   this case.
```

1            THE COURT:  Thank you.

2            MS. HUYSER:  Thank you.

3            THE COURT:  Very good.  The Court will take this

4   matter under advisement.  Court is adjourned.

5            **(WHEREUPON, the matter was adjourned.)**

6

7                         *      *      *      *

8

9

10

11                       CERTIFICATE

12

13            I, Heather A. Schuetz, certify that the foregoing is

14   a correct transcript from the record of the proceedings in the

15   above-entitled matter.

16

17

                    Certified by: s/ Heather A. Schuetz_____
18                                 Heather A. Schuetz, RMR, CRR, CCP
                                   Official Court Reporter
19

20

21

22

23

24

25