# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Sandra Sue Grazzini-Rucki, individually and on behalf of her children, N.J.R., S.V.R., G.J.R., N.G.R., and G.P.R., and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>David Knutson, John Does 1-20, and Mary Does 1-20,<br><br>        Defendants. | Case No. 13-cv-2477 (SRN/JSM)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Michelle Lowney MacDonald and Athena Hollins, MacDonald Law Firm, LLC, 1069 South Robert Street, West Saint Paul, Minnesota 55118, for Plaintiff.

Alethea M. Huyser, Minnesota Attorney General's Office, 445 Minnesota Street, #1100, Saint Paul, Minnesota 55101, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

        This matter is before the Court on Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment.  (Defs.' Mot. to Dismiss Am. Compl. and/or for Summ. J. [Doc. No. 21].)  For the reasons set forth below, the Court grants Defendants' motion and dismisses Plaintiff's Amended Complaint.

## II.     BACKGROUND

This case arises out of Plaintiff's family law matter currently pending in Dakota County District Court, which concerns marriage dissolution, custody, property, parenting time, and child support issues.  In re the Marriage of: Sandra Sue Grazzini-Rucki v. David Victor Rucki, No. 19-AV-FA-11-1273 (Dakota Cty. Ct. Minn.).  The underlying state court matter has a lengthy factual and procedural history, which the Court summarizes below.

### A.  Marriage Dissolution

On May 12, 2011, Dakota County District Court Judge Tim D. Wermager held a default hearing on the dissolution of Plaintiff's marriage to David Rucki ("Rucki"). (Hr'g Tr. at 1, Grazzini-Rucki v. Rucki, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn. May 12, 2011), Ex. 2 to Aff. of Alethea M. Huyser in Supp. of Mot. to Dismiss [Doc. No. 13-1].)  Based on the apparent agreement of Plaintiff and Rucki, Judge Wermager entered a Stipulated Judgment and Decree that dissolved the marriage.  (Stipulated Findings of Fact, Conclusions of Law, Order for J., J. and Decree, Grazzini-Rucki v. Rucki, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn. May 12, 2011), Ex. 3 to Huyser Aff. [Doc. No. 13-1].)  This decree awarded Plaintiff sole legal and physical custody of the five minor children; ownership of the homestead in Lakeville, Minnesota; ownership of a lake property in Polk County, Wisconsin; $3,673 per month in child support; and $10,000 per month in spousal maintenance.  (Id. at 5-8.)  Rucki was awarded their business, Rucki Trucking, Inc., and a rental property in Lakeville, Minnesota.  (Id. at 10.)  Kathryn Graves represented Plaintiff in these proceedings.  (May 12, 2011, Hr'g Tr. at 1, Ex. 2 to

Huyser Aff. [Doc. No. 13-1].)  Rucki was neither represented by counsel nor present at the default hearing.  (Id.)

**B.  Marriage Dissolution is Vacated**

On June 6, 2011, Rucki moved to vacate the May 12, 2011, Judgment and Decree, and sought joint physical and legal custody of the children.  (Notice of Mot. and Mot., Grazzini-Rucki v. Rucki, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn. June 6, 2011), Ex. 4 to Huyser Aff. [Doc. No. 13-1].)  Rucki alleged that he was tricked into entering the divorce settlement, and he did not see the Summons, Petition for Dissolution of Marriage, or the Stipulated Judgment and Decree beforehand.  (Aff. of David V. Rucki ¶¶ 8-9, Ex. 4 to Huyser Aff. [Doc. No. 13-1].)  After considering the allegations, Dakota County District Court Judge Robert R. King, Jr. scheduled an evidentiary hearing for July 12, 2011.  (Order and Mem. at 3, Grazzini-Rucki v. Rucki, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn. June 17, 2011), Ex. 5 to Huyser Aff. [Doc. No. 13-1].)  His order stated that after reading the parties' motion papers and hearing Rucki's argument, "the Court was left to wonder how any rational person would sign the Judgment and Decree in this matter."  (Id.)

Defendant and Dakota County District Court Judge David L. Knutson first became involved when he ordered the Dakota County Guardian Ad Litem (GAL) Program to appoint a GAL for the case.  (Order Appointing a Guardian Ad Litem, Grazzini-Rucki v. Rucki, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn. July 14, 2011), Ex. 6 to Huyser Aff. [Doc. No. 13-1].)  Julie Friedrich was appointed as the GAL.  (Id.)  On August 10, 2011, Judicial District Deputy Administrator Susan J. Reichenbach assigned all future

hearings on the matter to Judge Knutson.  (Letter from Susan J. Reichenbach, Ex. 1 to

Compl. at APP.127 [Doc. No. 2-1].)

On August 17, 2011 and August 30, 2011.  On August 17, 2011, Plaintiff

and Rucki were represented by counsel, and they agreed to undergo drug testing,

psychological and abuse evaluations, and reunification therapy with all five children.

(Hr'g Tr. at 5-12, Grazzini-Rucki v. Rucki, No. 19 AV-FA-11-1273 (Dakota Cty. Ct.

Minn. Aug. 17, 2011), Ex. 8 to Huyser Aff. [Doc. No. 13-1].)  When the hearing resumed

on August 30, 2011, Plaintiff appeared without counsel and indicated that by mutual

decision, her counsel had withdrawn the previous day.  (Hr'g Tr. at 3-5, Grazzini-Rucki

v. Rucki, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn. Aug. 30, 2011), Ex. 10 to

Huyser Aff. [Doc. No. 13-1].)  Due to concerns about prior and ongoing delays, the court

declined to continue the hearing again.  (Id. at 5-6.)  Shortly after the hearing, Plaintiff

retained Linda Olup as counsel.  (Certificate of Representation and Parties, Ex. 11 to

Huyser Aff. [Doc. No. 13-1].)

On September 23, 2011, Judge Knutson issued his Findings of Fact, Order and

Memorandum, granting Rucki's motion to vacate the May 12, 2011, Judgment and

Decree as to all terms except for the marriage dissolution.  (Findings of Fact, Order and

Mem. at 5, Grazzini-Rucki v. Rucki, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn.

Sept. 23, 2011), Ex. 12 to Huyser Aff. [Doc. No. 13-1].)  Judge Knutson found Rucki's

testimony credible and explained:

Looking objectively at the Judgment and Decree, it seems extremely

4

> unlikely that Respondent would knowingly approve this document given the custody arrangement, the inequitable property settlement, and the multiple inaccuracies and errors.  The idea that Respondent would approve this document without any negotiations or changes and without any representation in Court is beyond belief.

(Id.)

The parties then entered into a stipulated order that memorialized their agreements on therapy and evaluations.  (Stipulated Order, Grazzini-Rucki v. Rucki, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn. Oct. 6, 2011), Ex. 13 to Huyser Aff. [Doc. No. 13-1].)  On November 22, 2011, Judge Knutson established temporary living arrangements and set forth a process to resolve outstanding property and custody issues.  (Order, Grazzini-Rucki v. Rucki, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn. Nov. 22, 2011), Ex. 14 to Huyser Aff. [Doc. No. 13-1].)

On January 6, 2012, Elizabeth Henry began representing Plaintiff.  (Certificate of Representation and Parties, Ex. 15 to Huyser Aff. [Doc. No. 13-1].)

**C.  The Case Proceeds**

As the case proceeded, the parties struggled to comply with their own agreements and the court's orders.  (Findings of Fact, Conclusions of Law, Order for J., J. and Decree Regarding Custody, Parenting Time, and Child Support at 6, Grazzini-Rucki v. Rucki, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn. Nov. 25, 2013), Ex. 44 to Second Huyser Aff. in Supp. of Mot. to Dismiss [Doc. No. 25-2].)  The record shows that Plaintiff was not maintaining the property for which she was responsible, including mortgage payments, and she was not complying with the court-ordered therapy and evaluations. (Findings of Fact, Order, and Order for Contempt at 2, Grazzini-Rucki v. Rucki, No. 19

AV-FA-11-1273 (Dakota Cty. Ct. Minn. Aug. 3, 2012), Ex. 17 to Huyser Aff. [Doc. No. 13-1].)  The court had concerns that Plaintiff was severely alienating the children from Rucki as well.  (Id. at 9.)  As for Rucki, he was not making child support payments.  (Id.)

In August of 2012, Judge Knutson detailed some of the ongoing issues concerning the legal and physical custody of the children.  (Order, Grazzini-Rucki v. Rucki, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn. Aug. 30, 2012), Ex. 19 to Huyser Aff. [Doc. No. 13-1].)  His order noted that Plaintiff was refusing to cooperate with the GAL and other professionals; reunification therapy had not been completed; and therapeutic supervised parenting had failed.  (Id. at 2.)  To determine custody and parenting time, Judge Knutson concluded that a neutral expert in the field of parental alienation and reunification was required.  (Id. at 3.)  Paul Reitman, Ph.D., was instructed to meet with the parties and their children, in order to provide a report on custody and parenting time.  (Id.)

The parties decided to bifurcate the property and custody proceedings.  On August 28, 2012, Plaintiff and Rucki were scheduled for trial on the property division issues. (Hr'g Tr. at 2, Grazzini-Rucki v. Rucki, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn. Aug. 28, 2012), Ex. 18 to Huyser Aff. [Doc. No. 13-1].)  Because they reached a last-minute settlement on the property division, no trial occurred.  (Id.)  Plaintiff and Rucki put their agreement on the record, and the court ensured that they understood and agreed to the terms.  (Id. at 23.)  In part, Plaintiff was to bring the mortgage on the Lakeville property current by October 18, 2012; otherwise, the property would be awarded to Rucki.  (Id. at 23-24.)  Based on the settlement and stipulated facts, Judge Knutson entered an order concerning the division of property.  (Am. Findings of Fact, Conclusions

of Law, and Order for Property Division, <u>Grazzini-Rucki v. Rucki</u>, No. 19 AV-FA-11-
1273 (Dakota Cty. Ct. Minn. Nov. 7, 2012), Ex. 24 to Huyser Aff. [Doc. No. 13-2].)
Eventually, the Lakeville property was foreclosed, (<u>id.</u> at 4), and transferred to Rucki.
(Am. Summ. of Real Estate Disposition J., <u>Grazzini-Rucki v. Rucki</u>, No. 19 AV-FA-11-
1273 (Dakota Cty. Ct. Minn. Feb. 20, 2013), Ex. 1 to Compl. at APP.117 [Doc. No. 2-1].)

### D.  Emergency Hearing and Temporary Custody Order

Dr. Reitman's report recommended removing the children from Plaintiff's care,
putting them in foster care, and beginning therapy to repair the damage caused by
parental alienation.  (Hr'g Tr. at 2-3, <u>Grazzini-Rucki v. Rucki</u>, No. 19 AV-FA-11-1273
(Dakota Cty. Ct. Minn. Sept. 5, 2012), Ex. 20 to Huyser Aff. [Doc. No. 13-1].)
Following Dr. Reitman's report, Rucki brought an emergency motion requesting removal
of the children from Plaintiff's custody and care.  (<u>Id.</u>)

On September 5, 2012, Plaintiff, Rucki, their attorneys, and the GAL held an
emergency telephone conference before Judge Knutson.  (<u>Id.</u>)  Based on
recommendations by Dr. Reitman and the GAL, Judge Knutson found that removing the
children from the custody of both parents was in the children's best interest.  (<u>Id.</u> at 11.)

On September 7, 2012, Judge Knutson issued a temporary custody order, granting
Rucki's motion to remove the children from Plaintiff's custody and care.  (Order at 2,
<u>Grazzini-Rucki v. Rucki</u>, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn. Sept. 7, 2012),
Ex. 21 to Huyser Aff. [Doc. No. 13-2].)  The order directed Plaintiff to vacate the
Lakeville home, and the children's paternal aunt, Tammy Love, gained temporary
physical and legal custody of the children.  (<u>Id.</u> at 3.)  Both parents were prohibited from

contacting the children, except in writing as recommended by the therapists; a violation

of the no-contact provision would trigger a contempt proceeding.  (Id.)  Rucki was

permitted limited access to the Lakeville home, and he was not to leave any evidence in

the home that he had been there.  (Id.)  Plaintiff was ordered to try and bring the

mortgage current before a scheduled sheriff's sale of the house occurred on October 11,

2012.  (Id.)  If Plaintiff could not do so by October 1, 2012, Rucki would be permitted to

make repairs to the house in preparation for the sale.  (Id. at 3-4.)  Judge Knutson also

directed the children to begin therapy with Dr. James Gilbertson immediately.  (Id. at 4.)

Finally, the court reserved the question of Rucki's child support obligation.  (Id.)

On October 3, 2012, the parties stipulated to amend the September 7, 2012, order,

so that Tammy Love and Nancy Olson shared legal and physical custody of the children.[1]

(Stipulation and Order for Custody, Grazzini-Rucki v. Rucki, No. 19 AV-FA-11-1273

(Dakota Cty. Ct. Minn. Oct. 3, 2012), Ex. 22 to Huyser Aff. [Doc. No. 13-2].)  All orders

not modified by this stipulation remained in effect.  (Id. at 3.)

On November 1, 2012, Elizabeth Henry withdrew as counsel for Plaintiff.  (Notice

of Withdrawal of Counsel, Ex. 23 to Huyser Aff. [Doc. No. 13-2].)  Plaintiff appeared

*pro se* until January 8, 2013, when current counsel Michelle MacDonald began her

representation.  (Certificate of Representation and Parties, Ex. 27 to Huyser Aff. [Doc.

No. 13-2].)

---

[1]  Previously, Nancy Olson, Plaintiff's sister, had expressed reservations about being
involved in the custody of the children while they remained in contact with Plaintiff.
(Sept. 5, 2012, Hr'g Tr. at 5-6, Ex. 20 to Huyser Aff. [Doc. No. 13-1].)

### E.  Litigation Continues

On February 12, 2013, Plaintiff moved to declare Minnesota Statute § 518 unconstitutional, to vacate a November 7, 2012, order concerning property division, to vacate all prior orders restricting custody and parenting time, to dismiss the GAL, and to vacate all orders and judgments for attorney's fees.  (Notice of Mot., <u>Grazzini-Rucki v. Rucki</u>, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn. Feb. 12, 2013), Ex. 1 to Compl. at APP.60 [Doc. No. 2-1].)  On February 26, 2013, Judge Knutson heard these motions, among others filed by Plaintiff and Rucki.  (Order and Mem., <u>Grazzini-Rucki v. Rucki</u>, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn. Apr. 19, 2013), Ex. 31 to Huyser Aff. [Doc. No. 13-2].)

On April 19, 2013, Judge Knutson issued an order: (1) finding that the proceedings had complied fully with Minnesota Statutes §§ 518.10, 518.12, and 518.13; (2) finding the November 7, 2012, order concerning property division to be valid and enforceable; (3) denying Plaintiff's motion to declare Minnesota Statute § 518 unconstitutional as written and as applied in this case; (4) denying Plaintiff's motion to vacate the November 7, 2012, order concerning property division; (5) denying Plaintiff's motion to vacate all orders restricting her custody and parenting time; (6) denying Plaintiff's motion to dismiss the GAL; (7) reserving Plaintiff's motion for judgment against Rucki for unpaid child support; and (8) denying Plaintiff's motion to vacate all orders and judgments for attorney's fees.  (Order and Mem. at 2, <u>Grazzini-Rucki v. Rucki</u>, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn. Apr. 19, 2013), Ex. 31 to Huyser Aff. [Doc. No. 13-2].)  Judge Knutson noted that many of the prior orders sought to be

9

vacated were agreements entered into by the parties, on the record, when both sides were represented by counsel.  (Id. at 8.)  The memorandum detailed the history surrounding the court's September 7, 2012, order on temporary custody, and it reiterated the importance of reaching a final resolution on the custody issues.  (Id. at 8-28.)

On May 3, 2013, Julie Friedrich moved the court for permission to withdraw as the GAL.  (Not. of Mot. and Mot. of the Guardian Ad Litem, Grazzini-Rucki v. Rucki, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn. May 3, 2013), Ex. 33 to Huyser Aff. [Doc. No. 13-2].)  Ms. Friedrich indicated that her ability to advocate on behalf of the children had been compromised by Plaintiff's interference and false allegations.  (Aff. of Julie A. Friedrich ¶¶ 2-17, Ex. 33 to Huyser Aff. [Doc. No. 13-2].)  She also expressed concern about personal threats made against her on a blog devoted to discussing this and other state court family cases.  (Id. ¶ 18.)  Judge Knutson granted the motion and directed the Dakota County GAL Program to provide a successor.  (Order, Grazzini-Rucki v. Rucki, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn. May 17, 2013), Ex. 34 to Huyser Aff. [Doc. No. 13-2].)

On September 6, 2013, Plaintiff's prior attorneys filed several motions to quash subpoenas issued by Ms. MacDonald, which demanded their attendance at trial to establish foundation for legal fees.  (Findings of Fact and Order for Sanctions, Grazzini-Rucki v. Rucki, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn. Sept. 25, 2013), Ex. 43 to Second Huyser Aff. [Doc. No. 25-1].)  Judge Knutson found that Ms. MacDonald failed to establish any reasonable basis for the subpoenas, and that she did not respond to the prior attorneys' attempts to resolve the issue informally.  (Order and Mem., Grazzini-

Rucki v. Rucki, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn. Sept. 9, 2013), Ex. A of

Ex. 43 to Second Huyser Aff. [Doc. No. 25-1].)  The court therefore issued sanctions

against Ms. MacDonald for expenses incurred by the prior attorneys.  (Id.)

### F.  Custody Trial and Final Determination of Custody, Parenting Time, and Child Support

Counsel for both sides agreed to a two-day trial on the issue of child custody, to

occur on September 11, 2013 and September 12, 2013.  (Findings of Fact, Conclusions of

Law, Order for J. and J. and Decree Regarding Custody, Parenting Time, and Child

Support at 15-16, Grazzini-Rucki v. Rucki, No. 19 AV-FA-11-1273 (Dakota Cty. Ct.

Minn. Nov. 25, 2013), Ex. 44 to Second Huyser Aff. [Doc. No. 25-2].)  In the days

leading up to the trial, Ms. MacDonald informed the court by letter that she intended to

file a federal lawsuit against Judge Knutson personally, and suggested that the trial be

cancelled.  (Id.)  The court indicated to the parties that trial would proceed as planned.

(Id. at 16.)

On September 11, 2013, Ms. MacDonald commenced this case in federal court

and informed Judge Knutson that she had filed a complaint against him.  (Id. at 16-17.)

She then requested Judge Knutson's recusal, which was denied.  (Id.)  Trial proceeded,

and Plaintiff finished presenting her case that same day.  (Id.)

On September 12, 2013, Ms. MacDonald arrived in the courtroom and requested

the prior day's transcript.  (Id.)  To avoid improprieties, Judge Knutson and his staff left

the courtroom until the hearing was scheduled to begin.  (Id.)  During his absence, Ms.

MacDonald took pictures in the courtroom, violating Minnesota Rule of General Practice

4.01.  (Id.)  She also refused to comply with deputy orders that she stop taking pictures.
(Id.)  The trial proceeded.  (Id.)

After a court recess, Ms. MacDonald appeared in the courtroom, in a wheelchair
and without Plaintiff.  (Id. at 18-19.)  The deputies had sought to give Ms. MacDonald a
citation for contempt.  (Id.)  Ms. MacDonald had refused to provide the information
required for booking and was placed under arrest.  (Id.)  The deputies reported that Ms.
MacDonald had refused to re-enter the courtroom voluntarily, or to wear her shoes and
glasses.  (Id.)  As a result, the deputies moved her into a wheelchair and escorted her back
to the hearing.  (Id.)

When court reconvened, Judge Knutson attempted to elicit Ms. MacDonald's
input on how she wanted to proceed, but he did not receive a substantive response.  (Id. at
19.)  Judge Knutson continued with the final hours of trial, in which Ms. MacDonald
minimally participated, and the court took the matter under advisement.  (Id. at 19-21.)

On November 25, 2013, Judge Knutson issued an order: (1) awarding sole legal
and physical custody of the minor children to Rucki; (2) ordering both parties to disclose
any known information about the whereabouts of their two oldest children to each other
and appropriate authorities; (3) awarding supervised parenting time to Plaintiff at the
Children's Safety Center at the highest level of supervision; (4) ordering Plaintiff to
complete a psychological evaluation; (5) ordering Rucki to arrange for the children's
therapy; (6) ordering Plaintiff to pay Rucki child support; (7) awarding Rucki the right to
claim all the children as dependents on his federal and state income tax returns for the tax
year 2013 and into the future; (8) ordering Plaintiff to maintain health insurance for the

children; and (9) setting forth payment percentages for unreimbursed health and dental expenses.  (Id. at 59-63.)

### G. Plaintiff's Appeals

Plaintiff appealed several of Judge Knutson's orders to the Minnesota state appellate courts, and also filed a petition for a writ of certiorari to the United States Supreme Court.  On April 19, 2013, Plaintiff appealed "the denial of her petition for writ of habeas corpus," and sought "the imposition of sanctions against the judge assigned to the matter in the district court [Judge Knutson], an order granting her leave to proceed in forma pauperis, removal of the assigned judge, and the scheduling of a hearing in this court within 15 days."  (Order at 1, Grazzini-Rucki v. Rucki, No. A13-0688 (Minn. Ct. App. Apr. 22, 2013), Ex. 39 to Huyser Aff. [Doc. No. 13-2].)  The Minnesota Court of Appeals denied the appeal because the district court had not yet ruled on the petition for habeas corpus.  (Id.)

On April 22, 2013, Plaintiff submitted a *pro se* Motion for Stay and Suspension of Rules to the Minnesota Court of Appeals.  (Mot. for a Stay and Suspension of Rules, Grazzini-Rucki v. Rucki, No. A13-0688 (Minn. Ct. App. Apr. 22, 2013), Ex. 40 to Huyser Aff. [Doc. No. 13-2].)  This motion sought an "indefinite stay of the Order filed April 19, 2013 by Dakota County Judge David Knutson," as well as "suspension of Appellate Rule 108.02."  (Id.)  On June 11, 2013, the Minnesota Court of Appeals rejected Plaintiff's *pro se* motion, declining to compel the district court to hear Plaintiff's petition for a writ of habeas corpus.  (Order at 1-3, Grazzini-Rucki v. Rucki, No. A13-0688 (Minn. Ct. App. June 11, 2013), Ex. 41 to Huyser Aff. [Doc. No. 13-2].)  The court

found the writ procedurally improper, and noted that the district court had "addressed the requests for relief that petitioner had pending in that court, thereby rendering stale her petition for habeas corpus." (Id. at 3.)

On May 14, 2013, Plaintiff submitted a petition for a writ of mandamus to the Minnesota Court of Appeals. (Pet. for Writ of Mandamus, Grazzini-Rucki v. Rucki, No. A13-0859 (Minn. Ct. App. May 14, 2013), Ex. 1 to Compl. at APP.34 [Doc. No. 2-1].) This petition challenged Judge Knutson's prior orders for "evicting her [Plaintiff] from her home; depriving her of legal and physical custody of her 5 children; and prohibiting contact with her children." (Id. at APP.40.) It also challenged the "unconstitutional application of the Minn. Stat. 518[sic]" and the constitutionality of this statute. (Id. at APP.45, APP.38.) The Minnesota Court of Appeals upheld the district court's authority to issue the September 7, 2012, temporary restraining order, which pertained to custody and vacating the home. (Order, Grazzini-Rucki v. Rucki, No. A13-0859 (Minn. Ct. App. June 11, 2013), Ex. 42 to Huyser Aff. [Doc. No. 13-2].)

The Minnesota Supreme Court summarily denied Plaintiff's subsequent petition for review of the Minnesota Court of Appeals' decision. (Order, Grazzini-Rucki v. Rucki, No. A13-0859 (Minn. Aug. 20, 2013), Ex. 1 to Compl. at APP.55 [Doc. No. 2-1].) On November 15, 2013, Plaintiff filed a petition for a writ of certiorari to the United States Supreme Court, appealing the Minnesota Supreme Court's decision under 28 U.S.C. § 1257. (Pet. for Writ of Cert., Grazzini-Rucki v. Rucki, No. 13-7486 (Nov. 15, 2013), Ex. 1 to Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss Compl. and/or for Summ. J. [Doc. No. 30-1].) Plaintiff's brief, in support of her petition for a writ of

14

certiorari to the United States Supreme Court, raised the same constitutional claims as

those raised in this federal lawsuit, alleging that the Dakota County District Court's

orders

> . . . violated fundamental law, and rights to family liberty, including rights
> pursuant to the First (right to freedom of speech); Fourth (unreasonable
> searches and seizures; protects rights of people to be secure in their houses,
> papers and effects); Ninth (protects rights not enumerated); Thirteenth
> (involuntary servitude, except as punishment for a crime); Fourteenth (Due
> Process and Equal Protection).  See U.S. Const. XIV, § 1; accord Minn.
> Const. art. I, § 7, U.S. Const. XIII; accord Minn. Const. art. I, § 2.  U.S.
> Const. IV; accord Minn. Const. art I, § 10.  U.S. Const. XIII; accord Minn.
> Const. art I, § 12; U.S. Const. V, § 1; accord Minn. Const. art. I, § 7[;]
> Minnesota Statutes § 518 Marriage Dissolution (2013).

(Id. at 16.)  On January 27, 2014, the United States Supreme Court denied Plaintiff's

petition for a writ of certiorari.  Grazzini-Rucki v. Rucki, 134 S. Ct. 1029 (2014).  On

March 24, 2014, the United States Supreme Court denied Plaintiff's petition for

rehearing.  Grazzini-Rucki v. Rucki, 134 S. Ct. 1579 (2014).

On January 24, 2014, Plaintiff appealed several orders in the underlying family

law matter, including: (1) a determination of property division, dated October 26, 2012;

(2) a summary real estate disposition, dated February 20, 2013, and (3) the final

determination of custody, parenting time, and child support, dated November 25, 2013.

(Notice of Appeal to Court of Appeals, Grazzini-Rucki v. Rucki, No. A14-0139 (Minn.

Ct. App. Jan. 24, 2014.)  This appeal again challenged the constitutionality of Minnesota

Statute § 518 and its application.  (Statement of the Case, Grazzini-Rucki v. Rucki, No.

A14-0139 (Minn. Ct. App. Jan. 24, 2014).)  It also claimed that Dakota County District

Court's

> . . . orders and proceedings are violative of the First (freedom of Speech),
> Fourth (unreasonable searches and seizures), Ninth (protects rights not
> enumerated in the constitution), Thirteenth (involuntary servitude, except as
> punishment for a crime); Fourteenth (Due Process and Equal Protection)
> amendments to the constitution.

(Id. at 4.)  Plaintiff viewed the orders and proceedings as "contrary to the Minnesota and

Federal Constitution."  (Id.)  Ultimately, the Minnesota Court of Appeals dismissed the

entire appeal on jurisdictional grounds:

> . . . because this appeal apparently is limited to the issues of child custody
> and parenting time, and because the district court's order determining
> custody and parenting time is indivisible, appellant's failure to timely serve
> the notice of appeal on the GAL requires dismissal of the entire appeal.

(Order at 3-4, Grazzini-Rucki v. Rucki, No. A14-0139 (Minn. Ct. App. May 14, 2014).)

This matter remains pending in state court.  Under the Minnesota Rules of Civil

Appellate Procedure, the time to submit a petition for review to the Minnesota Supreme

Court has yet to expire.  See MINN. R. CIV. APP. P. 117, subd. 1.  Moreover, a motion

hearing is scheduled for June 19, 2014, before Judicial Officer Mary H. C. Flynn in

Dakota County District Court.  (Register of Actions, Grazzini-Rucki v. Rucki, No. 19

AV-FA-11-1273 (Dakota Cty. Ct. Minn. May 20, 2014).)

**H. Plaintiff's Federal Case**

Plaintiff commenced the instant litigation on September 11, 2013.  (Compl. [Doc.

No. 2].)  Based on the alleged actions of Defendants in the state court case, Plaintiff,

individually and on behalf of her five children, and all others similarly situated, brought

claims of "civil assault" (Count 1), "civil battery" (Count 2), "false imprisonment"

(Count 3), "intentional infliction of emotional distress" (Count 4), "negligent infliction of

emotional distress" (Count 5), "negligence" (Count 6), and "injunctive relief" (Count 7)—all in violation of 42 U.S.C. §§ 1983, 1985, and the First, Fourth, Fifth, Eighth, Ninth, Thirteenth, and Fourteenth Amendments. (Am. Compl. at 54-62 [Doc. No. 17].) Plaintiff also alleges "deprivation of rights under color of law" against "John and Mary Does 1-20," in violation of 42 U.S.C. §§ 1983, 1985 (Count 8).[2] (Id. at 62-67.) Plaintiff seeks injunctive and declaratory relief, as well as damages against Judge Knutson in the amount of $55,083,310.22 for herself and her five children. (Id. at 67-69.)

The sixty-seven page Amended Complaint alleges, in part, that:

- "[O]ver three thousand four hundred (3,400) directives of Defendant David L. Knutson [sic] regulate this [Plaintiff's] family, without due process or rule of law or rule of evidence," seizing from Plaintiff her home, children, and property. (E.g., Am. Compl. ¶¶ 5, 53 [Doc. No. 17].)

- Defendants regularly compromised the Minnesota Court Information System regarding the state court matters of Plaintiff and Rucki. (Id. ¶¶ 25, 33, 39.)

- Judge Knutson caused one of the state court administrators to assign him case number 19-AV-FA-11-1273, as evidenced by an official letter reading that "all future hearings" would be scheduled before Judge Knutson. (Id. ¶¶ 35, 36.)

- Judge Knutson signed an order appointing Julie Friedrich to be a Guardian Ad Litem in state court case numbers 19-AV-FA-11-1273 and 19-FA-11-1760. (Id. ¶ 37.)

- Judge Knutson usurped and vacated other court orders. (Id. ¶¶ 33, 49, 78, 170.)

- Judge Knutson ordered Plaintiff's children into therapy. (Id. ¶¶ 53, 71.)

---

[2] The Amended Complaint identifies the counts for both "injunctive relief" and "deprivation of rights under color of law" as "Count VII." This appears to be a typographical error, and the count for "deprivation of rights under color of law" should read "Count VIII" instead.

- Judge Knutson permitted Rucki to enter Plaintiff's home and take any property that he wanted. (Id. ¶¶ 62, 91.)

- Judge Knutson reserved the question of Rucki's child support obligation. (Id. ¶¶ 66, 67.)

- Judge Knutson sealed and intercepted a transcript that included testimony by Plaintiff's children. (Id. ¶¶ 96, 107.)

- On September 7, 2012, Judge Knutson ordered Plaintiff to turn over various records to Rucki. (Id. ¶¶ 109, 132.)

- On September 7, 2012, Judge Knutson awarded the property in Lakeville, Minnesota to Rucki, and prohibited him and Plaintiff from living there. (Id. ¶ 125.)

- On September 7, 2012, Judge Knutson prevented Plaintiff from participating in traditional family events and separated Plaintiff from her children. (Id. ¶¶ 89, 102.)

- Judge Knutson obstructed evidence by scheduling and canceling an evidentiary hearing. (Id. ¶ 120.)

- Judge Knutson acted with malice, oppression, or fraud. (Id. ¶ 182.)

- Judge Knutson refused to recuse himself from the custody trial in case number 19-AV-FA-11-1273, and he insisted that trial proceed. (Id. ¶ 184.)

- At trial, Judge Knutson granted motions *in limine* for Rucki and prohibited nearly all of Plaintiff's evidence. (Id. ¶ 185.)

- On September 25, 2013, Judge Knutson sanctioned Plaintiff and awarded attorneys fees. (Id. ¶ 192.)

On January 10, 2014, the Court heard oral argument on Defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Court Mins. [Doc. No. 34].)

18

On February 18, 2014, Plaintiff requested permission to supplement the record with "important new evidence" about the purported usurpation of court files and non-judicial acts taken by Judge Knutson.  (Pl.'s Letter to District Judge [Doc. No. 38].)  On March 14, 2014, Defendants opposed Plaintiff's request, arguing that the request was untimely, and the documents that Plaintiff sought to file were irrelevant.  (Defs.' Letter to District Judge [Doc. No. 39].)  On April 3, 2014, Plaintiff requested permission to supplement the record even further.  (Pl.'s Letter to District Judge [Doc. No. 43].)[3]

## III.   DISCUSSION

### A.  Standard of Review

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for lack of subject matter jurisdiction.  When considering a Rule 12(b)(1) motion, a district court  may consider matters outside the pleadings.  Satz v. ITT Fin. Corp., 619 F.2d 738, 742 (8th Cir. 1980).  "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist."  Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990).

When evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes the facts in the Complaint to be true and construes all

---

[3]  Having reviewed the parties' positions on this issue, the Court declines Plaintiff's request to supplement the record.  Plaintiff has not demonstrated the relevance of the additional documents she seeks to file with respect to this case.  Moreover, Plaintiff's request, made more than two months after the instant motion was filed on November 26, 2013, is untimely, and no "good cause" has been shown.

reasonable inferences from those facts in the light most favorable to the plaintiff.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).  The Court, however, need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that the plaintiff draws from the facts pled. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

  To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under Twombly.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).  In short, this standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556.

  With the exception of state court orders, most of which are attached to the parties' briefing, the Court does not need to consider any materials beyond the Amended Complaint. Therefore, the Court does not convert Defendants' motion to dismiss into a motion for summary judgment.  See Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007) ("In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court is 'not precluded in [its] review of the complaint from taking notice of items in the public record.'"); FED. R. CIV. P. 12(d).

**B.  Defendants' Motion to Dismiss**

Defendants argue that the Court lacks subject matter jurisdiction over this matter, or alternatively, Plaintiff fails to state a claim because: (1) the doctrine of judicial immunity bars Plaintiff's damages claims against Judge Knutson; and (2) Plaintiff's claims for injunctive and declaratory relief are barred by the domestic relations exception, the abstention doctrine under Younger v. Harris, 401 U.S. 37 (1971), and the Rooker-Feldman doctrine.  (Defs.' Mem. of Law in Supp. of Mot. to Dismiss Am. Compl. and/or for Summ. J. at 20-31 [Doc. No. 23].)  Plaintiff responds that Judge Knutson is not immune for non-judicial acts, and immunity does not bar liability for actions taken in the absence of jurisdiction.  (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss Compl. and/or for Summ. J. at 17-37 [Doc. No. 30].)  Plaintiff also argues that the domestic relations exception, the abstention doctrine under Younger v. Harris, and the Rooker-Feldman doctrine do not bar her claims.  (Id. at 37-39.)

The Court first addresses Defendants' challenge to subject matter jurisdiction on the grounds of Rooker-Feldman and the domestic relations exception.  See United States v. Foster, 443 F.3d 978, 981 (8th Cir. 2006).

**1.  Rooker-Feldman**

In Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923), the United States Supreme Court held that it is the only federal court that has the authority to entertain a proceeding to reverse or modify a final state court judgment.  In D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482-86 (1983), the Supreme Court reaffirmed that district courts do not have jurisdiction to review final state court judgments.  Feldman further concluded that

federal district courts lack subject matter jurisdiction to review issues that are "inextricably intertwined" with the issues previously decided in a state court proceeding, because in that situation, the district court "is in essence being called upon to review the state court decision." Id. at 482 n.16.

Accordingly, what has become known as the Rooker-Feldman doctrine stands for the proposition that federal district courts lack subject matter jurisdiction to review final state court judgments and claims that are inextricably intertwined with state court decisions. This doctrine is narrow in scope and "confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The reason is that "other than in the context of habeas claims, federal district courts are courts of original jurisdiction, and by statute they are precluded from serving as appellate courts to review state court judgments, as that appellate function is reserved to the Supreme Court under 28 U.S.C. § 1257." Dornheim v. Sholes, 430 F.3d 919, 923 (8th Cir. 2005). This doctrine precludes federal district court jurisdiction only if the federal suit begins after the state court proceedings have finished. Id. (citing Exxon, 544 U.S. at 282).

Plaintiff commenced this suit in federal court on September 11, 2013. (Compl. [Doc. No. 2].) Judge Knutson issued his final determination of custody, parenting time, and child support on November 25, 2013. (Findings of Fact, Conclusions of Law, Order for J. and J. and Decree Regarding Custody, Parenting Time, and Child Support, Grazzini-Rucki v. Rucki, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn. Nov. 25, 2013), Ex. 44

to Second Huyser Aff. [Doc. No. 25-2].)  Thus, when Plaintiff began this case, the state

court adjudication was not yet complete.  See Dornheim, 430 F.3d at 924 (citing

Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto

Rico, 410 F.3d 17, 24 & n.10 (1st Cir. 2005) for the proposition that a state-court

proceeding has ended when it becomes appealable under § 1257 because the highest state

court has issued its final decision, or when the lower state-court ruling otherwise carries

preclusive effect).  Because Rooker-Feldman applies only if the federal suit is begun after

the state court proceedings have concluded, the Court does not lack subject matter

jurisdiction under this doctrine.

### 2.  Domestic Relations Exception

Under the domestic relations exception to diversity jurisdiction, a federal court is

divested of jurisdiction over any action for which the subject is a divorce, allowance of

alimony, or child support, including the distribution of marital property.  Wallace v.

Wallace, 736 F.3d 764, 766 (8th Cir. 2014) (citing Kahn v. Kahn, 21 F.3d 859 (8th Cir.

1994)).  Additionally, "a federal suit is 'inextricably intertwined' with a state domestic

proceeding, thereby depriving the federal court of subject matter jurisdiction, where the

requested federal remedy overlaps the remedy at issue in the state proceeding."  Wallace,

736 F.3d at 767.  The domestic relations exception is a narrow one.  Lannan v. Maul, 979

F.2d 627, 631 (8th Cir. 1992).

Defendants argue that the domestic relations exception applies, because Plaintiff

"seeks the federal court's involvement in a marriage dissolution and child custody dispute

before the state courts."  (Defs.' Mem. of Law in Supp. of Mot. to Dismiss Am. Compl.

and/or for Summ. J. at 26-27 [Doc. No. 23].)  The Court agrees that the requested federal

remedy overlaps with the remedy at issue in the state proceeding.  By requesting

Defendants' return of her children and real property, Plaintiff, in effect, seeks to modify

certain orders by the Dakota County District Court.  (See Am. Compl., Prayer for Relief ¶

12 [Doc. No. 17].)  The Court, however, concludes that the domestic relations exception

does not apply because it is a limitation on diversity jurisdiction, and there is no diversity

here.  The parties are all citizens of Minnesota.  (Am. Compl. ¶¶ 13-14, 21); see 28 U.S.C.

§ 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the

matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs,

and is between—(1) citizens of different States.").  Notably, Plaintiff does not allege

diversity as a basis for federal jurisdiction: "Jurisdiction of this court arise[s] under 42

U.S.C. § 1983; 42 U.S.C. § 1985; 42 U.S.C. § 1988," and "[u]nder 28 U.S.C. § 1331, a case

involving the United States Constitution or federal laws or treaties is a federal question

case." (Am. Compl. ¶¶ 10, 11.)  It is "unclear whether the domestic-relations exception

applies to cases brought under the federal-question statute."  Ruffalo by Ruffalo v. Civiletti,

702 F.2d 710, 717-18 (8th Cir. 1983).  Accordingly, the Court finds that the domestic

relations exception does not deprive this Court of subject matter jurisdiction.

### 3.  Younger Abstention

The Younger abstention doctrine arises out of comity between federal and state

courts.  Younger v. Harris, 401 U.S. 37, 44 (1971).  "In an abstention analysis, the issue is

not whether a court has jurisdiction, but instead whether it is appropriate for a court to

decline jurisdiction."  Uland v. City of Winsted, 570 F. Supp. 2d 1114, 1118 (D. Minn.

24

2008).  This doctrine bars a federal complaint if: (1) there is an ongoing state proceeding,

(2) that implicates important state interests, and (3) that provides an adequate opportunity to

raise any relevant federal questions.  Tony Alamo Christian Ministries v. Selig, 664 F.3d

1245, 1249 (8th Cir. 2012).  When all three requirements for Younger abstention are met,

federal courts should abstain from exercising jurisdiction over the claims, unless the Court

detects "bad faith, harassment, or some extraordinary circumstance that would make

abstention inappropriate."  Id. at 1254; Middlesex Cnty. Ethics Comm. v. Garden State

Bar Ass'n, 457 U.S. 423, 435 (1982).  The exceptions must be construed narrowly.

Aaron v. Target Corp., 357 F.3d 768, 778 (8th Cir. 2004).

        The first requirement for Younger abstention is a timing issue.  "[T]he relevant

time for determining if there are ongoing state proceedings is when the federal complaint

is filed."  Tony Alamo, 664 F.3d at 1250.  Here, Plaintiff commenced this suit in federal

court on September 11, 2013.  (Compl. [Doc. No. 2].)  At that time, the state court

proceedings were still ongoing, as Judge Knutson issued his final order on custody,

parenting time, and child support several months later.  (Findings of Fact, Conclusions of

Law, Order for J. and J. and Decree Regarding Custody, Parenting Time, and Child

Support, Grazzini-Rucki v. Rucki, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn. Nov.

25, 2013), Ex. 44 to Second Huyser Aff. [Doc. No. 25-2].)

        Indeed, the state proceedings are still ongoing.[4]  On May 14, 2014, the Minnesota

Court of Appeals dismissed Plaintiff's appeal of the district court's determination of

---

[4]  The Court notes the requirement under Younger that "the state proceeding must be
ongoing at the time the district court enters its order regarding abstention."  Tony Alamo,
664 F.3d at 1250 n.3.

property division, summary real estate disposition, and final determination of custody,

parenting time, and child support.  (Order at 3-4, <u>Grazzini-Rucki v. Rucki</u>, No. A14-0139

(Minn. Ct. App. May 14, 2014).)  Under the Minnesota Rules of Civil Appellate

Procedure, the time to submit a petition for review to the Minnesota Supreme Court has

yet to expire.  <u>See</u> MINN. R. CIV. APP. P. 117, subd. 1 ("Any party seeking review of a

decision of the Court of Appeals shall separately petition the Supreme Court.  The

petition with proof of service shall be filed with the clerk of the appellate courts within 30

days of the filing of the Court of Appeals' decision.").  Moreover, a motion hearing is

scheduled for June 19, 2014, before Judicial Officer Mary H. C. Flynn in Dakota County

District Court.  (Register of Actions, <u>Grazzini-Rucki v. Rucki</u>, No. 19 AV-FA-11-1273

(Dakota Cty. Ct. Minn. May 20, 2014).)  This matter remains pending in state court, and

the first requirement for <u>Younger</u> abstention is therefore met.

 The second requirement for <u>Younger</u> abstention protects against the infringement

of state interests by federal courts.  Federal intervention in an ongoing state case before

the state appellate proceedings conclude is "highly duplicative" and "also a direct

aspersion on the capabilities and good faith of state appellate courts."  <u>Huffman v.</u>

<u>Pursue, Ltd.</u>, 420 U.S. 592, 608 (1975).  Here, the state-court proceedings regarding the

welfare of Plaintiff's children concern a state interest.  <u>See</u> <u>Tony Alamo</u>, 664 F.3d at

1249 ("[T]here is no doubt that state-court proceedings regarding the welfare of children

reflect an important state interest that is plainly within the scope of the doctrine.").  The

second requirement for <u>Younger</u> abstention is thus met.

 The third requirement for <u>Younger</u> abstention considers whether there was a

meaningful opportunity in state court for Plaintiff to address her federal constitutional concerns.  In other words, the question is whether Plaintiff "could have raised," or "in fact initially did raise, [her] federal constitutional claims before the state court."  See Night Clubs, Inc. v. City of Fort Smith, Ark., 163 F.3d 475, 480 (8th Cir. 1998).

The record shows that Plaintiff, in fact, repeatedly raised her federal constitutional concerns in state court.  On February 12, 2013, Plaintiff moved the Dakota County District Court to declare that Minnesota Statute § 518 is "unconstitutional as written and as applied, and contrary to the Minnesota and Federal Constitution."  (Notice of Mot., Grazzini-Rucki v. Rucki, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn. Feb. 12, 2013), Ex. 1 to Compl. at APP.58 [Doc. No. 2-1].)  Plaintiff elaborated:

> Specifically Minn. Stat. § 518 is violative of the First (freedom of Speech), Fourth (unreasonable searches and seizures), Ninth (protects rights not enumerated in the constitution), Thirteenth (involuntary servitude, except as punishment for a crime; Fourteenth (Due Process and Equal Protection).

(Id.)  On February 26, 2013, Judge Knutson heard this motion, among others, after which he concluded that the state court proceedings had complied fully with Minnesota Statutes §§ 518.10, 518.12, and 518.13.  (Order and Mem. at 2, Grazzini-Rucki v. Rucki, No. 19 AV-FA-11-1273 (Dakota Cty. Ct. Minn. Apr. 19, 2013), Ex. 31 to Huyser Aff. [Doc. No. 13-2].)  Further, Judge Knutson denied Plaintiff's motion to declare all or part of Minnesota Statute § 518 unconstitutional as written and as applied in this case.  (Id.)

Plaintiff raised similar constitutional concerns in her Petition for Writ of Mandamus to the Minnesota Court of Appeals, filed on May 14, 2013.  (Pet. for Writ of Mandamus, Grazzini-Rucki v. Rucki, No. 13-0859 (Minn. Ct. App. May 14, 2013), Ex. 1

to Compl. at APP.34-APP.39 [Doc. No. 2-1].)  This petition, factually similar to

Plaintiff's federal Complaint, challenged the Dakota County District Court's prior orders

for "evicting her [Plaintiff] from her home; depriving her of legal and physical custody of

her 5 children; and prohibiting contact with her children." (Id. at APP.40.)  It also

challenged the application and constitutionality of Minnesota Statute

§ 518.  (Id. at APP.45, APP.38.)  The Minnesota Court of Appeals upheld the district

court's authority to issue the September 7, 2012, temporary restraining order, which

pertained to custody and vacating the home.  (Order, Grazzini-Rucki v. Rucki, No. A13-

0859 (Minn. Ct. App. June 11, 2013), Ex. 42 to Huyser Aff. [Doc. No. 13-2].)

       The Minnesota Supreme Court summarily denied Plaintiff's subsequent petition

for review of the Minnesota Court of Appeals' decision.  (Order, Grazzini-Rucki v.

Rucki, No. A13-0859 (Minn. Aug. 20, 2013), Ex. 1 to Compl. at APP.55 [Doc. No. 2-1].)

Plaintiff then filed a Petition for a Writ of Certiorari to the United States Supreme Court,

appealing the Minnesota Supreme Court's decision under 28 U.S.C. § 1257.  (Ex. 1 to

Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss Compl. and/or for Summ. J. [Doc.

No. 30-1].)  Plaintiff's brief, in support of her petition for a writ of certiorari to the United

States Supreme Court, raised the same constitutional claims as those raised in this case,

alleging that Judge Knutson's orders

        . . . violated fundamental law, and rights to family liberty, including rights
        pursuant to the First (right to freedom of speech); Fourth (unreasonable
        searches and seizures; protects rights of people to be secure in their houses,
        papers and effects); Ninth (protects rights not enumerated); Thirteenth
        (involuntary servitude, except as punishment for a crime); Fourteenth (Due
        Process and Equal Protection).  See U.S. Const. XIV, § 1; accord Minn.
        Const. art. I, § 7, U.S. Const. XIII; accord Minn. Const. art. I, § 2.  U.S.

> Const. IV; accord Minn. Const. art I, § 10.  U.S. Const. XIII; accord Minn.
> Const. art I, § 12; U.S. Const. V, § 1; accord Minn. Const. art. I, § 7[;]
> Minnesota Statutes § 518 Marriage Dissolution (2013).

(Id. at 16.)  The United States Supreme Court denied Plaintiff's petition for a writ

of certiorari, as well as Plaintiff's petition for rehearing.  Grazzini-Rucki v. Rucki,

134 S. Ct. 1029 (2014); Grazzini-Rucki v. Rucki, 134 S. Ct. 1579 (2014).

Likewise, on January 24, 2014, Plaintiff appealed several orders in the underlying

family law matter, including: (1) a determination of property division, dated October 26,

2012; (2) a summary real estate disposition, dated February 20, 2013; and (3) the final

determination of custody, parenting time, and child support, dated November 25, 2013.

(Notice of Appeal to Court of Appeals, Grazzini-Rucki v. Rucki, No. A14-0139 (Minn.

Ct. App. Jan. 24, 2014).)  This appeal, again, challenged the constitutionality of

Minnesota Statute § 518 and its application.  (Appellant's Statement of the Case at 4,

Grazzini-Rucki v. Rucki, No. A14-0139 (Minn. Ct. App. Jan. 24, 2014).)  In it, Plaintiff

claimed that the Dakota County District Court's

> . . . orders and proceedings are violative of the First (freedom of Speech),
> Fourth (unreasonable searches and seizures), Ninth (protects rights not
> enumerated in the constitution), Thirteenth (involuntary servitude, except as
> punishment for a crime); Fourteenth (Due Process and Equal Protection)
> amendments to the constitution.

(Id.)  Plaintiff viewed the orders and proceedings as "contrary to the Minnesota and

Federal Constitution."  (Id.)  Ultimately, the Minnesota Court of Appeals dismissed the

entire appeal on jurisdictional grounds.  (Order at 3-4, Grazzini-Rucki v. Rucki, No. A14-

0139 (Minn. Ct. App. May 14, 2014).)

Under these circumstances, the Court is persuaded that Plaintiff had a meaningful

opportunity to address her federal constitutional concerns in Minnesota's state courts.

The fact that the state courts rejected Plaintiff's arguments is no basis for Plaintiff to

argue now that this Court should entertain her federal constitutional challenges in this

action.  See Tony Alamo, 664 F.3d 1245, 1250 (8th Cir. 2012) (citing Allen v. McCurry,

449 U.S. 90, 99 (1980) for the proposition that Section 1983 does not guarantee a federal

forum for claims of deprivations of federal rights).  Accordingly, the third requirement

for Younger abstention is met.

All three requirements for Younger abstention are satisfied, and the Court does not

detect any "bad faith, harassment, or some extraordinary circumstance that would make

abstention inappropriate."  See Middlesex, 457 U.S. at 432.  Although Plaintiff accuses

Defendants of compromising the Minnesota Court Information System, usurping court

files, obstructing evidence, and acting with malice, oppression, or fraud, nothing in the

record supports these allegations.  Moreover, the Eighth Circuit has recognized the bad-

faith exception only in the criminal context.  Aaron, 357 F.3d 768, 778; see Lewellen v.

Raff, 843 F.2d 1103, 1109-10 (8th Cir. 1988) (noting that "bad faith 'generally means

that a prosecution has been brought without a reasonable expectation of obtaining a valid

conviction'").  None of the narrow exceptions to the Younger abstention doctrine applies,

and this Court chooses to abstain.

Next, the Court must consider whether to dismiss or stay the federal case.

Generally, the Younger abstention doctrine "directs federal courts to abstain from

granting injunctive or declaratory relief that would interfere with pending judicial

proceedings."  Night Clubs, 163 F.3d at 481.  When a plaintiff seeks only injunctive or

30

declaratory relief, the court should dismiss the federal suit if it finds abstention appropriate. Id. Claims for damages, however, are different and a federal court may not decline to exercise jurisdiction over them by either dismissing the suit or remanding it to state court, unless the damages sought would first require a declaration that a state statute is unconstitutional. Yamaha Motor Corp. U.S.A. v. Stroud, 179 F.3d 598, 603 (8th Cir. 1999) (citations omitted).

Plaintiff's Amended Complaint seeks a combination of monetary, injunctive, and declaratory relief. Specifically, Plaintiff seeks damages against Judge Knutson on behalf of herself and her children in the amount of $55,083,310.22, an award of damages against the remaining Defendants in an amount to be determined by the Court, punitive damages against all Defendants, and fees for attorneys, experts, and witnesses. (Am. Compl., Prayer for Relief ¶¶ 1-8, 14-16 [Doc. No. 17].) Plaintiff also seeks an order declaring that Judge Knutson violated Plaintiff's constitutional rights, "including the first, fourth, fifth, sixth, eighth, ninth, thirteenth and fourteenth amendments to the Constitution of the United State[s]," and that Plaintiff "brought a successful action under these statutes." (Id. ¶ 9.) Plaintiff further seeks injunctive relief, including: (1) a "[d]emand [for Defendants] to cease and desist implementing any policy with respect to restraining the fundamental freedoms of families and children of the love and companionship of each other"; (2) permanently enjoining Defendants from violating "constitutional and civil and liberty rights of families"; (3) requiring Defendants to restore to Plaintiff her children and real property; and (4) requiring Defendants to pay Plaintiff all damages sustained by her. (Id. ¶¶ 10-13.)

With respect to Plaintiff's claims for injunctive and declaratory relief, the Court abstains under <u>Younger</u> and dismisses these claims without prejudice.  With respect to Plaintiff's claims for damages, applying <u>Younger</u> abstention normally would mandate staying, rather than dismissing, these claims, because the Court has not been asked to declare a state statute unconstitutional in order to award damages.  See <u>Yamaha</u>, 179 F.3d at 603-04.  The Court, however, dismisses the damages claims on the merits because they are futile; they are barred under the doctrine of judicial immunity.  See <u>Nowicki v. Ullsvik</u>, 69 F.3d 1320, 1323-24 (7th Cir. 1995) (in a Section 1983 case, affirming the district court's (1) abstention from exercising jurisdiction over the injunctive and declaratory claims under <u>Younger</u>, and (2) dismissal of the damages claims based in part on judicial immunity).

### 4.  Judicial Immunity

It is well-settled that judges of general jurisdiction are not liable in civil actions based on claims of their misconduct during the performance of their judicial functions.  <u>Stump v. Sparkman</u>, 435 U.S. 349, 355-56 (1978).  Like other forms of official immunity, judicial immunity is immunity from suit, not just from the ultimate assessment of damages.  <u>Mireles v. Waco</u>, 502 U.S. 9, 11 (1991).  Only two circumstances avoid judicial immunity: (1) if the judge is being sued for actions that were not taken in the judge's judicial capacity, or (2) if the judge is being sued for actions taken "in the complete absence of jurisdiction." <u>Id.</u> at 11-12.

Here, it is apparent that Plaintiff is trying to sue Judge Knutson based on actions taken in his capacity as a state court judge.  Plaintiff contests Judge Knutson's case

management, his signing of orders, the substance of his orders, and the trial proceedings on

September 12, 2013.  All of these actions, however, were taken in Judge Knutson's judicial

capacity.  See Stump, 435 U.S. at 362 ("the factors determining whether an act by a judge is

a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally

performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the

judge in his judicial capacity.").  Judge Knutson has not interacted with Plaintiff outside of

his courtroom or his judicial chambers.  (Defs.' Mem. of Law in Supp. of Mot. to Dismiss

Am. Compl. and/or for Summ. J. at 21 [Doc. No. 23].)  While Plaintiff may believe that

Judge Knutson misused or abused his judicial powers, an action taken by a judge in his

judicial capacity "does not become less judicial by virtue of an allegation of malice or

corruption of motive."  See Forrester v. White, 484 U.S. 219, 227 (1988).  Immunity applies

"even when the judge is accused of acting maliciously and corruptly."  Pierson v. Ray, 386

U.S. 547, 554 (1967).

Moreover, the underlying family law case was within Judge Knutson's jurisdictional

authority.  Plaintiff argues that Defendant "never had jurisdiction to hear and try this

custody case" because he "usurped court files by improper assignment."  (Pl.'s Mem. of

Law in Opp'n to Defs.' Mot. to Dismiss Compl. and/or for Summ. J. at 21 [Doc. No. 30].)

But the narrow exception invoked by Plaintiff applies only when a judge hears a case that is

clearly beyond his judicial authority, such as a probate judge trying a criminal case.  See

Stump, 435 U.S. at 357 n.7.  State courts are courts of general jurisdiction, which includes

jurisdiction over family law matters.  See MINN. STAT. § 484.01, subd. 1 (state district

courts have original jurisdiction in all civil actions within their respective districts); id. §

257.59 (state district courts have jurisdiction over child custody disputes).  Therefore, the

underlying family law matter was properly before Judge Knutson in state court.

     For these reasons, the Court dismisses with prejudice Plaintiff's claims for monetary

damages on the grounds of judicial immunity.

## IV.   ORDER

     The Court abstains from exercising jurisdiction over Plaintiff's injunctive and

declaratory claims under <u>Younger</u> and dismisses those claims without prejudice.

Plaintiff's damages claims are dismissed with prejudice on the grounds of judicial

immunity.

     Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss Amended Complaint and/or for Summary
   Judgment [Doc. No. 21] is **GRANTED**.

2. Plaintiff's Amended Complaint [Doc. No. 17] is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:    May 29, 2014          s/ Susan Richard Nelson
                                 SUSAN RICHARD NELSON
                                 United States District Court Judge